Cristina Lancranjan
1011 Union St Ap 1205
San Diego CA 92101
Phone Number 860-460-1865
Fax Number:  NA

CRISTINA M. LANCRANJAN, *Plaintiff, Pro Se*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTINA M. LANCRANJAN, *Plaintiff, Pro Se*, <br><br> vs. <br><br> PETER SAATJIAN, Esq.; PS LAW APC; <br><br> FARZAD & OCHOA FAMILY LAW <br><br> ATTORNEYS, LLP; DAVID <br><br> SCHULMAN, an individual; MOORE <br><br> SCHULMAN & MOORE, APC; MATT <br><br> BLADO, an individual; BICKFORD <br><br> BLADO & BOTROS, a corporation and <br><br> DOES 1-10, *Defendants.* | Case No.: 26-cv-02817-BAS-VET <br> First Amended VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR: <br> 1. **VIOLATION OF CIVIL RICO (18 U.S.C. § 1962(c))** <br> 2. **RICO CONSPIRACY (18 U.S.C. § 1962(d))** <br> 3. **CIVIL RIGHTS VIOLATIONS (CAL. CIV. CODE § 52.1)** <br> 4. **COMMON LAW FRAUD AND DECEIT** <br> 5. **ABUSE OF PROCESS** <br> 6. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** <br><br> **DEMAND FOR JURY TRIAL** |

-1-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ;
DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

# TABLE OF CONTENTS

**PART ONE: PRELIMINARY FRAMEWORK, PARTIES & JURISDICTIONAL ARCHITECTURE**

- **PREFATORY NOTE TO THE COURT & ROADMAP TO ADJUDICATION** *(p. 5)*
  - Verified Complaint Architecture & Legal Framework Matrix *(p. 5)*

- **A. INTRODUCTION, RELATED PROCEEDINGS & EVIDENTIARY FRAMEWORK** *(p. 10)*
  - a. Introduction *(p. 10)*
  - b. Related Proceedings *(p. 26)*
  - c. Evidentiary Framework *(p. 29)*

- **B. THE PARTIES** *(p. 55)*

- **C. THE INTEGRATED NATURE OF THE ENTERPRISE & THE NECESSITY OF FEDERAL INTERVENTION** *(p. 76)*
  - Master Architecture Summary *(p. 76)*

- **I. JURISDICTION, VENUE & PREEMPTIVE DEFENSES** *(p. 83)*
  - Jurisdictional & Legal Defense Matrix *(p. 100)*
  - Preemptive Anti-Discretion & Immunity Defeat Matrix *(p. 102)*

**PART TWO: THE ENTERPRISE & CHRONOLOGY OF RACKETEERING**

- **II. THE ENTERPRISE & THE WEAPONIZATION OF THE TRIBUNAL** *(p. 103)*
  - A. Association-in-Fact *(p. 103)*
  - B. Judicial Finding of Meritorious Dispute *(p. 106)*
  - C. Administrative Blockade and VL Weaponization *(p. 106)*
  - D. Matrix of the Racketeering Enterprise (Actor Roles & Predicate Acts) *(p. 109)*

- **III. CHRONOLOGY OF RACKETEERING, EXTRINSIC FRAUD, AND CONSTITUTIONAL DEPRIVATION** *(p. 145)*

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

**PART THREE: CAUSES OF ACTION & MASTER LITIGATION INDEX**

- **IV. CAUSES OF ACTION** *(p. 248)*

  o    Count I: Violation of Civil RICO (18 U.S.C. § 1962(c)) *(p. 248)*

  o    Count II: RICO Conspiracy (18 U.S.C. § 1962(d)) *(p. 256)*

  o    Count III: Civil Rights Violation (Cal. Civ. Code § 52.1) *(p. 264)*

  o    Count IV: Common Law Fraud and Deceit *(p. 267)*

  o    Count V: Abuse of Process *(p. 273)*

  o    Count VI: Intentional Infliction of Emotional Distress *(p. 278)*

- **V. MASTER LITIGATION MATRIX (Claims, Predicates & Exhibits)** *(p. 284)*


**PART FOUR: REMEDIATION, APPENDICES & VERIFICATION**

- **VI. CONCLUSION: THE NECESSITY OF FEDERAL INTERVENTION** *(p. 288)*

- **VII. PRAYER FOR RELIEF** *(p. 294)*

- **VIII. APPENDIX: MASTER FORENSIC MATRIX A & MASTER CHRONOLOGICAL RICO CLAIM MATRIX** *(p. 302)*

  o    I. The Statutory & Constitutional Nexus Framework / Master Forensic Matrix A *(p. 303)*

  o    II. Master Chronological RICO Claim Matrix *(p. 317)*

  o    III. Supplemental Forensic Matrix: Chronological Mapping of State-Created Danger & RICO Predicate Acts *(p. 339)*

- **IX. VERIFICATION** *(p. 543)*

- **X. MASTER EXHIBIT INDEX (Exhibits 1–20)** *(p. 544)*

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

**TABLE OF AUTHORITIES**

**Cases:**

- Ankenbrandt v. Richards, 504 U.S. 689 (1992)
- Boyle v. United States, 556 U.S. 938 (2009)
- Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009)
- DeShaney v. Winnebago County, 489 U.S. 189 (1989)
- Elkins v. Superior Court, 41 Cal.4th 1337 (2007)
- *Flatley v. Mauro*, 39 Cal. 4th 299 (2006)
- *Jameson v. Desta*, 5 Cal.5th 594 (2018)
- *Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004)
- *M.L.B. v. S.L.J.*, 519 U.S. 102 (1996)
- *Paul v. Adam*, 32 Cal.App.4th 1566 (1995)
- Reves v. Ernst & Young, 507 U.S. 170 (1993)
- Rochin v. Pat Johnson Manufacturing Co., 67 Cal.App.4th 1228 (1998)
- Salinas v. United States, 522 U.S. 52 (1997)
- *Stanley v. Richmond*, 35 Cal. App. 4th 1070 (1995)
- Varian Medical Systems, Inc. v. Delfino, 35 Cal.4th 180 (2005)

**Statutes:**

- 18 U.S.C. § 1343: Federal Wire Fraud
- 18 U.S.C. § 1503: Obstruction of Justice
- 18 U.S.C. § 1512: Tampering with a Witness, Victim, or an Informant (Obstruction of Justice)
- 18 U.S.C. § 1951: Hobbs Act (Extortion)
- 18 U.S.C. § 1961 et seq.: Racketeer Influenced and Corrupt Organizations Act (RICO)
- 18 U.S.C. § 1964(c): Civil RICO Remedies (Treble Damages)
- 42 U.S.C. § 1983: Civil Rights Act
- Cal. Civ. Code § 52.1: Tom Bane Civil Rights Act

-4-

**PREFATORY NOTE TO THE COURT & ROADMAP TO ADJUDICATION**

**TO THE HONORABLE COURT, PARTIES, AND COUNSEL OF RECORD:**

To assist the Court in navigating the extensive evidentiary record, establishing absolute subject-matter jurisdiction under Section I, and preemptively defeating anticipated immunity, abstention, and "trial court discretion" defenses, Plaintiff provides this **Verified Complaint Architecture & Legal Framework Matrix**.

Because this action involves complex, multi-docket civil racketeering claims running parallel to state-court proceedings, this preliminary roadmap is structured as a mandatory legal funnel. It identifies the statutory anchors, jurisdictional exceptions, and legal sufficiency of each component of this First Amended Verified Complaint, ensuring judicial economy and clarity at a glance:

-5-

## COMPLAINT ARCHITECTURE & LEGAL FRAMEWORK MATRIX

| Complaint Section & Reference | Core Legal Purpose | Legal Sufficiency & Rebuttal of Defenses (with Governing Authorities) |
|---|---|---|
| **A. Introduction, Related Proceedings & Evidentiary Framework** *(p. 10)* | Establishes federal question jurisdiction and maps out the interconnected web of related state dockets. | Instantly establishes federal question jurisdiction (28 U.S.C. § 1331) and clarifies that this is not an impermissible collateral attack on a domestic relations decree (*Ankenbrandt v. Richards*, 504 U.S. 689). Proves the "instrumentality theory"—that the state family law tribunal (Case No. 23FL000584C) was structurally co-opted as an unwitting tool of the enterprise, actively misled by forged Findings and Orders After Hearing (FOAHs), suppressed evidence, and a retaliatory "Vexatious Litigant" gag order that left the state forum procedurally incapable of addressing these independent federal crimes. (see detailed allegations, ¶¶ 6–9) |
| **B. The Parties** *(p. 55)* | Identifies all defendants, individual actors, and corporate entities. | Satisfies the strict statutory requirements of 18 U.S.C. § 1961(4) by precisely defining the legal "persons" and the "Association-in-Fact" enterprise, explicitly mapping distinct roles under *Boyle v. United States*, 556 U.S. 938, and *Reves v. Ernst & Young*, 507 U.S. 170, explicitly mapping the distinct roles of Peter Saatjian (Architect), David Schulman (Financial Facilitator), and Matt Blado (Enforcer/Concealer) and binding them to their respective law firms. |

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

| | | |
|---|---|---|
| **C. The Integrated Nature of the Enterprise & Master Architecture Summary** <br><br> *(p. 76)* | Synthesizes the nexus between private racketeering and state-level procedural subversion. | Acts as a preemptive strike against judicial abstention. Proves federal intervention is mandatory via the *Kougasian* extrinsic fraud exception (359 F.3d 1136) and the *Flatley v. Mauro* (39 Cal.4th 299) extortion exception, demonstrating the state forum has become a bad-faith sham incapable of remedying federal crimes. |
| **I. Jurisdiction & Preemptive Defenses** <br><br> *(p. 83)* | Establishes absolute federal question authority, navigates abstention exceptions, and defeats immunity traps. | Establishes mandatory federal question jurisdiction (28 U.S.C. § 1331) and civil RICO remedies (18 U.S.C. § 1964(c)). Preemptively defeats abstention and immunity traps under *Ankenbrandt v. Richards* (504 U.S. 689), *Kougasian v. TMSL, Inc.* (359 F.3d 1136), and *Flatley v. Mauro* (39 Cal.4th 299), while establishing issue preclusion via state court factual findings (Exhibit 10). |
| **II. The Enterprise** <br><br> *(p. 103)* | Exposes the mechanics, common purpose, and operational playbook of the syndicate. | Lays out structural mechanics under 18 U.S.C. § 1961(4), highlighting the pivotal July 6, 2026 Minute Order (Exhibit 10) which established a judicially recognized "meritorious dispute" regarding financial extractions and document forgeries, defeating isolated professional error defenses under collateral estoppel doctrines. |

**First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET**

| | | | |
|---|---|---|---|
| **III. Chronology of Racketeering** (p. 145) | Establishes a date-specific timeline of predicate acts and continuous conduct. | Satisfies the heightened pleading standards of Federal Rule of Civil Procedure 9(b) for fraud. Provides the date-specific "who, what, when, and where" of each predicate act under 18 U.S.C. § 1961(1)—moving from the October 2024 unauthorized wire transfer to ongoing 2026 administrative blockades and sham trial tracks. |
| **IV. Causes of Action (Counts I – VI)** (p. 248) | Connects the factual chronology directly to statutory federal and state civil liability. | Serves as the direct statutory bridge: Counts I & II establish civil RICO and conspiracy liability under 18 U.S.C. § 1962(c)/(d); Count III invokes the Bane Act (Cal. Civ. Code § 52.1) for 1st and 14th Amendment breaches; and Counts IV–VI establish common law fraud, abuse of process, and intentional infliction of emotional distress (IIED). |
| **V. Master Litigation Matrix (Claims, Predicates & Exhibits)** (p. 282) | Organizes and cross-references all predicate acts against verified evidence. | Acts as an evidentiary "key" for the Court, locking every allegation of wire fraud, forgery, and extortion directly to verified exhibits (Exhibits 1–20) and binding judicial validations in compliance with evidentiary standards. |
| **VI. Conclusion & VII. Prayer for Relief** (pp. 286, 292) | Demands precise economic remediation and structural injunctions. | Quantifies concrete base economic damages ($650,500+) triggering mandatory trebling exceeding $1,951,500.00 under 18 U.S.C. § 1964(c), and demands vital equitable remedies and injunctive relief under 18 U.S.C. § 1964(a) to halt *ultra vires* trial tracks. |

-8-

| | | |
|---|---|---|
| **VIII. Appendix (Master Forensic Matrices A & Supplemental Mappings)** *(p. 300)* | Bridges state statutory violations directly to federal RICO predicate mechanics. | Satisfies FRCP 9(b) pleading standards by providing an airtight evidentiary roadmap and date-specific audit ledger of predicate acts, proving that state-level service violations (i.e., CRC 5.125) and due process deprivations were the precise instruments ("the how") used to execute community asset theft ("the ends"). Defeats "family law" deflections by mapping a unified constitutional timeline of federal crimes, substantiating RICO injury under 18 U.S.C. § 1964(c) through direct exhibit integration (Exhibits 1–20) and controlling precedent (*Kougasian, Flatley, Varian, DeShaney*). |
| **IX. Verification & X. Master Exhibit Index (Exhibits 1–20)** *(pp. 541 – 544)* | Authenticates all facts under oath and provides the unassailable paper trail. | Transforms the complaint into a sworn evidentiary affidavit under penalty of perjury (28 U.S.C. § 1746), backed by master exhibits providing an unassailable paper trail—from ethics declarations (Exhibit 3) to administrative blockades (Exhibit 20). |

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

## A. INTRODUCTION, RELATED PROCEEDINGS & EVIDENTIARY FRAMEWORK

### a. INTRODUCTION

**1. NATURE OF THE ACTION:** This is a federal civil racketeering and civil rights action for treble damages, punitive damages, and injunctive relief, brought pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction). This action is related to *Lancranjan v. Truitt et al.*, Case No. 26-CV-03765-JES-DEB, currently pending before this Court also. The relationship between these actions is fundamental: Case No. 26-CV-03765 identifies the unconstitutional forum of deprivation, documenting how the state judicial machinery was structurally compromised to violate Plaintiff's fundamental due process and civil rights. **Conversely, the instant action targets the private-actor 'Association-in-Fact' Enterprise—comprised of Defendants PETER SAATJIAN, DAVID SCHULMAN, and MATT BLADO—who functioned as the operational engine behind those deprivations, who orchestrated a sophisticated pattern of racketeering activities to facilitate systemic fraud, extortion, and financial embezzlement.** These actions are inextricably connected because the constitutional violations were not mere procedural errors; they were the direct products of the Enterprise's criminal playbook. **The Defendants weaponized the judicial process, intentionally blinding the tribunal through systemic forgery, procedural**

-10-

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

sabotage, and witness intimidation to manufacture an 'administrative blackout.' By utilizing their institutional power and privileged status to execute this fraud, the Defendants created the very conditions necessary to loot the marital estate and churn unconscionable fees. In short: Case No. 26-CV-03765 establishes the unconstitutional injury, **while the instant action Case No. 26-CV-02817-BAS-VET exposes the criminal racketeering activities** that systematically facilitated, profited from, and intentionally orchestrated those injuries. **This action is brought to seek immediate damages and civil RICO remedies because the Enterprise's racketeering activities remain actively ongoing—manifesting currently through an unconstitutional 'sham trial' track, the active cover-up of professional malpractice, and the continuous subversion of Plaintiff's efforts to expose the underlying fraud across concurrent proceedings, including active matters pending in the Court of Appeal. This coordinated campaign is designed to retroactively launder past wire fraud, embezzlement, and forgeries into unassailable state judgments before this Court can dismantle their fee-churning pipeline.**

   **2. The Enterprise's Operational Engine (Extraction, Immunization, Profiteering):** These predicate acts were not isolated; they were the "institutional machinery" utilized to catalyze the Defendants' financial extractions, insulate them from professional malpractice liability, and profit directly from the Plaintiff's engineered financial destitution. Under the *Boyle v. United States* standard for an

"Association-in-Fact" enterprise, these actions represent more than independent professional negligence; they constitute a coordinated, multi-actor criminal unit operating with a unified purpose. By design, this machinery was constructed to achieve three specific, unlawful objectives, establishing the motive and intent required for a pattern of racketeering under 18 U.S.C. § 1962:

- **First, Systematic Financial Extraction:** By manufacturing discovery disputes and fabricating jurisdictional defaults, the Enterprise created a "captive fund" from the Plaintiff's community estate, ensuring the estate served as the perpetual financing source for the Enterprise's own racketeering tactics.

- **Second, Immunization through Procedural Sabotage:** The Enterprise weaponized the tribunal to create a record that shielded its members from accountability. By forcing the Plaintiff into a state of "procedural paralysis" and manufacturing defaults, the Defendants effectively blocked the Plaintiff from exercising her right to seek redress, intentionally extinguishing her defensive resources before they could be deployed against the Enterprise.

- **Third, Profiteering from Destitution:** The Enterprise's business model was predicated on the intentional creation of financial ruin. The Defendants deliberately drove the Plaintiff into destitution to ensure she lacked the liquidity required to mount a defense or expose the underlying fraud. This

-12-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

was not a collateral consequence of the litigation; it was a primary mechanism of profit—the more destitute the Plaintiff became, the less capable she was of challenging the Enterprise's fraudulent billing, forged orders, and illicit transfers.

3. **SPECIFIC PREDICATE ACTS:** Specifically, to execute this operational engine, the Enterprise engaged in:

- **Federal Wire Fraud (18 U.S.C. § 1343):** Utilizing electronic interstate banking and court filing systems to facilitate the unauthorized $150,000 embezzlement of community capital into Defendant Schulman's private trust, while simultaneously transmitting forged judicial instruments and "ghost motions" to structurally blind the tribunal (Exhibit 6, Attachments A-E).

- **Hobbs Act Extortion (18 U.S.C. § 1951):** Transmitting written threats of criminal prosecution to coerce Plaintiff into abandoning her property claims (Exhibits 3, 4, & 7; evaluated as "Moral Turpitude" by ethics expert Edward J. McIntyre in Exhibit 3).

- **Systemic Forgery & Perjury:** Procuring and ratifying void Bifurcation Judgments and Findings and Orders After Hearing (FOAH) to circumvent the adversarial process and structurally "lock out" Plaintiff. This systemic fabrication served as the Enterprise's mechanical engine for looting the

-13-

community estate, allowing Defendants to bypass due process while artificially inflating litigation to churn unconscionable legal fees against the very assets they were illegally seizing (Exhibits 3 & 6).

- **Witness Intimidation & Obstruction (18 U.S.C. § 1512):** Coercing forensic experts and legal counsel to abandon their professional duties to Plaintiff, as documented in the Addleman forensic evidence (Exhibit 12) and the coerced declarations of counsel (Exhibit 13).

**4. JOINDER OF DEFENDANTS AND JOINT AND SEVERAL LIABILITY**: Plaintiff joins PETER SAATJIAN, DAVID SCHULMAN, MATT BLADO, and their respective firms—**Moore, Schulman & Moore, APC**, and **Bickford, Blado & Botros**—as Defendants in this action. This joinder is necessitated by the judicial determination in Case No. 25CU054361C (**Exhibit 10**), which established these actors as essential participants in the Enterprise's fraudulent infrastructure. While Defendant Saatjian functioned as the 'Architect' of the procedural abuse, Defendants Schulman and Blado operated as critical nodes within the 'Association-in-Fact' Enterprise. Their participation was not tangential; rather, the Enterprise utilized a calculated division of labor wherein each Defendant performed specific, recurring functions essential to the racketeering 'playbook.' Consequently, each Defendant is jointly and severally liable for the collective racketeering activities, as each played a necessary role in the execution

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

of the Enterprise's unified criminal objective of asset extraction and judicial subversion.

**5. THE OPERATIONAL PLAYBOOK**: As detailed in the Chronology of Predicate Acts (**Section III, Section VIII/ Matrix A, and Exhibit 1**) and corroborated by the July 6, 2026, judicial finding of a 'meritorious dispute' (**Exhibit 10**), **Peter Saatjian served as the 'Architect,' directing the systematic procedural abuse and fraudulent litigation strategy, while Schulman acted as the 'Financial Facilitator,' leveraging his fiduciary position to siphon community assets, and Blado functioned as the 'Concealer and Enforcer,' tasked with the systematic suppression of evidence and the ratification of fraudulent court records**. This coordinated conduct demonstrates a unified criminal purpose: to systematically loot the marital estate through the exploitation of the judicial machinery. Crucially, the Superior Court's July 6, 2026, Minute Order (Exhibit 10) serves as a binding judicial validation of this conspiracy; by explicitly finding a 'meritorious dispute' regarding the exact financial extractions and document forgeries perpetrated by these Defendants, the Court effectively dismantled the Enterprise's veneer of legitimacy, confirming that these acts were not isolated professional errors, but the result of a deliberate, multi-actor scheme to defraud the tribunal and the Plaintiff. This Verified Complaint is amended to reflect this complete infrastructure of racketeering, which will be fully exposed at trial through the forensic evidence, witness declarations, and the totality

of the case record. By leveraging their positions as partners in prominent San Diego law firms, these Defendants provided the institutional machinery necessary to execute the Enterprise's playbook, specifically:

- **Strategic Architecture (Saatjian): Predicate Acts of Witness Tampering (18 U.S.C. § 1512), Extortion (18 U.S.C. § 1951), and Fraud Upon the Court.** Saatjian's 'playbook'-documented in the Chronology of Predicate Acts (Exhibit 1)—specifically the procurement of void orders via extrinsic fraud and the weaponization of the Rules of Court to manufacture litigation where none existed—constitutes a systemic subversion of the tribunal. As detailed in the **Master Litigation Matrix (Section V)** and corroborated by **Exhibit 6 (Attachments A, E)**, Saatjian utilized forged instruments and 'Ghost Motions' to create a 'procedural shadow-world. By utilizing his position of power to procure forged instruments and void bifurcation judgments, Saatjian created a 'procedural shadow-world' to justify the extraction of unconscionable fees.These acts were not designed to win a motion; they were designed to bypass due process and force a total capitulation through terror, systemic forgery, and the absolute subversion of the judicial truth-seeking process.

- **Financial Laundering (Schulman): Predicate Acts of Wire Fraud (18 U.S.C. § 1343) & Embezzlement.** Schulman's diversion of community funds into his private trust was not a 'fee dispute'; it was a deliberate act of

-16-

conversion. Despite the Family Court Services (FCS) record establishing Defendant Saatjian as the losing party, Schulman—who was ostensibly retained to represent Plaintiff—conspired with Saatjian to manufacture a 'default' against his own client. By orchestrating this manufactured non-compliance and refusing to propound discovery, Schulman created a procedural vacuum that allowed him to seize control of the marital estate. This was a classic *quid pro quo*: Schulman provided Saatjian with the procedural path to 'win' by defaulting his own client, in exchange for the Enterprise's permission to siphon community assets and churn hundreds of thousands of dollars in unconscionable fees (Exhibit 6, Attachment B). By intentionally sabotaging the defense to 'default' Plaintiff, Schulman ensured the estate remained a 'captive fund,' systematically liquidated to finance the Enterprise's assault on the Plaintiff's rights. This *quid pro quo*—whereby Schulman sabotaged the defense to 'default' Plaintiff in exchange for the Enterprise's permission to siphon $150,000 into his private trust (**Exhibit 6, Attachment B**)—is tracked as a core predicate act in the **Chronology (Exhibit 1)**. This 'captive fund' model, which Schulman actively concealed through perjurious declarations (**Exhibit 10**), turned the marital estate into a machine for fee-churning, as further detailed in **Section IV (Causes of Action)**.

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

- **Structural Suppression (Blado): Predicate Act of Obstruction of Justice (18 U.S.C. § 1503) & RICO Conspiracy.** Blado's ratification of forged instruments was not 'misinterpretation of the law.' It was an intentional meeting of the minds to perpetuate the fraud. By knowingly presenting forgeries to the Court to shield the Enterprise's embezzlement and continuing the 'playbook' to keep the estate frozen, Blado obstructed justice and perpetrated a fraud upon the Court. His role was to act as the final 'enforcer' of the concealment, ensuring the Enterprise's fee-extraction pipeline remained uninterrupted even after the Plaintiff had been rendered destitute. Blado's role was to provide institutional immunity by 'blinding' the court record, a pattern of behavior documented in the **Chronology (Exhibit 1)** and confirmed by the suppression of evidence identified in **Exhibit 13**. He did not merely suppress evidence; he affirmatively 'blinded' the court record to ensure that the Enterprise's pattern of fraud could remain undetected and replicable. Blado coordinated with Saatjian and Schulman to continue the concealment of forged orders and embezzlement, explicitly intending to maintain a 'sanitized' record of these proceedings. This was a deliberate meeting of the minds designed to allow the Enterprise to operate with impunity, ensuring they could continue to weaponize these same procedural forgeries and fraudulent billing practices in other cases, essentially creating a 'plug-and-play' racketeering model for their collective

-18-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

professional practice. By affirmatively ratifying forged judicial instruments to shield the Enterprise's embezzlement, Blado engaged in an intentional 'meeting of the minds' to perpetuate fraud. As categorized in the **Master Litigation Matrix (Section V)**, Blado's concealment ensured the Enterprise's fee-extraction pipeline remained uninterrupted, creating a 'plug-and-play' racketeering model that continues to weaponize procedural forgeries in all the parallel cases. This pattern of systemic obstruction is further corroborated by the declarations of prior counsel (**Exhibit 13**), proving that Blado's actions were not individual errors, but the necessary suppression acts to maintain the Enterprise's impunity.

- **Judicial Validation of Conspiracy:** These roles are not mere allegations; they are corroborated by the Superior Court's July 6, 2026, Minute Order (Exhibit 10), which identified a "meritorious dispute" concerning these exact financial extractions and document forgeries. This order serves as a binding judicial determination that these actions were not individual errors, but coordinated criminal acts executed by the Enterprise. Consequently, these Defendants are named as co-conspirators because they each performed essential, distinct roles in the racketeering syndicate that catalyzed the constitutional violations and profited from the resulting financial destitution.

-19-

**6. THE ENTERPRISE'S CRIMINAL METHODOLOGY AND OPERATIONAL PLAYBOOK**: This action arises from a coordinated, multi-year "Association-in-Fact" Enterprise directed by Defendant PETER SAATJIAN, acting in active concert with former fiduciaries DAVID SCHULMAN and MATT BLADO. These Defendants did not act as lawful advocates; they operated as a racketeering Enterprise that weaponized state judicial procedures to manufacture a veneer of legality for their criminal acts. By intentionally violating mandatory procedural safeguards—including, but not limited to, the notice and service requirements including the California Rule of Court 5.125—the Defendants systematically blinded the tribunal to the underlying fraud. Through the procurement and ratification of void judicial instruments, including perjured Bifurcation Judgments and forged Findings and Orders After Hearing (FOAH), the Enterprise successfully laundered its fraudulent extractions, artificially inflated litigation costs, and effectively locked the Plaintiff out of her multi-million-dollar marital estate to ensure a continuous pipeline of unconscionable legal fees. These Defendants operated as a racketeering Enterprise, weaponizing state judicial procedures to structurally blind the tribunal—manipulating the state family court machinery as an unwitting instrument—to unlawfully siphon community property, extort unconscionable fees, and drive Plaintiff toward absolute financial ruin.

**7. The Enterprise's Operational Playbook:** The Enterprise functioned through a calculated division of labor and a unified criminal purpose, operating via a

-20-

sophisticated playbook designed to maximize fee-churning and asset extraction while minimizing the risk of detection.

- **The Operational Objective:** The Enterprise functions by engineering a "procedural blackout". By manufacturing discovery disputes and fabricating jurisdictional defaults, the Enterprise effectively strips the Plaintiff of her right to be heard. This is not incidental; it is a calculated prerequisite to their objective—finalizing the unconstitutional seizure of the marital estate while the victim is structurally paralyzed and unable to fund a defense.

- **The Incentive Structure:** The Enterprise operates through **asymmetrical financial extraction**. By locking the estate and siphoning capital (such as the unauthorized $150,000 transfer), the Defendants transform the Plaintiff's own assets into a "captive fund" that exclusively finances the Enterprise's litigation tactics. This creates a self-perpetuating cycle: the more the Enterprise sabotages the case, the more fees they generate, and the more destitute the Plaintiff becomes, the less likely she is to ever expose the underlying fraud.

- **Calculated Roles and Playbook:**

  - **Defendant Peter Saatjian (The Architect):** The primary coordinator who directed the systematic procedural abuse. Saatjian engineered the

-21-

"Ghost Motion" strategy (**Exhibit 6, Attachment E**) and fabricated court orders (**Exhibit 6, Attachment A**). When these procedural maneuvers failed to suppress the truth, Saatjian pivoted to an explicit campaign of criminal coercion and obstruction. He utilized interstate wires to transmit threats of criminal prosecution to terrorize Plaintiff into silence (**Exhibit 7**), and orchestrated witness intimidation to suppress forensic findings (**Exhibits 3, 12, & 13**). Specifically, when Plaintiff could not be coerced, Saatjian systematically interfered with her right to counsel by attempting to pressure Plaintiff's trial counsel, Ms. T. Healoha Lee, to abandon the defense (**Exhibit 13**). To finalize the destruction of Plaintiff's ability to litigate, Saatjian procured the unconstitutional "Vexatious Litigant" (VL) gag order (**Exhibit 8**), creating an "administrative blackout" designed to systematically block Plaintiff's defensive filings while the Enterprise looted the estate. Saatjian then weaponized this VL order as a procedural weapon to steamroll the state court proceedings toward trial, in direct defiance of the pending appellate jurisdiction (**Court of Appeal Case No. D086958**). This entire course of conduct—engineered to drive Plaintiff into absolute financial destitution—is fully documented in the **Chronology of Predicate Acts (Exhibit 1)** and the corresponding evidentiary record in **Case No. 26-CV-03765-JES-DEB**. His role was

-22-

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

to weaponize the family court machinery to blind the tribunal, siphon assets, and obstruct the appellate process, constituting a persistent pattern of racketeering conduct categorized as a primary predicate act of 'Extortion, Witness Intimidation, and Procedural Sabotage' in the **Master Litigation Matrix (Section V)**. These acts were not designed to win a motion; they were designed to bypass due process and force a total capitulation of Plaintiff's legal position through terror, systemic forgery, and the absolute subversion of the judicial truth-seeking process. These acts were formally recognized as a 'meritorious dispute' regarding systemic fraud in the Superior Court's July 6, 2026, Minute Order (Exhibit 10).

• **Defendant David Schulman (The Financial Facilitator):** The agent who orchestrated the initial "lock-out" and conversion of marital assets. Schulman executed the unauthorized, off-record $150,000 transfer of community capital into his own firm's trust account **(Exhibit 6, Attachment B)**, a predicate act of wire fraud designed to strip Plaintiff of the liquidity required to mount a defense. In exchange for this liquid capital, Schulman abandoned his fiduciary duty to preserve the estate, actively engineering a "manufactured non-compliance" cycle. He intentionally refused to propound mandatory financial disclosures or provide necessary discovery, while

-23-

simultaneously not opposing frivolous motions including to compel discovery—creating a perpetual motion machine of litigation designed to churn unconscionable fees. This strategic sabotage included not opposing a void bifurcation of marital status and not requesting updated finical disclosures, which he then weaponized to justify further fee-churning and the degradation of Plaintiff's credibility. Schulman further conspired with Defendant Saatjian to move ex parte the proceedings of the Move Away hearing from a 3-hour hearing from Nov 2024 to a 3-day hearing months later in may 2025, a delay tactic used specifically to exhaust Plaintiff's resources and churn unconscionable fees. To shield this embezzlement and the resulting destruction of Plaintiff's procedural rights, Schulman submitted a series of perjurious declarations—misrepresentations formally validated as a "meritorious dispute" by the Superior Court's July 6, 2026, Minute Order (**Exhibit 10**). This financial sabotage—the creation of the "captive fund"—directly financed the Enterprise's subsequent tactics, ensuring the marital estate became the engine for its own destruction. This "quid pro quo" arrangement, where Schulman liquidated the estate to fund the Enterprise's assault on the Plaintiff, is documented in the **Chronology of Predicate Acts (Exhibit 1)**, the forensic accounting of the unauthorized transfers

-24-

(Exhibit 12), and is categorized as a primary predicate act of 'Financial Racketeering & Embezzlement' in the Section **III and Master Litigation Matrix (Section V)**.

• **Defendant Matt Blado (The Concealer/Enforcer):** The agent tasked with the Enterprise's active suppression, obstruction, and institutional shielding. Blado enforced the concealment of the unauthorized transfers and the "Ghost Motions" (**Exhibit 6, Attachments C & E**), while affirmatively ratifying forged judicial instruments to ensure the Enterprise's extractions remained shielded from judicial review. Blado's role was essential to the Enterprise's "protective layer"; by providing a veneer of legitimacy to forged court records, he prevented the tribunal from discovering the underlying fraud. Upon the Enterprise's successful seizure of the community estate, Blado executed a calculated $15,000 "hit-and-run" fee extraction, abandoning Plaintiff on the eve of trial after he had systematically eradicated her defensive resources and compromised her procedural standing. This strategic abandonment was not mere negligence; it was a final "spoilation" act intended to leave Plaintiff entirely without the procedural capacity to expose the Enterprise's fraud, thereby insulating himself and his co-conspirators from malpractice liability. His role as the Enterprise's 'Enforcer' is fully documented in the **Chronology of**

-25-

**Predicate Acts (Exhibit 1)**, confirmed by the forensic evidence of Enterprise 's suppression (**Exhibit 12**), and categorized as a primary predicate act of 'Obstruction of Justice and Evidence Suppression' in the **Master Litigation Matrix (Section V)**.

## b. RELATED PROCEEDINGS

**8. The Interconnected Web of Related State Proceedings:** To prevent the Defendants from falsely characterizing this federal complaint as an improper "domestic relations" dispute or a collateral attack on state court rulings, Plaintiff explicitly identifies four additional highly related, yet legally distinct, state court actions that form the operational and evidentiary web of this racketeering scheme:

- **The "Crime Scene" (The Family Law Action):** *IRMO Truitt & Lancranjan*, San Diego Superior Court Case No. **23FL000584C**. This proceeding represents the central forum or "crime scene" where the Enterprise executed its predicate acts of fraud and forgery, abusing the judicial machinery to convert community assets under color of law.

- **The Appellate Challenge (The Extrinsic Fraud Appeal):** California Court of Appeal, Fourth Appellate District, Case No. **D086958**. This pending appeal directly challenges the trial court's void orders and structural bifurcation as products of systemic extrinsic fraud and unserved forged instruments.

-26-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

- **The Blado Malpractice Action:** *Lancranjan v. Blado*, San Diego Superior Court Case No. **37-2025-00055956-CU-PN-CTL** (Ref: 25CU055956C). This state court action addresses individual breach of fiduciary duty and professional negligence by Defendant Blado under state common law.

- **The Schulman Malpractice Action:** *Lancranjan v. Schulman*, San Diego Superior Court Case No. **37-2025-00054361-CU-PN-CTL** (Ref: 25CU054361C). This state court action addresses individual malpractice, embezzlement of client funds, and breach of standard of care by Defendant Schulman.

**9. Critical Legal Justifications for the Federal RICO Court::** These actions are fundamentally interconnected, yet legally independent, requiring federal adjudication for the following reasons:

- **Independent Source Doctrine:** The *Rooker-Feldman* doctrine does not bar this action. Plaintiff does not seek to overturn state court orders; rather, this Complaint seeks damages for independent federal torts (Civil RICO, Extortion, and Wire Fraud) committed by private actors *prior to* and *independent of* any state court judicial action. Under Ninth Circuit precedent, when a plaintiff alleges that state court orders were procured through extrinsic fraud, forgery, and extortion by an independent criminal

-27-

enterprise, the federal court retains absolute jurisdiction to award damages for those distinct out-of-court injuries.

- **Lack of Preclusive Finality:** Under California law, a state court judgment is not final for the purposes of *res judicata* while an appeal is actively pending. Because Case No. **D086958** is currently before the Court of Appeal challenging the validity of the underlying orders for extrinsic fraud, the Defendants cannot assert that any state trial court orders have preclusive effect in this federal forum.

- **Distinct Legal Remedies:** State malpractice actions address localized violations of fiduciary duty. Those actions do not—and cannot—adjudicate the collective, multi-defendant criminal conspiracy, the "Association-in-Fact" structure, or the pattern of systemic extortion spanning multiple years required to establish liability under 18 U.S.C. § 1962. Furthermore, the state court lacks the statutory authority to award federal Treble Damages and attorney's fees under 18 U.S.C. § 1964(c).

- **The Instrumentality Theory/The State Court is an Instrument, Not an Active Adjudicator of this Conspiracy:** The family law department in Case No. **23FL000584C** was structurally co-opted into an instrument of the Enterprise. Because the state court was actively misled by forged Findings and Orders After Hearing (FOAHs), suppressed evidence, and a retaliatory

-28-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

"Vexatious Litigant" gag order designed to block Plaintiff's defensive filings, the state court lacks the procedural capacity to address these criminal acts. This federal action is the only forum capable of comprehensively dismantling the financial pipeline of this syndicate

## c. EVIDENTIARY FRAMEWORK

10. To facilitate the Court's initial review and ensure judicial efficiency, Plaintiff has included this **Roadmap to Adjudication**. In short, this framework is designed to assist the Court in identifying the core issues of federal jurisdiction and racketeering liability at the outset, thereby expediting the Court's determination regarding the necessity of federal intervention. This summary serves three specific functions:

• **Synthesizing Complex Facts:** It distills a multi-year racketeering operation into a concise evidentiary narrative, connecting the predicate criminal acts directly to the statutory requirements of the RICO Act.

• **Addressing Threshold Defenses:** It preemptively clarifies the legal boundaries of the state litigation privilege under *Flatley v. Mauro*, preventing the unnecessary expenditure of judicial resources on meritless immunity defenses.

-29-

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

- **Providing an Evidentiary Key:** Through the included **Master Litigation Matrix**, it provides a scannable index that anchors every allegation of fraud, forgery, and embezzlement to a verified exhibit or judicial finding.

## MASTER LITIGATION MATRIX

11. To assist the Court in its review of the pattern of racketeering, Plaintiff provides the following matrix linking the Predicate Acts of the Enterprise to the independent evidentiary record.

## MASTER LITIGATION MATRIX

| Predicate Act | Defendants | Federal Statute / RICO Predicate | Key Evidence | Judicial Validation |
|---|---|---|---|---|
| **Financial Racketeering & Embezzlement** | Schulman, Saatjian, Blado | **18 U.S.C. § 1343** (Wire Fraud) | Ex. 6 (Transfers) | Ex. 10 (July 6, 2026) |
| **Forged Judicial Instruments** | All Defendants | **18 U.S.C. § 1503** (Obstruction of Justice) | Ex. 3, 6 (Forged FOAHs) | Ex. 10 (July 6, 2026) |
| **Extortion & Witness Intimidation** | Saatjian | **18 U.S.C. § 1951** (Hobbs Act) & **§ 1512** | Ex. 3, 4, 7, 12, 13 | Pending 1983 Action (26-CV-03765) |

-30-

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ;
DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

| Procedural Gagging (VL Weaponization) | Saatjian, Schulman | 18 U.S.C. § 1962(c) (Conduct of Enterprise) | Ex. 8 | Pending 1983 Action (26-CV-03765) |
|---|---|---|---|---|

12. **Transition to Predicate Acts & Enterprise Conduct:** Having established that this federal action is independent of, yet inextricably linked to, the state court proceedings (previous section under b. RELATED PROCEEDINGS)—and having provided the Court with the evidentiary matrix of "Judicial Validations"—Plaintiff now sets forth the specific pattern of racketeering activity that constitutes the Defendants' "Association-in-Fact." The following allegations describe the systematic, multi-year campaign of predicate criminal acts, which functioned through a calculated division of labor and a unified criminal purpose to defraud the tribunal and the Plaintiff. For a granular, forensic reconstruction of the Enterprise's operations, including a chronological mapping of the defendants' specific roles, their ongoing racketeering activities, and the supporting evidentiary record, the Court is directed to Section II&III of this Verified Complaint and the attached Master Forensic Matrix at the end of the Verified Complaint.

13. The Defendants' actions constitute intentional predicate acts of wire fraud (Exhibit 6 Attachment 3), criminal forgery (Exhibit 3), witness intimidation

-31-

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

(Exhibit 3&12), the illicit coercion of Plaintiff's counsel (Exhibit 13), and Hobbs Act extortion (Exhibit 3, 4&7), purposefully designed to defraud the tribunal and the Plaintiff. The Enterprise intentionally engineered Plaintiff's financial destitution as a strategic prerequisite to its objective: finalizing the unconstitutional seizure of the community estate while silencing all opposition. Central to this scheme was the Enterprise's weaponization of the unconstitutional "Vexatious Litigant" (VL) order (Exhibit 8). This order served as the Enterprise's "ultimate racketeering tool," functioning as an administrative gag mechanism to systematically block Plaintiff's defensive filings from judicial review. Specifically, this gag was implemented immediately after Plaintiff brought the extortionate threats and forged orders contained in the Edward J. McIntyre declaration (Exhibit 3) and the witness intimidation evidence of Ms. Addleman (Exhibit 12) to the court's attention.

14. By leveraging this order, the Enterprise effectively created an 'administrative blackout' that serves to immunize its members across all judicial forums—including both the underlying family court matter (**Case No. 23FL000598C**) and the related malpractice actions. This gag mechanism not only silenced witnesses to the Enterprise's intimidation tactics but also created a structural shield for Defendant Schulman, insulating him from discovery regarding his professional malpractice and shielding the Enterprise's documented embezzlement of community funds from judicial scrutiny. By weaponizing this VL order, the

-32-

Enterprise successfully paralyzed the Plaintiff's ability to prosecute these claims, as the 'blackout' effectively functions as a perpetual stay on the truth. This systemic suppression directly impacts the underlying Family Court matter, the pending Causes of Action in this RICO complaint, and the concurrent malpractice proceedings, as the Enterprise continues to utilize the gag as a 'master key' to prevent the aggregation of evidence across these multiple forums.

15. This VL gag order was weaponized specifically to launder forged instruments and facilitate financial racketeering by insulating the Enterprise from judicial review. However, the Enterprise's "administrative blackout" proved insufficient to suppress the truth entirely. When Plaintiff physically bypassed these procedural obstructions to present critical, suppressed evidence to the state Court, the trial court was compelled to acknowledge the gravity of the misconduct. On July 6, 2026, the Court formally overruled its own previous tentative rulings, issuing a Minute Order (**Exhibit 10**) that explicitly acknowledged the existence of a "meritorious dispute" regarding the Enterprise's financial extractions and document forgeries. This judicial recognition effectively pierced the Enterprise's veneer of legitimacy, confirming that the Defendants' actions were not mere litigation errors, but the product of a deliberate, multi-actor scheme to defraud both the tribunal and the Plaintiff.

-33-

**First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET**

16. Furthermore, in **Case No. 23FL000584C**, the Enterprise continues to utilize this VL order as a procedural weapon to steamroll Plaintiff toward trial in direct defiance of the pending appellate jurisdiction under **Court of Appeal Case No. D086958**. By forcing trial proceedings forward while the stay-inducing issues of the appeal remain unresolved, the Enterprise has effectively engaged in a bad-faith "steamrolling" tactic, designed to finalize the conversion of assets before the Court of Appeal can rectify the trial court's *ultra vires* actions. This entire course of conduct—from the initial malpractice cover-up to the current appellate-defying trial maneuvers—constitutes an ongoing pattern of racketeering activity. Plaintiff will present this full evidentiary record, including the malpractice trial court's forced reconsideration (Case *25CU054361C)*, at trial as an integral part of the Enterprise's documented racketeering acts. This weaponization of the tribunal is the subject of separate constitutional review in *Lancranjan v. Truitt et al.* (Case No. 26-cv-03765-JES-DEB) and serves as the primary mechanism through which the Enterprise continues to obstruct justice and suppress evidence of their predicate criminal acts.

17. **THE ENTERPRISE'S CRIMINAL METHODOLOGY: SUMMARY OF EVIDENCE:** To assist the Court in synthesizing the racketeering pattern, the following summary delineates the Enterprise's playbook:

- **Nature of Racketeering Activity:** This was not a series of isolated professional errors; it was a coordinated **"Association-in-Fact"** Enterprise

-34-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

characterized by a persistent pattern of criminal conduct. The Defendants systematically weaponized interstate banking wires to siphon estate capital (**Wire Fraud, Exhibit 6**), threatened criminal prosecution to coerce silence (**Extortion, Exhibit 3 & 4**), fabricated judicial instruments to bypass the adversarial process (**Criminal Forgery and Perjury, Exhibit 5 & 6**), and engaged in egregious witness intimidation and the coercive targeting of Plaintiff's counsel, Ms. T. Healoha Lee, to force her abandonment of the defense, thereby intentionally violating Plaintiff's fundamental right to legal counsel and the integrity of the judicial process (**Obstruction of Justice/ Witness Tampering, Exhibit 13**)

- **The Racketeering Playbook:** These acts were not isolated incidents but a coordinated pattern of racketeering activity. The Enterprise utilized electronic interstate wires to transmit forged documents and "ghost motions" to structurally blind the state court. This pattern is substantiated by the comprehensive audit in the Chronology of Predicate Acts (Exhibit 1) and the forensic evidence of coordinated criminal conduct (Master Exhibits).

- **Predicate Acts & Evidence:** Each element of this scheme is substantiated by the evidentiary record: the unauthorized $150,000 transfer (Wire Fraud/ Embezzlement, Exhibit 6), the forged FOAHs (Criminal Forgery, Exhibit 6), and the pattern of threatening communications (Extortion, Exhibit 7). This

-35-

coordinated scheme is further validated by the Superior Court's July 6, 2026, finding of a "meritorious dispute" regarding these exact financial extractions and document forgeries (Exhibit 10).

- **Evidence of Extortion and Moral Turpitude:** The Enterprise's campaign of threats and witness intimidation—including the coercion of Plaintiff's prior and trial counsel—has been formally evaluated by legal ethics expert Edward J. McIntyre, who confirms these acts constitute criminal extortion and "moral turpitude" (Exhibit 3).

- **Financial and Procedural Sabotage:** The Enterprise's pattern of engineering financial destitution is confirmed by the forensic analysis of expert witness Anna Addleman regarding the siphoning of estate capital (Exhibit 12), and corroborated by the formal declarations of trial counsel Ms. T. Healoha Lee, which detail the Enterprise's active attempts to coerce her into abandoning the Plaintiff's defense (Exhibit 13).

- **Judicial and Law Enforcement Validation:** This coordinated scheme of racketeering is further validated by the July 6, 2026, Superior Court finding of a "meritorious dispute" (Exhibit 10), and the formal acknowledgment of criminal conduct by the San Diego District Attorney's Office (Exhibit 4).

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

- **Scope of Disclosure:** This summary is not exhaustive; it serves as a high-level distillation of a far more complex racketeering operation. The full scope of the Enterprise's fraud, the extent of the fee-churning, and the depth of the procedural sabotage are evidenced by the complete record in the underlying family law matter (*Truitt v. Lancranjan*, Case No. 23FL000584C), the ongoing state appellate proceedings, the related malpractice actions (*25CU055956C* and *25CU054361C*), and the discovery findings in Plaintiff's concurrent civil rights (Case No. 26-cv-03765-JES-DEB) and this RICO litigation. The entirety of these records, when viewed as a singular, cohesive narrative, reveals the complete, sophisticated racketeering infrastructure that Defendants have attempted to shield from federal review.

**18. THE SYSTEMIC WEAPONIZATION OF INSTITUTIONAL PROCESS: The Enterprise's pattern of racketeering was executed through the systematic abuse of process by the Defendants, operating as partners within prominent San Diego law firms.** The Enterprise's racketeering operation was not limited to the unauthorized siphoning of capital; it functioned through a systemic "Weaponization of Process" designed to execute a total legal and financial takeover. Defendant Peter Saatjian initially orchestrated this scheme while employed at **Farzad & Ochoa Family Law Attorneys, LLP**, and subsequently as

-37-

the principal of his own firm, **PS LAW, APC**. Defendant David Schulman utilized his position as a partner at **Moore, Schulman & Moore, APC**, to facilitate the financial extractions, while Defendant Matt Blado leveraged his status as a partner at **Bickford Blado & Botros** to conceal the Enterprise's forgery and ratify the fraudulent record. These firms provided the institutional veneer of legitimacy required to manipulate the family court, utilizing electronic filing systems to transmit forged instruments—including void Bifurcation Judgments and Findings and Orders After Hearing (FOAH)—as distinct predicate acts of Federal Wire Fraud (18 U.S.C. § 1343). These fraudulent orders were not merely clerical errors; they were the "master keys" the Enterprise used to bypass the adversarial process, artificially inflate litigation costs, and lock the Plaintiff out of her own multi-million-dollar estate to ensure a continuous pipeline of unconscionable legal fees.

19. Defendant Peter Saatjian initially executed this pattern of racketeering while employed at Defendant Farzad & Ochoa Family Law Attorneys, LLP. Defendant systematically subverted the adversarial process by utilizing unserved "ghost" discovery motions, procuring a void bifurcation of marital status through perjury on an intentionally unserved FL-180 judgment—deliberately falsely certifying a mutual stipulation and the exchange of mandatory updated and/or final financial disclosures—and continuously filing false, unserved orders in direct violation of California Rule of Court 5.125. By utilizing electronic court filing systems to

-38-

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

transmit these fabricated instruments, Defendants executed distinct predicate acts of Federal Wire Fraud (18 U.S.C. § 1343). Furthering this scheme, Defendants utilized interstate wires to orchestrate an unauthorized $150,000 off-record transfer of community capital, and subsequently forged Plaintiff's signature on court orders to unlawfully extract an additional $115,000 from the unauthorized $150,000 account.

20. After forming Defendant PS LAW, APC, Defendant Saatjian escalated his conduct to explicit federal extortion and systemic witness intimidation. Defendant repeatedly transmitted written threats of District Attorney criminal prosecution and incarceration to terrorize Plaintiff into abandoning her efforts to expose his fraud. As formally evaluated by legal ethics expert Edward J. McIntyre, these written threats constitute criminal extortion and "moral turpitude" (**Exhibit 3**). In a calculated attempt to obstruct justice, Saatjian leveraged his influence to contact the District Attorney's office, orchestrating a deceptive maneuver to fabricate a "clean" record. Specifically, Saatjian induced the DA investigator to transmit an email stating there was "no active investigation," a statement Saatjian then weaponized to shield himself from accountability. This was a deceptive maneuver to manufacture a veneer of legality; it does not negate the fact that the District Attorney had already opened a formal investigation based on the extortionate threats and forged orders presented by the Plaintiff—threats which remain

**First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET**

inherently extortionate in nature regardless of the subsequent administrative closure of the DA's file (**Exhibit 4**).

21. The Enterprise's campaign of coercion extended to the total systematic suppression of expert and legal witnesses. Saatjian engaged in a pattern of intimidation against forensic accountant Anna Addleman, subjecting her to massive, unindexed data dumps and coercive pressure and defamatory declaration to Court to coerce her to abandon her findings and Plaintiff (**Exhibit 12**). When Plaintiff used borrowed funds to retain a new forensic expert, Mr. Zimmer, and secured new legal counsel, the Enterprise immediately pivoted to intimidation, subjecting both to the same pattern of coercive threats. The Enterprise further orchestrated the systematic coercion of Plaintiff's prior trial counsel, Ms. T. Healoha Lee, attempting to force her to abandon the defense (**Exhibit 13**). Culminating this extortionate campaign, Defendant hijacked the structurally blinded tribunal to procure an unconstitutional "Vexatious Litigant" (VL) gag order (**Exhibit 8**). This retaliatory injunction was procured precisely to silence Plaintiff, strip her 1st Amendment right to petition the courts, and finalize the catastrophic deprivation of her 14th Amendment due process rights, ensuring that no expert or legal advocate could expose the Enterprise's underlying fraud.

**22. The Enterprise maintains its obstruction of justice through the ongoing, coordinated weaponization of the "Vexatious Litigant" (VL) prior restraint.**

-40-

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

This unconstitutional gag order, originally procured by Defendant Saatjian through extrinsic fraud, is currently being leveraged by Defendants to suppress Plaintiff's 1st Amendment right to petition the courts, thereby preventing her from exposing their past fraud and ongoing racketeering. This ongoing constitutional violation is a central component of the relief sought in Plaintiff's related civil rights action (*Lancranjan v. Truitt et al.*, Case No. 26-cv-03765-JES-DEB). The Defendants, in their capacity as partners and principals of their respective firms, continue to rely on this gag order to immunize themselves from accountability (Exhibit 10), effectively rendering the state tribunal a continuing instrument of their extortionate enterprise.

**23. THE CHRONOLOGICAL RECORD OF THE RACKETEERING PLAYBOOK:** The Enterprise's 'operational playbook' is not a collection of disparate events; it is a meticulously documented history of procedural subversion codified in the Chronology of Predicate Acts (Exhibit 1) in Case No. 23FL000584C. Each entry in this chronology reveals a calculated strategy: the Enterprise utilizes *ex parte* maneuvers to systematically strip the Plaintiff of her ability to expose the underlying fraud, effectively using the trial court as a 'blinded instrument' to validate forged instruments and facilitate the seizure of the marital estate. The necessity of the concurrent 1983 Civil Rights Action (Case No. 26-CV-03765-JES-DEB) is therefore inextricably linked to this RICO complaint. The

-41-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

1983 action serves as the critical procedural instrument required to halt the Enterprise's ongoing 'steamrolling' tactics, which are designed to achieve the total liquidation of Plaintiff's assets and the absolute annihilation of her constitutional rights. These two federal actions are functionally interchangeable and mutually reinforcing: while the RICO action targets the criminal Enterprise and its fee-churning infrastructure, the 1983 action acts as the necessary bulwark against the structural deprivation of due process that the Enterprise currently perpetuates. Together, these cases provide the only viable framework to prevent the permanent destruction of Plaintiff's property and rights, as they expose the Enterprise's coordinated 'past fraud and ongoing racketeering' that the state court, acting as a blinded instrument, remains incapable of rectifying

**24. THE NECESSITY OF FEDERAL INTERVENTION AND THE "HAMMER" OF RICO** Plaintiff seeks remedy for these independent racketeering injuries, as the state tribunal has been rendered structurally incapable of providing a remedy for the Defendants' completed federal crimes. The Enterprise utilized interstate wires to orchestrate an initial unauthorized $150,000 transfer and a subsequent $115,000 extraction (Exhibit 6), with each Defendant—Saatjian, Schulman, and Blado—playing an essential, coordinated role in the execution of the scheme. This coordinated destruction has resulted in the total financial and constitutional ruin of the Plaintiff: beyond the direct siphoning of

-42-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ;
DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

over $265,000 in liquid estate capital, the Enterprise's "fee-churning" pipeline has decimated a multi-million-dollar marital estate, forced the absolute destruction of Plaintiff's professional career, induced a state of total destitution and imminent homelessness, and caused the permanent, irreparable loss of Plaintiff's fundamental constitutional rights to due process and parental liberty—the most valuable of which is the irretrievable loss of time with her son. The Defendants' continued reliance on an unconstitutional VL order to stifle legal accountability, coupled with the systemic and pervasive subversion of fundamental statutory rights and mandatory California Rules of Court—most notably Rule 5.125— demonstrates that the Enterprise's racketeering activity remains active and widespread. These were not isolated procedural lapses; they represent a calculated, wholesale disregard for the adversarial process, establishing that the Enterprise operates entirely outside the constraints of the law. Such systemic invalidity demonstrates that the state proceedings have been rendered a complete nullity, requiring immediate federal intervention to halt the ongoing deprivation of civil rights and restore the integrity of the judicial process.

25. Given the aggregate of these damages—including the misappropriated $265,000 in direct extractions, the destruction of a multi-million-dollar estate, the total loss of professional earning capacity, and the catastrophic psychological and constitutional deprivations—Plaintiff estimates the base value of these injuries to exceed $2,000,000 millions. Immediate federal intervention is required not only to

-43-

halt the ongoing deprivation of civil rights, but to wield the "hammer" of RICO to dismantle the infrastructure of this criminal syndicate, recover the misappropriated assets, and permanently enjoin the Defendants from further utilizing the state family court machinery as an unwitting instrument for their criminal "fee-churning" pipeline.

26. The Enterprise's current 'sham trial' tactics are not merely procedural maneuvers; they constitute the final phase of the criminal Enterprise's money-laundering operations. By forcing these trials forward, the Defendants intend to use the trial court's imprimatur to 'launder' their past predicate acts, effectively codifying their fraudulent extractions into enforceable judgments and forever burying the evidence of their racketeering. This is not the practice of law; it is the weaponization of the judicial process by professionals who have abandoned their ethical duties to act as a criminal syndicate. These attorneys, wielding the power of their offices like 'badges' of authority to insulate themselves from accountability, have turned the adversarial process into a mechanism for public and private harm. This RICO action is essential to expose this corruption, not only to protect the Plaintiff's rights but to safeguard the integrity of our judicial system from those who would use the machinery of the law to perpetuate criminal conduct under a veneer of professional legitimacy.

-44-

**First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET**

27. The Enterprise's objective in this final-stage 'laundering' is clear: to finalize the conversion of Plaintiff's assets into permanent fee-churning revenue. Having established that the Defendants' conduct transcends professional malpractice and constitutes a coordinated criminal syndicate, Plaintiff now sets forth the measurable wreckage of this scheme. The following framework quantifies the direct financial and human costs of this racketeering operation, illustrating that the Defendants' 'playbook'—a calculated blend of past fraud and ongoing, aggressive litigation abuse—has caused catastrophic, concrete damages.

**28. The Dual-Track Damages (The Roadmap):** This calculated campaign was engineered to trap Plaintiff in a perpetual state of defensive litigation while converting her $1,000,000+ estate into churned legal fees.

- **Federal Racketeering (See Exhibit 1 & Section IV):** To date, the Enterprise's predicate acts of Federal Extortion (18 U.S.C. § 1951) and Wire Fraud (18 U.S.C. § 1343) have directly and proximately caused concrete, calculable financial damages to Plaintiff's property and business interests in a base amount exceeding **$650,500.00**. Pursuant to the mandatory trebling provisions of 18 U.S.C. § 1964(c), Plaintiff seeks a total compensatory judgment exceeding **$1,951,500.00**. A granular, chronological audit of every predicate act and the resulting financial devastation is detailed in **Exhibit 1**. A granular, chronological audit of every predicate act is detailed in Exhibit

-45-

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

1. These damages are continuing in nature and subject to finalization pending the resolution of ongoing trial case (Truitt v. Lancranjan Case 23FL000584C) the appellate proceedings (D086958), the malpractice cases (*Lancranjan v. Schulman* Case No. 25CU054361C& *Lancranjan v. Blado* Case No. 25CU055956C)) and the the related 42 U.S.C. § 1983 litigation (*Lancranjan v. Truitt et al.*, Case No. 26-cv-03765-JES-DEB), and the culmination of all trial-related extractions. Plaintiff reserves the right to amend this calculation as discovery reveals the aggregate extent of the Enterprise's devastation..

- **State Civil Rights & Psychological Torture (See Exhibit 2 & Section IV):** Concurrently, the Enterprise executed a campaign of severe psychological abuse and coercion actionable under the Tom Bane Civil Rights Act and common law Intentional Infliction of Emotional Distress (IIED). The chronology of these constitutional deprivations and engineered terror—warranting massive Punitive and Exemplary damages—is detailed in **Exhibit 2**.

29. **Summary of Claims & Federal Necessity:** In sum, this action is brought to dismantle a coordinated "Association-in-Fact" Enterprise that has systematically defrauded the state tribunal and the Plaintiff through an ongoing pattern of racketeering. The Defendants—Saatjian, Schulman, and Blado—did not engage in

-46-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

legitimate legal advocacy; they operated as a criminal syndicate, utilizing forged judicial instruments, wire fraud, and extortion to finalize the unlawful seizure of Plaintiff's marital estate and the permanent deprivation of her civil rights. The Superior Court's July 6, 2026, finding of a "meritorious dispute" (Exhibit 10) confirms that these acts were not isolated professional errors but systemic criminal conduct. Because the state tribunal remains structurally compromised by the Enterprise's "procedural blackout" and extrinsic fraud, and because the state system lacks the jurisdiction to award treble damages for federal RICO violations, this Court's immediate intervention is required. This action provides the necessary federal forum to expose the full extent of this racketeering infrastructure, recover the misappropriated community assets, and enjoin the Defendants from further utilizing the state family court machinery as an unwitting instrument for their criminal "fee-churning" pipeline.

30. **The foregoing Matrix** identifies the specific federal and state causes of action that anchor this Complaint. These claims are not incidental to the ongoing state court proceedings; they are independent federal torts that arise from the Enterprise's criminal conduct. As the evidence summarized above demonstrates, the Defendants' actions—specifically the use of extortion, wire fraud, and forged judicial instruments—fall squarely outside the protection of any state-sanctioned immunity. The following sections detail the legal necessity of federal intervention

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

and confirm that the Defendants' reliance on the state litigation privilege is a meritless defense designed to obstruct justice.

**MASTER LITIGATION MATRIX: CLAIMS, PREDICATES & EXHIBITS**

| Claim / Cause of Action | Predicate Act(s) | Defendants Involved | Supporting Exhibits | Complaint Section |
|---|---|---|---|---|
| **Civil RICO** (18 U.S.C. § 1962(c)) | Wire Fraud, Criminal Forgery, Extortion, Obstruction of Justice | Saatjian, Schulman, Blado | Exhibits 1, 2, 3, 4, 5, 6 (A–E), 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20 | Section III & IV (Count I)&Section VIII (Appendix) |
| **RICO Conspiracy** (18 U.S.C. § 1962(d)) | Quid Pro Quo Collusion, Fiduciary Betrayal, Evidence Suppression, Concealment | Saatjian, Schulman, Blado | Exhibits 1, 2, 3, 4, 6 (B, C, D, E), 8, 10, 13, 15, 16, 17, 18, 19, 20 | Section III & IV (Count II)& Section VIII (Appendix) |
| **Civil Rights (Bane Act)** (Cal. Civ. Code § 52.1) | Extortionate Threats (DA/Jail), Unconstitutional "VL" Gag Orders, Access Blockades | Saatjian, Schulman, Blado | Exhibits 1, 2, 3, 4, 7, 8, 9, 13, 14, 19, 20 | Section IV (Count III)& Section VIII (Appendix) |
| **Common Law Fraud / Deceit** | Extrinsic Fraud, Perjury, False Disclosures, Ghostwriting | Saatjian, Schulman, Blado | Exhibits 1, 2, 3, 5, 6, 6A, 6E, 9, 10, 12, 14, 15, 16, 17, 18, 19, 20 | Section IV (Count IV)& Section VIII (Appendix) |

-48-

| Abuse of Process | "Ghost Motions", Fabricated Defaults, Docket Weaponization, Security Bonds | Saatjian, Schulman, Blado | Exhibits 1, 2, 6, 7, 8, 9, 10, 13, 14, 16, 17, 19, 20 | Section IV (Count V)& Section VIII (Appendix) |
|---|---|---|---|---|
| Intentional Infliction of Emotional Distress (IIED) | Psychological Terror, Custodial Abuse, State-Created Danger, Commute Torture | Saatjian, Schulman, Blado | Exhibits 1, 2, 3, 4, 7, 12, 13, 14, 19, 20 | Section IV (Count VI)& Section VIII (Appendix) |

31. As established by Supreme Court precedent, these acts are independent federal torts strictly exempt from state-level protections such as the California litigation privilege. The specific statutory mechanisms establishing this Court's unflagging obligation to exercise Federal Question jurisdiction, along with the preemptive defeat of anticipated jurisdictional traps, are fully set forth in Section I below. Because the Defendants rely on the state litigation privilege as a central pillar of their racketeering defense, Plaintiff preemptively addresses this barrier to clarify that their conduct is legally and ethically indefensible.

32. **Pre-emptive Invocation of the Litigation Privilege Exception (Flatley v. Mauro):** Defendants will predictably attempt to shield their extortionate conduct under California's litigation privilege (Cal. Civ. Code § 47). This defense fails entirely as a matter of law. As established by the California Supreme Court in *Flatley v. Mauro*, 39 Cal.4th 299 (2006), when an attorney transmits threats of

-49-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

criminal prosecution to gain an advantage in a civil dispute, the conduct constitutes criminal extortion and is strictly exempt from all litigation privileges. As verified in the attached executed declaration of legal ethics expert Edward J. McIntyre (Exhibit 3), Defendant Saatjian's written threats of District Attorney prosecution explicitly violate Rule of Professional Conduct 3.10(a) and squarely trigger the *Flatley* extortion exception. Furthermore, Mr. McIntyre categorizes the Enterprise's fabrication of court documents as acts of "Moral Turpitude," confirming these are non-communicative, illegal acts of extrinsic fraud falling completely outside the protection of any state-level immunity or litigation privilege. While Defendant Saatjian's threats of District Attorney prosecution trigger the *Flatley* exception directly, **Defendants Schulman and Blado** are equally precluded from asserting privilege. Their actions—specifically the manufacture of fraudulent discovery records, the suppression of evidence, and the creation of an 'administrative blackout'—are not 'communicative' acts within the litigation process; they are **non-communicative acts of extrinsic fraud and criminal obstruction**. Under California law, an attorney's intentional acts of fraud, embezzlement, and obstruction of justice are strictly exempt from privilege, as they fall entirely outside the bounds of lawful representation. Furthermore, because these Defendants acted in concert as an **Association-in-Fact Enterprise** to achieve a criminal objective (capital theft), they forfeited any claim to individual professional immunity. The Enterprise Defendants cannot invoke their status as

-50-

**First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ;
DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET**

attorneys to shield acts of racketeering; they were not performing 'advocacy,' but were systematically subverting the judicial process to convert marital assets for personal enrichment. Therefore, no litigation privilege or work-product doctrine applies to these criminal predicate acts, and Defendants are fully liable in their individual capacities for their conspiratorial role in this scheme. The Enterprise's reliance on litigation privilege is defeated by the independent judicial record. While Defendant Saatjian's extortion was verified by the **Edward J. McIntyre Expert Declaration (Exhibit 3)**, the fraudulent conduct of Defendants Schulman and Blado is substantiated by the **'Schulman Perjurous Declaration' (Exhibit 10)** —a document filed in the related malpractice action which contains demonstrably false statements under oath that contradict the record—and the **July 6, 2026, Superior Court Order (Exhibit 10)**. That Order constitutes a critical judicial recognition of the meritorious nature of Plaintiff's fraud claims, directly contradicting the 'non-compliance' narrative fabricated by these Defendants. Furthermore, the **Court of Appeal's Order granting review of the challenged orders (Exhibit 9)**—issued in Case No. D086958 notwithstanding the 'Vexatious Litigant' blockade—confirms that the procedural barriers erected by these Defendants were not legitimate advocacy, but acts of obstruction designed to circumvent the appellate process and immunize the Enterprise from its own extrinsic fraud. When cross-referenced with the **Master Forensic Matrix (Matrix A at the end of this Verified Complaint)**, these exhibits demonstrate that

-51-

Defendants' claims of privilege are not only legally inapplicable but factually refuted by the very courts they attempted to manipulate

**33. Conclusion of Jurisdictional Authority:** By affirmatively pleading documented acts of extrinsic wire fraud, criminal forgery, and federal extortion, Plaintiff has successfully pierced every anticipated procedural shield. Defendants cannot utilize equitable doctrines of abstention or state litigation privileges to immunize ongoing federal racketeering crimes. Because the state tribunal has been co-opted into an unwitting instrument of the Enterprise, and because state courts lack the statutory authority to award Treble Damages under 18 U.S.C. § 1964(c), this United States District Court possesses the undeniable, exclusive, and immediate Federal Question jurisdiction (28 U.S.C. § 1331) required to adjudicate these independent federal torts. Furthermore, state courts are fundamentally ill-equipped to address this Enterprise; they lack the statutory authority to award the mandatory Treble Damages under 18 U.S.C. § 1964(c) and, more importantly, lack the jurisdiction to wield the federal remedial powers necessary to dismantle a racketeering syndicate. This action is not merely a quest for financial compensation, but a necessary pursuit of structural justice that only this Court can provide. Because the state tribunal—including the family court, the appellate division, and the pending malpractice litigation—remains co-opted by the Enterprise's criminal influence and is structurally incapable of resolving these **predicate criminal acts**, this United States District Court possesses the

-52-

undeniable, exclusive, and immediate Federal Question jurisdiction (28 U.S.C. § 1331) required to adjudicate these independent federal racketeering claims. The matters at issue are not mere domestic relations disputes; they are **proven federal crimes**—including extortion, wire fraud, and obstruction of justice—that have subverted the state judicial forum. Consequently, this Court maintains the inherent authority to intervene where the state system has been weaponized as an instrument of fraud, restore the rule of law, and provide the comprehensive relief, including federal equitable and compensatory remedies, that a co-opted state family court is, by design, powerless to grant.

34. **Roadmap for Adjudication**: Having established the existence of the Enterprise and the roadmap of this racketeering activity, Plaintiff now outlines the essential **architecture of this case**:

**Master Architecture of the Complaint: Constitutional RICO and Legal Violations**

| Section | Functional Purpose | Legal Foundation & Predicate Acts | Exhibits Cross-Reference |
|---|---|---|---|
| A. Framework | Anchor the Federal action | Establishes the necessity of the "Bulwark" intervention and pleads the Instrumentality Theory. | Exhibits 1, 9, 20 |

-53-

**First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET**

| | | | |
|---|---|---|---|
| **B. The Parties** | Prove "Association-in-Fact" | Identifies the criminal syndicate members (Saatjian, Schulman, Blado) under 18 U.S.C. § 1961(4). | Exhibits 3, 6, 10, 12, 13 |
| **C. Nature of Action** | Synthesize the "Nexus" | Maps forensic loss to criminal conduct and establishes federal question jurisdiction. | Exhibits 1, 3, 6, 12, 13 |
| **I. Jurisdiction** | Assert Federal mandate | Overcomes state "procedural blackouts," *Rooker-Feldman*, and abstention via *Kougasian* and *Flatley*. | Exhibits 8, 9, 10 |
| **II. The Enterprise** | Expose the "Machine" | Forgery, Wire Fraud (18 U.S.C. § 1343), Extortion (§ 1951), Obstruction of Justice (§ 1503), VL Gag Order Weaponization, and Extrinsic Fraud. | Exhibits 3, 6, 7, 8, 10 |
| **III. Chronology** | Prove Continuity | Sequential mapping of Predicate Acts satisfying FRCP 9(b) pleading standards. | Exhibits 1, 2, 6, 12, 13 |
| **IV. Causes of Action** | Map to Constitutional /RICO laws | Constitutional RICO & Legal Violations | Exhibits 1–20 |
| *Count I-II (RICO)* | Statutory liability | Wire Fraud, Extortion, Conspiracy (18 U.S.C. § 1962(c)/(d)). | Exhibits 1, 3, 4, 6, 7, 10 |
| *Count III (Civil Rights)* | Constitutional deprivations | 1st & 14th Amendment breaches (Cal. Civ. Code § 52.1 - Bane Act). | Exhibits 3, 4, 8 |
| *Count IV-VI (Torts)* | Common law violations | Common Law Fraud, Abuse of Process, IIED. | Exhibits 2, 5, 6, 7, 13 |
| **V. Matrix** | Evidentiary Blueprint | Master Litigation Index cross-referencing claims, predicates, and exhibits. | Exhibits 1–20 |

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

| VI. Conclusion | Demand Remediation | Total dismantling of the criminal "fee-churning" pipeline and bad-faith trial tracks. | Exhibits 1, 9, 10, 20 |
|---|---|---|---|
| VII. Prayer | Request Specific Damages | Treble Damages exceeding $1,951,500.00 (18 U.S.C. § 1964(c)) & Injunctive Relief (§ 1964(a)). | Exhibits 1, 6, 8, 14 |
| VIII. Appendix | Bridge state violations to RICO mechanics | Master Forensic Matrices A and Supplemental Mappings proving "the how" and "the ends". | Exhibits 1, 2, 6, 12, 13 |
| IX. Verification | Attestation of Truth | Sworn evidentiary affidavit executed under penalty of perjury (28 U.S.C. § 1746). | Verification Affidavit |
| X. Exhibit Index | Evidence Proof | Formalized, comprehensive list and index of master exhibits for judicial verification. | Exhibits 1–20 |

## B. THE PARTIES

35. Plaintiff CRISTINA M. LANCRANJAN ("Plaintiff") is an individual residing in San Diego County, California, and was the Respondent in the underlying state family law case *Truitt v. Lancranjan*, Case No. 23FL000584C. Plaintiff is a domestic violence survivor, a dedicated mother, and a Harvard student whose professional career and marital estate were systematically dismantled by the Defendants' racketeering enterprise. As a target of the Enterprise's coordinated campaign of financial starvation, extrinsic fraud, and state-facilitated abuse,

-55-

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

Plaintiff has been rendered structurally destitute and unconstitutionally gagged by retaliatory prior restraints. Despite her exhaustive efforts to preserve the record and exhaust state-level appellate remedies, Plaintiff has been forced to initiate this action to pierce the Enterprise's procedural blackout, recover her misappropriated property, and enjoin the ongoing constitutional deprivations that continue to inflict irreversible harm upon her and her minor child.

36. **Defendant PETER SAATJIAN ("Defendant Saatjian")** is an individual and an attorney licensed to practice law in the State of California (SBN 293662). Defendant Saatjian served as the primary Architect and controlling mind of the Enterprise. He knowingly and willfully weaponized the state judicial process as a tool for extortion and fee-churning, orchestrating a pattern of racketeering that resulted currently in direct and proximately caused damages to the Plaintiff exceeding $650,500.00. As the primary beneficiary of this scheme, Defendant Saatjian personally directed the extraction of over $250,000 in unconscionable legal fees, deliberately prolonging the litigation through manufactured crises and "ghost motions" to ensure his continued financial enrichment. Through his coordinated efforts, he oversaw the systematic seizure of the community estate, the destruction of Plaintiff's executive career, and the permanent deprivation of the marital estate's value. Defendant Saatjian utilized his professional license as a shield to facilitate these illicit acts, maintaining absolute control over the litigation pipeline to ensure that no evidence of the Enterprise's fraud—or his own role in it

-56-

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

—reached the tribunal. By affirmatively choosing to churn fees over the resolution of the matter, Defendant Saatjian turned the court into an unwitting instrument of his financial gain, personally engineering the Plaintiff's absolute financial ruin to finalize the Enterprise's unconstitutional seizure of her property and civil rights.

36a. Representative predicate acts orchestrated by Defendant Saatjian include, but are not limited to: (i) the January 9, 2025, submission of perjurious tax disclosures to the court to manipulate support obligations; (ii) the systematic transmission of extortionate threats via email and correspondence to coerce Plaintiff into abandoning legal claims (**Exhibit 3**); (iii) the intentional filing of frivolous and 'ghost' motions designed solely to trigger mandatory, unconscionable fee assessments against the community estate; (iv) the orchestration of the 'Vexatious Litigant' gag mechanism to obstruct justice and insulate the Enterprise from forensic discovery; **(v) the October 2024 unauthorized wire transfer of $150,000, executed in furtherance of the Enterprise's asset-siphoning scheme; (vi) the procurement of void bifurcation and subsequent void orders to artificially fracture the marital estate and bypass statutory protections; (vii) the forgery of the June 25, 2025, Findings and Order After Hearing (FOAH) to fraudulently extract $115,000 from community funds, an act of extrinsic fraud specifically identified as extortionate in the Edward J. McIntyre Expert Declaration (Exhibit 3); (viii) the surreptitious submission of false orders and the intentional circumvention of California Rules of Court, Rule 5.125, by**

-57-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

**filing documents with the tribunal without notice or service to the Plaintiff, thereby depriving her of the right to contest orders that fundamentally altered her property rights;** (ix) the October 15, 2024, filing of 'ghost' discovery declarations and motions that were intentionally withheld from service upon the Plaintiff, preventing her from opposing filings that facilitated the Enterprise's financial siphoning; and (x) the systematic obstruction of discovery to prevent the Plaintiff from uncovering the Enterprise's embezzlement and the laundering of marital assets.

36b. A granular, forensic audit of Defendant Saatjian's racketeering acts—including every wire fraud transmission, the specific 'ghost motions' used to churn fees, and the forensic calculation of the resulting financial loss—**is incorporated by reference into Section II, III and Exhibits 1&2, the Edward J. McIntyre Expert Declaration (Exhibit 3), the Verified Chronology of State-Created Danger (Exhibit 2), and the Master Forensic Matrix of Constitutional Deprivations and Extrinsic Fraud attached as the concluding supplement to this Verified Complaint.**

37. **Defendant PS LAW, APC ("PS Law")** is a California professional corporation and is the law firm Defendant Saatjian formed on or around August/September 2025. Defendant Saatjian is the principal of this firm.

-58-

**38. Defendant FARZAD & OCHOA FAMILY LAW ATTORNEYS, LLP**

("Farzad & Ochoa") is a limited liability partnership. Defendant Saatjian was an employee and/or agent of Farzad & Ochoa from the inception of his involvement in the underlying family case until approximately August 2025. All actions taken by Defendant Saatjian prior to August 2025—including the predicate acts of wire fraud, extrinsic fraud, discovery abuse, the $150,000 unauthorized wire transfer, and the submission of forged and false orders—were taken in the course and scope of his employment with Farzad & Ochoa, rendering the firm vicariously liable. Defendant Farzad & Ochoa directly profited from the Enterprise's racketeering activity. During Defendant Saatjian's tenure, he orchestrated the unauthorized $150,000 wire transfer and submitted the void bifurcation and the forged June 24, 2025 FOAH. The illicitly extracted funds were utilized to unjustly enrich Farzad & Ochoa, which continues to hold over $50,000 in manufactured debt owed by the non-party client—debt engineered entirely through the Enterprise's extortionate fee-churning and asset freeze.

**39. Defendant DAVID SCHULMAN ("Defendant Schulman")** is an individual and attorney licensed to practice law in the State of California, formerly representing Plaintiff. Defendant Schulman served as a primary, intentional architect and co-conspirator within the Enterprise, acting in direct collusion with Defendant Saatjian to execute a systematic pattern of procedural and financial sabotage. Specifically, Defendant Schulman actively facilitated the Enterprise's

-59-

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

objective through a systematic pattern of procedural and financial sabotage, including the unauthorized $150,000 transfer and the concealment of the October 15, 2024, "Ghost Motion." While Defendant Schulman's professional negligence is the subject of a pending state-court malpractice action (*Lancranjan v. Schulman*, Case No. 25CU054361C), his conduct in this federal action is pleaded as an integral component of the coordinated racketeering conspiracy directed by Defendant Saatjian to deprive Plaintiff of her estate and civil rights.

39a. The following summary outlines the primary acts of this racketeering Enterprise; a comprehensive, granular audit of these complex acts—including every wire fraud transmission and resulting financial loss—is incorporated by reference into the **Section II, II, the Chronology of Predicate Acts (Exhibit 1) and the Verified Chronology of State-Created Danger (Exhibit 2) and the Master Forensic Matrix of Constitutional Deprivations and Extrinsic Fraud attached as the concluding supplement to this Verified Complaint.** The Enterprise's scheme is a sophisticated, ongoing racketeering operation designed to defraud the Plaintiff while the marital estate is held in a state-engineered lock. The intentional first step of this scheme was the unauthorized $150,000 transfer (Exhibit 6 A&B), which was executed specifically to fund the abusers legal war chest while stripping the Plaintiff of all financial ability to retain counsel or defend her rights. Defendant Schulman actively facilitated the Enterprise's objective through the following predicate acts and racketeering activity:

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

- **Intentional Collusion & Quid Pro Quo:** Defendant Schulman engaged in a corrupt *quid pro quo* arrangement with Defendant Saatjian, executing the unauthorized $150,000 transfer of community capital in exchange for abandoning his fiduciary duties. He intentionally concealed the Enterprise's discovery fraud and the "Ghost Motion" to ensure Plaintiff remained defenseless. On or around October 2 2024, Defendant Schulman intentionally took his *ex parte* application to freeze the marital estate off-calendar in direct exchange for the unauthorized $150,000 transfer to his firm, effectively abandoning the Plaintiff's financial protections to facilitate his own fee extraction (Exhibit 6, Attachment D).

- **Active Suppression of Evidence:** Defendant Schulman's failure to propound discovery and his refusal to protect the Plaintiff's attorney-client privilege were not negligent oversights, but intentional acts of sabotage designed to protect the Enterprise's financial pipeline. He deliberately suppressed evidence of his own involvement and the Enterprise's forgery of judicial instruments to prevent a truthful accounting before the tribunal (Exhibit 10).

- **Sabotage of the Marital Estate:** Defendant Schulman conspired to artificially inflate litigation costs and deplete the marital estate through fee-churning and the tactical abandonment of his client, leaving the Plaintiff

-61-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

financially "stranded" and structurally incapable of defending her property rights.

- **Bifurcation Sabotage:** Deliberately failed to demand mandatory financial disclosures before the bifurcation of marital status, knowingly locking the Plaintiff out of a million-dollar estate and ensuring she remained structurally dependent on the Enterprise.

- **Discovery Sabotage:** Intentionally failed to propound necessary discovery despite receiving evidence from the Plaintiff, and conversely failed to object to the Enterprise's predatory discovery motions, leaving the Plaintiff defenseless (Exhibit 10).

- **Active Concealment:** Deliberately withheld from the Plaintiff the existence of the October 15, 2024, "Ghost Motion," and conspired with Defendant Saatjian to unilaterally alter the Plaintiff's move-away hearing parameters to a two-day schedule—all without Plaintiff's knowledge or consent—to ensure the Enterprise could churn fees under the guise of an expedited trial.

- **Procedural Sabotage & Fraud Upon the Court:** Defendant Schulman affirmatively participated in the Enterprise's "Ghost Motion" strategy, concealing the existence of the October 15, 2024, discovery motion from the Plaintiff to manufacture a false default. Furthermore, he conspired with

-62-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

Defendant Saatjian to unilaterally alter the Plaintiff's move-away hearing parameters to a two-day "trial by ambush," all without Plaintiff's knowledge or consent, to ensure the Enterprise could churn unconscionable fees.

- **Refusal to Meet and Confer:** Repeatedly refused to engage in mandatory meet-and-confer processes, which directly triggered the imposition of sanctions and procedural losses against the Plaintiff.

- **Perjury and Fraud Upon the Court:** Intentionally misrepresented discovery compliance to the state tribunal, as recently validated by the Superior Court's July 6, 2026, finding of a "meritorious dispute." (Exhibit 10)

- **Unauthorized Extractions:** Executed the unauthorized $150,000 transfer of community capital, a predicate act of wire fraud that directly facilitated the Enterprise's fee-churning pipeline. By these actions, Defendant Schulman ensured the systematic destruction of Plaintiff's credibility, the accrual of unconscionable fees, and the permanent depletion of the marital estate, all while suppressing evidence of his own involvement to protect the Enterprise.

- **Ongoing Obstruction via Gag Order:** Defendant Schulman continues to facilitate the Enterprise by leveraging the unconstitutional "Vexatious Litigant" (VL) prior restraint to obstruct Plaintiff's efforts to hold him

-63-

accountable for his malpractice and active fraud, thereby continuing to protect himself and the Enterprise from exposure (Exhibit 10).

- **The $150,000 transfer stipulated on October 4, 2024, constitutes the foundational "Original Sin" of the Enterprise's racketeering scheme and serves as clear evidence of the criminal conspiracy between Defendants Schulman and Saatjian.** This was not a routine client transfer, but an intentional, pre-emptive strike by the Defendants to strip the Plaintiff of all liquid community assets at the precise moment she required them to secure forensic experts and independent counsel. The Stipulation and Order (Exhibit 6 **Attachment B)** memorializes a corrupt *quid pro quo* negotiated entirely over the Plaintiff's head, where Defendant Schulman agreed to take his *ex parte* motion to freeze the marital estate off-calendar in direct exchange for the transfer of $150,000 into his own captive trust account. By establishing this "fee-extraction pipeline," Defendants Schulman and Saatjian weaponized the Plaintiff's own capital to fund her continued legal ambush, effectively paying the "Enforcer" to ignore the Enterprise's discovery fraud, suppress the October 15, 2024, "Ghost Motion," and facilitate her eventual abandonment. This transaction constitutes both **wire fraud**—as the transfer was executed via interstate banking channels to facilitate the Enterprise's extortionate goals—and a **predicate act of racketeering**, proving that Schulman's representation was a sham designed

-64-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

to convert community property into a captive fund controlled by the Enterprise to ensure the Plaintiff's permanent financial destruction and legal defenselessness. By these actions, Defendant Schulman acted as a willing participant in a criminal racketeering conspiracy, systematically destroying the Plaintiff's credibility while suppressing evidence of his own involvement to protect the Enterprise from judicial scrutiny.

40. Defendant MOORE SCHULMAN & MOORE, APC is a professional corporation where Defendant Schulman served as a principal during the commission of the predicate racketeering acts.

**41. Defendant MATT BLADO ("Defendant Blado")** is an individual and attorney licensed to practice law in the State of California, formerly representing Plaintiff. Defendant Blado served as the Enterprise's primary Enforcer, tasked with the active suppression of evidence and the structural obstruction of justice. While Defendant Blado's professional negligence is the subject of a pending state-court malpractice action (**Lancranjan v. Blado, Case No. 25CU055956C**), this federal action is distinct and independent. The state-court malpractice matter is currently stayed by Superior Court Order at Plaintiff 's request on May 22 2025—pursuant to the doctrine in *Adams v. Paul*—pending the outcome of the ongoing appellate review in **Case No. D086958**, his actions here are pleaded as an instrumental role within the larger, coordinated racketeering enterprise to suppress evidence, ratify

-65-

forgeries, and obstruct justice to facilitate the Enterprise's fee-extraction pipeline. Plaintiff expressly alleges that Defendant Blado's actions far transcend professional negligence; his conduct was intentional, deceitful, and calculated to facilitate a criminal racketeering enterprise. Defendant Blado actively inverted his fiduciary duty, utilizing his position as Plaintiff's counsel to suppress the very evidence he was retained to expose. By knowingly providing false information to the Plaintiff to prevent her attendance at critical hearings, ratifying forged instruments, and orchestrating his own abandonment on the eve of trial, Blado engaged in a pattern of deceitful conduct designed to protect the Enterprise's fee-extraction pipeline. This conduct constitutes a direct, intentional racketeering conspiracy with Defendants Saatjian and Schulman, and is distinct from the claims of professional negligence presently stayed in state court. Plaintiff brings this action for federal racketeering (RICO) and civil rights violations, which are distinct from, and independent of, the pending state-court malpractice action. Whereas the state malpractice action addresses the professional negligence of Defendant Blado, this federal action seeks remedy for his active participation as an 'Enforcer' within a coordinated racketeering Enterprise. As recognized by the San Diego Superior Court in its May 22, 2026, Minute Order staying the malpractice action, the underlying family law proceedings are deeply interconnected with the Defendants' fraudulent acts (Exhibit 9).

-66-

41a. This Court's intervention is required because the federal racketeering and civil rights violations alleged herein—specifically wire fraud, extortion, and the suppression of evidence to facilitate asset theft—exceed the scope of professional negligence and constitute independent federal crimes. His facilitation of the Enterprise included, but was not limited to:

- **Systemic Suppression of Discovery:** With full knowledge that the Plaintiff had provided him with comprehensive evidence of the Defendants' fraud and financial extractions, Defendant Blado intentionally suppressed this evidence, refusing to propound necessary discovery and failing to object to the Enterprise's predatory discovery motions, thereby leaving Plaintiff defenseless against the Enterprise's procedural ambushes.

- **Ratification of Forged Judicial Instruments:** Defendant Blado affirmatively ratified forged judicial instruments, including the forged Void Bifurcation Judgment and FOAHs used to siphon community assets, by failing to contest their authenticity and intentionally misleading the tribunal to protect the Enterprise's fee-extraction pipeline.

- **Obstruction of the Appellate Record:** Defendant Blado actively conspired to suppress the truth by refusing to inform the Plaintiff of court orders and discovery motions—most notably the October 15, 2024, "Ghost Motion"— and by intentionally failing to perfect the appellate record, thereby blinding

-67-

the tribunal and ensuring that no evidence of the underlying fraud or unauthorized $150,000 transfer could be adjudicated.

- **Betrayal of Purpose:** Plaintiff retained Defendant Blado specifically to expose the Enterprise's fraudulent $150,000 unauthorized transfer and the underlying discovery fraud. Instead of filing the necessary motions to set aside these void acts, Defendant Blado actively concealed the fraud from the tribunal, coerced Plaintiff into accepting blame for the Enterprise's own procedural failures, and pressured her to settle under terms that favored the Enterprise's fee-extraction pipeline.

- **Clandestine Procedural Sabotage:** On January 7, 2025, Defendant Blado intentionally and deceitfully attended a hearing regarding the Enterprise's discovery fraud without informing the Plaintiff, despite her explicit, prior requests for the hearing date and status. To ensure Plaintiff remained absent and unable to defend herself, Defendant Blado and his office affirmatively lied to her, misrepresenting the status of the hearing to prevent her attendance. At the hearing, Defendant Blado knowingly permitted the court to sanction the Plaintiff $3,500 for the Enterprise's own procedural misconduct, effectively sacrificing his client's interests to align with Defendants Saatjian and Schulman in furtherance of the Enterprise's objectives.

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ;
DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

- **Cover-Up of Disclosure Fraud:** When tasked with correcting the Enterprise's fraudulent "Final Declaration of Disclosure" and the void bifurcation of marital status, Defendant Blado intentionally orchestrated a "combined" disclosure process—merging Plaintiff's assets with those of the abuser—to deliberately obscure the Enterprise's prior disclosure fraud and maintain the Enterprise's control over the community estate.

- **Active Obstruction & Privilege Stripping:** Defendant Blado failed to propound necessary discovery, refused to oppose the Enterprise's predatory discovery motions, and intentionally failed to protect Plaintiff's attorney-client privilege. His refusal to set aside the void October 15, 2024, "Ghost Motion" ensured Plaintiff remained legally stranded, financially coerced, and procedurally defenseless.

- **Weaponizing Custody and Support:** Throughout his representation, Defendant Blado ratified the Enterprise's efforts to manipulate the Plaintiff's support and custodial status, ensuring she remained geographically trapped in San Diego and financially destitute, all while Defendant Saatjian engaged in overt extortion to churn legal fees.

- **Calculated Abandonment:** After systematically destroying the Plaintiff's credibility and facilitating the Enterprise's extraction of her final trial retainers, Defendant Blado abruptly abandoned the Plaintiff on the eve of

-69-

trial. This was not a professional withdrawal but a coordinated "Enforcer" tactic to leave the Plaintiff entirely without counsel, thereby finalizing the Enterprise's ability to seize the marital estate without opposition.

- **Coercion and Abandonment:** On the eve of critical evidentiary trials, and after having successfully extracted significant fees from the Plaintiff's remaining assets, Defendant Blado orchestrated a calculated abandonment. This abandonment was not a professional withdrawal but a coordinated racketeering tactic designed to leave the Plaintiff entirely without counsel or procedural standing, thereby ensuring the Enterprise could finalize its unconstitutional seizure of the community estate without opposition.

41b. Representative predicate acts orchestrated by Defendant Blado include, but are not limited to: (i) the intentional obstruction of the judicial record by failing to expose and contest the Enterprise's known fraudulent filings before the tribunal; (ii) the knowing ratification of the Enterprise's fraud through the acceptance of the October 29, 2024, service of process concerning previously unserved, 'ghost' discovery motions (from Oct 15 2024); (iii) the systematic suppression of evidence by failing to challenge Saatjian's submission of false, ex-parte orders, effectively allowing the Enterprise to circumvent the due process protections of California Rules of Court, Rule 5.125; (iv) the failure to contest the procurement and enforcement of void bifurcation orders and subsequent void judgments, despite the

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

clear legal basis to challenge these as unauthorized fractures of the marital estate; (v) the unauthorized representation of Plaintiff at the January 7, 2025, hearing—without Plaintiff's knowledge or approval—where Defendant Blado failed to move to set aside the void discovery motions as explicitly directed by the Plaintiff; (vi) the intentional failure to advocate for the Plaintiff's interests, effectively serving as a passive agent of the Enterprise by allowing Saatjian's predatory filings to proceed uncontested (at Nov 5 2024, Jan 7th and Jan 9th, Feb 4th and march 18n 2025); and (vii) the Jan 7&March 18, 2025, active cover-up of Enterprise racketeering activities, during which Defendant Blado knowingly misrepresented the state of the proceedings to the court to shield his co-conspirators from scrutiny.

A granular, forensic audit of Defendant Blado's racketeering acts—including his role in the 'administrative blackout' and the coordination of the Enterprise's fraudulent filings—is incorporated by reference into **Section II&III**, the **Causes of Action** , **Exhibit 1**, **Exhibit 2**, the **July 6, 2026, Superior Court Order (Exhibit 10)**, the **Master Forensic Matrix (Matrix A)**, and **Attachment B to the Exhibit 6 Forensic Analysis**. These documents establish that Defendant Blado was a critical node in the Enterprise's 'machine,' utilizing the state court as a tool for capital theft rather than legitimate legal advocacy. Like his co-conspirators, Defendant Blado's actions constitute a continuous pattern of racketeering activity, and he is jointly and severally liable for the resulting constitutional and financial damages sustained by the Plaintiff.

42. Defendant BICKFORD BLADO & BOTROS is a professional corporation where Defendant Blado served as a principal during the commission of the predicate racketeering acts.

43. **DOES 1 through 10**, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

44. **MASTER EVIDENTIARY MATRIX: RICO PREDICATE ACTS & CLAIMS/SUMMARY OF RACKETEERING ENTERPRISE & PREDICATE ACTS** To assist the Court in synthesizing the complex, coordinated nature of the Enterprise, the following matrix maps the Defendants' individual roles, the predicate acts committed in furtherance of the criminal scheme, and the evidentiary record supporting each claim. This summary demonstrates that the Enterprise operated as a singular, unified syndicate with a common purpose, rather than a collection of independent actors.

**MASTER EVIDENTIARY MATRIX: RICO PREDICATE ACTS & CLAIMS/SUMMARY OF RACKETEERING ENTERPRISE & PREDICATE ACTS**

-72-

*MASTER EVIDENTIARY MATRIX: RICO PREDICATE ACTS, CLAIMS & EXHIBIT INDEX*

| Predicate Act / Category | Description of Criminal Conduct & Modus Operandi | Defendants Involved | Supporting Exhibits & Attachments | Legal Statute / Basis |
|---|---|---|---|---|
| **Federal Wire Fraud** | Electronic transmission of unserved "ghost motions," perjured FL-180 disclosures, unauthorized wire transfers, and fabricated &forged FOAHs. | Saatjian, Schulman, Blado | Exs. 1, 5, 6 (A, B, D, E), 10, 14 | 18 U.S.C. § 1343 |
| **Hobbs Act Extortion** | Transmitting written threats of criminal (DA) prosecution and coercive threats of legal abandonment to force client capitulation and silence civil claims. | Saatjian, Schulman, Blado | Exs. 1, 2, 3, 4, 7 | 18 U.S.C. § 1951 |
| **Obstruction of Justice & Evidence Suppression** | Spoliation and withholding of client files (RPC 1.16), concealing unserved discovery, corrupting the trial record (no court reporters), and violating automatic appellate stays (CCP § 916). | Saatjian, Schulman, Blado | Exs. 1, 6C, 9, 10, 12, 13, 14, 15, 16, 17, 20 | 18 U.S.C. § 1503 |

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

| | | | | |
|---|---|---|---|---|
| **Obstruction of Appeals (Appellate Blockades & Phantom Dockets)** | Weaponizing unconstitutional "Vexatious Litigant" (VL) gag orders as de facto pre-filing filters, withholding judges' signatures on adverse orders to trigger wrongful appellate dismissals, and defying appellate stays to push "sham trials." | Saatjian, Schulman, Blado, Tribunal Actors | Exs. 1, 8, 9, 10, 20 (Attachments A–F) | 18 U.S.C. § 1503 & § 1962(c) |
| **Witness Tampering & Intimidation** | Public smear declarations and aggressive intimidation targeting forensic accountant Anna Addleman, alongside coercion of trial counsel (Ms. T. Healoha Lee). | Saatjian | Exs. 3, 12, 13 | 18 U.S.C. § 1512 |
| **Criminal Forgery & Perjury** | Direct physical forgery of Plaintiff's signature on May 15 and June 24, 2025 FOAHs to siphon $115k, alongside perjured tax and bifurcation declarations. | Saatjian, Blado, Schulman | Exs. 3, 5, 6 (Att. A), 10 | 18 U.S.C. § 1621 / Cal. Penal Code § 470 |

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

| | | | | |
|---|---|---|---|---|
| **Extrinsic Fraud & Scheme to Defraud** | Manufacturing default records, concealing unserved process (CRC 5.125), and executing "shadow representation" &ghostwriting court filings while claiming pro se status. | Saatjian, Schulman, Blado | Exs. 1, 5, 6, 8, 10, 19 | *Kougasian v. TMSL*, 359 F.3d 1136 |
| **Fee-Churning & Asset Siphoning Pipeline** | Engineered financial destitution, quid pro quo conversion of the community estate into an exclusive "captive fund," and deliberate inflation of litigation tracks. | Saatjian, Schulman, Blado | Exs. 1, 6 (B, D), 10, 12 | 18 U.S.C. § 1962(c) |
| **RICO Conspiracy** | Coordinated division of labor (Architect, Conduit, Enforcer) to commit predicate acts, conceal asset theft, launder funds through the tribunal, and protect co-conspirators from liability. | Saatjian, Schulman, Blado | Exs. 1 through 20 (Comprehensive Cross-Docket File) | 18 U.S.C. § 1962(d) |

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

## C. The Integrated Nature of the Enterprise & The Necessity of Federal Intervention

45. **MASTER ARCHITECTURE SUMMARY:** The Defendants did not act as independent professionals, but as an integrated, criminal syndicate—an 'Association-in-Fact' Enterprise under 18 U.S.C. § 1961(4). Their conduct was characterized by a mandatory, integrated unity, wherein the Enterprise's success was entirely contingent upon the specific, recurring function of each member: Saatjian served as the procedural Architect of subversion; Schulman acted as the engine of financial facilitation and administrative fraud; and Blado operated as the essential node of evidence suppression and obstruction. This distinction is critical for the Court: **the Defendants' roles were not incidental, but functional and interdependent. One could not succeed without the other's criminal contribution, rendering them collectively and individually liable for the resulting constitutional and financial ruin.** By design, this division of labor ensured that the state tribunal—the very forum intended to resolve these disputes—was transformed into a 'closed-loop' instrument for capital extraction. Consequently, this matter cannot be remediated through the fractured lens of state-level family law or malpractice litigation; it demands the holistic, federal oversight of this Court to dismantle the Enterprise and restore the rule of law.

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

**46. Structure of the Complaint (Roadmap):** To assist the Court in navigating the extensive factual and legal record of this multi-year racketeering enterprise, and to ensure strict adherence to the pleading requirements of FRCP 9(b), this Complaint is organized to demonstrate how Defendants have systematically laundered their fraud through the state tribunal:

- **I. Jurisdiction & Preemptive Defenses:** Establishing this Court's absolute authority to prevent the state court from being used as a "laundering" vehicle for the Enterprise's criminal acts.

- **II. The Enterprise:** Defining the 18 U.S.C. § 1961(4) "Association-in-Fact," its co-conspirators, and its modus operandi for systemic fee-churning and asset seizure.

- **III. Chronology of Racketeering & Evidentiary Foundation:** A narrative timeline detailing the escalation from procedural abuse to federal wire fraud and criminal extortion, supported by the **Master Forensic Matrix of Constitutional Deprivations and Extrinsic Fraud (Matrix A attached at the end of the Verified Complaint)**, incorporated herein as the concluding supplement to this Verified Complaint, and further evidenced by:

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

- **Exhibit 1 (The Money/RICO):** The mathematically precise chronology of predicate acts, including the $150,000/$115,000 extractions, cross-referenced with forensic tracing by **Anna Addleman (Forensic Accountant).**

- **Exhibit 2 (The Psychological Terror/IIED):** The chronology of constitutional deprivations, coercion, and engineered emotional distress.

- **Exhibit 3 (The Edward J. McIntyre Legal Ethics Declaration):** Formal proof of **extortion and acts of "moral turpitude"** committed by the Enterprise to defraud the Court.

- **Exhibit 12/13 (Witness Intimidation & Coercion):** Declarations from forensic accountant **Anna Addleman** and trial counsel **Ms. T. Healoha Lee**, detailing the Enterprise's systemic attempts to coerce counsel, suppress evidence, and intimidate witnesses to ensure their fraudulent orders remain unchallenged.

- **Other Exhibits/ Notice of Ongoing Evidentiary Development:** The evidentiary record presented with this Verified Complaint is necessarily limited by the current, ongoing constraints of litigating multiple parallel matters, including the related § 1983 constitutional litigation (Case no 26CV3765-JES-DEB). Plaintiff anticipates that extensive additional

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

evidence—including that which is currently withheld by Defendants or currently being developed in the § 1983 action—will be integrated into the record throughout the discovery process and presented in full at trial. The evidence from the § 1983 matter is inextricably linked to the Enterprise's pattern of racketeering and will be formally integrated into these proceedings as discovery progresses. **A complete, itemized Index of all supporting Exhibits—including documentary evidence of wire fraud and District Attorney communications—is provided immediately following the case caption at the end of this Verified Complaint.**

- **IV. Causes of Action:** The legal application of the facts to the Federal Civil RICO statutes and Supplemental State Civil Rights claims.

- **V. Master Litigation Matrix**

- **VI. Conclusion**: The Necessity of Federal Intervention

- **VII. Prayer for Relief:** The specific demands for Treble Damages, Punitive Damages, and Injunctive Relief.

- **VIII. Master Forensic Matrices (Matrix A and Rico Claims)**

- **IX. Verification and X. Exhibits**

-79-

## 46. CONCLUSION: THE NECESSITY OF FEDERAL INTERVENTION

• **The Necessity of Federal Intervention:** Plaintiff does not petition this Court to adjudicate the underlying family law matter. Rather, Plaintiff brings this action to dismantle a sophisticated **Association-in-Fact Enterprise**—comprised of Defendants Peter Saatjian, David Schulman, Matt Blado, and their respective firms—that has systematically subverted the adversarial process through extrinsic fraud, criminal forgery, and systemic extortion.

• **Evidence of Racketeering & Predicate Acts:** The Enterprise's pattern of racketeering is not based on conjecture; it is substantiated by a granular, verifiable evidentiary record, including the **Master Forensic Matrix (Matrix A)** and accompanying exhibits incorporated by reference into this Verified Complaint. Each of the Defendants' acts—from the unauthorized **$150,000 and $115,000 wire extractions (Exhibit 6, Attachment A&B)** and the **procurement of void bifurcation and subsequent void orders** to the **systematic forgery of Findings and Orders After Hearing (FOAHs)** **(Exhibit 6)**—constitutes a distinct predicate act of Federal Wire Fraud (18 U.S.C. § 1343) and Extortion (18 U.S.C. § 1951). These criminal predicate acts are further substantiated by the **extortionate threats documented in the Edward J. McIntyre Expert Declaration (Exhibit 3)** and the **systematic witness intimidation and coercion of trial counsel (Exhibits**

-80-

**12 and 13)**. Taken together, these actions demonstrate a continuous, coordinated pattern of racketeering activity designed to subvert the judicial process, extract capital, and permanently deprive the Plaintiff of her constitutional and property rights.. This pattern of criminal conduct is further validated by the **July 6, 2026, Superior Court finding of a "meritorious dispute"** (Exhibit 10) and the expert analysis of legal ethics prosecutor Edward J. McIntyre, who confirms the conduct constitutes **acts of moral turpitude and criminal extortion** (Exhibit 3).

- **The "Laundering" and Obstruction:** The Enterprise has actively utilized the state tribunal as an unwitting instrument to launder these criminal acts, weaponizing unconstitutional "Vexatious Litigant" (VL) gag orders to silence the Plaintiff and prevent her from exposing the theft of her estate. This strategy of systemic intimidation and witness tampering is explicitly corroborated by the declarations of **Forensic Accountant Anna Addleman** (Exhibit 12) and **Trial Counsel Ms. T. Healoha Lee** (Exhibit 13), detailing the coordinated efforts to suppress evidence, coerce counsel, and finalize the "laundering" of the Enterprise's fraudulent gains into unassailable state-court judgments.

- **Intertwined Federal Torts:** This action is intrinsically linked to the ongoing constitutional deprivation addressed in *Lancranjan v. Truitt et al.*

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

(Case No. 26-cv-03765-JES-DEB). While the § 1983 action targets the state-created dangers and constitutional torts inflicted upon the Plaintiff, this RICO action provides the forensic proof required to dismantle the private criminal infrastructure that catalyzed and profited from those constitutional harms. Federal intervention is the sole mechanism capable of halting this ongoing racketeering, restoring Plaintiff's civil liberties, and providing the mandatory trebling of damages for the concrete financial destruction proximately caused by the Defendants' organized criminal activity.

• **Roadmap to Full Disclosure:** The summary provided herein is intended as a high-level distillation. The granular, evidence-based breakdown of the Enterprise's modus operandi, the forensic tracing of the stolen capital, and the detailed chronology of each predicate act are set forth in **Section II&III** and further mapped in **Exhibit 1 (The Money/RICO Ledger)** and **Exhibit 2 (Constitutional Deprivations/IIED) and Matrix A**. Plaintiff invites the Court to review these exhibits in conjunction with the subsequent **Section IV (Causes of Action)**, which applies these facts to the specific federal and state statutes violated by the Enterprise.

47. Having established the existence of the Enterprise and the roadmap of this racketeering activity, Plaintiff now sets forth the legal and jurisdictional basis for this Court's intervention.

-82-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ;
DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

## I.   JURISDICTION, VENUE & PREEMPTIVE DEFENSES

**48. Subject Matter and Supplemental Jurisdiction:** This action is brought pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction), which grants this Court the absolute statutory obligation to adjudicate claims arising under the laws of the United States. Specifically, Plaintiff brings this civil action under 18 U.S.C. § 1964(c) (Civil RICO) to remedy a coordinated, systemic enterprise of criminal extortion, wire fraud, and the malicious weaponization of state judicial procedures. Furthermore, this Court maintains supplemental jurisdiction over Plaintiff's interconnected state civil rights and tort claims (including the Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1) pursuant to 28 U.S.C. § 1367, as they form part of the exact same case and controversy.

**49.** Venue is proper in the Southern District of California pursuant to 28 U.S.C. § 1391(b), as the events occurred here.

**50. Inapplicability of the Domestic Relations Exception:** Defendants will predictably attempt to dismiss this action by framing it as a family law dispute. This defense fails as a matter of law. Under *Ankenbrandt v. Richards*, 504 U.S. 689 (1992), the domestic relations exception does not apply to independent torts. Plaintiff is not asking this Federal Court to issue a divorce decree, calculate spousal support, or establish child custody. Plaintiff is suing independent, third-party private business entities and their principal attorneys for federal racketeering torts

-83-

to recover treble financial damages resulting directly from their systemic execution of **Federal Wire Fraud (18 U.S.C. § 1343)**, **Hobbs Act Extortion (18 U.S.C. § 1951)**, **Witness Intimidation and Tampering (18 U.S.C. § 1512)**, and **Criminal Forgery and Perjury** used to manufacture void judicial instruments. This pattern of racketeering activity was leveraged to facilitate the unlawful conversion of community assets, the systematic suppression of evidence, and the unconstitutional deprivation of Plaintiff's 1st and 14th Amendment rights, all of which constitute independent federal crimes and torts existing entirely outside the scope of any state-level litigation privilege or family law decree.

**51. Preemptive Invocation of the Extrinsic Fraud Exception:** This Court maintains absolute jurisdiction to hear these claims, and the *Rooker-Feldman* doctrine does not apply. Plaintiff formally invokes the Extrinsic Fraud exception as established by the Ninth Circuit in *Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004). Plaintiff is not alleging legal error by the state tribunal, nor appealing a state court judgment. Rather, the state tribunal's orders detailed herein were procured strictly via Defendants' intentional extrinsic fraud—specifically, the electronic transmission of intentionally unserved "ghost motions" and the submission of actively forged court orders that bypassed the adversarial process. This action is intrinsically intertwined with Plaintiff's related 42 U.S.C. § 1983 civil rights action (*Lancranjan v. Truitt et al.*, Case No. 26-cv-03765-JES-DEB). While that § 1983 action addresses the underlying constitutional

-84-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ;
DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

deprivations and state-created dangers facilitated by state actors, the instant action targets the private-actor "Association-in-Fact" Enterprise—comprised of Defendants Saatjian, Schulman, and Blado—who orchestrated the criminal racketeering activities that catalyzed and profited from those constitutional violations. The urgency of this federal intervention is underscored by the state trial court's current 'rush to judgment.' Notwithstanding the mandatory jurisdictional divestiture under CCP § 916 triggered by the pending appellate review in **Case No. D086958 (which encompasses all challenged orders)**, the state court continues to actively facilitate the Enterprise's objectives, setting a final trial for August 2026. This conduct is a transparent attempt to 'launder' void judgments and immunize the Enterprise before the Court of Appeal can correct the lower court's procedural nullities. Because the state tribunal remains structurally co-opted, is proceeding in flagrant violation of the mandatory appellate stay, and is fundamentally incapable of affording Plaintiff a fair adversarial hearing, the state proceedings have been rendered a procedural sham for the laundering of racketeering profits. Consequently, this RICO action is not merely a request for damages; it is the **necessary and exclusive mechanism** for Plaintiff to preserve her fundamental rights, halt the ongoing, irreparable constitutional and property damage, and prevent the Enterprise from successfully laundering its criminal fruits through the judicial process. Therefore, the resulting void orders offer Defendants no

-85-

jurisdictional shield, and this Court maintains absolute authority to independently adjudicate the Defendants' pattern of racketeering and award the requested relief.

**52. Inapplicability of Younger Abstention (The "Bad Faith" Exception):**

While state proceedings are technically ongoing, *Younger* abstention does not apply due to the recognized "Bad Faith" exception. The state tribunal has been entirely co-opted by the Enterprise's forged records and is being utilized in bad faith strictly to harass, gag, and financially destitute Plaintiff. This structural weaponization was explicitly demonstrated at the March 24, 2026 hearing. Despite arguments from Plaintiff's newly retained counsel (Ms. Lee) regarding the profound evidentiary complexities of the fraud, the court summarily denied Plaintiff statutory parity funds and essential limited discovery necessary to prepare for the August trial. The court issued this denial with the explicit knowledge that doing so would financially starve Plaintiff, particularly given the court was fully aware that Plaintiff's ex-spouse had already unilaterally extracted and spent over $250,000 from the community estate on the Defendant. By denying parity, the court effectively guaranteed Plaintiff would be stripped of her new attorney and forced to navigate a highly complex fraud trial *in pro per* against an Enterprise funded entirely by her stolen estate. This calculated denial of both financial resources and evidentiary access ensures Plaintiff remains structurally defenseless, proving the impending trial is not a legitimate forum for adjudication, but rather a bad-faith vehicle engineered by the Enterprise to finalize their extortion.

-86-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ;
DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

Structurally blinded by the Enterprise's fabricated case chronology, unserved filings, void orders and an unconstitutional "Vexatious Litigant" gag order, the tribunal was rendered an unwitting instrument of the Enterprise's financial starvation tactics. During this same proceeding, Plaintiff's trial counsel, Ms. T. Healoha Lee, formally documented on the court record that Defendant Saatjian was actively attempting to coerce her into abandoning Plaintiff's defense (Exhibit 13). The state proceedings are no longer a legitimate adversarial tribunal; they have been corrupted into a weapon of extortion, requiring immediate federal intervention.

53. The court's corruption reached a total structural collapse in the Summer of 2026. The Enterprise's playbook was on full display when Petitioner filed an *ex parte* application on May 22, 2026, to compel a vocational evaluation—a fabricated device used to artificially depress Plaintiff's earning capacity. This application was a calculated ambush, filed by Petitioner with the explicit knowledge that he had failed to comply with the mandatory statutory service and notice requirements of the Civil Discovery Act. When Plaintiff attempted to exercise her fundamental right to defend against these abuses, the state court entered a state of procedural lawlessness:

- **Administrative Blockade:** Between June 16 and June 18, 2026, the trial court and its clerk systematically refused to accept Plaintiff's defensive

-87-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

pleadings, citing a Vexatious Litigant (VL) order that is currently under active appeal (Case No. D086958). This administrative blockade, codified by Judge Laura H. Miller's June 17, 2026, denial of leave to file, effectively serves as a de facto gag order, stripping Plaintiff of her 14th Amendment right to Due Process and her right to be heard.

- **Systemic Preclusion:** On June 25, 2026, the court executed an "evidentiary blackout" by denying a court reporter, refusing to accept Plaintiff's defensive pleadings, and issuing an asymmetrical preclusion order. This order barred Plaintiff from presenting any evidentiary defense while granting the Enterprise unchecked authority to use any evidence it manufactures.

- **Jurisdictional Defiance:** The court has repeatedly advanced these trial tracks and discovery mandates despite the automatic appellate stay triggered by CCP § 916(a), acting in the clear absence of subject-matter jurisdiction. The court's repeated refusal to enforce statutory discovery notice requirements (CCP § 2032.220) while simultaneously penalizing Plaintiff for her inability to respond to those non-existent notices, proves the tribunal is actively facilitating the Enterprise's racketeering activity.

54. By denying parity and evidentiary access, the court guaranteed Plaintiff would be stripped of counsel and forced to navigate a complex fraud trial *in pro per* against an Enterprise funded entirely by her stolen community estate. This

-88-

calculated denial of resources, coupled with the court's earlier denial of parity—a denial issued with the explicit knowledge that Plaintiff's counsel had withdrawn and she faced imminent homelessness—demonstrates that the state trial forum is no longer a legitimate arbiter. It has been transformed into a bad-faith 'execution' vehicle engineered by the Enterprise to finalize their extortion. Structurally blinded by the Enterprise's fabricated chronology, unserved filings, and an unconstitutional 'Vexatious Litigant' gag order, the tribunal has been rendered an instrument of the Enterprise's financial starvation. Furthermore, Plaintiff's counsel, Ms. T. Healoha Lee, formally documented on the record that Defendant Saatjian actively attempted to coerce her into abandoning Plaintiff's defense (**Exhibit 13**). These **facts substantiate that *Younger* abstention is inapplicable here**; the state proceedings have devolved into a procedural sham. **Given that this RICO action and the parallel § 1983 civil rights action (Lancranjan v. Truitt et al., Case No. 26-cv-03765-JES-DEB) target a systemic pattern of bad-faith conduct that transcends any individual family law dispute, the 'Bad Faith' and 'Irreparable Harm' exceptions are satisfied. Federal intervention is not merely appropriate, but constitutionally required to halt this ongoing racketeering, prevent the permanent laundering of stolen assets through a corrupted judicial process, and provide the comprehensive relief that the state court— through its own documented bias and procedural subversion—has proven itself unwilling and unable to grant.**

-89-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ;
DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

**55. Inapplicability of the Anti-Injunction Act:** Plaintiff seeks monetary Treble Damages directly from the private assets of Defendants for independent federal torts. Because Plaintiff is targeting the Defendants' private assets under the civil RICO statute for their own criminal acts, the Anti-Injunction Act (28 U.S.C. § 2283) does not bar this Court from providing full compensatory relief. Furthermore, while the California Court of Appeal (Case No. D086958) has explicitly granted Plaintiff permission to appeal the void state orders on the merits, the state appellate court lacks statutory jurisdiction to prosecute or award treble damages for Federal RICO Extortion and Wire Fraud. Therefore, this District Court is the exclusive venue capable of providing full relief.

**56. Collateral Estoppel:** The Superior Court of California, in Case No. 25CU054361C, has already performed essential fact-finding and concluded, via its July 6, 2026, Minute Order (Exhibit 10), that there is a "meritorious dispute" regarding the very financial extractions and document forgery that form the basis of this federal action. The state court has effectively stripped Defendants of the argument that Plaintiff's claims of fraud are frivolous, vexatious, or unsupported. Under the doctrine of collateral estoppel, Defendants are barred from re-litigating the factual existence of this "meritorious dispute" before this Court.

**57. Preclusion of Defense Arguments Regarding Enterprise Liability and Pattern of Racketeering:**

-90-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

- **Rejection of "Silo" Defense:** Defendants are barred from claiming their conduct was isolated or limited to individual fiduciaries (e.g., Schulman). The Superior Court of California, in Case No. 25CU054361C, via its July 6, 2026, Minute Order (Exhibit 10), performed essential fact-finding that established a "meritorious dispute" regarding the core financial extractions and document forgeries. This finding conclusively confirms that these acts were not isolated "client disputes," but systemic, coordinated extractions. Under the doctrine of **collateral estoppel** (issue preclusion), Defendants are barred from re-litigating the factual existence of this "meritorious dispute."

- **Unified Enterprise Liability:** Furthermore, the defense that these are "state-specific" family law issues is legally deficient. Under 18 U.S.C. § 1962(c), an Enterprise does not need to be a formal business entity; it is defined by a "common purpose" and a "continuing unit" of actors—in this case, Saatjian, Schulman, and Blado—who utilized state judicial procedures to facilitate federal wire fraud and extortion. Because the state court has already validated the underlying fraud (Exhibit 10), Defendants are estopped from arguing that these predicate acts were legitimate legal maneuvers.

- **Independent Federal Injury:** The Defendants' actions constitute **independent predicate acts** of federal racketeering that exist entirely outside the scope of any state court family law decree. These acts—wire

-91-

fraud, forgery, and extortion—are not "state-specific" issues; they are independent federal crimes that proximately caused distinct financial injuries to Plaintiff's property and business interests. Defendants cannot hide behind the "family law" label to immunize their involvement in a multi-party racketeering syndicate designed to strip Plaintiff of her civil rights and convert her marital estate into a churned fee-extraction pipeline.

**58. Proximity and Causation:** Each Defendant's conduct—whether through the active siphoning of assets (Schulman), the fabrication of judicial instruments (Saatjian), or the systemic suppression of the appellate record (Blado)—constitutes a 'but-for' cause of the Plaintiff's financial and professional ruin. The Enterprise functioned as a singular unit where the success of one Defendant's racketeering act was contingent upon the silence and facilitation of the others.

**59. Related Case Status:** Plaintiff notes that this action is related to the matter of *Lancranjan v. Truitt et al.*, Case No. 26-cv-03765-JES-DEB, currently pending before this Court. While that action addresses the unconstitutional deprivation of due process by state actors, the instant action addresses the distinct racketeering and financial torts committed by private actors—Defendants Saatjian, Schulman, and Blado—in executing the underlying scheme. Plaintiff acknowledges the factual overlap in the underlying narrative; however, the legal theories are distinct: while the § 1983 action addresses the unconstitutional deprivation of due process by state actors and the resulting 'state-created danger,' the instant action targets the distinct,

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

private-actor 'Association-in-Fact' Enterprise—Defendants Saatjian, Schulman, and Blado—who orchestrated the independent racketeering activity, wire fraud, and extortionate schemes. This action provides the essential forensic evidence of the private criminal infrastructure that catalyzed and profited from the constitutional harms at issue in the related case. Consequently, the resolution of both matters remains critical to providing the Plaintiff full redress for the integrated and systemic injuries sustained.

**60. Independence from Pending State Malpractice Actions:** Plaintiff brings this action for federal racketeering (RICO) and civil rights violations, which are distinct from, and independent of, the pending state-court malpractice actions (*Lancranjan v. Blado*, Case No. 25CU055956C; and *Lancranjan v. Schulman*, Case No. 25CU054361C). Whereas these state malpractice actions address the professional negligence and fiduciary breaches of Defendants Blado and Schulman, this federal action seeks remedy for their active participation as instrumental members of a coordinated racketeering Enterprise. As recognized by the San Diego Superior Court in its May 22, 2026, Minute Order staying the malpractice action against Defendant Blado, the underlying family law proceedings are deeply interconnected with the Defendants' fraudulent acts. Furthermore, this Court's intervention is specifically supported by the Superior Court's July 6, 2026, Minute Order in Case No. 25CU054361C (Exhibit 10), which judicially acknowledged a "meritorious dispute" regarding the very financial

-93-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

extractions and document forgery that form the basis of this federal RICO action. This Court's intervention is required because the federal racketeering and civil rights violations alleged herein—specifically wire fraud, extortion, and the suppression of evidence to facilitate asset theft—exceed the scope of state-law professional negligence and constitute independent federal crimes.

**61. Inapplicability of the Litigation Privilege (*Flatley v. Mauro*):** Defendants will attempt to shield their extortionate conduct under California's litigation privilege (Cal. Civ. Code § 47). This defense fails entirely as previously stated in Introduction Section. As established by the California Supreme Court in *Flatley v. Mauro*, 39 Cal.4th 299 (2006), when an attorney transmits threats of criminal prosecution to gain an advantage in a civil dispute, the conduct constitutes criminal extortion and is strictly exempt from all litigation privileges. **This exception applies with equal force to Defendants Schulman and Blado.** While Defendant Saatjian initiated the extortionate threats, Schulman and Blado are not passive observers; they are active, knowing participants in the Enterprise. By affirmatively ratifying Saatjian's extortionate tactics, utilizing forged documents to secure court orders, and suppressing exculpatory evidence to perpetuate the Enterprise's financial extraction, Schulman and Blado have abandoned their professional roles. As verified in the attached executed declaration of legal ethics expert Edward J. McIntyre (Exhibit 3), Defendant Saatjian's written threats of District Attorney

-94-

prosecution explicitly violate Rule of Professional Conduct 3.10(a) and squarely trigger the *Flatley* extortion exception. Furthermore, Mr. McIntyre categorizes the Enterprise's/Saatjian's fabrication of court documents as acts of "Moral Turpitude," confirming these are non-communicative, illegal acts of extrinsic fraud falling completely outside the protection of any privilege. Defendants Schulman and Blado cannot shield their own participation in this moral turpitude behind a privilege designed to protect legitimate legal advocacy. Because their conduct—including the knowing suppression of evidence and the adoption of void, fraudulent orders—constitutes non-communicative, illegal acts of extrinsic fraud, they remain fully liable for their individual and collective roles in the racketeering scheme. **The litigation privilege is a shield for the practice of law; it is not a cloak for the operation of a criminal syndicate.**

**62. Conclusion of Jurisdictional Authority:** By affirmatively pleading documented acts of extrinsic wire fraud, criminal forgery, and federal extortion, Plaintiff has successfully pierced every anticipated procedural shield and state-level immunity. Defendants cannot utilize equitable doctrines of abstention or state litigation privileges to immunize ongoing federal racketeering crimes. Because the family state tribunal has been co-opted into an unwitting instrument of the Enterprise, and because state courts lack the statutory authority to award Treble Damages under 18 U.S.C. § 1964(c), this United States District Court possesses the undeniable, exclusive, and immediate Federal Question jurisdiction (28 U.S.C.

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

§ 1331) to adjudicate these independent federal torts and halt the ongoing deprivation of Plaintiff's constitutional rights.

- **The Racketeering Playbook & Predicate Acts:** This action targets a coordinated "Association-in-Fact" Enterprise whose criminal conduct is substantiated by a comprehensive evidentiary record:

  - **Extortion, Witness Intimidation & Coercion:** The Enterprise utilized **Hobbs Act Extortion (18 U.S.C. § 1951)** to terrorize the Plaintiff and coerce her counsel, Ms. T. Healoha Lee, into abandoning the defense. This campaign of intimidation was formally evaluated by ethics expert Edward J. McIntyre, who confirms these acts constitute **criminal extortion and "moral turpitude"** (Exhibit 3, 13).

  - **Procedural Fraud & Forgery:** The Enterprise systematically weaponized the state court through the procurement of **void Bifurcation Judgments** and **forged Findings and Orders After Hearing (FOAH)**. These fraudulent instruments were engineered to "lock out" the Plaintiff from her multi-million-dollar marital estate and rights, effectively stripping her of the resources necessary to fund a legal defense (Exhibit 1, 6).

  - **Obstruction, Suppression & Financial Strangulation:** To ensure the fraud remained "laundered," the Enterprise intimidated forensic accountant

-96-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

Anna Addleman, suppressing evidence of unauthorized transfers and forcing a "procedural blackout" (Exhibit 12). This was coupled with systemic **custodial abuse, lease terminations, and financial strangulation**—a coordinated pattern of terror designed to induce Plaintiff's total collapse.

- **Justification for RICO & Cause of Action:** The Enterprise's function was asymmetrical financial extraction, operating through a sequential playbook of criminal escalation. The scheme began with Defendant Schulman, who exploited his fiduciary position to engineer the unauthorized $150,000 off-record transfer of community capital. This transfer was facilitated by a corrupt quid pro quo: Schulman intentionally took his own *ex parte* application to freeze the marital estate off-calendar in direct exchange for the $150,000 transfer into his own trust account, effectively abandoning the Plaintiff's financial protections to create a "captive fund" that bankrolled the Enterprise's litigation tactics (**See Section II, Section III, Section IV, Count II; Section VIII-Matrix A** and **Exhibit 6, Attachments B & D**).

- When the Plaintiff unexpectedly retained new counsel and forensic experts to expose this underlying fraud, **the Enterprise transitioned from financial extraction to active suppression and systemic obstruction.** Defendant Blado entered the scheme specifically to conceal the Enterprise's criminal

-97-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ;
DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

footprint, actively suppressing evidence to create a "procedural blackout" (**See Section II, Section III,  Count II; Section VIII, Exhibit 6, Attachment C; Exhibit 12&13**).

- As the Plaintiff brought credible experts before the tribunal, the Enterprise escalated to coercive intimidation and extortionate tactics, purposefully dismantling the Plaintiff's defense, sabotaging her relationship with counsel, and weaponizing the court's machinery to destroy her credibility. This was not a passive legal strategy; it was an active, coordinated campaign to influence the Court through the submission of forged instruments, perjured declarations, and systemic procedural fraud designed to launder the Enterprise's extractions into "final" state court orders (**See Section II, Section III,  Counts I, IV, V, & VI; Exhibit 3; Exhibit 6, Attachment A; Exhibit 7; Exhibit 12&13, SECTION VIII/MatrixA**).

- These are not mere 'family law' disputes; they are independent federal torts. Because these acts—**specifically the federal wire fraud, the procurement of void orders and fraudulent bifurcations, custodial threats, and coordinated financial sabotage**—occurred entirely outside the scope of any lawful litigation and were specifically designed to defraud both the tribunal and the Plaintiff, they provide the requisite basis for Civil RICO liability under 18 U.S.C. § 1962 (See Sections I–III; Counts I & II; SECTION VIII,

-98-

Exhibits 1, 2, 3, 5, 10–13, and Matrix A). This Court's intervention is the only mechanism capable of halting this racketeering syndicate and providing the mandatory trebling of damages for the ongoing, irreparable harm caused by the Defendants' organized criminal conduct (**See Section V; Section VI, Prayer for Relief).**

63. **Summary of Jurisdictional & Legal Defenses:** The foregoing matrix serves as a summary of the threshold legal defenses and jurisdictional pillars supporting this federal action. Each challenge raised by the Defendants—ranging from assertions of domestic relations immunity to claims of state-court privilege— is explicitly neutralized by established federal precedent and the unique forensic nature of the Enterprise's criminal conduct. By demonstrating that this action seeks redress for independent federal torts (RICO, Wire Fraud, and Extortion) that are inextricably linked to a documented pattern of "bad faith" and extrinsic fraud, Plaintiff has satisfied the burden for federal intervention. This Court is not being asked to sit in review of state judicial errors, but rather to adjudicate a multi-party racketeering syndicate whose criminal operations have rendered the state tribunal a null and void forum for justice. Consequently, these jurisdictional foundations establish that this Court possesses the mandatory authority to halt the Enterprise's ongoing operations and prevent the further irreparable destruction of Plaintiff's constitutional and property rights.

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

# JURISDICTIONAL & LEGAL DEFENSE MATRIX

| Legal Challenge | Legal Theory | Primary Legal Authority | Key Evidence / Exhibits | Complaint Section |
|---|---|---|---|---|
| **Jurisdiction** | Federal Question & Supplemental Jurisdiction | 28 U.S.C. §§ 1331, 1367; 18 U.S.C. § 1964(c) | Verified Complaint; Master Forensic Matrix A | Section I & Section VIII (Appendix) |
| **Domestic Relations Exception** | Independent Tort Doctrine (No Spousal/Support Calculation) | *Ankenbrandt v. Richards*, 504 U.S. 689 (1992) | Exhibits 1, 6, 12, Master Forensic Matrix A | Section I, Section VIII (Appendix), Counts I & II |
| **Rooker-Feldman & Younger Abstention** | Extrinsic Fraud Exception & "Bad Faith" / Irreparable Harm Exceptions | *Kougasian v. TMSL, Inc.*, 359 F.3d 1136; *Younger v. Harris* (Bad Faith exception) | Exhibits 5, 6, 8, 9, 10, 12, 13, 20 | Section I, Section III, Section VIII (Appendix) |
| **Appellate Stay Violation (Ultra Vires Trials)** | Mandatory Statutory Divestiture of Subject Matter Jurisdiction | Cal. Code Civ. Proc. § 916(a); *Varian Medical Systems, Inc. v. Delfino*, 35 Cal.4th 180 (2005) | Exhibits 8, 9 (COA Review Grants), 20 (Administrative Blockades & Rogue Trials) | Section I, Section III, Section VIII (Appendix) |

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

| Litigation Privilege | Extortion, Criminal Forgery, & Moral Turpitude Exception | *Flatley v. Mauro*, 39 Cal.4th 299 (2006); Cal. Rules of Prof. Conduct Rule 3.10(a) | Exhibits 3 (McIntyre Ethics Decl.), 4 (DA Notice), 6 (Forgeries), 7 (Extortionate Emails), 12, 13 | Section I, Section III, Section VIII (Appendix), Counts I–VI |
|---|---|---|---|---|
| Collateral Estoppel / Issue Preclusion | State Court Binding Fact-Finding ("Meritorious Dispute") | Issue Preclusion Doctrines; *Paul v. Adam*, 32 Cal.App.4th 1566 (1995) | Exhibit 10 (July 6, 2026 Minute Order in Case 25CU054361 C), Exhibit 14 | Section I, Section II, Section VIII (Appendix) |
| Anti-Injunction Act | Private Asset/ Tort Exception & Independent Federal Civil RICO Damages | 28 U.S.C. § 2283; 18 U.S.C. § 1964(c) | Exhibits 1, 6, 10, Section VI & VII (Prayer for Relief) | Section I, Section IV–VII, Section VIII (Appendix) |

-101-

**First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET**

# PREEMPTIVE ANTI-DISCRETION & IMMUNITY DEFEAT MATRIX

| Anticipated Defense Deflection | Federal Legal Rule / Precedent | Why "Trial Court Discretion" Fails Here | Supporting Exhibits |
|---|---|---|---|
| "This is just a family law dispute / domestic relations matter." | *Ankenbrandt v. Richards*, 504 U.S. 689 (1992) | This is an independent civil RICO action targeting **private-actor attorneys** for federal crimes (wire fraud, extortion, embezzlement), not a domestic support calculation. | Verified Complaint, Section I, VIII; Exhibits 1, 6 |
| "The attorneys were just exercising standard litigation discretion/ advocacy." | *Reves v. Ernst & Young*, 507 U.S. 170; *Flatley v. Mauro*, 39 Cal.4th 299 | Discretion never covers felonies. Extortion, forgery (June 24, 2025 FOAH), and wire fraud are crimes, not "zealous advocacy." | Exhibits 3, 6 (Att. A), 7, 12, 13 |
| "The state judge ruled on these matters, so federal review is barred." | *Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004) | Rooker-Feldman does not bar independent tort suits when state orders are procured via extrinsic fraud, forgery, and perjury. | Exhibits 5, 6, 10 |
| "The attorneys are protected by the litigation privilege." | Cal. Civ. Code § 47; *Flatley v. Mauro*, 39 Cal.4th 299 | Criminal threats of District Attorney prosecution, non-communicative extrinsic fraud, and **unlawful witness and counsel intimidation** (coercing forensic experts and trial counsel to abandon the defense) are strictly exempt from all state litigation privileges. | **Exhibit 3** (McIntyre Decl.); **Exhibit 12** (Addleman Decl.); **Exhibit 13** (Lee Decl.) |
| "Plaintiff's claims are meritless and vexatious." | Collateral Estoppel; State Court Fact-Finding | The Superior Court already entered a binding judicial finding of a **"meritorious dispute"** regarding these exact extractions. | **Exhibit 10** (July 6, 2026 Minute Order) |

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

## II. THE ENTERPRISE & THE WEAPONIZATION OF THE TRIBUNAL –

**The RICO Enterprise (18 U.S.C. § 1961(4))**: At all times relevant to this Complaint, the Defendants managed, directed, and participated in an "Association-in-Fact" Enterprise within the meaning of 18 U.S.C. § 1961(4). Acting in concert, Defendants Saatjian, Schulman, and Blado systematically subverted the state judicial forum to facilitate the unlawful conversion of community assets into illicit fee revenue.

63. **A. The Association-in-Fact Enterprise (18 U.S.C. § 1961(4))**: At all times relevant to this action, **Defendants Peter Saatjian, David Schulman, and Matt Blado** (collectively, the "Enterprise Defendants") functioned as an "Association-in-Fact" Enterprise within the meaning of 18 U.S.C. § 1961(4). This ongoing organization operated as a continuing, organized unit defined by a specific, calculated division of labor, operating entirely outside the bounds of lawful adversarial advocacy to achieve the criminal objective of capital theft. In this structure:

- **Defendant Peter Saatjian** served as the legal architect, managing the illicit litigation strategy and orchestrating the filing of perjured and fraudulent instruments;

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

- **Defendant David Schulman** operated as the initial financial facilitator, utilizing his position as Plaintiff's counsel to create procedural 'emergencies' and secure unauthorized asset transfers; and

- **Defendant Matt Blado** served as the concealer, succeeding Schulman to suppress evidence, obstruct appellate review, and finalize the structural lockout of the Plaintiff.

- Together, the Enterprise Defendants shared a common purpose: to paralyze the Plaintiff, convert community property into 'fee-churning' revenue, and insulate their criminal profit-sharing from federal oversight.

64. The coordination between Defendants was characterized by a synchronized 'quid pro quo' that utilized the judicial process as an instrument of extortion:

- **The Financial Catalyst (Schulman):** By unilaterally transferring $150,000 of community capital into his firm's trust account (**Exhibit 6, Attachment B**), Schulman created the 'captive fund' that stripped the Plaintiff of the liquidity required to mount a defense.

- **The Procedural 'Blind-Spot' (Schulman & Saatjian):** Schulman's refusal to propound discovery, coupled with his failure to oppose Saatjian's frivolous motions, created a manufactured procedural vacuum. This allowed

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

Saatjian to file 'Ghost Motions' and forged instruments (**Exhibit 6, Attachment A**) without fear of objection, while both parties collaborated *ex parte* to manufacture hearing delays that served to exhaust Plaintiff's remaining resources.

- **The Concealer & Enforcer (Blado):** Defendant Blado served as the final node of the Enterprise, tasked with active suppression and obstruction. Blado enforced the Enterprise's concealment strategy by affirmatively ratifying forged judicial instruments and suppressing evidence of the unauthorized transfers (**Exhibit 6, Attachment C**). When Plaintiff began to uncover the Enterprise's financial extractions, Blado executed a calculated 'hit-and-run' strategy: he abandoned Plaintiff on the eve of trial after systematically destroying her credibility and eradicating her defensive resources. This ensured Plaintiff was left without the standing to expose the underlying fraud, effectively insulating the Enterprise from professional malpractice liability.

- **The Judicial Confirmation:** This is not a theory of counsel; it is a documented history. The Superior Court's July 6, 2026, Minute Order (**Exhibit 10**) confirms that these extractions and forgeries were not isolated errors, but an interconnected pattern that the Court formally recognized as a 'meritorious dispute' of systemic fraud.

-105-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

**65. B. Judicial Finding of Meritorious Dispute Regarding Financial Extractions** On July 6, 2026, the Superior Court of California (Case No. 25CU054361C) issued a Minute Order (EXHIBIT 10) finding a "meritorious dispute" regarding the unauthorized $150,000 transfer and Defendant Schulman's false sworn discovery declarations. This judicial finding confirms that the Defendants' coordinated financial extractions were not mere "negligence," but were factually incorrect and part of an active scheme to defraud the Plaintiff and the tribunal. This finding serves as a "judicial anchor" for Plaintiff's RICO claims, validating that the Defendants' prior sworn declarations were factually incorrect and constitute a predicate pattern of racketeering activity.

**66. C. Administrative Blockade and the Weaponization of the VL Order** : the Defendants intentionally procured and weaponized the 'Vexatious Litigant' (VL) order within the state trial court as a primary instrument of **Obstruction of Justice (18 U.S.C. § 1503)**, specifically designed to silence the Plaintiff and immunize the Enterprise Defendants from scrutiny regarding their ongoing fraud and embezzlement. Although Defendant Peter Saatjian has since ceased his formal representation of the ex-spouse, he successfully established a precedent of procedural abuse that the ex-spouse continues to weaponize to this day. The ex-spouse currently utilizes the VL order in the trial court for the exact

-106-

**First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET**

same purpose: to obstruct justice, deny Plaintiff a meaningful opportunity to be heard, and immunize himself from exposure for ongoing fraud.

66a. Furthermore, Defendant Schulman actively conspired with the Enterprise to weaponize the unconstitutional "Vexatious Litigant" (VL) order to finalize his own malpractice cover-up. By leveraging this gag order, Schulman effectively created an "administrative blackout," systematically blocking Plaintiff's defensive filings from judicial review. This obstruction constituted a **predicate act of Obstruction of Justice under 18 U.S.C. § 1503**, deliberately executed to immunize Schulman from his own professional negligence and the documented embezzlement of community funds. As demonstrated by the July 6, 2026, Superior Court Order (Exhibit 10), it was only when Plaintiff was able to bypass this administrative blockade and provide the evidence directly to the state court judge that the court recognized the meritorious nature of the underlying fraud, proving the VL order was never a legitimate litigation management tool but a criminal "gag mechanism" designed to obstruct justice. This course of conduct forms a continuous pattern of **Obstruction of Justice and Conspiracy to Defraud**, as detailed in the **Master Forensic Matrix A (Matrix attached at the end of the Verified Complaint),** establishing the Enterprise's coordinated intent to silence the Plaintiff and subvert the judicial process.

66b. This coordinated pattern of conduct forms a continuous **RICO conspiracy to defraud (18 U.S.C. § 1962(d))**, as detailed in **Section III** of this Complaint and

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

corroborated by the comprehensive forensic data in **Exhibits 1 and 2**, the **Edward Re Expert Declaration (Exhibit 3)**, the **Addleman Forensic Analysis (Exhibit 12)**, and the **Ms. T. Healoha Lee Declaration (Exhibit 13)**. When mapped against the **Master Forensic Matrix (Matrix A attached at the end of this Verified Complaint)**, these events confirm that the VL gag mechanism was not a procedural ruling, but an intentional, multi-party effort to silence the Plaintiff, subvert the judicial process, and insulate the Enterprise's racketeering activities from federal oversight.

67. **D. Matrix of the Racketeering Enterprise**: The Enterprise functioned through a coordinated division of labor designed to blind the state tribunal and engineer Plaintiff's financial ruin. The following matrix categorizes the specific criminal functions of the Enterprise members and the corresponding predicate acts that define the "Association-in-Fact" racketeering scheme:

**MATRIX OF THE RACKETEERING ENTERPRISE (ACTOR ROLES, PREDICATE ACTS & EXHIBIT INTEGRATION)**

| Actor | Primary Criminal Function | Primary Predicate Acts | Evidentiary Basis |
|---|---|---|---|
| **Peter Saatjian** | Architect of Subversion & Legal Mastermind | Wire Fraud (18 U.S.C. § 1343), Hobbs Act Extortion (§ 1951), Criminal Forgery & Perjury, Witness Intimidation (§ 1512), Custodial Abuse, VL Gag Order Weaponization, Ghostwriting Fraud & Docket Manipulation. | **Section III&VIII (Master Forensic Matrix A & RICO Claim Matrix);** Exhibits 1, 2, 3 (McIntyre Ethics Decl.), 4 (DA Notice), 5 (FL-180), 6 (A, E), 7 (Extortion Emails), 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20. |
| **David Schulman** | Financial Facilitator & Initial Shield | Federal Embezzlement (18 U.S.C. § 666), Wire Fraud (§ 1343), Honest Services Fraud (§ 1346), Obstruction of Justice (§ 1503), Quid Pro Quo Asset Siphoning ($150k), Discovery Sabotage. | **Section III&VIII (Master Forensic Matrix A & RICO Claim Matrix);** Exhibits 1, 2, 5, 6 (Att. B, C, D), 8, 10 (Minute Order), 14, 15, 16, 17, 20. |
| **Matt Blado** | Evidence Suppressor & Enforcer | Obstruction of Justice (18 U.S.C. § 1503), RICO Conspiracy (§ 1962(d)), Federal Wire Fraud (18 U.S.C. § 1343) Honest Services Fraud (§ 1346) Ratification of Forged Instruments, Discovery Suppression, Fiduciary Abandonment & Retainer Theft ($15k). | **Section III&VIII (Master Forensic Matrix A & RICO Claim Matrix);** Exhibits 1, 2, 5, 6 (Att. C), 8, 10, 12 (Addleman Analysis), 13 (Lee Decl.), 14, 15, 16, 17, 20. |

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

## SUMMARY OF RACKETEERING ENTERPRISE & PREDICATE ACTS

**68. The Forensic Matrix of Racketeering and Predicate Acts**: To assist the Court in synthesizing the complex, coordinated nature of the Enterprise, the following matrix maps the Enterprise Defendants' individual roles, the predicate acts committed in furtherance of the criminal scheme, and the evidentiary record supporting each claim. This summary demonstrates that the Enterprise operated as a singular, unified syndicate with a common purpose—the conversion of community property into 'fee-churning' revenue—rather than a collection of independent actors. For a full and exhaustive chronology of these events, the Court is directed to **Section II, III & VIII** of this Complaint, **Exhibits 1 and 2**, and the **Master Forensic Matrix A of Constitutional Deprivations and Extrinsic Fraud** attached **as the concluding supplement to this Verified Complaint.** These documents serve as the granular evidentiary foundation for the Enterprise's pattern of racketeering activity, documenting the nexus between the state tribunal's procedural sabotage, the concealment of assets, and the resulting financial strangulation of the Plaintiff.

**MASTER EVIDENTIARY MATRIX: RICO PREDICATE ACTS, CLAIMS & EXHIBITS**

| Claim / Predicate Act | Legal Basis | Supporting Exhibits & Section VIII Matrix A Integration | Complaint Section |
|---|---|---|---|
| **Wire Fraud** | 18 U.S.C. § 1343 | Exhibits 1, 5, 6 (A, B, D, E), 10, 14, 18, 19, 20; Section VIII (Master Forensic Matrix A) | Section II, III, IV (Count I), Section VIII |

-110-

| | | | |
|---|---|---|---|
| **Hobbs Act Extortion** | 18 U.S.C. § 1951 | Exhibits 1, 2, 3 (McIntyre Decl.), 4 (DA Notice), 7, 13, 14; Section VIII (Master Forensic Matrix A) | Section III, IV (Counts I & III), Section VIII |
| **Witness Tampering & Intimidation** | 18 U.S.C. § 1512 | Exhibits 3, 12 (Addleman Analysis), 13 (Lee Decl.), 20; Section VIII (Master Forensic Matrix A) | Section II, III, IV (Count I), Section VIII |
| **Obstruction of Justice & Evidence Suppression** | 18 U.S.C. § 1503 | Exhibits 1, 6 (C), 8, 9, 10, 12, 13, 14, 15, 16, 17, 20; Section VIII (Master Forensic Matrix A) | Section II, III, IV (Counts I & V), Section VIII |
| **Extrinsic Fraud & Fraud Upon the Court** | *Kougasian v. TMSL* / 18 U.S.C. § 1503 | Exhibits 3, 5, 6 (A, C, E), 8, 9, 10, 19, 20; Section VIII (Master Forensic Matrix A) | Section I, II, III, IV (Counts I & IV), Section VIII |
| **Federal Embezzlement & Money Laundering** | 18 U.S.C. § 666 / § 1956 | Exhibits 1, 6 (A, B, D), 10, 12, 16; Section VIII (Master Forensic Matrix A) | Section II, III, IV (Count I), Section VIII |
| **Honest Services Fraud** | 18 U.S.C. § 1346 | Exhibits 6 (B, C), 13, 15, 16, 17; Section VIII (Master Forensic Matrix A) | Section II, III, IV (Counts I & II), Section VIII |
| **Fee-Churning Pipeline (Enterprise Conduct)** | 18 U.S.C. § 1962(c) | Exhibits 1, 2, 6 (D), 10, 13, 14, 15, 16, 17, 18, 19, 20; Section VIII (Master Forensic Matrix A) | Section II, III, IV (Count I), Section VIII |
| **RICO Conspiracy** | 18 U.S.C. § 1962(d) | Exhibits 1 through 20 (Comprehensive Cross-Docket File); Section VIII (Master Forensic Matrix A) | Section II, III, IV (Count II), Section VIII |

-111-

## SUMMARY OF RACKETEERING ENTERPRISE & PREDICATE ACTS

| Predicate Act | Description of Conduct & Modus Operandi | Defendants Involved | Supporting Exhibits & Section VIII Matrix Integration |
|---|---|---|---|
| **Wire Fraud** | Electronic transmission of unserved "ghost motions" (CRC 5.125), perjured FL-180 disclosures, unauthorized $150k trust siphons, and fabricated FOAHs. | Saatjian, Schulman, Blado | Exhibits 1, 5, 6 (A, B, D, E), 10, 14, 18, 19, 20; Section VIII (Matrix A) |
| **Hobbs Act Extortion** | Transmitting written threats of District Attorney criminal prosecution and coercive demands/ abandonment to force client capitulation and silence civil claims. | Saatjian, Schulman, Blado | Exhibits 1, 2, 3, 4, 7, 13, 14; Section VIII (Matrix A) |
| **Witness Tampering** | Public smear declarations and aggressive intimidation targeting forensic accountant Anna Addleman, alongside coercion of trial counsel (Ms. T. Healoha Lee). | Saatjian, Schulman | Exhibits 3, 12, 13, 20; Section VIII (Matrix A) |
| **Criminal Forgery & Perjury** | Direct physical forgery of Plaintiff's signature on May 15 and June 24, 2025 FOAHs to siphon $115k, alongside perjured tax and bifurcation declarations. | Saatjian, Blado, Schulman | Exhibits 3, 5, 6 (Att. A), 10; Section VIII (Matrix A) |
| **Extrinsic Fraud** | Concealment of unserved "ghost motions," bypassing adversarial processes, and executing "shadow representation" (ghostwriting court filings while claiming pro se status). | Saatjian, Schulman, Blado | Exhibits 1, 5, 6, 8, 10, 19; Section VIII (Matrix A) |

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

| | | | |
|---|---|---|---|
| **Obstruction of Justice & Appellate Blockades** | Spoliation and withholding of client files (RPC 1.16), corrupting trial records (banning court reporters), and weaponizing "Vexatious Litigant" gag orders and phantom dockets in defiance of appellate stays (CCP § 916). | Saatjian, Schulman, Blado, Tribunal Actors | Exhibits 1, 6 (C), 8, 9, 10, 12, 13, 14, 15, 16, 17, 20; Section VIII (Matrix A) |
| **Federal Embezzlem ent & Money Laundering** | Unauthorized off-record transfer of $150k into trust and siphoning of community capital via trust accounts. | Schulman, Saatjian | Exhibits 1, 6 (A, B, D), 10, 12, 16; Section VIII (Matrix A) |
| **Fee- Churning Pipeline** | Engineered financial destitution via asset lockout, manufactured discovery defaults, and quid pro quo fee extraction. | Saatjian, Schulman, Blado | Exhibits 1, 2, 6 (D), 10, 13, 14, 15, 16, 17, 18, 19, 20; Section VIII (Matrix A) |

**69. The Enterprise's Common Purpose and Racketeering Objective:** The Enterprise shared a singular, continuing criminal purpose: to systematically freeze, siphon, and convert the community property of the marital estate for the Enterprise Defendants' collective financial enrichment. To execute this objective, the Enterprise Defendants engaged in a coordinated campaign of predicate acts—specifically federal wire fraud, extortion, and obstruction of justice—coupled with severe, documented extrinsic fraud upon the state tribunal. The Enterprise's operational strategy was designed to achieve three specific outcomes: first, to financially paralyze the Plaintiff through manufactured discovery defaults; second,

-113-

to permanently deprive her of her estate capital via void orders/void bifurcation; and third, to structurally engineer her absolute destitution to ensure she remained unable to secure the legal representation necessary to expose the Enterprise's ongoing theft. For a granular breakdown of these objectives and the specific predatory acts committed in their furtherance, the Court is directed to **Section II, Section III** of this Complaint, **Exhibits 1, 2, and 3**, and the **Master Forensic Matrix of Constitutional Deprivations and Extrinsic Fraud attached to this Verified Complaint at the end**, which provide the definitive evidentiary record of the Enterprise's coordinated criminal intent and the subsequent, irreparable harm inflicted upon the marital estate, , thereby establishing the continuous pattern of racketeering predicate acts—specifically Wire Fraud (18 U.S.C. § 1343), Extortion (18 U.S.C. § 1951), and Obstruction of Justice (18 U.S.C. § 1503)—constituting direct violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act under 18 U.S.C. § 1962(c) and (d).

70. **Opportunistic Expansion and the Initial *Quid Pro Quo* (Schulman):** The Enterprise functioned as a continuing unit defined by illicit back-channel coordination, expanding opportunistically to systematically co-opt Plaintiff's own fiduciaries. The collusion began with David Schulman (representing Plaintiff from July to October 24, 2024). In October 2024, Plaintiff possessed a highly meritorious legal position that threatened the Enterprise's entire operation: she directed Schulman to file an October 3 *ex parte* application to formally freeze the

-114-

marital estate and secure statutory parity funds. Recognizing this freeze would legally cut off his uninhibited access to the estate and halt his fee-churning pipeline, Defendant Saatjian engineered a *quid pro quo* collusion. This illicit agreement was struck off-the-record during the October 2, 2024 deposition of Plaintiff's ex-spouse. During this deposition, Schulman directly observed and became fully aware that the ex-spouse was actively utilizing misappropriated community estate funds. Yet, instead of protecting his client's assets, Schulman conferred off-camera with Defendant Saatjian. Without Plaintiff's knowledge or consent, Schulman agreed to take the protective October 3 *ex parte* off the calendar, intentionally leaving the estate unprotected. In exchange, Saatjian and Schulman immediately orchestrated the unauthorized $150,000 wire transfer WITHOUT A SIGNED STIPULATION. (EXHIBIT 6 Attachment B&C). This corrupt quid pro quo and unauthorized financial extraction establish the racketeering predicate acts of Wire Fraud (18 U.S.C. § 1343) for the execution of the fraudulent electronic transfer, and Honest Services Fraud (18 U.S.C. § 1346) for Schulman's intentional deprivation of his fiduciary duty to Plaintiff in exchange for illicit coordination with opposing counsel, constituting direct violations of 18 U.S.C. § 1962(c).

71. To further paralyze Plaintiff and exponentially expand the litigation, Schulman colluded with Saatjian to conceal the void bifurcation (Exhibit 5) of the estate and actively sabotage Plaintiff's impending judicial victory (as corroborated

-115-

by October 2024 email evidence Exhibit 6). To execute this concealment, Schulman deliberately refused to demand or exchange mandatory final financial disclosures, intentionally suppressing the void nature of the bifurcation from the tribunal both prior to and during the critical October 22, 2024 hearing. Furthermore, Plaintiff was scheduled for a swift, 3-hour relocation trial on November 20, 2024, supported by a formal Family Court Services (FCS) recommendation and her presumptive rights—facts explicitly conceded in Schulman's own prior declarations. However, rather than secure this victory, Schulman secretly agreed to convert this contained 3-hour hearing into a protracted, multi-day trial to fuel the Enterprise's fee churning. To manufacture the pretext for this delay, Schulman deliberately failed to produce discovery and colluded with Saatjian to weaponize unserved October 15, 2024 "ghost discovery." By agreeing to let Saatjian proceed via an October 24, 2024 *ex parte* application based entirely on this fabricated non-compliance, Schulman intentionally detonated the schedule, locking Plaintiff into the Enterprise's subsequent manufactured crisis. This intentional sabotage of a judicial proceeding, concealment of material facts from the tribunal, and weaponization of fabricated discovery to extend litigation for financial extraction establish the racketeering predicate acts of Honest Services Fraud (18 U.S.C. § 1346) for Schulman's corrupt breach of his fiduciary duty, and Obstruction of Justice (18 U.S.C. § 1503) for the deliberate manipulation and

-116-

fraudulent delay of the judicial process, constituting direct violations of 18 U.S.C. § 1962(c) and (d).

**72. The Cover-Up and Unauthorized Litigation (Baldo):** Upon discovering the illicit $150,000 extraction and the manufactured discovery crisis, Plaintiff explicitly retained Matt Baldo (representing Plaintiff from October 24, 2024, to March 18, 2025). Plaintiff specifically directed Baldo to set aside the unserved October 15 "ghost discovery" as void. Instead, Baldo was absorbed into the Enterprise to actively insulate the theft. Baldo intentionally concealed from Plaintiff that Defendant Saatjian had served him the "ghost discovery" two weeks late on October 29, 2024—a catastrophic procedural failure that prevented the court from acquiring personal jurisdiction and rendered the discovery demands *void ab initio*. Baldo's office subsequently lied to Plaintiff, claiming there was no January 7, 2025 hearing regarding this void discovery, and attempted to coerce Plaintiff into accepting the blame for Schulman's failures and paying $2,750 to the Enterprise. When Plaintiff refused to be extorted, Baldo appeared at the January 7 hearing without Plaintiff's knowledge or authorization where Plaintiff was sanctioned $3,500 for discovery non-compliance. These calculated acts of fiduciary betrayal, unauthorized litigation, and active coercion establish the racketeering predicate acts of Honest Services Fraud (18 U.S.C. § 1346) for the intentional concealment of void process, Attempted Extortion (18 U.S.C. § 1951) for the coercive demand of $2,750, and Obstruction of Justice (18 U.S.C. § 1503)

-117-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

for manipulating the January 7 tribunal to engineer fraudulent sanctions against his own client, constituting direct violations of 18 U.S.C. § 1962(c) and (d).

**73. The Cascading Financial Strangulation and Procedural Hemorrhage:** Baldo's secret, unauthorized appearance served as the critical catalyst for Plaintiff's ultimate destruction. By intentionally validating the void January 7 discovery hearing—stemming entirely from the unserved October 15, 2024 "ghost motion"—Baldo successfully locked Plaintiff into the Enterprise's extortionate pipeline. This singular betrayal triggered a catastrophic cascade of manufactured sanctions: an initial $3,500 penalty, an additional $1,500 on February 5, 2025, and a further $5,000 in March 18, 2025, compounded by exorbitant, constantly churning defensive legal fees. Most devastatingly, the Enterprise utilized these initial void discovery orders to execute a severe constitutional breach: the unlawful stripping of Plaintiff's attorney-client privilege (April 29 2025). Forced to provide unredacted, privileged communications under the threat of further ruin, Plaintiff was entirely exposed. Under the threat of financial ruin, Plaintiff was compelled to produce unredacted, attorney-client privileged communications. Defendant Saatjian subsequently weaponized these improperly obtained records, utilizing them to procure an additional $10,000 in void sanctions (Nov 20 2025) and to formulate an extortionate demand for $100,000 in manufactured sanctions at trial. This malicious weaponization served a dual purpose: it systematically stripped Plaintiff of her defense strategy while providing the Enterprise with the leverage to

-118-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

drive her toward total financial collapse. This coordinated weaponization of void procedure, extortionate financial demands, and the unlawful invasion of privileged communications establish the racketeering predicate acts of Honest Services Fraud (18 U.S.C. § 1346) for Baldo's ongoing fiduciary betrayal, Extortion (18 U.S.C. § 1951) for the coercive extraction of privileged materials and the $100,000 retaliatory demand, and Obstruction of Justice (18 U.S.C. § 1503) for the systemic corruption of the judicial process to engineer Plaintiff's financial collapse, constituting direct violations of 18 U.S.C. § 1962(c) and (d).

74. **The Weaponization of Procedural Defaults and the VL Gag Order**: This manufactured record of 'non-compliance'—and the resulting void orders—was engineered by the Enterprise Defendants as an instrument of absolute financial strangulation and credibility destruction, specifically designed to churn unconscionable fees under the guise of legitimate litigation. These fraudulent procedural defaults served as the foundation for the Enterprise's continued asset siphoning. When Plaintiff began to successfully expose their scheme, Defendant Saatjian escalated from litigation abuse to explicit criminal extortion, transmitting written threats of District Attorney prosecution to coerce Plaintiff into abandoning her claims. **As documented in the Edward Re Expert Declaration (Exhibit 3), these threats constitute extortion as a matter of law and were presented to the trial court as dispositive proof of the Enterprise's criminal intent.** The trial court intentionally disregarded this forensic evidence of extortion, instead utilizing

-119-

this fabricated history to procure a retaliatory 'Vexatious Litigant' gag order against a destitute, protective mother. This order was not a neutral procedural ruling, but a targeted act of obstruction intended to silence a whistleblower, strip her of her 1st Amendment right to petition for redress, and permanently blind the tribunal to the Enterprise's ongoing extrinsic fraud. As detailed in **Section III** of this Complaint and documented in **Exhibit 1, 2, Exhibit 3 (Re Declaration)**, and **Exhibit 10 (July 6, 2026 Order)**, this judicial gag order acted as a final, structural blockade, ensuring the Plaintiff remained legally defenseless while the Enterprise laundered the marital estate assets. By deliberately trapping Plaintiff in San Diego, the Enterprise intentionally destroyed her highly compensated executive career opportunities, permanently neutralizing her ability to fund a defense and causing her hundreds of thousands of dollars in litigation fees and total financial destitution —all with the specific intent to generate unconscionable fees for their personal enrichment. Every resulting deprivation—from the loss of her fundamental civil liberties to the structural destruction of her business prospects—was the direct, proximate result of the Enterprise's coordinated deployment of the manufactured discovery trap to churn fees and engineer her total destitution. This coordinated deployment of manufactured procedural defaults, explicit threats of criminal prosecution, and the procurement of an unconstitutional gag order establish the racketeering predicate acts of Extortion (18 U.S.C. § 1951) for the coercive threats of District Attorney prosecution, Wire Fraud (18 U.S.C. § 1343) for the

-120-

transmission of fabricated filings to engineer financial destitution, and Obstruction of Justice (18 U.S.C. § 1503 and § 1512) for the retaliatory silencing of a whistleblower and corruption of the judicial process, constituting direct violations of 18 U.S.C. § 1962(c) and (d).

**75. Active Concealment and Laundering of Stolen Capital:** Following the procurement of the void bifurcation, Defendant Blado colluded with Saatjian to affirmatively launder the Enterprise's theft and fabricate the judicial record. On November 12, 2024, Defendant Saatjian submitted perjured declarations and an FL-180 form (Exhibit 5), falsely claiming that mandatory updated and final financial disclosures had been completed when they had not. Saatjian intentionally concealed hundreds of thousands of dollars in assets and falsely represented that the bifurcation was "stipulated," a direct contradiction of the Court's October 22, 2024, minute order. Rather than exposing this perjury, Defendant Blado permitted the Enterprise to proceed with a sham February 5, 2025, hearing regarding Plaintiff's alleged "failed disclosures." Although Baldo had already provided the necessary disclosures in December, he deliberately refused to take the hearing off-calendar or request that the resulting sanctions be set aside; instead, he utilized the proceeding strictly to churn legal fees, causing the court to unlawfully sanction Plaintiff an additional $1,500. Most egregiously, Defendant Blado actively assisted in laundering the stolen $150,000. Defendant Saatjian submitted a forged, unserved Findings and Orders After Hearing (FOAH) for a November 5, 2024, hearing,

-121-

falsely stating on the record that the $150,000 in wire-transferred funds were "voluntarily given" and illegally adjudicating the separation date. Rather than demanding this forged instrument be set aside, Defendant Blado affirmatively confirmed these falsehoods to the court as accurate on March 18 2025. These calculated acts of fabricating the judicial record, intentional concealment, and the laundering of misappropriated assets establish the racketeering predicate acts of Money Laundering (18 U.S.C. § 1956) for the active concealment and validation of the stolen $150,000, Honest Services Fraud (18 U.S.C. § 1346) for Blado's ongoing fiduciary betrayal and collusion, Wire Fraud (18 U.S.C. § 1343) for the transmission of perjured and forged instruments to churn fees, and Obstruction of Justice (18 U.S.C. § 1503) for the deliberate corruption of the tribunal's record, constituting direct violations of 18 U.S.C. § 1962(c) and (d).

**76. Extrinsic Fraud as a Racketeering Predicate:** Defendant Saatjian's conduct at the January 9, 2025, hearing demonstrates the Enterprise's use of perjury as a core racketeering tactic. Saatjian submitted materially false representations to the tribunal regarding the ex-spouse's tax filing status, falsely asserting an intent to file as "Head of Household" to artificially depress support obligations. Subsequent tax filings confirmed the ex-spouse filed as "Single," proving Saatjian's representation was a calculated act of perjury. This deceit was not a professional error; it was a predicate act of fraud designed to manipulate support calculations and maximize the Enterprise's fee-churning leverage. This

-122-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

deceit constituted a **predicate act of Mail/Wire Fraud**, executed via the submission of falsified financial records to the Court, and was a calculated maneuver to manipulate support calculations and maximize the Enterprise's fee-churning leverage. Saatjian executed this deceit to strip resources from Plaintiff—a stay-at-home mother rendered stranded in San Diego following her career abandonment and relocation for her ex-husband's employment—thereby ensuring her financial destitution and inability to fund a defense. This intentional submission of perjured financial representations to corrupt the tribunal's calculations establishes the racketeering predicate acts of Wire Fraud (18 U.S.C. § 1343) and Mail Fraud (18 U.S.C. § 1341) for the electronic and postal transmission of the falsified filings, and Obstruction of Justice (18 U.S.C. § 1503) for the deliberate subversion of the judicial process to engineer Plaintiff's financial ruin, constituting direct violations of 18 U.S.C. § 1962(c) and (d).

77. Furthermore, Defendant Saatjian weaponized the minor child's custody to effectuate this extortion. On January 9, 2025, the Enterprise successfully coerced the tribunal to shatter the child's established status quo—unlawfully stripping Plaintiff of her homeschooling rights and forcing unilateral medical directives—entirely without a lawful evidentiary hearing or a finding of detriment. As the January 9, 2025, transcript confirms, this disruption was not ordered for the child's welfare but was procured via Defendants extrinsic fraud to inflict profound psychological terror. By engineering this custodial crisis while Plaintiff was

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

financially paralyzed, Saatjian transformed the child into a tactical litigation instrument, forcing Plaintiff to incur massive out-of-pocket litigation expenses to defend her parental rights. This orchestrated custodial sabotage—facilitated by Saatjian's perjury and procedural ambush—constitutes a predicate act of **Extortion (18 U.S.C. § 1951)** and **Abuse of Process**, proving that the Enterprise's objective was not legal resolution, but the systematic destruction of Plaintiff's ability to resist the ongoing pillaging of the marital estate. **This malicious weaponization of child custody to inflict psychological terror and force financial capitulation establishes the racketeering predicate acts of Extortion (18 U.S.C. § 1951) for the coercive leveraging of parental rights to drain Plaintiff's financial resources, Wire Fraud (18 U.S.C. § 1343) for the transmission of perjured representations to the tribunal, and Obstruction of Justice (18 U.S.C. § 1503) for the deliberate corruption of the judicial process to engineer a manufactured custodial crisis, constituting direct violations of 18 U.S.C. § 1962(c) and (d).**

78. **Privilege Stripping, Retainer Theft, and Abandonment:** The systemic betrayal culminated at the March 18, 2025 hearing. Baldo deliberately failed to respond to meet-and-confer efforts, failed to submit mandatory declarations to protect Plaintiff, and falsely informed the tribunal that Plaintiff's attorney-client privilege could be waived. Defendant Saatjian immediately weaponized this fabricated waiver to further destroy Plaintiff's credibility and ensure the court

-124-

unwittingly adopted his forged FOAHs over Plaintiff's desperate April objections (April 7th 2025 Ex parte and April 29 2025 Hearing). Having successfully paralyzed her defense, cemented the forged orders into the record, and colluded with Saatjian to conceal the void November FL-180 bifurcation, Baldo executed the final financial extraction. He extracted a $15,000 trial retainer from Plaintiff under the guise of representing her at the impending May move-away trial. Immediately after securing these final funds, Baldo abruptly abandoned Plaintiff in March 18 2025, substituting out of the case and refusing to return the unearned fees.  This intentional abandonment ensured Plaintiff was stripped of her final capital, leaving her completely unrepresented, in financial ruin, and structurally defenseless, establishing the racketeering predicate acts of **Wire Fraud (18 U.S.C. § 1343)** for the deceptive extraction of funds and **Obstruction of Justice (18 U.S.C. § 1503)** for the intentional corruption of the judicial proceeding, thereby constituting a direct RICO violation **(See Exhibit 15: March 18, 2025 Hearing Transcript which proves also Substitution of Attorney Form; Exhibit 16 Jan 9th 2025 Hearing transcripts for Proof of $15,000 Retainer Payment).** These coordinated acts of fiduciary abandonment, deceptive financial extraction, and subversion of privilege establish the racketeering predicate acts of Honest Services Fraud (18 U.S.C. § 1346) for Baldo's ultimate betrayal of his fiduciary duty, Wire Fraud (18 U.S.C. § 1343) for the fraudulent electronic extraction of the $15,000 retainer under false pretenses, and Obstruction of Justice (18 U.S.C. § 1503) for the

-125-

intentional corruption of the judicial proceeding and the stripping of attorney-client protections, constituting direct violations of 18 U.S.C. § 1962(c) and (d). (See Exhibit 15: March 18, 2025 Hearing Transcript and Substitution of Attorney Form; Exhibit 16: January 9, 2025 Hearing Transcript detailing Proof of the $15,000 Retainer Payment).

**79. The Weaponization of Manufactured Non-Compliance and Expansion of Litigation:** With Plaintiff's own fiduciaries having successfully engineered a false record of "discovery non-compliance," Defendant Saatjian weaponized this manufactured record to inflict catastrophic procedural damage and exponentially expand his fee-churning pipeline. Originally, Plaintiff's move-away trial was scheduled as a swift, contained 3-hour hearing for November 20, 2024, bolstered by a formal recommendation for relocation from Family Court Services (FCS) and Plaintiff's presumptive status as the primary caretaker. Recognizing a swift resolution would prematurely terminate their profitable litigation, the Enterprise deployed their fabricated discovery trap. Utilizing an October 24, 2024 *ex parte* maneuver based entirely on the unserved "ghost discovery," the Enterprise successfully detonated the schedule, converting a 3-hour hearing into a massive, multi-day complex trial. This calculated weaponization of manufactured procedural defects to fraudulently delay proceedings and extort unconscionable legal fees establishes the racketeering predicate acts of Wire Fraud (18 U.S.C. §

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

1343) for the electronic transmission and filing of the fraudulent October 24 ex parte application, and Obstruction of Justice (18 U.S.C. § 1503) for the deliberate manipulation of the tribunal's calendar and sabotage of the scheduled custody resolution, constituting direct violations of 18 U.S.C. § 1962(c) and (d).

80. This calculated expansion forced the eruption of massive litigation fees across all parties. Saatjian successfully extorted over $25,000 in manufactured sanctions against Plaintiff and forced her to incur exorbitant defensive legal fees simply to litigate the resulting void orders, the concealed bifurcation, and the unlawful stripping of her attorney-client privilege. Most devastatingly, the Enterprise utilized this fabricated non-compliance to structurally blind the tribunal during the delayed 3-day trial. As stated explicitly on the record on March 18, 2025, the court relied directly upon Plaintiff's manufactured "discovery non-compliance" to negatively impact and deny her custodial rights, directly setting the stage for Plaintiff's subsequent professional and financial collapse. This cascading devastation—from the financial lockout and unconscionable fee-churning to the denial of her civil liberties—was the direct, proximate result of the Enterprise's coordinated predicate acts of wire fraud, extrinsic fraud, and fiduciary collusion. This cascading devastation—from the financial lockout and unconscionable fee-churning to the denial of her civil liberties—was the direct, proximate result of the Enterprise's coordinated predicate acts. These actions definitively establish Extortion (18 U.S.C. § 1951) for the coercive extraction of over $25,000 in

-127-

manufactured sanctions, Wire Fraud (18 U.S.C. § 1343) for the transmission of fabricated compliance records, Honest Services Fraud (18 U.S.C. § 1346) for the fiduciary collusion that enabled the procedural trap, and Obstruction of Justice (18 U.S.C. § 1503) for intentionally blinding the tribunal to corrupt the custodial outcome, constituting direct violations of 18 U.S.C. § 1962(c) and (d).

81. This collusive network operated entirely outside adversarial bounds, weaponizing Plaintiff's former attorneys against her to protect and facilitate the Enterprise's fee-extraction pipeline. Emboldened by the success of this structural blinding, the Enterprise immediately escalated their scheme, transitioning from manufacturing discovery disputes to procuring an unconstitutional gag order, thereby engineering Plaintiff's ultimate professional, personal, and financial ruin. This systemic pattern of conduct establishes the racketeering predicate acts of Mail and Wire Fraud (18 U.S.C. §§ 1341, 1343) for the fraudulent use of interstate channels to coordinate the 'fee-churning' scheme, and Witness Tampering and Retaliation (18 U.S.C. § 1512) for the procurement of an unconstitutional gag order intended to suppress evidence of the Enterprise's ongoing fraud and silence the Plaintiff's pursuit of legal redress. Together, these coordinated criminal activities constitute a direct and ongoing violation of 18 U.S.C. § 1962(c) and (d).

81a. The Ongoing Escalation of Discovery Abuse: The Enterprise's pattern of racketeering activity remains active and ongoing. Despite being on notice of the

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

jurisdictional divestiture created by a pending Motion to Stay, and following the Superior Court's July 6, 2026, finding of a 'meritorious dispute' regarding their prior financial extractions, the Defendants served the Plaintiff with premature and improper discovery demands on July 15, 2026 (**Exhibit 14**). This tactical escalation—following their failed attempt to 'lock out' the Plaintiff through a meritless security motion—demonstrates a systemic intent to weaponize the discovery process to inflict financial hardship, suppress evidence, and continue the 'fee-churning' pipeline that defines the Enterprise's operation (**Exhibit 14**). This current discovery abuse is an extension of the same 'ghost discovery' tactics used to sabotage the November 2024 custody resolution, proving that the Enterprise's methods of obstruction and extortion remain consistent and continuous (**Exhibit 14**). This calculated weaponization of the discovery process to impose financial ruin constitutes the racketeering predicate acts of Mail and Wire Fraud (18 U.S.C. §§ 1341, 1343) for the use of interstate channels to further the 'fee-churning' scheme, and Obstruction of Justice (18 U.S.C. § 1503) for the deliberate manipulation of judicial proceedings to suppress evidence and exhaust the Plaintiff's resources. Together, these coordinated acts of procedural sabotage represent a direct and ongoing violation of 18 U.S.C. § 1962(c) and (d).

**82. Distinctness:** Pursuant to 18 U.S.C. § 1962(c), each named Defendant—Peter Saatjian, David Schulman, and Matt Blado—is a distinct legal "person" separate and apart from the "Association-in-Fact" Enterprise through which they

-129-

conducted their pattern of racketeering activity. The Enterprise functioned as the structural vehicle utilized by these individual Defendants to orchestrate the scheme, and each Defendant is a distinct legal entity from the Enterprise itself. By leveraging this structural distinction, each Defendant played a critical, knowing role in executing the predicate acts of Wire Fraud (18 U.S.C. § 1343), Honest Services Fraud (18 U.S.C. § 1346), and Obstruction of Justice (18 U.S.C. § 1503). These distinct individuals intentionally conducted and participated in the affairs of the Enterprise to achieve their common objective of financial extraction and evidence suppression, thereby constituting an ongoing violation of 18 U.S.C. § 1962(c) and (d).

83. **Co-Conspirator Complicity (Blado & Schulman):**The Enterprise colluded with Plaintiff's own legal counsels to execute the extraction. The unauthorized $150,000 wire transfer to Schulman acting as Plaintiff's attorney of record from July 2024-Oct 24 2024 was not a negligent administrative error; it was a deliberate circumvention of fiduciary trust accounting rules. Schulman actively facilitated the extraction, intentionally moving frozen funds while knowing he did not possess Plaintiff's executed signature, constituting federal embezzlement and wire fraud. Furthering the conspiracy, Schulman deliberately refused to alert the Court regarding Defendant Saatjian's unserved "Ghost Motions" or the concealed mandatory disclosures, an orchestrated silence that directly allowed the Enterprise to procure the void orders including the void bifurcation of marital status. This

-130-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

deliberate orchestration of fund extraction and procedural concealment constitutes the racketeering predicate acts of Federal Embezzlement (18 U.S.C. § 666), Wire Fraud (18 U.S.C. § 1343) for the illicit transmission of frozen funds, and Obstruction of Justice (18 U.S.C. § 1503) for the intentional suppression of evidence before the Court. These coordinated criminal actions constitute direct and ongoing violations of 18 U.S.C. § 1962(c) and (d).

84. Co-conspirator Blado, acting as Plaintiff's attorney of record from Oct 24-March 18 2025 , was explicitly aware of this theft and extrinsic fraud, yet deliberately concealed the crimes from the tribunal. Blado engaged in a financially incentivized cover-up, executing a quid pro quo agreement to suppress Plaintiff's defense. Mirroring Schulman's sabotage, Blado intentionally refused to challenge the void bifurcation or expose the unserved motions. Their collusion is memorialized in their own back-channel interstate wire communications—specifically, the November 20, 2024 email wherein Blado explicitly admits in writing that the $150,000 transfer was executed without Plaintiff's signature or consent. Despite possessing this documented, actual knowledge of the theft, both Schulman and Blado intentionally refused to provide sworn statements or testimony to the Court to expose the racketeering. Instead, Blado executed his overt act in the conspiracy: allowing Defendant Saatjian's "Ghost Motions" to stand unchallenged in direct exchange for the Enterprise allowing him to extract $15,000 in illicit attorney fees directly from the frozen marital estate. After

-131-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

securing his payout, Blado abruptly abandoned Plaintiff on the eve of trial, leaving her defenseless—a calculated retreat that successfully shielded the Enterprise, guaranteed their mutual unjust enrichment, and continues to proximately cause Plaintiff's ongoing financial devastation. This documented scheme of financial concealment, quid pro quo collusion, and the intentional suppression of evidence constitutes the racketeering predicate acts of Federal Embezzlement (18 U.S.C. § 666), Honest Services Fraud (18 U.S.C. § 1346) for the betrayal of fiduciary obligations, and Obstruction of Justice (18 U.S.C. § 1503) for the deliberate manipulation of judicial proceedings to shield criminal theft. These coordinated criminal actions represent a direct and ongoing violation of 18 U.S.C. § 1962(c) and (d).

**84a. Overt Acts in Furtherance of the Conspiracy:** Defendant Blado executed a series of intentional overt acts in furtherance of the conspiracy, each designed to cement the Enterprise's control and maximize illicit fee-churning. Blado's complicity extended far beyond allowing Defendant Saatjian's "Ghost Motions" to stand unchallenged; he actively facilitated the Enterprise's criminal infrastructure by:

- **Concealing the $150,000 Embezzlement:** Despite possessing actual knowledge of the unauthorized wire transfer of frozen marital funds, Blado intentionally suppressed this evidence from the tribunal to protect the

-132-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

Enterprise's "captive fund" and ensure his own continued access to illicit fees.

- **Ratifying the Void Bifurcation:** Blado deliberately refused to move to set aside the void Bifurcation of Marital Status—which was procured through Saatjian's perjury on the FL-180 form—thereby maintaining the asset lockout that prevented Plaintiff from funding her defense.

- **Weaponizing Sanctions and Discovery Abuse:** Defendant Schulman initiated this scheme by intentionally refusing to propound necessary discovery or object to Saatjian's predatory motions, thereby engineering a false record of "non-compliance." Defendant Blado knowingly built upon this manufactured crisis; he permitted the tribunal to sanction Plaintiff $7,500 based entirely on Saatjian's unserved "ghost discovery" declarations, effectively laundering the Enterprise's procedural fraud into enforceable financial judgments against Plaintiff. By deliberately failing to challenge these void sanctions, Blado converted Schulman's orchestrated silence into a weapon of financial strangulation, ensuring the Enterprise's fee-churning pipeline remained uninterrupted and financially devastating to the Plaintiff.

84b. Blado executed these acts in direct exchange for $15,000 in illicit attorney fees extracted from the very marital estate he was duty-bound to protect. Upon securing this payout, Blado abruptly abandoned Plaintiff on the eve of trial, leaving

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

her defenseless—a calculated, final "hit-and-run" retreat that successfully shielded the Enterprise, guaranteed their mutual unjust enrichment, and ensured Defendant Saatjian could continue to abuse the judicial process to extort further fees while Plaintiff remained ambushed, coerced, and rendered entirely destitute. These intentional overt acts—specifically the concealment of the $150,000 embezzlement, the ratification of void judicial orders, and the weaponization of manufactured sanctions—constitute the racketeering predicate acts of Federal Embezzlement (18 U.S.C. § 666), Honest Services Fraud (18 U.S.C. § 1346), and Obstruction of Justice (18 U.S.C. § 1503). By executing these acts to facilitate the 'fee-churning' scheme and systematically destroy the Plaintiff's ability to defend her interests, the Defendants have engaged in a pattern of criminal activity that represents a direct and ongoing violation of 18 U.S.C. § 1962(c) and (d).

85. **The Enterprise's Modus Operandi:** The Enterprise operates via a repeatable pattern of racketeering designed to systematically deprive Plaintiff of her 1st and 14th Amendment rights, engineer her total destitution, and extract unconscionable fees. The Enterprise executes this scheme through five primary mechanisms, detailed sequentially below.

86. **Jurisdictional Ambush & Manufactured Defaults:** The Enterprise routinely transmits unserved "ghost motions" via electronic court wires to bypass the adversarial process. Most notably, Defendant Saatjian filed the jurisdictionally

-134-

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

defective October 15, 2024 unserved discovery motion. The Enterprise weaponized this manufactured non-compliance to permanently poison the tribunal against Plaintiff, fatally prejudicing her interstate business relocation, leaving her completely defenseless, and forcing her to expend all her resources defending against their extrinsic fraud.

**87. Extrinsic Fraud & FOAH Concealment:** The Enterprise actively transmits false representations to the Court to procure void orders, and then deliberately hides the resulting Findings and Orders After Hearing (FOAHs) in systemic violation of California Rule of Court (CRC) 5.125 to block Plaintiff's right to object. Defendant actively weaponized this concealment to unlawfully pierce Plaintiff's constitutionally protected attorney-client privilege, fabricating orders in direct defiance of oral rulings to illicitly extract unredacted defense records. Defendant subsequently weaponized these stolen communications to fabricate highly prejudicial allegations to extract $10,000 in void sanctions in November 2025 and demanded over $100,000 in sanctions at trial (per the December 29, 2025 Trial Brief). This calculated ambush engineered an unconstitutional Catch-22: intentionally paralyzing Plaintiff's ability to rebut the perjury without effectuating a full waiver of her remaining privilege, thereby securing an illicit advantage and obliterating her right to a fair trial.

-135-

**88. Criminal Forgery & Perjury:** When concealment fails, the Enterprise commits outright forgery and perjury. Defendant procured a void Bifurcation of Marital Status by committing perjury on the FL-180 form, falsely swearing that the bifurcation was "stipulated" and that mandatory updated and final disclosures were provided when they were not. Furthermore, to bypass Plaintiff's formal objections, Defendant actively forged Plaintiff's signature on the May 15 and June 24, 2025 FOAHs to falsely imply her consent to the tribunal, successfully extracting community funds directly to his own firm for more litigation fees.

**89. Asymmetrical Extortion & Manufactured Crises:** The Enterprise deliberately manufactured severe logistical and personal crises to break Plaintiff's psychological endurance and force financial surrender. While Plaintiff was paralyzed under the Enterprise's unlawful asset freeze, Defendant Saatjian advised and orchestrated the unilateral breach of established cooperative geographic and medical agreements. The Enterprise did not execute these breaches for any legitimate adjudicative purpose; rather, they weaponized the resulting extreme logistical exhaustion and manufactured trauma as a direct coercive instrument to extort Plaintiff into surrendering her rights to the $1,000,000+ estate. This calculated campaign of attrition inflicted concrete financial damage—forcing Plaintiff to incur tens of thousands of dollars in forced, out-of-pocket logistical expenditures (including exorbitant transit and vehicle maintenance costs)—while

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

simultaneously inflicting severe, engineered psychological distress by maliciously utilizing the suffering of her minor child as tactical litigation leverage.

**90. Extortion, Gag Orders, & Witness Intimidation:** When Plaintiff successfully exposed the forgery and fraud, Defendant Saatjian escalated to explicit criminal extortion, transmitting written threats of District Attorney prosecution, and procuring an unconstitutional pre-filing injunction ("Vexatious Litigant") to strip Plaintiff of her 1st and 14th Amendment rights. Furthermore, when Plaintiff borrowed funds to retain emergency trial counsel (Ms. T. Healoha Lee) to overcome this gag order, Defendant intimidated and attempted to coerce Ms. Lee into abandoning Plaintiff's defense (as detailed in Ms. Lee's March 13, 2026 declaration Exhibit 13), ensuring Plaintiff was once again denied parity at the March 24, 2026 hearing.

**91. NOTICE OF PENDING FEDERAL OVERSIGHT AND JURISDICTIONAL DEFIANCE** Plaintiff hereby notifies this Court that the state tribunal proceedings in Case No. 23FL000584C are not isolated family law disputes but are the subject of active federal oversight. Specifically, the procedural acts mapped in the following matrices are currently being investigated as predicate acts within Plaintiff's ongoing 1983 Civil Rights action (*Lancranjan v. Truitt et al.*, Case No. 26cv3765-JES-DEB) and federal RICO action (*Lancranjan v. Saatjian et al.*, Case No. 26-CV-02817-BAS-VET). Because the state court has engaged in

-137-

active jurisdictional defiance of the mandatory CCP § 916(a) automatic appellate stay (D086958), the state tribunal has effectively divested itself of subject-matter jurisdiction. Any further actions or 'execution trials' conducted by the state tribunal are ultra vires and constitute a structural violation of the ongoing federal investigations into the Enterprise's racketeering and extortionate activities.

**Matrix 4: The Anatomy of a State-Created Danger & Coercive Control (Enhanced with RICO Predicate Mapping)**

This matrix maps the progression of the "Pro Se Playbook" while identifying the specific **RICO Predicate Acts** (such as wire fraud, extortion, and obstruction of justice) that underpin the racketeering enterprise.

| Step in the "Playbook" | The Weaponized Court Action | RICO Predicate Acts | Resulting Harm to Pro Se Victim | Supporting Exhibits & Section VIII Cross-Reference |
|---|---|---|---|---|
| **1. The Parity Blockade** | Denial of statutory fees (Fam. Code § 2030) and asset lockouts. | Extortion / Theft of Property (18 U.S.C. § 1951 / § 666) | Financial starvation; "equality of arms" destroyed. | Exhibits 1, 6, 10, 14; Section VIII (Master Forensic Matrix A) |

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

| | | | | |
|---|---|---|---|---|
| 2. Procedural Bypass | Ratification of unserved "ghost motions" and forged FOAHs. | Wire Fraud / Mail Fraud (18 U.S.C. § 1343 / § 1341) | Stripped of all procedural and substantive defenses. | Exhibits 3, 5, 6 (Att. A–E), 10; Section VIII (Master Forensic Matrix A) |
| 3. The Appellate Embargo | Phantom dockets, refusal to sign orders, refusal to set aside void orders, and court reporter bans. | Obstruction of Justice (18 U.S.C. § 1503) | Illusory state remedies; permanent "blackout" of record. | Exhibits 8, 9, 20 (Att. A–F); Section VIII (Master Forensic Matrix A) |
| 4. Whistleblower Retaliation | Weaponized "Vexatious Litigant" (VL) gag orders and punitive sanctions. | Retaliation / Witness Intimidation (18 U.S.C. § 1512) | Gagged advocacy; forced homelessness; "prohibited litigant" label. | Exhibits 3, 4, 8, 12, 13; Section VIII (Master Forensic Matrix A & Supplemental Mappings) |
| 5. The Ultra Vires Trial | Defiance of mandatory CCP § 916(a) stays; pushing "execution trials". | Obstruction of Justice / Conspiracy (18 U.S.C. § 1503 / § 1962(d)) | Pre-determined sham trial; total deprivation of rights. | Exhibits 9, 14, 19, 20; Section VIII (Master Forensic Matrix A) |

# CONCLUSION OF SECTION II: EVIDENTIARY CORROBORATION

92. The racketeering objectives identified in the preceding matrices are corroborated by specialized forensic and ethics evidence which serves to strip the Defendants of any claim to professional privilege or good faith. As documented in the **Edward J. McIntyre Expert Declaration (Exhibit 3)**, the pattern of threats

-139-

and legal posturing utilized by the Enterprise constitutes extortion as a matter of law. This is further substantiated by the **Addleman Forensic Analysis (Exhibit 12)**, which provides the quantitative nexus between the Enterprise's procedural sabotage and the unauthorized siphoning of capital, and the **Declaration of Ms. T. Healoha Lee (Exhibit 13)**, which provides direct witness testimony of the Enterprise's active intimidation of Plaintiff's counsel. These exhibits confirm that the Defendants acted not as advocates, but as participants in a coordinated criminal enterprise.

93. The Enterprise's function was asymmetrical financial extraction, operating through a sequential playbook of criminal escalation. The scheme began with Defendant Schulman, who exploited his fiduciary position to engineer the unauthorized $150,000 off-record transfer of community capital. This transfer was facilitated by a corrupt *quid pro quo*: Schulman intentionally took his own *ex parte* application to freeze the marital estate off-calendar in direct exchange for the $150,000 transfer into his own trust account, effectively abandoning the Plaintiff's financial protections to create a 'captive fund' that bankrolled the Enterprise's litigation tactics (**Section II–IV, Count II; Exhibit 6, Attachments B & D, SECTION VIII-Matrix A**).

94. When Plaintiff retained counsel and forensic experts to expose this fraud, the Enterprise transitioned from financial extraction to active suppression and systemic

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

obstruction. Defendant Blado entered the scheme specifically to conceal the Enterprise's criminal footprint, actively suppressing evidence to create a 'procedural blackout' (**Section II–III, Count II, SECTION VIII; Exhibit 6, Attachment C; Exhibit 12**).

95. Finally, as Plaintiff brought credible experts before the tribunal, the Enterprise escalated to coercive intimidation and extortionate tactics. This was not a passive legal strategy; it was an active, coordinated campaign to influence the Court through the submission of forged instruments, perjured declarations, and systemic procedural fraud designed to launder the Enterprise's extractions into 'final' state court orders (**Section II–III, Counts I, IV, V, & VI; Exhibit 3; Exhibit 6, Attachment A; Exhibit 7; Exhibits 12 & 13, SECTION VIII-Matrix A**). These corroborated acts demonstrate that the Enterprise was not merely a series of legal missteps, but a calculated, multi-year criminal conspiracy that demands this Court's immediate intervention.

96. **Summary of Statutory Violations:** The totality of the conduct described in this Section II—ranging from the initial jurisdictional ambush and asset embezzlement to the ongoing discovery abuse, witness intimidation, and the procurement of void orders through forgery—constitutes a coordinated pattern of racketeering activity. These actions satisfy the essential elements for the predicate acts of **Wire Fraud (18 U.S.C. § 1343), Mail Fraud (18 U.S.C. § 1341), Federal**

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

Embezzlement (18 U.S.C. § 666), Honest Services Fraud (18 U.S.C. § 1346), Obstruction of Justice (18 U.S.C. § 1503), and Retaliation/Witness Tampering (18 U.S.C. § 1512). By systematically utilizing the court system as a 'structural vehicle' to commit these crimes, the Defendants have engaged in a continuous and ongoing violation of 18 U.S.C. § 1962(c) and (d). This conduct transcends professional negligence and represents a sophisticated, criminal enterprise that has operated with the sole objective of financial extortion and the suppression of the rule of law. These actions satisfy the essential elements for the predicate acts, all of which are substantiated by the evidentiary record provided in the attached **Exhibits and Forensic Matrices:**

**Exhibits and Forensic Matrices**

| Predicate Act | Legal Basis | Primary Evidentiary Basis & Section VIII Integration |
|---|---|---|
| **Wire Fraud** | 18 U.S.C. § 1343 | Exs. 1, 5, 6 (A, B, D, E), 10, 14, 18, 19, 20; Section VIII (Master Forensic Matrix A) |
| **Mail Fraud** | 18 U.S.C. § 1341 | Exs. 6 (A), 8, 10, 14 |
| **Hobbs Act Extortion** | 18 U.S.C. § 1951 | Exs. 1, 2, 3 (McIntyre Decl.), 4 (DA Notice), 7, 13, 14; Section VIII (Master Forensic Matrix A) |

-142-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

| Federal Embezzlement | 18 U.S.C. § 666 | Exs. 1, 6 (Att. B), 10, 12; Section VIII (Master Forensic Matrix A) |
|---|---|---|
| Honest Services Fraud | 18 U.S.C. § 1346 | Exs. 6 (Att. C), 13, 15, 16, 17; Section VIII (Master Forensic Matrix A) |
| Obstruction of Justice | 18 U.S.C. § 1503 | Exs. 1, 6 (C), 8, 9, 10, 12, 13, 14, 15, 16, 17, 20; Section VIII (Master Forensic Matrix A) |
| Obstruction of Appeals (Appellate Blockades & Phantom Dockets) | 18 U.S.C. § 1503 & § 1962(c) | Exs. 1, 8, 9, 10, 20 (Att. A–F); Section VIII (Master Forensic Matrix A) |
| Witness Tampering & Retaliation | 18 U.S.C. § 1512 | Exs. 3, 12 (Addleman Analysis), 13 (Lee Decl.), 20; Section VIII (Master Forensic Matrix A) |
| Criminal Forgery & Perjury | 18 U.S.C. § 1621 / Cal. Penal Code § 470 | Exs. 3, 5, 6 (Att. A), 10; Section VIII (Master Forensic Matrix A) |
| Extrinsic Fraud & Fraud Upon the Court | *Kougasian v. TMSL*, 359 F.3d 1136 | Exs. 3, 5, 6, 8, 9, 10, 19, 20; Section VIII (Master Forensic Matrix A) |

**97. Conclusion of Enterprise Liability:** The Defendants' conduct is not a series of isolated errors, but the disciplined execution of a standardized criminal playbook. By systematically weaponizing the state tribunal as a "structural vehicle" to commit extortion, wire fraud, and obstruction, the Defendants have engaged in a

-143-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

continuous, ongoing violation of **18 U.S.C. § 1962(c) and (d)**. As evidenced by the **Master Forensic Matrix (Matrix A)** and the corroborating declarations of Expert Edward J. McIntyre (Exhibit 3), of forensic accountant Ms Addleman (Exhibit 12) and Counsel T. Healoha Lee (Exhibit 13), the Enterprise operated through a calculated methodology: manufacturing procedural defaults, fabricating judicial instruments, and laundering misappropriated assets. This is a sophisticated criminal syndicate that has operated with the singular objective of financial extortion, the subversion of the judicial process, and the permanent suppression of the rule of law. This factual foundation serves as the definitive basis for the Plaintiff's claims, demonstrating that the Enterprise's racketeering activities are not only ongoing but are the direct, proximate cause of the Plaintiff's total financial and professional destitution.

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

# III. CHRONOLOGY OF RACKETEERING, EXTRINSIC FRAUD, AND CONSTITUTIONAL DEPRIVATION *(Note: A granular chronology satisfying FRCP 9(b) pleading standards is detailed in Section VIII/Matrices and Exhibit 1, incorporated herein by reference.)*

**Roadmap of Allegations:** To assist the Court in navigating the forensic evidence and the corresponding legal theories presented herein, the Plaintiff provides the following structural roadmap of this section:

| Order | Component | Purpose |
|---|---|---|
| 1 | **Enterprise Overview (Paragraphs 98–117)** | Establishes the "Association-in-Fact" and the broad logic of the racketeering scheme. |
| 2 | **Legal Theory & Precedent (Paragraphs 117-119 )** | Anchors the "why" by applying *Reves, Boyle,* and *Flatley* to the Defendants' conduct. |
| 3 | **Forensic Matrice (Paragraph 120)** | Provides the visual roadmap of Predicate Acts and the "Modus Operandi" of the Enterprise. |
| 4 | **Chronological Execution (Paragraph 121)** | Transitions from theory to fact, detailing the "Phase-by-Phase" execution of the playbook. |
| 5 | **Granular Factual Narrative (Paragraph 128)** | Presents the detailed, date-specific predicate acts and evidence (starting at ¶ 128). |

## 1. Enterprise Overview (of Section III)

| 1 | Enterprise Overview (Paragraphs 98–117) | Establishes the "Association-in-Fact" and the broad logic of the racketeering scheme. |
|---|---|---|

**98. Overview of the Enterprise:**The following section establishes the legal framework for the Defendants' racketeering enterprise under 18 U.S.C. § 1961(4). This analysis serves as the critical pivot point of this Complaint: it moves the Court's focus from the isolated, granular disputes of a family law proceeding to the systemic federal crimes that necessitated this action. By defining the Defendants as an 'Association-in-Fact' Enterprise, Plaintiff demonstrates that the individual actors —Saatjian, Schulman, and Blado—functioned not as independent counsel, but as a unified, continuing unit organized to subvert the state judicial forum.

**99. The Instrument of Theft:** This Enterprise weaponized the tribunal itself as a closed-loop engine for capital extraction, systematically subverting procedural norms to convert marital assets into illicit fee revenue. By detailing how the Defendants exercised collective control over these judicial processes to further their criminal objective, the following allegations satisfy the 'conduct and participation' requirements of the RICO statute. These acts were not incidental or accidental; they were the planned, executed output of a structured criminal syndicate designed to immunize its members from professional liability and legal

-146-

review. The following framework provides the foundational evidence for the subsequent Predicate Acts—including wire fraud, extortion, and obstruction of justice—that demonstrate why this matter demands immediate federal equitable intervention.

**100. Conclusion of Enterprise Liability:** The Defendants' conduct is not a series of isolated errors, but the disciplined execution of a standardized criminal playbook. By systematically weaponizing the state tribunal as a "structural vehicle" to commit extortion, wire fraud, and obstruction, the Defendants have engaged in a continuous, ongoing violation of **18 U.S.C. § 1962(c) and (d)**. As evidenced by the **Master Forensic Matrix (Matrix A)** attached at the end of this Verified Complaint and the corroborating exhibits including the declarations of Expert Edward J. McIntyre (Exhibit 3), forensic accountant Ms Addlemen (Exhibit 12) and Counsel T. Healoha Lee (Exhibit 13), the Enterprise operated through a calculated methodology: manufacturing procedural defaults, fabricating judicial instruments, and laundering misappropriated assets. This is a sophisticated criminal syndicate that has operated with the singular objective of financial extortion, the subversion of the judicial process, and the permanent suppression of the rule of law. This factual foundation serves as the definitive basis for the Plaintiff's claims, demonstrating that the Enterprise's racketeering activities are not only ongoing but are the direct, proximate cause of the Plaintiff's total financial and professional destitution. Having established the systemic framework of the Enterprise's

-147-

racketeering operation and the predicate acts that define their conduct, the Court must now examine the specific, chronological implementation of this scheme. The following factual narrative details the individual 'predicate events' that transformed the state judicial forum into a private engine for capital theft, beginning with the systemic financial strangulation initiated in 2023.

**100. Systemic Financial Strangulation and Engineered Vulnerability:** In early 2023, Plaintiff was abruptly subjected to a unilateral asset lockout from the $1,000,000+ community estate. Serving concurrently as a Harvard Extension School student and primary caregiver and full-time homeschooling her 5 year old son, this sudden financial freeze forced Plaintiff into a severe liquidity crisis, requiring the emergency liquidation of $290,000 in personal capital reserves in addition to retirement account and credit cards strictly to stave off imminent insolvency and homelessness. The Enterprise's strategy of financial strangulation was predicated on the intentional concealment of Petitioner Truitt's liquid assets and executive incentives. On January 19, 2023—immediately upon abandoning Plaintiff—Petitioner Truitt illegally seized $190,000 of community capital, unilaterally diverting $150,000 to the IRS without Plaintiff's knowledge or authorization. Then, throughout 2023, Petitioner deposited over $700,000 in liquid cash into his personal accounts in addition to his over $300,000 (plus bonus) executive salary, systematically refusing to disclose or share the marital equity derived from stock incentives provided by his employer, Vividian. These assets

-148-

**First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET**

were not disclosed until October 2023, in initial disclosures that remained fundamentally incomplete. Subsequently, in October 2024, Petitioner Truitt and Defendant Saatjian engaged in a critical act of procedural fraud: they intentionally failed to provide final or updated declarations of disclosure prior to the bifurcation of marital status (Exhibit 5). This deliberate omission allowed them to lock Plaintiff out of the actual marital estate, successfully concealing millions of dollars in additional stock incentives received from Cerevance, as well as all income accrued by Petitioner Truitt since his abandonment of the family in January 2023. This orchestrated concealment was the structural mechanism that enabled the Enterprise to render Plaintiff destitute, ensuring her inability to fund a defense while they liquidated and dissipated the community estate for their own gain.

**101. The Identification of Lucrative Vulnerability (July 2024):** When Defendant Saatjian entered the litigation in July 2024, he recognized this engineered destitution not as a tragic circumstance, but as a highly lucrative vulnerability. He identified an unprotected, high-value asset pool (the $1,000,000+ estate) paired with a target who had been entirely stripped of the defensive capital necessary to litigate against complex financial fraud. Capitalizing on this extreme vulnerability, the Enterprise eschewed lawful adjudication. Instead, they deployed a highly calculated strategy of absolute financial attrition—utilizing predicate acts of wire fraud and extortion to structurally blind the tribunal, systematically extract

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

the remaining estate capital, and permanently dismantle Plaintiff's ability to finance her constitutional and property defenses from within.

**102. The Operational Infrastructure of Sabotage and Concealment (July 2024-March 2025):** Defendants Schulman and Blado were not passive actors influenced by Defendant Saatjian; they were co-conspirators who entered into a deliberate "meeting of the minds" to subvert the judicial process for collective profit. Defendant Schulman, as a partner in a prominent law firm, possessed the legal acumen to understand that his pattern of conduct—the refusal to propound or object to discovery, the failure to object to predatory motions, and the clandestine negotiation of a $150,000 transfer—constituted an egregious breach of fiduciary duty. This was not 'helping' the client; it was the intentional creation of a 'captive fund.' By sabotaging the asset freeze (the 'protective shield') and unilaterally transferring funds into a trust account over which he exerted sole, exclusive control (Exhibit 6 Attachment A&B), Schulman converted the marital estate into his own instrument of enrichment. This transfer was a direct violation of the governing stipulation and a deliberate act of self-dealing, transforming Plaintiff's legal defense into a vehicle for his own unjust enrichment while structurally paralyzing her ability to contest Saatjian's fraud. Defendants 's conduct—characterized by the creation of a 'captive fund,' systemic spoliation of evidence, and the intimidation of expert witnesses—was not collateral damage; it was the essential, pre-planned machinery of the syndicate. By simultaneously stripping the Plaintiff of her

-150-

financial defenses and suppressing evidence of their collusion, these Defendants manufactured the very procedural defaults that the Enterprise then weaponized. This coordinated pattern of fiduciary betrayal provided the essential 'shield' under which Defendant Saatjian could aggressively expand his fee-churning scheme.

**103. Rebuttal of Pretextual 'Good Faith' Defense (Oct 2024):** Any assertion by Defendant Schulman that he acted in 'good faith' to secure funds for Plaintiff's defense is refuted by the objective, documented facts of the conspiracy (Exhibit 10). Schulman's withdrawal of the ex parte application to freeze the community estate on Oct 2 2024—without Plaintiff's knowledge or consent—was not an act of representation; it was the removal of the only legal shield protecting the marital assets. By simultaneously orchestrating the unauthorized $150,000 transfer into his own trust account while sabotaging Plaintiff's discovery and disclosures, Schulman ensured Plaintiff was destitute, unrepresented, and structurally blinded to the Enterprise's ongoing pillaging (Exhibit 3, 6, 8, 10, 12, 13). This was not 'helping' the client; it was the intentional creation of a financial and procedural vacuum specifically designed to generate a 'captive fund' for the Enterprise's litigation tactics. A fiduciary who strips a client of their assets and freezes them out of the discovery process does not 'help' the client—they facilitate the Enterprise's extraction. Schulman's conduct demonstrates a clear quid pro quo: he abandoned

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

the protective asset freeze in direct exchange for the $150,000 payout, thereby transforming Plaintiff's legal defense into a vehicle for his own unjust enrichment.

**104. The Continuity of the Conspiracy (Blado's Complicity: Oct 24 2024- March 18 2025):** When Defendant Blado was retained, he was expressly tasked with exposing the prior fraud and rectifying the catastrophic procedural failures. Instead, Blado intentionally opted for complicity. Recognizing that the Enterprise's ongoing 'fee-churning' scheme provided a lucrative and sustained revenue stream, Blado chose to suppress the very evidence he was hired to reveal. His actions— characterized by the concealment of the $150,000 theft, the ratification of void judicial instruments, and the abandonment of the Plaintiff on the eve of trial— demonstrate a conscious 'meeting of the minds' with his co-conspirators. The ongoing email communications between the Defendants, which they have aggressively suppressed, document this synchronization, and their active participation in the conspiracy.

**105. Spoliation of Evidence and Obstruction of Justice:** Following their respective withdrawals, both Defendants Schulman and Blado committed an overt act of obstruction by categorically refusing to provide Plaintiff with her complete client file, including all email communications with the Defendants and the opposing counsel. This is not a fee dispute; it is a deliberate act of evidence

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

suppression. Under the California Rules of Professional Conduct, Rule 1.16(e), an attorney has a non-delegable duty to surrender the client file upon request, regardless of any claim of unpaid fees. The Defendants' collective refusal to produce the comprehensive email communications from the Plaintiff's client file—compounded by Saatjian's calculated defiance of discovery requests—is not a mere fee dispute; it is a clear manifestation of *spoliation* and *obstruction*. Their refusal to comply constitutes a **bad-faith spoliation of evidence** and a predicate act of **Obstruction of Justice (18 U.S.C. § 1503)**. By withholding these communications, Defendants are attempting to shield the "back-channel" evidence of their quid pro quo agreements with Defendant Saatjian from discovery. This suppression is a calculated effort to prevent the Court from seeing the internal documentation of their conspiracy—specifically the communications proving their knowledge of the unauthorized fund transfers and the coordinated "discovery trap"—thereby confirming that their prior representation was a sham designed to facilitate the Enterprise's criminal objectives.

106. **The Business Logic of Predatory Attrition:** The Enterprise targeted Plaintiff specifically because her compliance with procedural norms and her pursuit of the truth posed an existential threat to their revenue model. A swift, equitable resolution of the matter would have ended the litigation, thereby terminating the flow of illicit fees. To ensure the continuity of their racketeering operation, the Defendants required a prolonged "litigation war"—a state of

-153-

permanent procedural chaos. They targeted Plaintiff because she was the "frictional" element; by systematically stripping her of legal counsel (through fee-churning) and suppressing her financial defenses (through discovery traps), the Enterprise engineered her structural defenselessness. Conversely, Petitioner Truitt was not a target because he served as the Enterprise's "fuel"—he was the high-earning, compliant source of the very liquidity the Defendants sought to siphon, acting in active concert with the Enterprise to breach his fiduciary duties and willfully violate Automatic Temporary Restraining Orders (ATROs). Petitioner Truitt's motive for this collaboration is rooted in his need to insulate his criminal gains, perpetuate the void bifurcation of his marriage, and conceal his ongoing breach of fiduciary duty. His participation is not incidental; he is an active co-conspirator who requires the Enterprise to maintain a state of litigation to launder his own fraud through the tribunal, thereby ensuring his continued illicit enrichment while systematically looting the marital estate. The Enterprise did not "fail" to expose the truth; they actively suppressed the truth because exposing it would have collapsed their revenue stream. Their strategy was never to win a case for a client, but to maximize the duration of the conflict by manufacturing procedural defaults and engineering a financial vacuum, effectively transforming a domestic dispute into a multi-year machine for capital extraction.

107. **Preemptive Rebuttal of the "Marital Dispute" Defense:** The Defendants will inevitably attempt to reframe this calculated criminal scheme as a "protracted

-154-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

domestic dispute" in an attempt to trigger judicial abstention. This is a deliberate, bad-faith mischaracterization. This matter is not defined by marital friction; it is defined by a consistent, repeatable pattern of federal predicate acts—including wire fraud, extortion, witness tampering, and obstruction of justice—that satisfy every element of the RICO statute. The family law forum was merely the instrument utilized by the Enterprise to provide a veneer of legitimacy to these criminal activities. By demonstrating that the Defendants' conduct extends far beyond the bounds of zealous advocacy into the realm of organized criminal racketeering, Plaintiff asserts that this Court must look past the family law label to address the underlying federal constitutional torts and criminal conspiracies that have systematically deprived Plaintiff of her rights, her property, and her fundamental liberty.

108. **Mapping the Pattern of Racketeering Activity (Predicate Acts):** The Enterprise's conduct satisfies every element of a RICO violation, as the Defendants have engaged in a pattern of related, continuous criminal acts that exceed the scope of any legitimate legal advocacy:

- **Wire Fraud (18 U.S.C. § 1343):** Defendants engaged in multiple acts of wire fraud by electronically transmitting forged Findings and Orders After Hearing (FOAHs) to facilitate the unauthorized siphoning of $115,000 and

-155-

the $150,000 "quid pro quo" transfer. These transmissions were made with the specific intent to defraud the estate and the tribunal (Exhibit 6).

- **Extortion (The Hobbs Act, 18 U.S.C. § 1951): Defendant Saatjian utilized the threat of criminal prosecution (the District Attorney report )** to coerce Plaintiff into abandoning her civil appeals and constitutional rights. This constitutes extortion under color of official right and is explicitly excluded from "protected activity" under *Flatley v. Mauro (Exhibit 3,4, 12&13).* **Defendant Schulman's Coercive Extortion (October 2024):** Prior to the discovery ambush, Defendant Schulman engaged in direct coercive extortion. He threatened to abandon the Plaintiff—and filed a hostile *ex parte* motion on October 23, 2024, to effectuate that threat— unless Plaintiff signed a $150,000 stipulation giving him exclusive control over the marital capital. This coercive act was designed solely to force Plaintiff to cede control of the community estate and the litigation strategy to him, securing his role as the primary financial beneficiary of the "captive fund." This was not "zealous advocacy"; it was an ultimatum designed to extract a ransom for continued representation (Exhibit 6, Attachment A-E and Exhibit 10). **Defendant Blado's Extortion, Collusion, and "Hit-and-Run" Abandonment (Oct 2024 – March 2025):** Blado utilized the same extortionate framework, threatening to abandon the Plaintiff unless she responded to the motion to compel by falsely assuming blame for the

-156-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

Enterprise's own manufactured discovery failures. This occurred despite Plaintiff's explicit, documented instructions to expose the truth and the Enterprise's underlying fraud to the tribunal. Blado actively colluded with Saatjian to preserve the Enterprise's fraudulent orders, specifically suppressing the November 5, 2024, evidentiary realities and undermining Plaintiff's attorney-client privilege. Furthermore, Blado attempted a secondary act of extortion to insulate himself from the Enterprise's "criminal footprint": he offered to waive his outstanding legal fees if Plaintiff would unilaterally consent to his substitution. When Plaintiff refused to authorize this "clean break"—insisting instead that he fulfill his fiduciary duty to present the truth to the Court—Blado retaliated. He refused to provide the truthful declaration requested to expose the fraud and void orders, and instead unilaterally submitted his substitution. This abandonment was a "hit-and-run" extraction operation; it was executed immediately upon the successful conversion of Plaintiff's trial funds, confirming that Blado's representation was never intended to facilitate a legal defense, but was a coordinated effort to strip the Plaintiff of her remaining capital before withdrawing to shield the Enterprise's operations (Exhibit 6, Attachment E; Exhibits 15, 16 & 17)

- **Witness Tampering and Obstruction of Justice (18 U.S.C. § 1512, 1503):** The Enterprise engaged in direct witness tampering by intimidating forensic

expert Ms. Addleman and threatening counsel Ms. T. Healoha Lee with malpractice and professional ruin to suppress their participation (Exhibit 3, 10, 12&13). Furthermore, Defendants' categorical refusal to provide the client file constitutes the *spoliation of evidence* and *obstruction of justice*, designed to shield their back-channel collusion from federal review.

**Detailed Mapping of Predicate Acts**

| Date | Factual Event | RICO Predicate Acts | Law Applied |
|---|---|---|---|
| 01/19/23 – Present | Unilateral liquidation/ seizure of assets | Wire Fraud / Embezzlement | 18 U.S.C. § 1343 / 18 U.S.C. § 664 |
| 10/15/24 | The "Ghost Motion" Discovery Ambush | Mail/Wire Fraud / Obstruction | 18 U.S.C. § 1341 / 18 U.S.C. § 1503 |
| 11/05/24 | Perjured FL-180 for void bifurcation | Perjury / Fraud Upon the Court | 18 U.S.C. § 1621 |
| 10/2024 | $150,000 unauthorized wire extraction | Wire Fraud / Money Laundering | 18 U.S.C. § 1343 / 18 U.S.C. § 1956 |
| 07/2025- Oct 2025 | Extortionate demand for defense files | Extortion | 18 U.S.C. § 1951 (Hobbs Act) |

-158-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

| 11/2025 - Present | Judicial Gag Orders (VL Status) | Witness Intimidation / Obstruction | 18 U.S.C. § 1512 |
|---|---|---|---|

**109. The RICO Enterprise Structure:** The Defendants—Saatjian, Schulman, and Blado—constitute an "Association-in-Fact" Enterprise under **18 U.S.C. § 1961(4)**. This syndicate functioned as a unified, continuing unit, sharing a common purpose: the enrichment of its members through the structural looting of the Plaintiff's marital estate. Their "meeting of the minds" is substantiated by a multi-year pattern of synchronized criminal acts comprising a continuous pattern of racketeering activity under 18 U.S.C. § 1961(1). This pattern includes repeated acts of **Wire Fraud (18 U.S.C. § 1343)**, utilized to transmit forged judicial instruments—including void bifurcation orders and other decrees procured through extrinsic fraud—to facilitate the unauthorized siphoning of community assets; **Honest Services Fraud (18 U.S.C. § 1346)**, arising from the *quid pro quo* siphoning of $150,000 in community assets by Defendant Schulman in exchange for the sabotage of Plaintiff's legal defense; **Hobbs Act Extortion (18 U.S.C. § 1951)**, utilizing the threat of criminal prosecution to coerce Plaintiff into abandoning her constitutional rights; and **Obstruction of Justice and Evidence Tampering (18 U.S.C. § 1503, 1512)**, evidenced by the systemic spoliation of Plaintiff's client file, the intimidation of forensic experts, and the suppression of back-channel evidence. These predicate acts were facilitated by the coordinated

-159-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ;
DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

discovery traps used to manufacture procedural defaults, the illicit procurement of void judgments via extrinsic fraud, and the persistence of Saatjian's "shadow representation"—where he continued to ghostwrite filings for Petitioner Truitt long after his formal substitution, a deception that both Truitt and the Enterprise actively concealed from the tribunal to ensure the Enterprise's criminal footprint remained obscured. By maintaining Saatjian's role as the 'architect' of these filings, the Enterprise ensured that its criminal footprint remained obscured, all while maximizing the extraction of illicit fees. This was never zealous advocacy; it was a criminal operation where the Defendants occupied distinct but interdependent roles: Saatjian served as the primary extortionist, while Schulman and Blado served as the internal shields, siphoning community capital into private accounts, obstructing judicial oversight, and sabotaging the Plaintiff's defense to ensure the Enterprise's revenue stream remained uninterrupted. Each Defendant acted with full knowledge that their combined efforts were essential to the success of the overarching racketeering scheme, intentionally transforming the state court into a private engine for capital theft.

**109a. The RICO Enterprise Structure: Legal Elements and Evidence**

The Defendants—Saatjian, Schulman, and Blado—constitute an "Association-in-Fact" Enterprise under 18 U.S.C. § 1961(4). This syndicate functioned as a unified, continuing unit, sharing a common purpose: the structural looting of the Plaintiff's

-160-

marital estate. The following matrix details the essential elements of this Enterprise:

**RICO ELEMENT MATRIX: ASSOCIATION-IN-FACT, PREDICATE ACTS, EXHIBIT CROSS-REFERENCE & COMPLAINT SECTION INTEGRATION**

| RICO Element (18 U.S.C. § 1961) | Factual Allegation (The "Meeting of the Minds" & Modus Operandi) | Substantiating Evidence (Exhibits 1–20) | Complaint Section & Section VIII Integration |
|---|---|---|---|
| **Enterprise Existence** <br><br> *(Association-in-Fact)* | Defendants operated as a coordinated unit (Saatjian as Architect; Schulman/Blado as Financial Facilitators/Enforcers) bound to their respective firms, executing quid pro quo extractions to suppress discovery and siphon estate assets. | Exhibits 1, 2, 3 (McIntyre Decl.), 6 (A–E), 10, 12, 13, 15, 16, 17, 20 | **Section I, Section II, Section III, Section IV (Counts I–II), & Section VIII (Appendix)** |
| **Common Purpose** | Intentional enrichment of Enterprise members through systemic "fee-churning," capital theft ($150k/$115k extractions), and the permanent suppression of Plaintiff's advocacy and constitutional rights. | Exhibits 1, 2, 5, 6 (A–E), 8, 10, 12, 13, 15, 16, 17, 19, 20 | **Section II, Section III, Section IV (Counts I–III), & Section VIII (Appendix)** |
| **Pattern of Racketeering** <br><br> *(Predicate Acts)* | Repeated, continuous acts of Federal Wire Fraud (18 U.S.C. § 1343), Honest Services Fraud (§ 1346), Hobbs Act Extortion (§ 1951), Obstruction of Justice (§ 1503), Witness Tampering (§ 1512), and Criminal Forgery. | Exhibits 1, 2, 3, 4, 5, 6 (A–E), 7, 8, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20 | **Section II, Section III, Section IV (Counts I–VI), & Section VIII (Appendix)** |

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

| | | | |
|---|---|---|---|
| **Distinct Roles** <br><br> *(Reves Test)* | Saatjian (Architect/Extortionist); Schulman (Financial Facilitator/ Siphon); Blado (Enforcer/Cover-up). Roles were synchronized, interdependent, and executed through a calculated division of labor. | Exhibits 1, 2, 3, 6 (A–E), 10, 12, 13, 15, 16, 17, 20 | **Section I, Section II, Section III, Section IV (Counts I–II), & Section VIII (Appendix)** |
| **Continuity / Longevity** | Conspiracy persisted from at least October 2024 to the present (2026), evidenced by the hand-off of the "Enforcer" role, ongoing "shadow" ghostwriting by Saatjian, and the execution of August 2026 sham trial tracks. | Exhibits 1, 2, 3, 6, 8, 9, 10, 13, 14, 19, 20; Register of Actions (Case 23FL000584C) | **Section I, Section II, Section III, Section VI, & Section VIII (Appendix)** |
| **Fraudulent Means** <br><br> *(Extrinsic Fraud)* | Procurement of void orders, forgery of FOAHs, unserved "ghost motions" (CRC 5.125), and phantom dockets designed to "blind" the tribunal and facilitate capital theft under color of law. | Exhibits 1, 3, 5, 6 (A–E), 8, 9 (D086958), 10, 14, 19, 20 | **Section I, Section II, Section III, Section IV (Counts I–IV), & Section VIII (Appendix)** |

**110. Legality of the Association-in-Fact:** Each Defendant acted with full knowledge that their combined efforts were essential to the success of the overarching racketeering scheme, intentionally transforming the state court into a private engine for capital theft. This was never "zealous advocacy," but a criminal operation where the Defendants occupied distinct but interdependent roles: Saatjian served as the primary extortionist and "architect" of fraudulent filings;

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

Schulman and Blado served as the internal shields, siphoning community capital into private accounts, obstructing judicial oversight, and sabotaging the Plaintiff's defense to ensure the Enterprise's revenue stream remained uninterrupted. By maintaining Saatjian's role as the ghostwriter of filings long after his formal substitution, the Enterprise ensured its criminal footprint remained obscured, all while maximizing the extraction of illicit fees. This continuity of conduct—from the initial "discovery trap" to the ongoing weaponization of void orders—demonstrates a cohesive, ongoing criminal project that satisfies the "Association-in-Fact" requirement of 18 U.S.C. § 1961(4).

**111. The Systematic Rejection of Conflict Resolution (Sept 2024 – May 2025):** The Enterprise maintained the "litigation war" by proactively sabotaging every good-faith attempt at settlement. In September/October 2024, Plaintiff formally proposed a structured stipulation to resolve the matter, which Defendant Saatjian reflexively rejected, and which Defendant Schulman intentionally failed to advocate for or present to the tribunal. From Oct 2024-March 2025 Plaintiff formally proposed a structured stipulation to resolve the matter to Defendant Blado intentionally who failed to advocate for or present to the tribunal. Again, in May 2025, Plaintiff submitted a formal mediation and settlement agreement directly to Defendant Saatjian and the Court. The tribunal and the Defendants summarily rejected this resolution, demonstrating a collective intent to prevent any outcome that would expose the Enterprise's racketeering, the forged FOAHs, and the

-163-

jurisdictional nullities of the case. Their refusal to settle confirms that the litigation was not a dispute between parents, but a revenue-generating criminal project that required the active suppression of any resolution.

**112. The April 2026 Proof of Intent: Prioritizing Laundering over Child Well-Being:** The Enterprise's criminal intent was definitively unmasked in April 2026, when Plaintiff proposed a definitive settlement offer to Petitioner Truitt, offering unconditional access to community retirement funds for the sole purpose of stabilizing the minor child's well-being and ending the litigation. Petitioner Truitt—acting in concert with the Enterprise's agenda—categorically refused. This refusal is the ultimate evidence of the Enterprise's purpose: the ongoing abuse of Plaintiff and the child was never about financial necessity or "child welfare," but about maintaining the 'litigation war' to launder the Enterprise's prior orders and fraud through the state tribunal. By rejecting funds for the child's stability in favor of continuing the litigation, the Defendants and Petitioner proved that their objective is the continued institutionalization of the fraud and the protection of the racketeering enterprise's criminal record. This persistence in abuse, despite the availability of an immediate, child-centered resolution, is the direct impetus for Plaintiff's federal 42 U.S.C. § 1983 action; federal equitable intervention is now the only mechanism capable of halting this state-sanctioned laundering of extrinsic fraud and criminal racketeering.

-164-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ;
DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

**113. The "Shadow" Enterprise and Ghostwriting Fraud:** The Enterprise's persistence in abuse became even more apparent when Defendant Saatjian, despite formally substituting out of the case in early 2026 following investigations by the State Bar, continued to act as the Enterprise's primary legal architect. Petitioner Truitt engaged in a pattern of "shadow representation," utilizing Saatjian as a ghostwriter for critical court filings—a deception intended to mislead the court regarding the true origin of the litigation tactics and the continued, illicit involvement of counsel under criminal investigation. On May 22, 2026, Plaintiff definitively unmasked this fraud, presenting the tribunal with physical evidence of the deception: court-filed declarations submitted in March and May 2026 that contained Saatjian's embedded metadata and active contact phone numbers, effectively 'signing' the documents from the shadows. Despite this incontrovertible evidence and Plaintiff's formal demand for the electronic metadata files to expose the true authorship, the trial court categorically refused to demand the truth on the record or investigate the fraud. This refusal to act in the face of glaring evidence of authorship fraud is a critical act of judicial complicity. It demonstrates that the Enterprise's control over the state tribunal is absolute; the court's refusal to investigate the "ghostwriter" proves that the judiciary is actively protecting the Enterprise's criminal footprint, ensuring the litigation proceeds as a laundered mechanism for institutionalized fraud.

-165-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ;
DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

**114. Evidentiary Foundation and the Necessity of Discovery:** The factual allegations presented herein represent only the foundational evidence of the Enterprise's criminal footprint; comprehensive federal discovery is essential to expose the full depth and reach of this conspiracy. This entire chronology is corroborated by the official Register of Actions in Case No. 23FL000584C and summarized in the Master Forensic Matrix ("Matrix A") attached at the end of this Verified Complaint, incorporated herein as the definitive evidentiary roadmap of the Enterprise's activities. Plaintiff anticipates that formal discovery will unearth further internal communications, banking records, and metadata files that will substantiate the full extent of the Defendants' racketeering operation.

**115. The Ongoing and Proliferating Nature of the Racketeering Activity:** The Enterprise's criminal objectives remain active, ongoing, and evolving. The racketeering activity has not ceased; rather, it is currently proliferating through concurrent legal actions, including pending civil rights litigation under 42 U.S.C. § 1983 and active malpractice proceedings. The Enterprise's continued efforts to shield its fraudulent activity are evidenced by the recent order in the related malpractice action dated July 6, 2026 (**Exhibit 10**), which underscores the sustained and unabated nature of the Defendants' professional misconduct and their refusal to accept judicial accountability. This chronology serves as the preliminary evidentiary record of a criminal syndicate that continues to operate with impunity,

-166-

requiring the immediate and permanent intervention of this Court to halt the ongoing looting of the estate and the further subversion of the rule of law.

**116. Conclusion of Federal Subject Matter Jurisdiction:** Plaintiff's claims do not ask this Court to adjudicate the dissolution of marriage or support amounts. Rather, Plaintiff seeks relief for the **independent federal torts** committed *during* the pendency of the underlying litigation. These racketeering activities remain ongoing and have proliferated into concurrent proceedings, including active malpractice litigation, where Defendants continue to engage in active obstruction and evidence suppression to cover up their initial extrinsic fraud. Consequently, this Court's intervention is required not to disturb state-court judgments, but to address the independent federal criminal enterprise that has systematically utilized those proceedings as a vehicle for capital theft. The Enterprise's misuse of the state judicial process as a mechanism to commit wire fraud, extortion, and obstruction of justice confers clear federal jurisdiction under 18 U.S.C. § 1964(c). To abstain would be to grant the Defendants a "license to loot," allowing them to successfully launder their predicate criminal acts through the state court's seal of approval. Consequently, federal equitable intervention is not only appropriate; it is the only remaining mechanism to halt the ongoing, systematic destruction of the Plaintiff's property and liberty rights

## 2. Legal Theory (of Section III)

| 2 | Legal Theory & Precedent (Paragraphs 117-119) | Anchors the "why" by applying *Reves*, *Boyle*, and *Flatley* to the Defendants' conduct. |
|---|---|---|

**117. RICO Enterprise Standards (The Reves and Boyle Tests):** The Defendants' actions satisfy the strict requirements for RICO liability, as established by the Supreme Court. Under the *Reves* "Operation and Management" test (*Reves v. Ernst & Young*, 507 U.S. 170 (1993)), liability attaches to those who play "some part" in directing the enterprise's affairs. Here, the Defendants acted as a unified directive body: Defendant Saatjian exerted control as the "Architect" of the fraudulent litigation; Defendant Schulman exerted control as the "Financial Shield," directing the sabotage of discovery and the unauthorized siphoning of estate funds; and Defendant Blado exerted control as the "Enforcer," directing the suppression of evidence and maintenance of the "evidence blackout." Furthermore, per the *Boyle* "Association-in-Fact" test (*Boyle v. United States*, 556 U.S. 938 (2009)), the Enterprise possessed the requisite "purpose, relationships among those associated, and longevity." The relationship between these Defendants established a clear, ongoing criminal hierarchy that persisted through the hand-off of the "Enforcer" role from Schulman to Blado, ensuring the continuity of the racketeering scheme.

-168-

**118. The *Flatley* Standard (Extortion as RICO Predicate):** Per *Flatley v. Mauro*, 39 Cal. 4th 299 (2006), the use of legal threats to extort or silence a victim is not protected speech or "zealous advocacy." The Defendants' pattern of conduct transcends the bounds of legal representation and constitutes criminal extortion, as they systematically utilized the threat of professional abandonment or legal destruction to coerce Plaintiff into complicity with their racketeering scheme. The Defendants' conduct was not merely a dispute over fees, but a coordinated effort to insulate their criminal footprint by silencing the victim through illegal coercion (Exhibit 3, 4, 10, 12 & 13).

**119. Application of Extortionate Predicates to Defendants:** The Enterprise's pattern of conduct satisfies the elements of extortion as follows:

- **Defendant Saatjian's Extortion:** Saatjian utilized the threat of criminal prosecution (the District Attorney report) to coerce Plaintiff into abandoning her civil appeals and constitutional rights (Exhibit 3, 4).

- **Defendant Schulman's Extortion:** Schulman engaged in direct coercive extortion, threatening to abandon the Plaintiff—and filing a hostile *ex parte* motion on October 23, 2024—unless Plaintiff signed a $150,000 stipulation. This coercive act was designed solely to force Plaintiff to cede control of the community estate, securing his role as the primary financial beneficiary of the "captive fund" (Exhibit 6, Attachment A-E; Exhibits 10, 15, 16, 17).

-169-

- **Defendant Blado's Extortion and Abandonment:** Blado utilized the same extortionate framework, threatening to abandon the Plaintiff unless she responded to the motion to compel by falsely assuming blame for the Enterprise's own manufactured discovery failures. Despite Plaintiff's documented instructions to expose the fraud to the tribunal, Blado colluded with Saatjian to preserve the fraudulent orders and undermine Plaintiff's attorney-client privilege. When Plaintiff refused to succumb to this coercion and instead fulfilled her fiduciary duty by exposing the racketeering on March 18, 2025, Blado retaliated by immediately abandoning her—but not before he had finalized the unlawful extraction of her relocation trial funds. This was a "hit-and-run" extraction operation designed to strip Plaintiff of her capital before withdrawing from the Enterprise's criminal footprint (Exhibit 6, Attachment E; Exhibits 15, 16, and 17).

-170-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

## 3. Forensic Matrices (The "Map") of Section III

| | Forensic Matrix | Provides the visual roadmap of Predicate Acts |
|---|---|---|
| 3 | Forensic Matrix (Paragraph 120) | Provides the visual roadmap of Predicate Acts and the "Modus Operandi" of the Enterprise. |

**120. The Enterprise Predicate Act Chronology (Forensic Matrix Summary):** To assist the Court in synthesizing the vast scope of the Defendants' racketeering operation, the following matrix provides a forensic roadmap of the Enterprise's criminal conduct. This summary maps the chronological progression of the Enterprise's objectives against the specific RICO predicate acts committed at each stage. It demonstrates a sophisticated, escalating pattern: moving from the initial embezzlement of assets to procedural paralysis, into a sustained "fee-churning" revenue model, culminating in active witness suppression and the judicial laundering of fraudulent orders through the state forum. This phased evolution confirms that the Defendants' conduct was not a series of disconnected legal errors, but a disciplined, ongoing criminal project aimed at the systematic deprivation of Plaintiff's property and liberty rights.

**The Enterprise Predicate Act Chronology (Forensic Matrix Summary)THE ENTERPRISE PREDICATE ACT CHRONOLOGY & FORENSIC MATRIX SUMMARY**

| Phase | Date Range | Enterprise Objective | RICO Predicate Acts | Supporting Exhibits & Section VIII Integration |
|-------|-----------|---------------------|---------------------|----------------------------------------------|
| **Phase I** | 01/19/23 – Nov 2024 | Capital Theft & Asset Control | Wire Fraud (18 U.S.C. § 1343), Federal Embezzlement (§ 666), Honest Services Fraud (§ 1346) | **Exhibits 1, 2, 5, 6 (A, B, D, E), 10; Section VIII (Master Forensic Matrix A & RICO Claim Matrix)** |
| **Phase II** | 10/15/24 – Ongoing | Procedural Paralysis | Mail/Wire Fraud (18 U.S.C. §§ 1341, 1343), Obstruction of Justice (§ 1503), Extrinsic Fraud | **Exhibits 1, 6 (A–E), 10, 14, 15, 16, 17; Section VIII (Master Forensic Matrix A & RICO Claim Matrix)** |
| **Phase III** | 01/2025 – Ongoing | The "Fee-Churning" Pipeline | Hobbs Act Extortion (18 U.S.C. § 1951), Fraud Upon the Court, Criminal Forgery (Penal Code § 470) | **Exhibits 1, 2, 3, 6 (Att. A), 7, 10, 15, 16, 17; Section VIII (Master Forensic Matrix A & RICO Claim Matrix)** |
| **Phase IV** | 09/2025 – Ongoing | Whistleblower Suppression | Witness Tampering & Intimidation (18 U.S.C. § 1512), Prior Restraint / Judicial Gag Orders (VL Status) | **Exhibits 1, 2, 3, 4, 8, 12, 13, 20; Section VIII (Master Forensic Matrix A & Supplemental Mappings)** |
| **Phase V** | 01/2026 – 08/2026 | Judicial Laundering / "Sham Trial" | Obstruction of Justice (18 U.S.C. § 1503), RICO Conspiracy (§ 1962(d)), Appellate Stay Defiance (CCP § 916) | **Exhibits 1, 8, 9, 10, 14, 19, 20; Section VIII (Master Forensic Matrix A & RICO Claim Matrix)** |

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

## 4. Chronological Execution (Paragraph 121) of Section III

| Order | Component | Purpose |
|---|---|---|
| 1 | Enterprise Overview (Paragraphs 98–117) | Establishes the "Association-in-Fact" and the broad logic of the racketeering scheme. |
| 2 | Legal Theory & Precedent (Paragraphs 117-119 ) | Anchors the "why" by applying *Reves*, *Boyle*, and *Flatley* to the Defendants' conduct. |
| 3 | Forensic Matrice (Paragraph 120) | Provides the visual roadmap of Predicate Acts and the "Modus Operandi" of the Enterprise. |
| 4 | **Chronological Execution (Paragraph 121)** | Transitions from theory to fact, detailing the "Phase-by-Phase" execution of the playbook. |
| 5 | Granular Factual Narrative (Paragraph 128) | Presents the detailed, date-specific predicate acts and evidence (starting at ¶ 128). |

121. **Chronological Implementation (The Enterprise Predicate Act Chronology (Forensic Summary):** Having established the systemic framework of the Enterprise's racketeering operation, the roles of its coordinated members, the statutory basis for these predicate acts and the specific methodology of sabotage used to insulate the Enterprise from review, **the Court must now examine the chronological execution of this playbook.** The following factual narrative details the individual 'predicate events'—beginning with the late 2024 jurisdictional ambush—that transformed the state judicial forum into a private engine for capital theft.

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

**121a. The Blueprint for Structural Paralysis/The "Criminal Modus Operandi" :** To facilitate the wholesale looting of the marital estate, the Enterprise executed a coordinated "ambush" designed to render Plaintiff legally and financially defenseless. This was a collective endeavor: Defendant Saatjian served as the primary architect, Defendant Schulman acted as the initial "internal shield," misrepresenting facts to the court to manufacture procedural defaults and engineer a financial and procedural vacuum. Schulman engaged in a flagrant *quid pro quo* racketeering arrangement: he systematically sabotaged the Plaintiff's case and orchestrated the destruction of her credibility in the eyes of the tribunal to ensure the "litigation war" remained active and lucrative; in exchange for this destruction, he illicitly siphoned $150,000 of community funds into his own private client trust account, utilizing his position as counsel to loot the very estate he was sworn to protect. Finally, Defendant Blado served as the operational enforcer, tasked with suppressing discovery, maintaining the evidence "blackout," and ensuring the continuity of the fee-churning scheme. Petitioner Truitt—while not a named defendant in this RICO action—functioned as the primary beneficiary and essential "fuel" of the Enterprise, actively conspiring to breach his fiduciary duties and violate Automatic Temporary Restraining Orders (ATROs) to ensure the Enterprise's continued operation. To facilitate the extraction of the estate's capital, the Enterprise first had to ensure Plaintiff was structurally incapable of mounting a legal defense. Recognizing that Plaintiff possessed a meritorious legal position and

-174-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ;
DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

presumptive rights to the community assets, Defendants engineered a calculated strategy of extrinsic fraud to permanently paralyze her advocacy. **This initial phase of the conspiracy was defined by three coordinated objectives:**

- **1. The intentional fabrication of a "discovery non-compliance" record** (Exhibit 10),

- **2. The illicit procurement of void bifurcation orders (Exhibit 5)** to bypass standard property division, and

- **3. The deliberate blinding of the state tribunal (related cases: Family case 23FL000584C and 1983 Case 26CV3765-JES-DEB).**

**122. The "Criminal Modus Operandi":** By executing these three coordinated objectives (**1. The intentional fabrication of a "discovery non-compliance" record, 2. The illicit procurement of void bifurcation orders and 3. The deliberate blinding of the state tribunal**), the Enterprise transformed the state judicial forum into a private instrument for capital theft. This was not a pursuit of legal remedies, but a sophisticated racketeering operation designed to paralyze the Plaintiff, insulate the perpetrators from liability, and convert community property into 'fee-churning' revenue. The Enterprise operated as a closed-loop system: first, by manufacturing procedural crises to bankrupt the Plaintiff; second, by using fraudulent court orders to seize control of the assets; and third, by blinding the

-175-

tribunal to ensure these crimes remained shielded from appellate or federal review. **This conspiracy was defined by the following distinct, documented objectives, each constituting a predicate act in the Enterprise's ongoing racketeering scheme**:

- **1. Fabrication of Discovery "Non-Compliance"(Oct 2024):** As formally validated by the Court in *Lancranjan v. Schulman* (Case No. 25CU054361C, Minute Order dated July 6, 2026 ( Exhibit 10), the Enterprise manufactured a record of discovery default. The Court explicitly validated that evidence of Plaintiff's compliance existed, confirming that Defendant Schulman's sworn declarations to the contrary were 'not supported by the evidence.' This was a calculated, malicious fabrication; the manufacture of this procedural default served as the necessary pretext to neutralize the Plaintiff's defense, allowing Schulman to simultaneously execute the unauthorized extraction of $150,000 of community funds into his private trust account. This sequence establishes a clear *quid pro quo*: Schulman sabotaged the Plaintiff's case to manufacture the very 'chaos' that facilitated his looting of the estate. The Enterprise systematically manufactured a record of discovery default to create a pretext for sanctions and procedural leverage, **thereby fueling an unconscionable fee-churning scheme**. This sabotage was inextricably linked to Schulman's illicit financial activity: on October 3, 2024, Schulman unilaterally removed the *ex parte* application intended to freeze the

-176-

community estate, an act of betrayal that coincided precisely with his negotiation of the unauthorized $150,000 transfer into his own client trust account. By manufacturing "non-compliance" to keep Plaintiff distracted and sanctioned, while simultaneously abandoning the *ex parte* motion to freeze assets to facilitate the $150,000 transfer, the Enterprise successfully executed a *quid pro quo* racketeering scheme: they monetized their sabotage of the Plaintiff's case by extracting illicit fees directly from the very funds they were supposed to be protecting. **The Enterprise leveraged this manufactured non-compliance to create a 'hostile record' that served as the primary instrument for judicial abuse. By ensuring the Plaintiff was perpetually sanctioned and financially drained, the Enterprise created the very 'emergency' conditions they claimed to be 'managing,' thereby justifying the unauthorized extraction of $150,000 from the marital estate into Defendant Schulman's own trust account. (Orders under Appeal for extrinsic fraud under D086958 Exhibit 9)**

- **2. Illicit Procurement of Void Bifurcation (Oct-Nov 2024):** The Enterprise weaponized perjury to bypass statutory property division requirements. Defendant Saatjian submitted an FL-180 (Exhibit 5) falsely claiming that the bifurcation was "stipulated" and that mandatory final or updated financial disclosures had been provided, when neither was true. By blinding the trial court to these omissions, the Enterprise procured a void status-only

-177-

judgment, locking Plaintiff out of the marital estate while concealing millions in executive stock incentives. By blinding the trial court to these omissions, the Enterprise procured a void status-only judgment, which served as the "master key" to the marital estate; it effectively severed Plaintiff's control over community assets and insulated Petitioner Truitt's millions in executive stock incentives (Cerevance/Vividian) from mandatory discovery. This structural "lockout" was essential to the Enterprise's racketeering scheme: by stripping Plaintiff of her property rights and access to funds, they rendered her legally and financially defenseless, creating a "captive estate" from which the Enterprise could unilaterally extract and churn illicit attorney fees without the oversight or consent of the Plaintiff. **The procurement of the void bifurcation was a criminal 'siphoning' operation. By falsely stipulating to disclosures that were never provided, the Enterprise effectively bypassed the Court's ability to protect the community estate.** This status-only judgment functioned as a 'legalized' theft mechanism, granting the Enterprise exclusive, unmonitored control over the distribution of millions in executive stock incentives (Cerevance/ Vividian), which were then dissipated while the Plaintiff was barred from the discovery process required to trace them. (Judgement under Appel under extrinsic fraud under D086958/Exhibit 9)

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

- **3. Blinding the State Tribunal (Oct 2024-present):** The Enterprise executed a systemic "Record-Blinding" campaign throughout Case No. 23FL000584C to insulate these void orders from appellate review (D086958/Exhibit 9), including the categorical refusal to docket defensive filings and the obstruction of verbatim records by denying court reporters. When Plaintiff sought to expose this fraud, the tribunal acted in concert with the Enterprise to silence her; the Court repeatedly refused to set aside void motions and bifurcation orders procured through extrinsic fraud. Furthermore, the Enterprise obstructed Plaintiff's appellate rights by refusing to sign final denial orders, effectively creating a procedural dead-end to prevent review. Finally, in a blatant act of unconstitutional censorship, the tribunal weaponized the administrative Vexatious Litigant (VL) designation against the Plaintiff—who was acting as a Respondent protecting her rights—purely to gag her advocacy and prevent her from petitioning the court for redress. This weaponization is an essential component of the racketeering enterprise: by labeling a victim of abuse and financial theft as "vexatious" for attempting to expose perjury, the Enterprise effectively neutralized the only party capable of unraveling their scheme. This subversion is the core subject of Plaintiff's ongoing 1983 action (*Lancranjan v. Truitt et al.*, Case No. 26cv3765-JES-DEB) and federal RICO action (*Lancranjan v. Saatjian et al.*, Case No. 26-CV-02817-BAS-

-179-

VET), as these actions constitute documented evidence that the Enterprise intentionally manipulated and paralyzed the state court as a prerequisite to the total theft of Plaintiff's capital. **The 'Record-Blinding' campaign was the Enterprise's 'insurance policy' against discovery of their racketeering activity.** By obstructing court reporters and refusing to process defensive pleadings, the Enterprise created a 'lawless zone' where judicial officers were deprived of the verbatim record necessary to detect fraud. The subsequent weaponization of the Vexatious Litigant (VL) designation was the final act of this suppression: it transformed the Plaintiff from a 'victim of fraud' into a 'prohibited litigant,' a designation used solely to silence her evidence of perjury and insulate the Enterprise's criminal profit-sharing from the reach of the 4th District Court of Appeal and federal review. (Case under Appel D086958 regarding all orders and federal review under *Lancranjan v. Truitt et al.*, Case No. 26cv3765-JES-DEB and this RICO action).

123. The following matrix categorizes the **Enterprise's "Blueprint for Structural Paralysis/The "Criminal Modus Operandi",** detailing how each coordinated objective serves as a predicate act in the ongoing racketeering scheme

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

The "Criminal Modus Operandi" Matrix

THE "CRIMINAL MODUS OPERANDI" MATRIX (ENHANCED WITH EXHIBIT CROSS-REFERENCES & SECTION VIII INTEGRATION)

| Predicate Act Objective | Tactical Implementation (The "How") | Racketeering Intent (The "Why") | Status, Federal/Appellate Nexus & Supporting Exhibits (Exs. 1–20) |
|---|---|---|---|
| 1. Fabrication of Discovery "Non-Compliance" | Malicious fabrication of default; transmission of unserved "ghost motions" (e.g., Oct 15, 2024 discovery motion) via interstate wires in direct violation of California Rule of Court (CRC) 5.125; active suppression of evidence of compliance. | Manufacture a false record of non-compliance to provide pretext for punitive sanctions, manufacture non-compliance, destroy credibility, severe financial depletion, and catalyze the Enterprise's "fee-churning" revenue pipeline. | **Status & Nexus:** Orders under active appeal for extrinsic fraud (*Kougasian v. TMSL*, 359 F.3d 1136, Case No. D086958); formally validated by the July 6, 2026 Superior Court Order (Exhibit 10) establishing a "meritorious dispute" in the Schulman malpractice action (*Lancranjan v. Schulman*, Case No. 25CU054361C, Ref: 25CU054361C); subject to concurrent civil malpractice proceedings (*Lancranjan v. Blado*, Case No. 25CU055956C); and directly tied to the federal civil rights action (Case No. 26-CV-03765-JES-DEB) and this instant RICO action (Case No. 26-CV-02817-BAS-VET) challenging ultra vires August 2026 sham trial tracks **Exhibits & Section VIII:** Exhibits 1, 5, 6 (A–E), 10, 14, 15, 16, 17, 20; Section VIII (Master Forensic Matrix A & RICO Claim Matrix). |

-181-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

| | | | |
|---|---|---|---|
| **2. Illicit Procurement of Void Bifurcation** | Commission of perjury on official FL-180 forms (Exhibit 5); falsely certifying a mutual stipulation and the exchange of mandatory updated and final financial disclosures when none were provided. | Create a "master key" asset lockout; sever community property protections; and conceal millions of dollars in executive stock incentives (Cerevance / Vividian) from mandatory judicial division. | **Status & Nexus:** Status judgment under appeal for extrinsic fraud; subject to ongoing forensic asset tracing and tracing audits by expert Anna Addleman (Exhibit 12); targeted in concurrent federal litigation Subject of concurrent federal civil rights action (Case No. 26-CV-03765-JES-DEB)<br><br>**Exhibits** & Section VIII: Exhibits 1, 3, 5, 6 (A–E), 10, 12, 14, 20; Section VIII (Master Forensic Matrix A & RICO Claim Matrix). |

-182-

First Amended Verified Complaint (FAC) **FOR DAMAGES AND INJUNCTIVE RELIEF** ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

| | | | |
|---|---|---|---|
| **3. Blinding the State Tribunal** | Refusal to set aside void orders; obstruction of verbatim records by banning court reporters (violating *Jameson v. Desta*); docket manipulation (phantom dockets); and the weaponization of unconstitutional "Vexatious Litigant" (VL) pre-filing gag orders (Exhibit 8) to block defensive filings. | Neutralize the whistleblower victim; suppress evidence of criminal forgery, embezzlement, and witness intimidation; and shield criminal profit-sharing from appellate and federal review. | **Status & Nexus:** Orders under active appeal for extrinsic fraud (*Kougasian v. TMSL*, 359 F.3d 1136, Case No. D086958); formally validated by the July 6, 2026 Superior Court Order establishing a "meritorious dispute" in the Schulman malpractice action (*Lancranjan v. Schulman*, Case No. 25CU054361C, Ref: 25CU054361C); subject to concurrent civil malpractice proceedings (*Lancranjan v. Blado*, Case No. 25CU055956C); and directly tied to the federal civil rights action (Case No. 26-CV-03765-JES-DEB) and this instant RICO action (Case No. 26-CV-02817-BAS-VET) challenging ultra vires August 2026 sham trial tracks; **Exhibits & Section VIII:** Exhibits 1, 2, 3, 4, 8, 9, 10, 12, 13, 14, 19, 20; **Section VIII (Master Forensic Matrix A & Supplemental Mappings).** |
| **4. Federal Embezzlement & Wire Fraud ($150,000 Theft)** | Unauthorized, off-record execution of a $150,000 transfer into Schulman's private trust account; intentionally taking the protective *ex parte* asset freeze off-calendar in a corrupt quid pro quo. | Strip the Plaintiff of defensive liquidity; create a "captive fund" to bankroll the Enterprise's fee-churning litigation tactics while ensuring Plaintiff is rendered financially destitute. | **Status & Nexus:** Judicially validated as a "meritorious dispute" by the July 6, 2026 Minute Order (Exhibit 10). **Exhibits & Section VIII:** Exhibits 1, 6 (Att. B, D), 10, 12; **Section VIII (Master Forensic Matrix A & RICO Claim Matrix).** |

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

| | | | |
|---|---|---|---|
| 5. Criminal Forgery & Wire Fraud ($115,000 Theft) | Physically forging Plaintiff's signature onto the May 15 and June 24, 2025 FOAHs; transmitting these forged instruments via electronic court wires to bypass the CRC 5.125 review process. | Circumvent the adversarial process to unlawfully siphon an additional $115,000 directly to the Enterprise's firm and launder the extraction into an enforceable, binding judicial record. | **Status & Nexus:** Confirmed as "Moral Turpitude" and criminal forgery by Legal Ethics Expert Edward J. McIntyre (Exhibit 3).<br><br>**Exhibits & Section VIII:** Exhibits 1, 3, 6 (Att. A); **Section VIII (Master Forensic Matrix A & RICO Claim Matrix).** |
| 6. Honest Services Fraud & Wire Fraud ($15,000 Retainer Theft) | Extracting a $15,000 trial retainer under the guise of representation, followed immediately by a coordinated "hit-and-run" abandonment on the eve of the move-away trial. | Finalize the structural defenselessness of the victim by liquidating her last remaining parity funds, while simultaneously withdrawing to shield the Enterprise's ongoing fraud. | **Status & Nexus:** Ratification of prior thefts exposed via internal fiduciary emails (Exhibit 6C); documented in official trial transcripts.<br><br>**Exhibits & Section VIII:** Exhibits 1, 6 (Att. C), 15, 16, 17; **Section VIII (Master Forensic Matrix A & RICO Claim Matrix).** |
| 7. Hobbs Act Extortion & Witness Tampering | Transmitting written threats of District Attorney prosecution (Saatjian); threatening professional abandonment (Schulman/ Blado); launching public smear campaigns against forensic expert (Addleman) and coercing trial counsel (Lee). | Coerce Plaintiff into abandoning civil appeals; suppress forensic tracing of the embezzled funds; and actively neutralize any competent legal or financial defense. | **Status & Nexus:** Evaluated as criminal extortion by State Bar ethics prosecutor (Exhibit 3); District Attorney investigation formally confirmed (Exhibit 4).<br><br>**Exhibits & Section VIII:** Exhibits 1, 3, 4, 7, 12, 13; **Section VIII (Master Forensic Matrix A & Supplemental Mappings).** |

**124. Legal Theory: Applying Precedent to the "Phase 1" and Ongoing Acts:**

The actions taken by the Defendants satisfy the strict requirements for RICO liability, as established by the following legal frameworks:

First Amended Verified Complaint (FAC) **FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET**

- **The *Reves* Test ("Operation and Management"):** Under *Reves v. Ernst & Young*, 507 U.S. 170 (1993), liability attaches to those who play "some part" in directing the enterprise's affairs. Here, the Defendants acted as a unified directive body: **Defendant Saatjian** exerted control as the "Architect" of the fraudulent litigation and the source of extortionate threats; **Defendant Schulman** exerted control as the "Financial Shield," actively directing the sabotage of discovery and the unauthorized siphoning of estate funds; and **Defendant Blado** exerted control as the "Enforcer," directing the ongoing suppression of evidence and maintenance of the "evidence blackout." Each Defendant occupied a distinct, necessary role in operating and managing the Enterprise's criminal infrastructure.

- **The "Association-in-Fact" Test:** Per *Boyle v. United States*, 556 U.S. 938 (2009), an enterprise requires only a "purpose, relationships among those associated with the enterprise, and longevity." The relationship between Defendants Saatjian, Schulman, and Blado established a clear, ongoing criminal hierarchy. Their purpose—to loot the marital estate through systemic procedural abuse—persisted over time, as evidenced by the hand-off of the "Enforcer" role from Schulman to Blado, ensuring the continuity of the racketeering scheme long after Saatjian's formal substitution.

- **The *Flatley* Standard:** Per *Flatley v. Mauro*, 39 Cal. 4th 299 (2006), the use of legal threats to extort or silence a victim is not protected speech or "zealous advocacy." Defendant Saatjian's use of the DA report/criminal threats to coerce Plaintiff is an act of criminal extortion, not a legal strategy (Exhibit 3, 4, 12&13). Crucially, Defendants Schulman and Blado ratified this extortion by utilizing the resulting "hostile record" to further their own fee-churning, proving their shared intent to maintain the Enterprise through illegal coercion. The Defendants' pattern of conduct transcends the bounds of legal representation and constitutes criminal extortion, as they systematically utilized the threat of professional abandonment to coerce Plaintiff into complicity with their racketeering scheme:

- **Defendant Saatjian's Extortion:** Saatjian utilized the threat of criminal prosecution (the District Attorney report) to coerce Plaintiff into abandoning her civil appeals and constitutional rights (Exhibit 3, 4, 12&13).

- **Defendant Schulman's Extortion:** Schulman engaged in direct coercive extortion, threatening to abandon the Plaintiff—and filing a hostile *ex parte* motion on October 23, 2024, to effectuate that threat—unless Plaintiff signed a $150,000 stipulation. This coercive act was designed solely to force Plaintiff to cede control of the community estate and the litigation strategy to

-186-

him, securing his role as the primary financial beneficiary of the "captive fund." (Exhibit 6, Attachment A-E and Exhibit 10, 15, 16, 17).

- **Defendant Blado's Extortion and Abandonment:** Blado utilized the same extortionate framework, threatening to abandon the Plaintiff unless she responded to the motion to compel by falsely assuming blame for the Enterprise's own manufactured discovery failures. This occurred despite Plaintiff's explicit, documented instructions to expose the truth and the Enterprise's underlying fraud to the tribunal. When Plaintiff refused to succumb to this coercion and instead fulfilled her fiduciary duty by exposing the Enterprise's racketeering through formal written correspondence filed on March 2025 and her sworn testimony on March 18, 2025, Blado retaliated by immediately abandoning her—but not before he had finalized the unlawful extraction of her capital designated for the relocation trial. On March 18, 2025, Blado actively colluded with Saatjian to preserve the Enterprise's fraudulent orders and undermine Plaintiff's attorney-client privilege. This act of abandonment, executed immediately upon the successful conversion of Plaintiff's trial funds, confirms that Blado's representation was never intended to facilitate a legal defense, but was a "hit-and-run" extraction operation designed to strip the Plaintiff of her remaining capital before withdrawing from the Enterprise's criminal footprint and concealing the Enterprise's fraud by preventing her from

-187-

presenting evidence to the court (Exhibit 6, Attachment E; Exhibits 15, 16, and 17).

**125. The Predicate Acts as the "Glue" of the Enterprise:** The Defendants' coordinated racketeering activity constitutes a "pattern" (at least two related acts) under 18 U.S.C. § 1961(1) and (5). Their combined conduct comprises the following predicate acts:

- **Wire Fraud (18 U.S.C. § 1343):** Each Defendant utilized electronic communications (e-filing systems, email, and wire transfers) to transmit forged FOAHs and unauthorized funds. Saatjian authored the fraud, Schulman siphoned the funds, and Blado utilized electronic obstruction to conceal the paper trail, all with the intent to defraud the tribunal and the Plaintiff (**Exhibit 3, 6, 8, and 10, SECTION VIII**).

- **Extortion (The Hobbs Act, 18 U.S.C. § 1951):** The Enterprise maintained its operation through the threat of destruction—specifically, Saatjian's threats of criminal prosecution, which the Enterprise used to keep the Plaintiff from accessing her own estate or seeking federal intervention (**Exhibit 3, 12 and 13SECTION VIII**).

- **Obstruction of Justice and Evidence Tampering (18 U.S.C. § 1503, § 1512):** This was the primary function of the Enterprise's "Enforcer" (Blado)

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

and "Shield" (Schulman). They engaged in a multi-year campaign to withhold the client file, delete metadata, and intimidate witnesses (Addleman/Lee) to ensure the Enterprise's "criminal modus operandi" remained hidden from judicial oversight. (**Exhibit 3, 5, 6, 12 -17, SECTION VIII**).

126. **Conclusion of Theory:** By mapping these acts to the *Reves, Boyle,* and *Flatley* standards, it is clear that this was not a series of individual legal errors. It was a functional, ongoing criminal syndicate. The Defendants utilized the state court as a "private engine for capital theft," and every action they took—from Saatjian's initial ambush to Blado's ongoing obstruction—was a deliberate, calculated step to sustain that engine.

127. **JURISDICTIONAL FOUNDATION AND INCORPORATION BY REFERENCE**: The procedural deprivations and fraudulent acts detailed herein are not isolated events; they are calculated predicate acts within a continuous racketeering enterprise as defined under 18 U.S.C. § 1961 et seq. For a comprehensive, verified chronology and forensic mapping of these acts, the Court is directed to the Exhibit 1&2 and the Matrix A: PLAINTIFF'S MASTER FORENSIC MATRIX OF CONSTITUTIONAL DEPRIVATIONS AND EXTRINSIC FRAUD, which is incorporated herein by reference and attached as the concluding supplement to this Complaint. This matrix provides the granular

-189-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ;
DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

evidentiary foundation for the Enterprise's pattern of racketeering activity, documenting the nexus between the state tribunal's procedural sabotage, the concealment of assets, and the resulting financial strangulation of the Plaintiff.

## 5. Chronological Execution of Section III (Paragraph 128)

| Order | Component | Purpose |
|---|---|---|
| 1 | Enterprise Overview (Paragraphs 98–117) | Establishes the "Association-in-Fact" and the broad logic of the racketeering scheme. |
| 2 | Legal Theory & Precedent (Paragraphs 117-119 ) | Anchors the "why" by applying *Reves*, *Boyle*, and *Flatley* to the Defendants' conduct. |
| 3 | Forensic Matrice (Paragraph 120) | Provides the visual roadmap of Predicate Acts and the "Modus Operandi" of the Enterprise. |
| 4 | Chronological Execution (Paragraph 121) | Transitions from theory to fact, detailing the "Phase-by-Phase" execution of the playbook. |
| 5 | Granular Factual Narrative (Paragraph 128) | Presents the detailed, date-specific predicate acts and evidence (starting at ¶ 128). |

128. **Completeness and Preservation of Rights:** The chronology set forth in this section provides a comprehensive overview of the Enterprise's racketeering activity, but it is not intended to be an exhaustive list of every granular event occurring over the multi-year conspiracy. A definitive, date-specific ledger of every predicate act, ensuring full compliance with the pleading requirements of FRCP

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

9(b), is provided in **SECTION VIII** and summarized in the **Master Forensic Matrix A** attached as a concluding supplement to this Verified Complaint and **Exhibit 1** and **Exhibit 2**. Furthermore, this chronology is corroborated by the official Register of Actions in the underlying family case (Case No. 23FL000584C/ Exhibit 6 E) and is inextricably linked to the facts and evidence currently before the Court in the Plaintiff's related legal actions, including: (i) the ongoing malpractice litigation against the Defendants (Lancranjan v. Schulman 25CU054361C and Lancranjan v. Blado 25CU055956C) ; (ii) the pending federal civil rights action under 42 U.S.C. § 1983 (*Lancranjan v. Truitt et al., Case No. 26cv3765-JES-DEB*); (iii) the appellate proceedings under *D086958*; and (iv) any other related legal actions arising from this Enterprise's misconduct. Plaintiff incorporates these related filings by reference and expressly preserves her right to present the full, granular details of all facts, evidentiary patterns, and additional predicate acts at the time of trial. This Complaint constitutes a living record of an active criminal conspiracy that continues to evolve, and Plaintiff reserves the right to present further evidence as discovery and judicial review progress.

**A. Phase 1: Jurisdictional Ambush and Extrinsic Fraud (Late 2024 – Early 2025)**

   **128. The October 15, 2024 Discovery Ambush:** The Enterprise initiated its campaign of extrinsic fraud on October 15, 2024, by transmitting an unnoticed,

-191-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

unserved discovery declaration via interstate wires. By intentionally hiding this filing from Plaintiff, the Enterprise manufactured a false record of non-compliance, successfully procuring prejudicial orders and sanctions ($25,000) that permanently poisoned the tribunal's docket. This was not a procedural oversight; it was a deliberate act of jurisdictional ambush designed to bypass due process and weaponize the court's own filing system against the victim. (Abuse of Process / Extrinsic Fraud / Civil RICO / RICO Conspiracy / Federal Wire Fraud & Extortion).

**129. Systemic Sabotage by Internal "Shield":** This procedural ambush was enabled by a calculated failure of representation by Plaintiff's then-counsel, Defendant Schulman, who served as the Enterprise's "internal shield." Rather than contesting the ghost-filed motion, Schulman actively suppressed the truth, refused to meet and confer, and intentionally failed to set aside the resulting void motions or defend the Plaintiff's fundamental rights. When Plaintiff was served on October 21, 2024, with an RFO for custody change based on this manufactured default, Schulman refused Plaintiff's urgent demands to remedy the record. Instead, he withheld the client file to prevent Plaintiff from mounting a defense, allowing the trial court to weaponize the attorney-client privilege against her—culminating in the court's demand for unredacted attorney bills on April 29, 2025. This coordinated sabotage persisted through a series of hearings throughout 2025 (March 18, 2025; April 29, 2025; May 15, 2025; June 10, 2025; July 8, 2025; and

-192-

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

September 2, 2025), during which the trial court repeatedly refused to set aside sanctions under CCP § 473(b) due to Schulman's documented "attorney fault." This sequence confirms that Schulman operated as an "insider" for the Enterprise, ensuring the Plaintiff remained sanctioned and legally defenseless to facilitate the fee-churning and asset theft described herein. (Breach of Fiduciary Duty / Legal Malpractice / Civil RICO / RICO Conspiracy / Constructive Fraud / Abuse of Process) (Register of Actions for Case No. 23FL000584C; Exhibit 6, Attachment E).

130. The Blado Succession and Continued Collusion (October 2024 – March 2025): Following the discovery of the October 21, 2024, fraudulent declaration and the unauthorized $150,000 transfer, Plaintiff substituted Blado into the case under the expectation of remedial action. Instead, Blado engaged in a secondary phase of the Enterprise's procedural sabotage. On October 29, 2024, Blado accepted retroactive service of the previously unserved discovery motion from Defendant Saatjian—a move designed to "legitimize" the fraud—without informing the Plaintiff. Blado further concealed the January 7, 2025, hearing on this void motion, intentionally blinding the Plaintiff to ensure she did not attend to expose the fraud. After Plaintiff refused to settle or accept liability for the Enterprise's manufactured defaults, Blado attended the hearing and facilitated the imposition of $3,500 in sanctions on Jan 7 2025; he subsequently failed to challenge an additional $1,500 sanction on January 5, 2025, despite the fact that

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

these discovery/disclosures failures were entirely attributable to the Enterprise's own obstruction. Blado further colluded in the Enterprise's agenda by failing to contest Saatjian's perjured claims that disclosures were provided—the very falsehood used to procure the void bifurcation. This culminated on March 18, 2025, when Blado's refusal to set aside motions or expose the $150,000 theft— while failing to contest the January 9, 2025, custody and support orders procured via extrinsic fraud—resulted in further $5,000 sanctions against the Plaintiff. For the full chronology of this collusion, including the November 5, 2024, orders filed March 18, 2025, the Court is directed to Exhibit 1 and the Register of Actions for Case No. 23FL000584C, which document a systematic pattern of attorney participation in the Enterprise's racketeering and fee-churning operations. (Breach of Fiduciary Duty / Legal Malpractice / Civil RICO / RICO Conspiracy / Constructive Fraud / Abuse of Process) (Exhibit 1; Exhibits 6-ERegister of Actions for Case No. 23FL000584C).

**131. The Unauthorized $150,000 Wire Extraction (October 2024):** Operating concurrently with the procedural ambush and entirely outside judicial authority, the Enterprise executed its first major capital extraction. Conspiring directly with Plaintiff's own legal counsel, Defendant Saatjian utilized interstate wires to orchestrate an unauthorized, off-record transfer of $150,000 from the marital estate to co-conspirator David Schulman (Plaintiff's then-counsel) (Exhibit 6, Attachment B). Successor counsel and co-conspirator Matt Blado was retained

-194-

by Plaintiff for the express purpose of securing her estate and exposing this illicit transfer. Instead of fulfilling this mandate, Blado—possessing actual knowledge of the theft (Exhibit 6, Attachment C)—actively concealed the wire fraud from the Court to insulate the Enterprise's fee-extraction pipeline. Compounding this betrayal, Blado colluded directly with the Enterprise to monetize his position, unlawfully extracting an additional $20,000 from the Plaintiff ($5,000 initial retainer and a $15,000 trial exaction on January 9, 2025). This coordinated sabotage served a dual purpose: it fatally prejudiced Plaintiff's legal defense while ensuring the Enterprise retained full control over the 'captured' marital assets to fuel its ongoing fee-churning operations (Civil RICO / RICO Conspiracy / Federal Wire Fraud).

**132. The FL-180 Perjury and Estate Lockout (Oct-November 2024):** To ensure Plaintiff could not fund a defense to expose the October wire fraud, Defendant officially locked Plaintiff out of her remaining $1,000,000+ estate by committing perjury on the FL-180 bifurcation judgment (Exhibit 5 and Exhibit 3). Defendants deliberately bypassed mandatory updated and final financial disclosures to permanently conceal the assets from judicial scrutiny *(Common Law Fraud&Federal Wire Fraud)*.

**133. Systemic Concealment and Criminal Forgery (July 2024-Present):** To prevent Plaintiff from challenging these fraudulent rulings, Defendants

-195-

intentionally and routinely violated California Statutory and Rules of Court especially 5.125 by hiding proposed orders from Plaintiff. When Plaintiff successfully intercepted and objected to these false orders, Defendants escalated the scheme to outright criminal forgery (Exhibit 3 and 6), fabricating Plaintiff's signature such as on the May 15 and June 24, 2025 FOAHs to force the fraudulent orders through the tribunal *(Federal Wire Fraud)*.

**B. Phase 2: The Monetization of Manufactured Non-Compliance and Status Quo Sabotage (Winter – Spring 2025)**

**134. The Monetization of the "Ghost Discovery" Trap and the January-March 18 2025 Setup:** Entering 2025, the Enterprise rapidly moved to monetize the jurisdictionally void October 15, 2024 "ghost discovery." Because the initial motion was never served, the tribunal failed to acquire personal jurisdiction, rendering the filing legally *void ab initio*. As a matter of law, a jurisdictionally void motion is incurable, and no subsequent appearance can retroactively validate it. Fully aware of this absolute jurisdictional defect, successor fiduciary Matt Baldo covertly appeared at a January 7, 2025 hearing entirely without Plaintiff's knowledge or authorization to deliberately manufacture the illusion of jurisdiction. This secret appearance functioned as an act of extrinsic fraud, successfully laundering the incurable, void motion into an active judicial weapon, allowing the Enterprise to immediately extract exorbitant attorney's fees and manufactured

**First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET**

sanctions. Defendant Saatjian compounded this theft at a subsequent March 18, 2025 hearing, utilizing the exact same incurably void "ghost motion" to extract an additional $5,000 in sanctions. Crucially, during this March 18 hearing, the Court explicitly stated on the record that in its thirty years on the bench, a litigant's constitutionally protected attorney-client privilege could not simply be pierced or lost in this manner. (Civil RICO / RICO Conspiracy / Extrinsic Fraud / Fraud Upon the Court / Abuse of Process / Breach of Fiduciary Duty / Legal Malpractice / Federal Wire Fraud) (Register of Actions for Case No. 23FL000584C/Exhibit 6E; Exhibit 1; Exhibit 6, Attachment E, Exhibit 10, 14-17).

**135. Forgery and the Unconstitutional Stripping of Privilege (March -April 2025):** Despite the Court's explicit oral ruling on March 18, Defendant Saatjian escalated his extortion via outright extrinsic fraud. Following the March 18, 2025 hearing, and subsequently for an April 29, 2025 hearing (which was convened specifically based on Plaintiff's *ex parte* motion to set aside the initial forgery), Defendant submitted materially false, unserved FOAHs. In these forged instruments, Defendant fraudulently wrote into the orders that Plaintiff had waived or lost her constitutionally protected attorney-client privilege. Relying entirely on these unserved forgeries, the blinded tribunal abruptly reversed its own stance sue sponte. As corroborated by the official court transcripts from March 18 and April 29, 2025 (Exhibit 14&15), the Court unconstitutionally stripped Plaintiff of her privilege and demanded the production of unredacted defense billing records

-197-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

without new evidence, without an evidentiary hearing, and entirely lacking a valid crime-fraud exception. (Civil RICO / RICO Conspiracy / Extrinsic Fraud / Fraud Upon the Court / Obstruction of Justice / Violation of Due Process / Federal Wire Fraud / Forgery / Breach of Fiduciary Duty) (Register of Actions for Case No. 23FL000584C/Exhibit 6-E; Exhibits 1, 5, 6E, 10–17).

**136. Appellate Sabotage, Perjury, and the Monetization of Stolen Privilege (May-Dec 2025):** Plaintiff fiercely resisted this constitutional deprivation, filing protective *ex parte* applications from May through July and escalating emergency writs to the California Court of Appeal, the California Supreme Court, and ultimately the United States Supreme Court (Exhibit 9). To guarantee the extraction of these privileged records before higher appellate intervention could occur, Defendant Saatjian committed active perjury on July 8, 2025, falsely stating to the trial court that Plaintiff's Supreme Court writ had already been denied. By successfully stealing these unredacted privileged communications, Defendant Saatjian obliterated Plaintiff's right to a fair trial, maliciously utilizing her own defense strategies against her to engineer total financial destitution. Defendant weaponized these stolen records to obtain over $10,000 in void sanctions to date, and explicitly demanded over $100,000 in additional manufactured sanctions in his December 29, 2025 Trial Brief. To prevent complete insolvency at the severely prejudiced January 2026 trial, Plaintiff was forced to incur massive debt to retain emergency trial counsel (Ms. Lee), while Defendant Saatjian successfully secured

-198-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

his ultimate extraction of over $250,000 in churned litigation fees from the estate. (Civil RICO / RICO Conspiracy / Obstruction of Justice / Extrinsic Fraud / Fraud Upon the Court / Abuse of Process / Breach of Fiduciary Duty / Legal Malpractice / Perjury / Federal Wire Fraud) (Register of Actions for Case No. 23FL000584C [Exhibit 6, Attachment E]; Exhibits 1, 5, 10–17).

137. Crucially, this fabricated record of non-compliance served as the proximate cause of Plaintiff's ultimate financial and professional ruin. During the March 18, 2025 hearing, Defendant Saatjian successfully weaponized the laundered discovery trap to completely destroy Plaintiff's credibility before the blinded tribunal. As explicitly stated on the record by the Court, it was this specific, manufactured "discovery non-compliance" that directly impacted and caused the denial of Plaintiff's interstate move-away trial. By utilizing the ghost unserved discovery motion from Oct 15 2024, to successfully change the 3h move away hearign scheduled for Nov 20 2024 via an ex parte and then prevented Plaintiff's relocation, the Enterprise intentionally trapped her in San Diego, precipitating catastrophic financial devastation, the forfeiture of her highly compensated executive career trajectory, destroying her parental, constitutional and her property rights and a continuous cascade of void orders designed to drain her remaining survival funds. *(This constitutes Extortion, systemic Wire Fraud (Counts I/II), and the proximate cause of Plaintiff's business and property destruction, as detailed in Exhibit 1, Exhibit 15&17).*

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

**138. Extrinsic Fraud and the January 9th 2025 Sabotage (Jan 2025):**

Concurrent with the discovery extortion, Defendant Saatjian executed a calculated attack on Plaintiff's psychological endurance and household stability at the January 9, 2025 hearing. To procure this attack, Defendant committed direct extrinsic fraud upon the tribunal, maliciously lying to the Court that Plaintiff's ex-spouse intended to file his taxes under a "head of household" status simply to artificially lower his child support obligations. Furthermore, Defendant actively weaponized the manufactured non-compliance from the unserved October 15, 2024 "ghost discovery" to fatally prejudice the tribunal against Plaintiff, successfully extracting additional, void attorney's fees at this exact hearing and granting the motion to change the custody and school status quo without detriment and a lawfull evidentiary hearing. (Civil RICO / RICO Conspiracy / Extrinsic Fraud / Fraud Upon the Court / Abuse of Process / Breach of Fiduciary Duty / Legal Malpractice / Federal Wire Fraud) (Register of Actions for Case No. 23FL000584C; Exhibits 1, 6, 16).

**139. (Jan 2025)** Utilizing this fabricated financial pretext and laundered discovery record, the Enterprise convinced the structurally blinded Court to abruptly shatter the minor child's established status quo—unlawfully stripping Plaintiff's rights over homeschooling and forcing unilateral medical vaccination. Defendant executed this disruption with the explicit knowledge that Plaintiff's move-away trial was pending in May—a trial Defendant had already successfully

-200-

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

delayed and maliciously expanded to two days via his October 24 *ex parte* to exponentially inflate litigation costs. The Enterprise did not execute this disruption for the welfare of the child, but strictly as a mechanism of asymmetrical extortion: engineered to inflict profound psychological terror, force Plaintiff into non-compliance with her own religious and medical convictions, manufacture massive out-of-pocket litigation expenses, and intentionally trap her in San Diego to ensure the destruction of her highly compensated executive career opportunities (including the State Street VP position and Fellsway Group contract).(Civil RICO / RICO Conspiracy / Extrinsic Fraud / Fraud Upon the Court / Abuse of Process / Intentional Infliction of Emotional Distress / Tortious Interference with Prospective Economic Advantage / Breach of Fiduciary Duty) (Register of Actions for Case No. 23FL000584C/Exhibt 6-E; Exhibits 1, 2, 6 [Attachment D], 14).

140. **(Jan-Feb 2025)**To guarantee Plaintiff could not appeal or challenge the illicit January 9th rulings, Defendant Saatjian deliberately embedded the destructive orders into a materially false, unserved FOAH submitted to the Court in February 2025. By intentionally withholding service, Defendant bypassed the adversarial process, ensuring the Court unwittingly ratified his lies. Concurrently, Defendant utilized this period of structural blindness to execute yet another hypocritical $1,500 extraction on February 4, 2025.(Civil RICO / RICO Conspiracy / Extrinsic Fraud / Fraud Upon the Court / Abuse of Process / Federal

-201-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ;
DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

Wire Fraud / Obstruction of Justice) (Register of Actions for Case No. 23FL000584C; Exhibits 1, 5, 6, 10–17).

**141. The February FOAH Forgery and Disclosure Hypocrisy (Feb 2025):** To maintain the unlawful freeze on the $1,000,000+ community estate, Defendant Saatjian had previously committed outright perjury on official judicial forms. Specifically, on the void FL-180 Judgment of Bifurcation, Defendant falsely swore under penalty of perjury that the bifurcation was "stipulated and that mandatory updated and final financial disclosures were fully exchanged on October 22 and November 12, 2024—an affirmative misrepresentation designed strictly to conceal hundreds of thousands of dollars in misappropriated funds. Despite this documented, active concealment, Defendant successfully weaponized the blinded tribunal on February 4 to sanction Plaintiff $1,500 for alleged "disclosure abuses." This represented the ultimate perversion of the judicial process: the Enterprise actively committed perjury to conceal a million-dollar estate, while simultaneously utilizing the tribunal to financially extract capital from the Plaintiff based entirely on their own manufactured extrinsic fraud.(Civil RICO / RICO Conspiracy / Extrinsic Fraud / Fraud Upon the Court / Abuse of Process / Breach of Fiduciary Duty / Legal Malpractice / Federal Wire Fraud / Perjury / Forgery / Obstruction of Justice) (Register of Actions for Case No. 23FL000584C; Exhibits 1, 5, 6, 10–17).

-202-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

**142. The Evidentiary Ambush and Extortionate May Trial (May 2025 Move Away Trial):** Building directly upon the fabricated discovery record and the illicitly procured FOAHs, the Enterprise executed their fatal strike against Plaintiff's interstate relocation during the May 2025 move-away trial. Five days prior to the trial, Defendant Saatjian executed a calculated evidentiary ambush, utilizing interstate wires to dump 45 illegally obtained, privileged exhibits onto the completely unrepresented Plaintiff. Concurrently, Defendant orchestrated an evidentiary ambush in May 2025, utilizing illicitly obtained privileged employment records to sabotage Plaintiff's interstate relocation, intentionally destroying her executive career trajectory (a $150,000+ loss) to geographically trap herRather than a lawful adjudication on the merits, Defendant weaponized the structurally blinded tribunal to orchestrate an extortionate sham proceeding. Exploiting Plaintiff's engineered defenselessness—having already frozen the $1,000,000+ estate to structurally bar her from retaining independent counsel—Defendant subjected Plaintiff to severe, targeted psychological, financial, and legal abuse in open court (as irrefutably documented across the May 12, 16, and 19, 2025 Court Transcripts). This systemic litigation abuse successfully engineered the denial of her Boston relocation, trapping her in San Diego and finalizing the destruction of her lucrative corporate career opportunities and total deprivation of her parental and property rights..(Civil RICO / RICO Conspiracy / Extrinsic Fraud / Fraud Upon the Court / Abuse of Process / Intentional Infliction of

-203-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ;
DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

Emotional Distress / Tortious Interference with Prospective Economic Advantage / Federal Wire Fraud / Obstruction of Justice / Violation of Due Process) (Register of Actions for Case No. 23FL000584C; Exhibits 1, 10–17).

**143. The $50,000 Extraction and May 20th Obstruction of Justice (May 2025):** The May trial was utilized not for judicial resolution, but as an engine for massive financial extortion. Through this maliciously expanded proceeding, Defendant churned and extracted over $50,000 in illicit litigation fees for the Enterprise. Compounding this extortion, Defendant falsely blamed Plaintiff for the trial's expansion, formally demanding the trial court allocate the entirety of this $50,000 manufactured fee-burn directly to Plaintiff's side of the community estate to accelerate her destitution. When the tribunal subsequently attempted to halt this financial hemorrhage at the May 20, 2025 hearing by issuing an oral directive to officially freeze the marital assets, Defendant committed active Obstruction of Justice. To keep the estate unprotected and ensure the Enterprise's continued access to the funds, Defendant intentionally withheld and refused to draft the mandatory protective FOAH. This calculated subversion directly facilitated the Enterprise's subsequent forged extractions. *(This coordinated sabotage constitutes predicate acts of Hobbs Act Extortion, systemic Wire Fraud, Obstruction of Justice, and RICO Conspiracy (Counts I, II, & IV), Abuse of Process (Count VI), and Intentional Infliction of Emotional Distress (Count V), as detailed in Exhibit 1).*

-204-

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

**144. Geographic Trapping and Logistical Attrition (May -Sept 2025):** The Enterprise's strategy of geographic and financial starvation culminated in the summer of 2025. Ultimately securing the final denial of Plaintiff's Boston relocation in August 2025 (predicated upon the maliciously expanded May 2025 trial), the Enterprise simultaneously executed a campaign of severe logistical attrition. Defendant orchestrated, and the blinded tribunal permitted, a unilateral relocation of the minor child to Vista, California, entirely without an evidentiary hearing. This manufactured geographic distance functioned as a direct financial drain, forcing Plaintiff to endure over two hours of 3 daily traffic exhaustion and incur tens of thousands of dollars in forced transit, gas, and vehicle repair costs. When Plaintiff attempted to mitigate this engineered financial and emotional abuse by filing two protective *ex parte* applications between June and August 2025, the structurally compromised tribunal denied the relief, forcing Plaintiff to incur further exorbitant litigation fees. Driven to the brink of total financial collapse by this systemic abuse of process, Plaintiff was forced to escalate her defense to the California Court of Appeal via extraordinary writs, ultimately securing a Domestic Violence Restraining Order (DVRO) hearing for September 10, 2025, in a desperate attempt to halt the Enterprise's unyielding extortionate pipeline.(Civil RICO / RICO Conspiracy / Abuse of Process / Extrinsic Fraud / Fraud Upon the Court / Intentional Infliction of Emotional Distress / Obstruction of Justice /

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

Violation of Due Process) (Register of Actions for Case No. 23FL000584C; Exhibits 1, 9, 10–17).

**145. The Weaponization of the DVRO and Retaliatory Sanctions (Sept 2025):** However, rather than providing the necessary judicial protection from June-September 2025 , at the September 10, 2025 hearing, the Enterprise actively weaponized this proceeding. Through continued extrinsic fraud and systemic litigation abuse, Defendant Saatjian successfully engineered the denial of the DVRO and maliciously procured an additional $5,000 in retaliatory sanctions against Plaintiff. This punitive extraction was designed strictly to penalize Plaintiff for seeking judicial protection, and accelerate her engineered destitution.(Civil RICO / RICO Conspiracy / Extrinsic Fraud / Fraud Upon the Court / Abuse of Process / Malicious Prosecution / Obstruction of Justice / Violation of Due Process / Federal Wire Fraud) (Register of Actions for Case No. 23FL000584C; Exhibits 1, 9, 10–17).

**146. Ratification Extortion, Criminal Forgery, and Retaliation:** Ratification Extortion and the Laundering of Stolen Capital: Defendant Saatjian relentlessly attempted to coerce Plaintiff into ratifying the $150,000 unauthorized transfer piecemeal. When Plaintiff explicitly refused to legitimize this theft (as documented across the April 29/Exhibit 17, May 15, and May 20, 2025 hearings), Defendant retaliated by utilizing the frozen estate to ensure she was completely denied statutory parity. To retroactively launder the initial extraction, Defendant utilized

-206-

interstate wires to submit a materially false FOAH regarding the transfer dated November 5, 2024 (which the Court unwittingly signed on March 18, 2025, after Defendant deliberately failed to serve the proposed order/Exhibit 15). Defendant subsequently lied to the Court on May 15, 2025, and weaponized this forged FOAH to prevent the void order from being set aside. *(This conduct constitutes predicate acts of Federal Wire Fraud (Count I/II), Fraud Upon the Court, and Abuse of Process (Count VI), as detailed in Exhibit 1, 15, 17)*

**147. Criminal Forgery and the $115,000 Extraction:** Operating under the structural protection of the financial freeze, the Enterprise escalated from concealment to outright forgery (Exhibit 3, 6-A,E). To bypass Plaintiff's formal objections to his false orders, Defendant Saatjian actively typed Plaintiff's signature onto FOAHs, including the May 15 and June 24, 2025 FOAHs. By falsely implying her consent to the tribunal, Defendant successfully executed the unlawful extraction of $115,000 in community funds directly to his own firm.Concurrently, Defendant orchestrated an evidentiary ambush in May 2025, utilizing illicitly obtained privileged employment records to sabotage Plaintiff's interstate relocation, intentionally destroying her executive career trajectory (a $150,000+ loss) to geographically trap her. *(These actions constitute predicate acts of Federal Wire Fraud (Count I/II), Forgery, and Intentional Infliction of Emotional Distress (Count V), as detailed in Exhibit 1, 3 6-A,E.)*

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

**148. Plaintiff's Counter-Offensive and Retaliatory Document Dumping (July-September 2025):** From July-September 2025, Plaintiff launched a procedural counter-offensive to dismantle the Enterprise's grip, filing *ex parte* motions to set aside the void motions, advancing a motion to compel mandatory discovery, and filing for a Domestic Violence Restraining Order (DVRO) to halt the manufactured abuse. Plaintiff successfully secured a full evidentiary hearing to expose the financial concealment. In direct retaliation, Defendant transmitted a 1,600-page unindexed document dump to sabotage Plaintiff's discovery rights, while concurrently advancing malicious filings to terminate her apartment lease, engineered specifically to render her unhoused and physically incapable of maintaining her jurisdiction. *(This retaliation constitutes Extortionate Leverage, Abuse of Process (Count VI), and RICO Conspiracy (Count IV, Exhibit 1, 2 3, 5,6, 7, 8, 12).*

**C. Phase 3: The Extortionate Execution and The Gag Order (Late 2025 – 2026)**

**149. Sept-Dec 2025/ Explicit Extortion and the November 20th Exposure:** The Enterprise's scheme faced total exposure in late 2025. On November 20, 2025, Plaintiff filed comprehensive motions to officially set aside the forged FOAHs and the void, perjured estate bifurcation. Facing imminent exposure, Defendant Saatjian escalated to explicit criminal extortion. He utilized interstate wires to

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

transmit written communications explicitly threatening Plaintiff with District Attorney prosecution and the manufacturing of a restraining order if she did not abandon her civil claims. This conduct—formally evaluated by legal ethics expert Edward J. McIntyre, a former State Bar of California Special Deputy Trial Counsel and ethics expert with over 40 years of experience, including 30 years on the San Diego County Bar Association Legal Ethics Committee—constitutes Hobbs Act Extortion, a core RICO predicate act (Count I/II), and triggers mandatory statutory penalties under the Tom Bane Civil Rights Act (Count III), as chronologically detailed in Exhibit 1. (Civil RICO / RICO Conspiracy / Hobbs Act Extortion / Tom Bane Civil Rights Act / Extrinsic Fraud / Fraud Upon the Court / Abuse of Process / Obstruction of Justice / Federal Wire Fraud) (Register of Actions for Case No. 23FL000584C; Exhibit 6E, Exhibits 1, 2, 3, 4, 5, 7, 8, 10–17).

**149a. Witness Intimidation and Obstruction (18 U.S.C. § 1512) (Nov 2025):** The Enterprise engaged in a systematic campaign of witness intimidation to suppress the disclosure of their financial fraud. Following this Court's November 6, 2025, order compelling Defendant Saatjian to produce necessary discovery, the professional environment for Plaintiff's retained forensic accountant, Anna Addleman—a highly credentialed CPA, CVA, CDFA, CFF, and CFE—became aggressively hostile. On November 17, 2025, Defendant Saatjian filed a public declaration attacking Ms. Addleman's professional integrity, competence, and objectivity, baselessly asserting that her report "WILL BE UNRELIABLE AND

-209-

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

INACCURATE" before she had even developed her opinions or findings. This orchestrated public character assassination was designed specifically to intimidate a court-retained expert, suppress the forensic tracing of misappropriated assets, and chill future expert engagement. The resulting hostility rendered it impossible for Ms. Addleman to continue her professional duties, forcing her firm to cease all work on the matter on November 18, 2025. By rendering Plaintiff unable to secure or maintain expert forensic testimony, the Enterprise effectively obstructed the discovery of their embezzlement, committing a predicate act of witness intimidation and obstruction of justice. (Civil RICO / RICO Conspiracy / Witness Tampering / Obstruction of Justice / Tortious Interference with Prospective Economic Advantage / Abuse of Process) (Exhibit 12: Declaration of Anna Addleman)

**150. The Ultimate Weaponization: The "Vexatious Litigant" Gag Order (Dec 2025)**: To guarantee Plaintiff could not defend her rights or expose the ongoing theft, the Enterprise weaponized the state tribunal through systemic extrinsic fraud, intentionally rendering the court an unwitting instrument of financial starvation. When Plaintiff formally notified the trial court on Nov-Dec 2025 of the active District Attorney investigation into the Enterprise's criminal forgery and requested a stay of proceedings—concurrently invoking her 5th Amendment rights and requesting statutory parity fees to retain specialized counsel —Defendant executed his final retaliatory strike. Knowing Plaintiff was financially

starved, Defendant procured a procedurally and statutorily void "Vexatious Litigant" pre-filing injunction on December 2, 2025. This unconstitutional gag order was procured entirely absent evidentiary merit and was designed strictly to strip Plaintiff of her 1st Amendment right to petition, ensuring she remained gagged, undefended, and structurally paralyzed while the Enterprise extracted the remaining estate. *(This constitutes a severe deprivation of 1st and 14th Amendment Rights (Bane Act - Count III), Abuse of Process (Count VI), and the culmination of the RICO Conspiracy (Count IV), as detailed in Exhibit 1.)*(Civil RICO / RICO Conspiracy / Tom Bane Civil Rights Act / Violation of 1st and 14th Amendment Rights / Extrinsic Fraud / Fraud Upon the Court / Abuse of Process / Obstruction of Justice / Federal Wire Fraud) (Register of Actions for Case No. 23FL000584C; Exhibits 1, 8, 9, 10–17)

151.(Dec 2025) Second, rather than addressing the merits of Plaintiff's forgery allegations, Defendant Saatjian submitted a deceptive declaration that merely counted the sheer volume of Plaintiff's filings. Defendant intentionally omitted the critical legal context: Plaintiff was the *Respondent*, filing defensive motions strictly to protect her remaining estate from the Enterprise's ongoing, unserved extractions, and to satisfy the mandatory procedural requirements for preserving those extrinsic fraud claims for appellate review. Procuring a pre-filing injunction by merely counting a financially starved Respondent's desperate pleas for help—while simultaneously ignoring documented written evidence of extrinsic fraud—is the

-211-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

very definition of a structural deprivation of due process, engineered by the Enterprise to finalize their extortion.(Civil RICO / RICO Conspiracy / Civil Rights Violations / Fraud upon the Court / Abuse of Process / Obstruction of Justice / Violation of 1st and 14th Amendment Rights) (Exhibits 1, 8, 9, 10, 14).

152. (Dec 2025-Jan 2026)To guarantee Plaintiff could not challenge this unconstitutional gag order, Defendant intentionally withheld service of the Findings and Orders After Hearing (FOAH), attempting to run out Plaintiff's appellate clock. This extrinsic concealment ultimately failed when the California Court of Appeal (Case No. D086958) intervened in February 2026, granting Plaintiff the explicit right to appeal the void VL order. (Civil RICO / RICO Conspiracy / Extrinsic Fraud / Fraud Upon the Court / Abuse of Process / Obstruction of Justice / Violation of Due Process / Federal Wire Fraud) (Exhibits 8, 9, 10, 14; Register of Actions for Case No. 23FL000584C).

153. The Zenith of Racketeering: Weaponization of the Gag Order (2026): The December 2, 2025, "Vexatious Litigant" order served as the zenith of the Enterprise's racketeering strategy, transforming a judicial decree into a weaponized barrier to all legal recourse. Following the December 2, 2025, Superior Court Order (Exhibit 8), the Enterprise successfully leveraged the gag order to block defense declarations across all forums. Most notably, on June 17, 2026, Defendant Truitt filed a reply declaration that, while formally attributed to him, perfectly

-212-

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

mirrored the restrictive and obstructionist strategy of Defendant Saatjian. By leveraging the VL order to characterize Plaintiff's appellate filings as "illegal," the Enterprise effectively turned the trial court into a "no-go zone" for Plaintiff's pleadings. This maneuver was executed during the period of Plaintiff's maximum vulnerability: on the eve of trial, after the Enterprise's ongoing financial starvation forced the withdrawal of Plaintiff's counsel, Ms. Lee, and while the trial court—consistently denying Plaintiff's requests for parity fees—refused (specifically between June 15 and June 17, 2026) to allow the filing of any defense declarations. This obstruction extended into the concurrent malpractice litigation on July 6, 2026 (Exhibit 10), where Defendant Schulman attempted to impose a $50,000 security bond, explicitly using the VL gag order. This coordinated obstruction left Plaintiff completely undefended, stripped of counsel, gagged by the VL order, and systematically barred from the evidentiary record to prevent the exposure of the Enterprise's ongoing fraud. This absolute and unconstitutional deprivation of Plaintiff's 1st Amendment right to petition for redress, fundamental right of access to the courts, and constitutionally mandated Due Process serves as the pivotal factual basis for this action under 42 U.S.C. § 1983 (Case 26CV3765-JES-DEB).

**(Civil RICO / RICO Conspiracy / Obstruction of Justice / Extrinsic Fraud / Fraud Upon the Court / Abuse of Process / Violation of 1st and 14th Amendment Rights / 42 U.S.C. § 1983 / Federal Wire Fraud)** (Exhibits 9, 10, 13, 14; Register of Actions for Case No. 23FL000584C).

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

**154. The Extortionate Trap and DA Threats (Oct-Nov 2025):** Leading up to December 2025, the Enterprise escalated to explicit criminal intimidation. Defendant transmitted written emails threatening Plaintiff with District Attorney prosecution to terrorize her into surrendering her civil claims. Facing a bad-faith campaign of criminal extortion orchestrated by a licensed attorney, Plaintiff was forced into a defensive posture, including lawfully invoking her 5th Amendment constitutional protections to shield herself from the Enterprise's coercive traps *(Federal Extortion* / Civil RICO / RICO Conspiracy / Civil Rights Violations / Hobbs Act Extortion / Intentional Infliction of Emotional Distress / Abuse of Process / Obstruction of Justice) (Exhibits 1, 3, 4, 7, 14).

**155. The December 2, 2025 'Vexatious Litigant' Gag Order (The Enterprise's Ultimate Weapon):** This calculated extortion culminated when the Enterprise leveraged Plaintiff's forced defensive posture—compounded by the Defendants' submission of forged procedural instruments and fraudulent declarations—to procure an unconstitutional 'Vexatious Litigant' (VL) pre-filing injunction. This order did not serve a legitimate litigation management function; it was a retaliatory weaponized gag order, formally stripping Plaintiff of her 1st Amendment right to petition the court for redress and finalizing the financial and procedural paralysis required for the Enterprise's racketeering scheme. By engineering this gag, the Enterprise successfully stripped Plaintiff of the ability to file responsive pleadings to the Defendants' predatory motions, creating an

-214-

unconstitutional 'blackout' that allowed the Defendants to advance their fee-churning pipeline unopposed while shielding their ongoing forgery and embezzlement from judicial review. (Civil RICO / RICO Conspiracy / Civil Rights Violations (Tom Bane Act) / Abuse of Process / Intentional Infliction of Emotional Distress / Obstruction of Justice / Fraud upon the Court / Violation of 1st and 14th Amendment Rights) (Exhibits 1, 8, 9, 10, 14)

**156. The Predatory *Ex Parte* Ambush, Incapacity of Counsel, and Tactical Weaponization of the Vexatious Litigant Order (Dec 19, 2025):** The Enterprise wasted no time weaponizing the unconstitutional gag order. On December 2, 2025, concurrent with issuing the void Vexatious Litigant order, the structurally blinded tribunal denied Plaintiff statutory parity and refused to stay the impending January 5 and 12, 2026 trial dates, effectively engineering a defenseless "execution trial" rather than a fair adjudication. Desperate to survive this procedural trap, Plaintiff incurred further debt, borrowing limited outside funds to hire limited-scope counsel (Attorney Salcido) for the express purpose of filing an emergency *ex parte* for parity. The court's summary denial of this parity, while granting the abuser's request to proceed, demonstrates the court's active participation in the Enterprise's "State-Created Danger" scheme, ensuring Plaintiff would remain unrepresented and destitute at trial. (Civil RICO / RICO Conspiracy / Civil Rights Violations (Tom Bane Act) / Abuse of Process / Obstruction of Justice / Violation of Due Process / 42 U.S.C. § 1983) (Exhibits 8, 10, 14).

-215-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

157. However, on December 17, 2025, shortly after conferring with Defendant Saatjian, Attorney Salcido suffered a sudden medical emergency and was forced to abruptly withdraw. Rather than stipulate to a mandatory continuance (CRC 3.1332), the Enterprise maliciously exploited this exact window of vulnerability. With explicit knowledge that Plaintiff was procedurally gagged, financially depleted, and actively scrambling to finalize replacement counsel (Ms. Lee, Plaintiff's current attorney of record), Defendant Saatjian executed a predatory, bad-faith *ex parte* application. His objective was to seize the remaining $35,000 in Defendant Schulman illegal trust to further churn unconscionable legal fees—the final remnant of the unauthorized $150,000 wire fraud from October 2024, from which the Enterprise had already extracted $115,000 via the forged June 24, 2025 FOAH. This calculated extraction of contested funds while the client was entirely unrepresented constitutes a predicate act of embezzlement and wire fraud. (Civil RICO / RICO Conspiracy / Federal Wire Fraud / Embezzlement (18 U.S.C. § 666) / Honest Services Fraud / Breach of Fiduciary Duty / Abuse of Process) (Exhibits 1, 6, 14, 15, 16, 17)

158. Knowing Plaintiff was procedurally blocked by the Vexatious Litigant (VL) order and desperately fighting for expert funds, Defendant Saatjian executed a blatant act of criminal extortion on December 18, 2025. In an explicit attempt to terrorize Plaintiff into abandoning her defense and her estate, Defendant transmitted an interstate email threatening her with criminal prosecution: *"Please*

-216-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

*be advised that making a false criminal complaint is a misdemeanor. Good luck to you, you are on notice."* (Bane Act / IIED). As formally evaluated by legal ethics expert Edward J. McIntyre, this written threat constitutes criminal extortion under *Flatley v. Mauro* and is not protected litigation conduct (Exhibit 3). This threat, combined with the Enterprise's ongoing litigation harassment, was designed to finalize the Plaintiff's total capitulation and the permanent looting of the marital estate. (Civil RICO / RICO Conspiracy / Hobbs Act Extortion / Intentional Infliction of Emotional Distress / Abuse of Process / Witness Tampering / Violation of 1st Amendment Rights) (Exhibits 1, 3, 7, 14).

159. When Plaintiff lawfully attempted to file her opposition to the *ex parte* seizure, the structural paralysis was absolute. Under the void VL order, Plaintiff was mandated to obtain the Presiding Judge's permission before filing any responsive pleading—a procedural hurdle that makes defending against a 24-hour *ex parte* motion temporally and physically impossible. Court clerks—both in-person and via the electronic filing system—expressly refused to accept Plaintiff's pleadings. Procedurally gagged, Plaintiff was forced to bypass the clerks and submit her responsive declarations via the court's physical drop box, virtually guaranteeing the trial court would not process her opposition in time (as of this day the Declaration is not in the Register of Action still). Further compounding this structural paralysis, Plaintiff's routine request for a court reporter was denied. When Plaintiff appeared at the *ex parte* hearing and formally objected to

-217-

proceeding without a reporter to preserve the record, the structurally blinded tribunal ignored the objection, as it had on prior occasions, ensuring the Enterprise's maneuver proceeded entirely unopposed and off the record.(Civil RICO / RICO Conspiracy / Civil Rights Violations / Abuse of Process / Obstruction of Justice / Violation of 1st and 14th Amendment Rights / Fraud Upon the Court) (Exhibits 6E, 8, 14; Register of Actions for Case No. 23FL000584C).

160. Within her drop-box filings, Plaintiff desperately reiterated her December 2, 2025 requests for statutory parity. She requested emergency distributions from her own estate for basic survival, attorney's fees to finalize replacement counsel, and funds for her new forensic accountant (Mr. Zimmer) to expose the Enterprise's missing capital. Yet, the trial court ignored the procedural ambush. Reversing its initial December 2 indication that it would authorize these funds, the court formally denied Plaintiff's request on December 19, 2025 effectively weaponizing the Enterprise's manufactured financial destitution to ensure she could not fund a defense against the ongoing extortion. (Civil RICO / RICO Conspiracy / Fraud Upon the Court / Abuse of Process / Breach of Fiduciary Duty / Violation of 14th Amendment Rights / State-Created Danger) (Exhibits 1, 10, 12, 14).

161. The Retaliatory Trial Demands and the Laundering of Fraud (Dec 29, 2025): Structurally blinded by the fraudulent 'Vexatious Litigant' gag order and the administrative obstruction of the court clerk, the state tribunal remained

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

intentionally ignorant of the Enterprise's ongoing criminal operations. Attempting to permanently cement their theft and launder their extrinsic fraud into enforceable judicial records, Defendant Saatjian submitted a verified Trial Brief on December 29, 2025, explicitly requesting the court to rely upon and formally enforce the void orders—specifically the forged Findings and Orders After Hearing (FOAH) and the fraudulent bifurcation of marital status—procured through their own criminal forgery, perjury, and extrinsic fraud. Furthermore, this Trial Brief served as a weapon of final financial liquidation, explicitly demanding the total destruction of Plaintiff's remaining retirement accounts and the imposition of an additional $100,000 in manufactured, punitive sanctions. This demand was not a good-faith litigation request; it was a direct, calculated act of retaliation intended to punish the Plaintiff for her lawful exercise of civil rights in exposing the Enterprise's forgery, witness intimidation, and underlying criminal racketeering scheme. By weaponizing the trial record in this manner, Defendants sought to convert their past predicate acts of fraud and embezzlement into final, unassailable state court judgments, thereby finalizing the "laundering" of their racketeering profits while the Plaintiff remained procedurally gagged and financially destitute. (Civil RICO / RICO Conspiracy / Civil Rights Violations (Tom Bane Act) / Abuse of Process / Intentional Infliction of Emotional Distress / Obstruction of Justice / Fraud upon the Court / Violation of 1st and 14th Amendment Rights) (Exhibits 1, 3, 5, 6, 8, 10, 14)

-219-

**162. The January 2026 Ex Parte Barrage and Tactical Hearing**

**Cancellation:** Empowered by the unconstitutional gag order, the Enterprise immediately launched a barrage of bad-faith attacks in early 2026 to cement their fraudulent record prior to an impending judicial transition. On January 5, 2026, knowing Plaintiff was procedurally gagged, Defendants maliciously submitted intentionally unserved, forged FOAHs to the tribunal in a bad-faith *ex parte* attempt to seize custody of Plaintiff's son. Most egregiously, on January 28, 2026, Defendant Saatjian executed a calculated *ex parte* maneuver that successfully canceled Plaintiff's April 6, 2026, evidentiary hearing. The timing of this cancellation was highly predatory: Defendant Saatjian actively deceived the tribunal to strike the hearing from the calendar just days before the original trial judge (Judge Morris) substituted off the case. By eliminating this hearing, Defendant strategically destroyed Plaintiff's sole opportunity to expose the forged instruments on the record to the original judge who presided over the underlying hearings. This intentional docket manipulation—occurring while the case was under an automatic appellate stay—rendered the subsequent proceedings a procedural nullity and effectively 'laundered' the Enterprise's past criminal acts by ensuring they were never subject to cross-examination or judicial correction during the original trial judge's tenure. This was an overt act of conspiracy to defraud the tribunal, ensuring that the "poisoned fruit" of the Defendants' previous forgeries remained the bedrock of the case file before a new judge could intervene. (Civil

-220-

RICO / RICO Conspiracy / Obstruction of Justice / Fraud Upon the Court / Abuse of Process / Violation of Due Process / 42 U.S.C. § 1983 / State-Created Danger) (Exhibits 1, 6, 8, 9, 10, 14.

**163. The "Hit-and-Run" Substitution, Ghostwriting Fraud, and Continuation of the Enterprise:** Having successfully paralyzed the Plaintiff, secured the void Vexatious Litigant gag order, and cemented the forged instruments into the official court record, Defendant Saatjian executed a tactical withdrawal. On January 30, 2026—a mere two days after successfully canceling the evidentiary hearing—Saatjian formally substituted out of the state court case. This calculated "hit-and-run" maneuver guaranteed that the newly assigned trial judge (who took over the case in February 2026) inherited a completely fabricated, structurally blinded case file. Crucially, this substitution was a calculated sham. Defendant Saatjian continued to act as the 'Shadow Architect,' actively ghostwriting critical court filings for the Petitioner, Truitt, while the Petitioner falsely maintained an appearance of *pro per* status. This deception, evidenced by the persistent appearance of Defendant Saatjian's digital metadata and direct contact information on filings submitted long after his formal withdrawal, constitutes an egregious fraud upon the court. By continuing to control the litigation strategy from the shadows, Saatjian successfully maintained the Enterprise's criminal footprint while insulating himself from direct accountability and continuing to subvert the truth-

-221-

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

seeking process. Despite Defendant Saatjian's formal substitution, the "Association-in-Fact" Enterprise remains fully operational. The non-party co-conspirators and the Enterprise's remaining actors continue to seamlessly weaponize the void orders and the structural paralysis engineered by Defendant Saatjian to extract the remaining estate capital and inflict ongoing, irreparable damage upon Plaintiff. Furthermore, the Defendants are aggressively rushing the matter to trial specifically to manufacture a 'final judgment' that serves as a laundering mechanism for their prior extrinsic fraud, systemic forgeries, and unauthorized extractions. This 'sham trial' is proceeding in direct, rogue defiance of the mandatory, non-discretionary stay triggered under California Code of Civil Procedure § 916(a) by the pending appellate review in Case No. D086958, which encompasses all challenged void bifurcation orders and subsequent extractions. The trial court's refusal to honor this automatic stay is a structural jurisdictional failure, actively enabling the Enterprise to inflict ongoing, irreparable damage upon Plaintiff by finalizing their criminal profit-sharing and laundering the underlying fraud into unassailable judicial decrees. (Civil RICO / RICO Conspiracy / Fraud Upon the Court / Obstruction of Justice / Abuse of Process / Violation of Due Process / Breach of Fiduciary Duty / 42 U.S.C. § 1983 / State-Created Danger) (Exhibits 1, 6, 8, 9, 10, 14; Register of Actions for Case No. 23FL000584C).

-222-

**D. Phase 4: The Final Extraction and Engineered Financial Collapse (Spring 2026)**

164. **The Engineered Financial Collapse and Disparate Tribunal Treatment (March 3 & 24, 2026):** The Enterprise's weaponization of the tribunal was explicitly demonstrated at the consecutive March 3 and March 24, 2026, hearings. Despite arguments from Plaintiff's newly retained counsel (Ms. Lee) regarding the profound evidentiary complexities of the underlying fraud, the court summarily denied Plaintiff statutory parity funds and essential limited discovery. The court issued these denials with the explicit knowledge that doing so would financially starve Plaintiff, particularly given the court was fully aware that Petitioner had already unilaterally extracted and spent over $250,000 from the community estate on his own counsel, while Plaintiff remained indigent due to the Enterprise's prior extractions. By denying parity, the court effectively guaranteed Plaintiff would be stripped of her new attorney and forced to navigate a highly complex fraud trial *in pro per* against an Enterprise funded entirely by the marital estate—an estate they had already looted. This denial constitutes a bad-faith, state-sponsored deprivation of access to counsel, facilitating the Enterprise's objective of asymmetrical financial attrition to ensure Plaintiff's total collapse before her evidence of forgery and embezzlement could be adjudicated. This conduct is a direct violation of California's mandatory parity statutes and a component of the ongoing racketeering scheme designed to engineer a defenseless "execution trial." (Civil

-223-

RICO / RICO Conspiracy / Civil Rights Violations (Tom Bane Act) / Abuse of Process / Obstruction of Justice / Violation of 14th Amendment Due Process / 42 U.S.C. § 1983 / Family Code § 2030 Parity Violations) (Exhibits 1, 10, 13, 14, 15, 16, 17).

**165. Coercion of Counsel, Structural Weaponization, and The April Extraction (March–April 2026):** The tribunal's structural weaponization by the Enterprise was starkly illuminated by its refusal to intervene against documented, verified extortion. At the March 24, 2026, hearing, Plaintiff's counsel (Ms. Lee) submitted a formal declaration dated March 13, 2026 (Exhibit 8), supported by contemporaneous December and January email evidence, proving that Defendant Saatjian actively attempted to coerce Ms. Lee into abandoning Plaintiff's defense through professional threats and intimidation. This evidence definitively exposed Saatjian's intentional retaliation—a maneuver designed to permanently paralyze Plaintiff's defense prior to his tactical substitution—while advancing the fabricated gaslighting narrative that Plaintiff's engineered bankruptcy was a byproduct of her own "litigation abuse." This false narrative was subsequently mirrored and codified in the ex-spouse's April 21, 2026, declaration, which served as the final evidentiary vehicle for the Enterprise's 'Phase 4' financial extraction. By ignoring this evidence of direct witness/counsel tampering and retaliatory coercion, the tribunal essentially ratified the Enterprise's criminal methodology and provided the 'judicial cover' necessary for the Defendants to continue their misappropriation of the

-224-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

marital estate. The court's failure to act on these clear signs of witness tampering constitutes an abdication of its duty to protect the integrity of the judicial process, leaving the Plaintiff in a state of manufactured defenselessness while the Enterprise executes its final asset-stripping phase. (Civil RICO / RICO Conspiracy / Hobbs Act Extortion / Witness Tampering / Tortious Interference with Contract / Abuse of Process / Fraud Upon the Court / Obstruction of Justice / Intentional Infliction of Emotional Distress) (Exhibits 1, 3, 4, 5, 7, 8, 13, 14, 18)

**166. The April 2026 "Ex Parte" Extraction, The Failure of Good-Faith Resolution, and the Necessity of Federal Intervention:** The tribunal's structural weaponization by the Enterprise was starkly illuminated by its refusal to intervene against documented extortion. On April 21, 2026, the ex-spouse filed a bad-faith, non-emergency *ex parte* application to extract the final remaining estate funds. Abusing the expedited process, the ex-spouse demanded liquidations from Plaintiff's retirement accounts—which the Enterprise had already illegally seized— as well as the extraction of the $35,000 remaining from the unauthorized October 2024 wire fraud. Rather than dismissing this abuse of process, the court actively coached the ex-spouse to file a motion on shortened notice and procure a supportive declaration from non-party co-conspirator Dave Schulman. To demonstrate the bad faith of this "emergency," Plaintiff, both personally (via email on April 22-23, 2026) and through counsel (Ms. Lee, on April 21, 2026), extended unconditional offers to split the retirement accounts immediately to resolve any

-225-

alleged emergency; the ex-spouse rejected these offers without reservation, confirming the Enterprise's objective is the laundering of prior fraud and retaliation against the Plaintiff. The court's active facilitation of this looting has left the Plaintiff with no viable state-level remedy, necessitating federal civil rights litigation (Case No. 25CV03765-JES-DEB) to hold the Enterprise accountable. This federal action—for which a hearing is now set for August 19, 2026—is vital to prevent the trial court from 'laundering' the fraud into a final, unassailable judgment before the RICO claims can be adjudicated. The Defendants are rushing to trial specifically to moot Plaintiff's claims; if the state court liquidates the estate and issues a final judgment, the federal court's jurisdiction over the RICO claim will be severely compromised, as the assets (the *res* of the racketeering enterprise) will have been dissipated and the fraudulent orders immunized. Plaintiff's filing to stay the state trial is therefore non-discretionary to protect the federal court's exclusive jurisdiction over these racketeering activities, to halt the ongoing State-Created Danger, and to prevent the destruction of Plaintiff's constitutional rights while the underlying fraud is exposed. (Civil RICO / RICO Conspiracy / 42 U.S.C. § 1983 / State-Created Danger / Abuse of Process / Fraud Upon the Court / Obstruction of Justice / Violation of 1st and 14th Amendment Rights) (Exhibits 1, 8, 10, 13, 14, 15, 18, 19).

**167. The Futility of State-Level Remediation and the Necessity of Federal Intervention:** Plaintiff remains trapped in a procedural 'catch-22' where the

tribunal enforces orders that are void *ab initio* due to extrinsic fraud, while simultaneously utilizing the 'Vexatious Litigant' (VL) pre-filing filter to deny Plaintiff the procedural parity required to challenge those orders on the merits. Although these orders are currently under appellate review (Case No. D086958), the Enterprise exploits the delay inherent in the state appellate process to permanently dissipate the estate, secure in the knowledge that they are shielded by a court-sanctioned 'blackout.' These orders hold no *res judicata* effect, as they were procured through criminal forgery, perjury, and extrinsic fraud; they are legal nullities that the state court is nonetheless weaponizing to finalize a 'sham judgment' that will immunize the Defendants from their prior racketeering activities. This tribunal's persistent enforcement of void decrees constitutes an unconstitutional abuse of process and a definitive act of 'State-Created Danger' by a coordinated criminal enterprise. The trial court is not functioning as a neutral arbiter, but as an active facilitator, shielding the Defendants' underlying financial crimes and imminent malpractice liability from discovery and adjudication.

Because the state court has prioritized the Enterprise's cover-up over Plaintiff's fundamental constitutional rights—effectively using the judicial docket as a laundering mechanism for past forgeries—federal intervention is the only mechanism available to prevent the permanent erasure of Plaintiff's rights and the total destruction of the community estate. The Defendants are rushing to trial specifically to 'cleanse' these void orders and bury the evidence of their

-227-

professional malpractice and embezzlement; thus, this federal intervention is necessary to protect the exclusive jurisdiction of this Court over the RICO claims and to halt the destruction of the evidentiary record. (Civil RICO / RICO Conspiracy / 42 U.S.C. § 1983 / State-Created Danger / Abuse of Process / Fraud Upon the Court / Obstruction of Justice / Violation of 1st and 14th Amendment Rights) (Exhibits 1, 6, 8, 9, 10, 14,

**E. Phase 5: Judicial Laundering and the Sham Trial (2026)**

168. **The Extortionate Motive and Fee Churning:** The Enterprise's extortionate scheme was engineered for a singular, highly lucrative purpose: unchecked fee churning. Throughout this coordinated operation, Defendant Saatjian successfully extracted over $250,000 in litigation fees. To protect this illicit fee pipeline, the Enterprise consistently refused all good-faith settlement efforts. Instead, Defendant Saatjian relied upon his intentionally forged orders while actively gaslighting and blinding the tribunal—maliciously accusing Plaintiff of "litigation abuse" to conceal his own racketeering. This 'churning' is not merely a byproduct of the litigation; it is the **engine** of the conspiracy. By engineering the 'Sham Trial' and laundering these frauds through the court record—as detailed in the preceding paragraphs—the Enterprise forces the Plaintiff to perpetually defend against fictitious emergencies, thereby generating billable hours for the Enterprise

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

and justifying the continued looting of the community estate to pay for those fees. This cycle is explicitly intended to bury the evidence of the Defendants' systemic professional malpractice and embezzlement under an avalanche of unmeritorious, court-sanctioned proceedings. Because the state tribunal has refused to intervene in this racket, providing the necessary judicial cover for the Enterprise to finalize their 'Phase 4' extractions, the Plaintiff is effectively being forced to finance her own destruction. (Civil RICO / RICO Conspiracy / Hobbs Act Extortion / Fraud Upon the Court / Abuse of Process / Breach of Fiduciary Duty / Violation of 14th Amendment Due Process) (Exhibits 1, 6, 14, 15, 16, 17).

**168a. Manufactured Sanctions and Financial Strangulation (2025–2026):** Further effectuating this theft, the Enterprise fabricated illegal accounting ledgers in June and November 2025, fraudulently shifting their exorbitant legal fees entirely onto Plaintiff's side of the marital estate ledger. Compounding the sanctions already extorted through the fabricated discovery trap, Defendant's December 29, 2025 Trial Brief maliciously demanded an additional $100,000 in manufactured sanctions. This systemic financial strangulation was executed with the precise knowledge that the initial unauthorized extractions had already successfully financially starved the Plaintiff. By unlawfully locking Plaintiff out of her capital, the Enterprise engineered the catastrophic destruction of her creditworthiness, driving her credit score into the low 500s and forcing her to rely on over $100,000 in survival debt and $40,000 in drained retirement accounts. This

-229-

engineered collapse reached a structural zenith during the Spring 2026 proceedings. Throughout the May 19 and 22, 2026, *ex parte* hearings, and the subsequent June 16–18, 2026, emergency filings, the state tribunal utilized the void Vexatious Litigant (VL) designation to systematically suppress Plaintiff's defensive pleadings and ignore her formal, documented complaints regarding administrative obstruction. The tribunal's 'blackout' culminated in the June 25, 2026, hearing, where the court—relying on the void VL gag—categorically denied Plaintiff a court reporter, refused to accept or docket her defensive response declarations, and issued a punitive, asymmetrical preclusion order barring Plaintiff from rebutting Petitioner's vocational evaluation or presenting any evidentiary defense at the upcoming execution trials. By proactively creating this 'phantom docket' and denying the Plaintiff access to the court's record, the tribunal has affirmatively engineered a 'State-Created Danger,' stripping Plaintiff of all procedural and substantive Due Process while finalizing the Enterprise's looting of the marital estate. (Civil RICO / RICO Conspiracy / 42 U.S.C. § 1983 / State-Created Danger / Abuse of Process / Fraud Upon the Court / Obstruction of Justice / Violation of 1st and 14th Amendment Rights) (Exhibits 1, 8, 10, 13, 14, 15, 16, 17)

**169. Destruction of Business and Property (The Boston Relocation):**

Crucially, the Enterprise's structural weaponization of the tribunal inflicted devastating, irreparable injuries to Plaintiff's business and property. Because the

-230-

Enterprise utilized the manufactured "discovery trap" to successfully block Plaintiff's medically and professionally necessary relocation to Boston, the Enterprise directly caused Plaintiff to forfeit highly lucrative, secured career opportunities—specifically, an Executive Vice President (VP) position with State Street Bank and an elite executive consulting contract. These lost executive wages, destroyed business prospects, and forced survival debts represent direct, quantifiable financial damages proximately caused by the Enterprise's predicate acts of wire fraud and extortion, entitling Plaintiff to mandatory treble damages under 18 U.S.C. § 1964(c). (Civil RICO / RICO Conspiracy / Hobbs Act Extortion / Fraudulent Concealment / Breach of Fiduciary Duty) (Exhibits 1, 14, 18, 19).

**170. The Necessity of Dual Federal Intervention (RICO and § 1983):** Plaintiff has initiated separate but symbiotic federal actions to address the bifurcated nature of this crisis: this Civil RICO complaint (targeting the private racketeering enterprise) and the parallel civil rights action (Case No. 25CV03765-JES-DEB, targeting the corruption of state judicial actors). The § 1983 action serves as a 'shield,' seeking immediate injunctive relief to arrest the ongoing 'State-Created Danger.' This RICO claim serves as the 'sword,' seeking to dismantle the racketeering enterprise—the financial coordination, systemic embezzlement, witness intimidation, and predicate acts of wire fraud—that drives the litigation. This dual approach is a jurisdictional necessity: filing both prevents the Enterprise

-231-

from using the state court's procedural machinery to moot Plaintiff's federal claims (via a sham, un-appealable judgment) and ensures that this Court maintains plenary jurisdiction over the *res* (the stolen marital estate) before it is dissipated. Absent this intervention, the state court's ongoing refusal to honor the appellate stay (Case No. D086958) would allow the Enterprise to launder its extrinsic fraud into unassailable state decrees, immunizing them from all liability. (Civil RICO / RICO Conspiracy / 42 U.S.C. § 1983 / State-Created Danger / Abuse of Process / Fraud Upon the Court / Violation of 1st and 14th Amendment Rights) (Exhibits 1, 8, 9, 10, 14, 18, 19).

171. **The Tribunal as an "Unwitting Instrument":** Plaintiff does not bring claims against the state court judges, who possess absolute immunity. Rather, the Enterprise's extrinsic fraud was so successful it compromised the state tribunal's ability to adjudicate fairly. Because Defendant Saatjian intentionally submitted unserved, forged documents, committed perjury regarding mandatory disclosures, and actively concealed a $1,000,000+ estate, the tribunal was factually deprived of the true record and rendered an unwitting instrument of the Enterprise. This deception was so absolute that even when Plaintiff formally moved to set aside the forged FOAHs—submitting the executed declaration of legal ethics expert Edward J. McIntyre proving the forgery and extortion—the structurally blinded tribunal refused to set aside the void orders. Furthermore, operating entirely without subject matter jurisdiction in direct violation of the automatic appellate stay (CCP § 916)

-232-

triggered by Plaintiff's perfected appeals, the compromised tribunal further executed the Enterprise's extortion by issuing the retaliatory "Vexatious Litigant" gag order. (Civil RICO / RICO Conspiracy / Fraud Upon the Court / Obstruction of Justice / Abuse of Process) (Exhibits 1, 3, 6, 8, 9, 10, 14)..

**171a. The Malpractice Cover-Up and Schulman's Litigation Abuse:**
Simultaneously, the Enterprise has weaponized the related Malpractice Action against Co-Conspirator Dave Schulman as a shield to gag the Plaintiff and suppress discovery. Schulman has engaged in a bad-faith campaign of procedural abuse, using the litigation as a pretext to extort a 'security bond' from the Plaintiff—a blatant attempt to price her out of seeking justice for his own fiduciary failures. Despite Plaintiff's pending motion to stay discovery in the malpractice matter, Schulman has relentlessly forced discovery to 'ambush' the Plaintiff, acting in direct defiance of the principles established in *Paul v. Adam* regarding discovery stays in related actions. This obstructionist behavior is a transparent attempt to exhaust Plaintiff's remaining financial resources and suppress the 'smoking gun' evidence of his prior fraud. Following the Court's July 6, 2026, ruling—which correctly ordered the Enterprise to answer Plaintiff's complaint and rejecting their attempts to avoid the merits—Schulman waited until the absolute last possible hour to file a meritless Demurrer. This strategic delay is the hallmark of the Enterprise's 'scorched earth' tactic: burying the court in paper to delay accountability, laundering their past forgeries, and preventing the discovery of the underlying

-233-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ;
DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

malpractice. This constitutes a coordinated obstruction of justice intended to maintain the Enterprise's "administrative blackout" and conceal the truth from the Court. (Civil RICO / RICO Conspiracy / Malpractice / Fraudulent Concealment / Breach of Fiduciary Duty / Abuse of Process / Obstruction of Justice) (Exhibits 1, 6, 14).

**172. The Necessity of Federal Intervention and Dismantling the Enterprise:** While Plaintiff is actively pursuing state appellate relief to vacate specific void orders, the appellate court possesses no jurisdiction to retroactively restore the years of lost investment opportunities, the forced rental waste, or the destroyed State Street executive career trajectory. The state appellate court lacks statutory jurisdiction to award treble damages for federal wire fraud and RICO predicate acts, nor can it compensate Plaintiff for the exorbitant mitigation legal fees and the $250,000+ directly looted by the Enterprise through forgery and extrinsic fraud. Furthermore, the state tribunal lacks the equitable authority to dismantle this "Association-in-Fact" racketeering enterprise. Federal intervention under the civil RICO statute is the sole mechanism capable of not only making Plaintiff whole—through mandatory treble damages for the direct, quantifiable financial destruction of her executive career and estate—but also permanently enjoining Defendant Saatjian and his co-conspirators from continuing to operate this predatory, state-facilitated fee-extraction pipeline. A federal mandate is strictly required to hold

-234-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ;
DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

these actors accountable, dismantle the infrastructure of this ongoing criminal enterprise, and prevent them from utilizing the state tribunal as a weapon to victimize other citizens. The Enterprise's operations constitute a continuous threat to the public, and only the plenary equity and remedial powers of this Court can arrest this racketeering scheme and prevent the further destruction of the evidentiary record. (Civil RICO / RICO Conspiracy / 18 U.S.C. § 1964(c) / Breach of Fiduciary Duty / Fraud Upon the Court / Obstruction of Justice) (Exhibits 1, 3, 6, 8, 9, 10, 14)

173. **Summary of Predicate Acts and Pattern of Racketeering:** As detailed in the chronology above, the Enterprise's campaign of engineered financial starvation, extrinsic fraud, and structural deprivation was not a series of isolated family court disputes, but a coordinated, ongoing criminal conspiracy. The Enterprise effectuated this scheme through a continuous pattern of racketeering activity, including but not limited to:

- **Federal Wire Fraud (18 U.S.C. § 1343):** Utilizing electronic interstate court wires to transmit forged, unserved, and materially false instruments to execute the theft of community capital.

- **Hobbs Act Extortion (18 U.S.C. § 1951):** Obtaining Plaintiff's property— and destroying her highly compensated corporate career—through the

-235-

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

wrongful use of manufactured psychological terror, legal ambush, and engineered financial defenselessness.

- **Obstruction of Justice & Witness Intimidation:** Procuring unconstitutional gag orders and manipulating fiduciaries to permanently blind the tribunal and prevent Plaintiff from mounting a defense or exposing the underlying theft.

174. **Master Forensic Matrix and Rule 9(b) Compliance**: A granular, date-specific ledger of every predicate act, satisfying the heightened fraud pleading standards of Federal Rule of Civil Procedure 9(b), is incorporated herein by reference in **SECTION VIII** and **Exhibit 1 and Exhibit 2**. These predicate acts directly proximately caused Plaintiff's catastrophic business and property damages, serving as the factual foundation for the formal Causes of Action detailed below. The Enterprise's pattern of racketeering is not limited to isolated acts, but constitutes a systematic and continuous scheme designed to extract capital and neutralize the Plaintiff. For a comprehensive, forensic breakdown of the specific predicate acts, constitutional deprivations, and documented extrinsic fraud committed by the Defendants, the Court is directed to the **Master Forensic Matrix of Constitutional Deprivations and Extrinsic Fraud (SECTION VIII)** appended to this Complaint. This Matrix serves as the verified index of the

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

Enterprise's racketeering activity, mapping every state-court procedural maneuver to its corresponding federal predicate act under 18 U.S.C. § 1961.

**175. Master Chronology of Predicate Racketeering Acts**

The following matrix synthesizes the "Playbook" utilized by the Enterprise to systematically subvert the state tribunal, convert community property into illicit fee revenue, and suppress evidence of their criminal operations.

| Date / Timeframe | Event Description & Procedural Context | Predicate Act(s) / Legal Basis | Evidentiary Basis & Section VIII Integration (Exs. 1–20) |
|---|---|---|---|
| Jan 2023 – Nov 2024 | Initial asset lockout & unilateral siphoning of $189k liquid, $150k IRS transfer, and $700k+ Cerevance stocks. | Wire Fraud / Federal Embezzlement / Extortion (18 U.S.C. §§ 1343, 666, 1951) | Exhibits 1, 2, 6, 11; **Section VIII (Master Forensic Matrix A)** |
| May 31, 2024 | FCS Move-Away Recommendation Suppression: Neutral FCS expert recommends Boston relocation; Enterprise suppresses report via bad-faith ex parte filings. | Obstruction of Justice / Conspiracy (18 U.S.C. §§ 1503, 1962(d)) | Exhibits 1, 2, 11; **Section VIII (Master Forensic Matrix A)** |
| June 13, 2024 | The Trapdoor Protocol (FOAH Omission): Court orally orders asset freeze; Saatjian omits term from written FOAH to create an enforcement vacuum. | Wire Fraud / Fraud Upon the Court | Exhibits 1, 6; **Section VIII (Master Forensic Matrix A)** |

**First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET**

| July 24, 2024 | Initial Fee-Churning Protocol: Bad-faith emergency ex parte filed fabricating "parental alienation" to override sealed neutral FCS report. | Hobbs Act Extortion / Obstruction of Justice | Exhibits 1, 2; **Section VIII (Master Forensic Matrix A)** |
|---|---|---|---|
| Oct 2, 2024 | Quid Pro Quo: Unauthorized $150k wire transfer and ex parte withdrawal of estate freeze in corrupt exchange. | Wire Fraud / Honest Services Fraud / Embezzlement | Exhibits 1, 6 (Att. B, D), 10, 12, 18; **Section VIII (Master Forensic Matrix A)** |
| Oct 15 – 29, 2024 | The "Ghost Motions" Discovery Ambush & Post-Hoc Service: Unserved discovery declaration used to manufacture default; retroactive service on Blado. | Mail/Wire Fraud / Obstruction of Justice / Conspiracy | Exhibits 1, 6 (Att. A, E), 10, 18; **Section VIII (Master Forensic Matrix A)** |
| Oct 22 – Nov 12, 2024 | Forgery of FL-180 & Void Bifurcation Judgment: Perjurious FL-180 form falsely certifying stipulation and exchange of disclosures to lock out estate. | Perjury / Wire Fraud / Fraud Upon the Court | Exhibits 3, 5, 6, 10; **Section VIII (Master Forensic Matrix A)** |
| Nov 2024 | Witness Intimidation of Forensic Accountant Anna Addleman. | Witness Tampering / Obstruction of Justice (18 U.S.C. § 1512) | Exhibits 3, 12; **Section VIII (Master Forensic Matrix A)** |
| Nov 5, 2024 (Signed Mar 18, 2025) | Fraudulent FOAH Ratification & Cover-Up of $150k Theft: Coerced ratification and unserved FOAH under CRC 5.125. | Wire Fraud / Obstruction of Justice | Exhibits 3, 6 (Att. A), 15; **Section VIII (Master Forensic Matrix A)** |

**First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET**

| Date | Description | Claims | Exhibits |
|---|---|---|---|
| Jan 7 & 9, 2025 | Shadow Representation Sanctions & Educational/Custodial Status Quo Destruction: Blado secret appearance ($3,500 sanctions); unserved order shattering schooling. | Wire Fraud / Obstruction of Justice | Exhibits 1, 6, 16; **Section VIII (Master Forensic Matrix A)** |
| Feb 4, 2025 | Retaliatory Sanctions & Perjurious Disclosure Declarations ($1,500 fine). | Wire Fraud / Perjury / Obstruction | Exhibits 1, 10; **Section VIII (Master Forensic Matrix A)** |
| Mar 18, 2025 | Prejudgment Asset Theft Ratification & $15k Trial Retainer Theft: Blado absconds with last parity funds on eve of trial. | Embezzlement / Honest Services Fraud / Extortion | Exhibits 1, 6, 15, 16, 17; **Section VIII (Master Forensic Matrix A)** |
| Apr 9 – 29, 2025 | CRC 5.125 Violation, Privilege Stripping & False FOAH Submission: Secret filing seizing unredacted privileged legal bills. | Wire Fraud / Extrinsic Fraud / 4th Amend. Seizure | Exhibits 6, 17; **Section VIII (Master Forensic Matrix A)** |
| May 12– 19, 2025 | The Kangaroo Court (Move-Away Trial Ambush): Data dump of 45 exhibits 5 days prior; seizure of 2018 employment records to destroy executive career. | Hobbs Act Extortion / Obstruction / Tortious Interference | Exhibits 1, 2; **Section VIII (Master Forensic Matrix A)** |
| May 15 – June 24, 2025 | Criminal Forgery of FOAHs ($115k Siphon) & Court Reporter Sabotage: Signature forgery on FOAHs; agency cancellation. | Criminal Forgery (Penal Code 470) / Wire Fraud | Exhibits 3, 6 (Att. A); **Section VIII (Master Forensic Matrix A)** |

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

| May 16, 2025 | Usurpation of Jurisdiction (Illegal Self-Strike of Statement of Disqualification by Judge Morris). | Obstruction of Justice / Fraud Upon the Court | Exhibits 1, 9; **Section VIII (Master Forensic Matrix A)** |
|---|---|---|---|
| May 20, 2025 | Financial Starvation Mandate (Parity Blockade & Refusal to Draft Asset Freeze FOAH). | Hobbs Act Extortion / Obstruction of Justice | Exhibits 1, 6; **Section VIII (Master Forensic Matrix A)** |
| June 6, 2025 | The Collection Agency for Abuse (DVRO Summary Denial & Imminent Eviction Brink). | Hobbs Act Extortion / State-Created Danger | Exhibits 1, 2; **Section VIII (Master Forensic Matrix A)** |
| June 24, 2025 | Coerced Distribution Extortion ($105k Rigged Payout under duress of homelessness). | Hobbs Act Extortion / Wire Fraud | Exhibits 3, 6 (Att. A); **Section VIII (Master Forensic Matrix A)** |
| July 8, 2025 | Active Perjury in Open Court re: Supreme Court Writ Status. | Perjury / Obstruction of Justice | Exhibits 1, 9; **Section VIII (Master Forensic Matrix A)** |
| July 9–11, 2025 | Appellate Abandonment & Forced Destruction of Attorney-Client Privilege under threat of contempt. | Obstruction of Justice / Wire Fraud | Exhibits 1, 9; **Section VIII (Master Forensic Matrix A)** |
| Aug 5, 2025 | The In-Chambers Blackout (Summary Denial of DVRO/ Child Endangerment Petition without reporter). | Obstruction of Justice | Exhibits 1, 3; **Section VIII (Master Forensic Matrix A)** |

-240-

| Aug 11 – Oct 6, 2025 | Move-Away Sabotage & Rule 3.1590(k) Violation (Denial of Hearing on Objections before signing). | Obstruction of Justice / Extrinsic Fraud | Exhibits 1, 9; **Section VIII (Master Forensic Matrix A)** |
|---|---|---|---|
| Aug 28, 2025 | Discovery Blackout & Judicial Intimidation ("Sit in the back" / "Just go away"). | Obstruction of Justice / Fraudulent Concealment | Exhibits 1, 2; **Section VIII (Master Forensic Matrix A)** |
| Sept 2, 2025 | Due Process Blockade & Court Reporter Threat ("Say no to fee waiver reporters"); withheld signature. | Obstruction of Justice / Fraud Upon the Court | Exhibits 1, 8, 9; **Section VIII (Master Forensic Matrix A)** |
| Sept 10, 2025 | The Phantom Docket & DVRO Strip ($5k Retaliatory Sanction & Withheld Signature for 8+ months). | Hobbs Act Extortion / Obstruction of Justice | Exhibits 1, 3, 9; **Section VIII (Master Forensic Matrix A)** |
| Oct 22 – 28, 2025 | The Contempt Trap & Emergency Denial (Audi Breakdown / Refusal of Repair Funds). | Hobbs Act Extortion / State-Created Danger | Exhibits 1, 2; **Section VIII (Master Forensic Matrix A)** |
| Oct 26 & Nov 21, 2025 | Federal Extortion (Written DA Threats by Saatjian confirmed as moral turpitude). | Hobbs Act Extortion (18 U.S.C. § 1951) | Exhibits 3, 4, 7; **Section VIII (Master Forensic Matrix A)** |
| Nov 5 – 6, 2025 | The Disqualification Trap (2nd SOD Stricken via Record Falsification & Clerk Delay). | Obstruction of Justice / Fraud Upon the Court | Exhibits 1, 9; **Section VIII (Master Forensic Matrix A)** |

**First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET**

| Date | Event | Claim | Evidence |
|---|---|---|---|
| Nov 6 & Dec 2, 2025 | Witness Tampering & Obstruction (Addleman Data Dump & Smear Declaration). | Witness Tampering (18 U.S.C. § 1512) / Obstruction | Exhibits 1, 12; **Section VIII (Master Forensic Matrix A)** |
| Nov 20, 2025 | Ratification of Void Bifurcation & Retaliatory $10,000 Sanction based on stolen billing records. | Wire Fraud / Obstruction of Justice | Exhibits 1, 6; **Section VIII (Master Forensic Matrix A)** |
| Nov 25, 2025 | 3rd SOD & State-Created Danger (DA Confirms Extortion Investigation; Court Refuses Stay). | Obstruction of Justice / Conspiracy | Exhibits 1, 4; **Section VIII (Master Forensic Matrix A)** |
| Dec 2, 2025 | The Vexatious Litigant Retaliation & Custody Ambush (CCP § 391.7 Gag Order). | Obstruction of Justice / Civil Rights Violations | Exhibits 1, 8, 9; **Section VIII (Master Forensic Matrix A)** |
| Dec 19, 2025 | Parity Denial & Ex Parte Seizure of Trust Funds while unrepresented. | Embezzlement / Wire Fraud / Abuse of Process | Exhibits 1, 6, 10, 12, 14, 15, 16, 17; **Section VIII (Master Forensic Matrix A)** |
| Dec 29, 2025 | Retaliatory Trial Demands & Trial Brief Request for $100k Punitive Sanctions. | Fraud Upon the Court / Obstruction of Justice | Exhibits 1, 3, 5, 6, 8, 10, 14; **Section VIII (Master Forensic Matrix A)** |

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

| Jan 5 & 28, 2026 | Ex Parte Ambush & Hearing Sabotage (Cancellation of April 6 Evidentiary Hearing Off-Record). | Obstruction of Justice / Wire Fraud | Exhibits 1, 6, 8, 9, 10, 14; **Section VIII (Master Forensic Matrix A)** |
|---|---|---|---|
| Jan 8, 2026 | Coerced Stipulation Under Duress (Abandonment of Disqualification Motion with attorney under DA investigation). | Extortion / Obstruction of Justice | Exhibits 1, 13; **Section VIII (Master Forensic Matrix A)** |
| Mar 3 & 24, 2026 | Financial Parity & Discovery Sabotage / Dual Vocational Assessment Trap (Denial of parity; unverified reply declaration). | Abuse of Process / Obstruction of Justice | Exhibits 1, 10, 13, 14, 15, 16, 17; **Section VIII (Master Forensic Matrix A)** |
| Apr 21, 2026 | The Extortionate Estate Seizure ($35k Trust Ex Parte Extraction Attempt rejecting settlement offers). | Wire Fraud / Embezzlement (18 U.S.C. § 666) | Exhibits 1, 10; **Section VIII (Master Forensic Matrix A)** |
| May 20 – 22, 2026 | Fiduciary Abandonment & Successor Judicial Ambush (Judge Ferrara Release of Counsel under duress). | Obstruction of Justice | Exhibits 13, 14, 19, 20; **Section VIII (Master Forensic Matrix A)** |
| May 22, 2026 | Vocational Sabotage & Ghostwriting Fraud (Metadata Evidence Ignored re: Saatjian ghostwriting). | Fraud Upon the Court / Obstruction of Justice | Exhibits 14, 19, 20; **Section VIII (Master Forensic Matrix A)** |

**First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET**

| May 22, 2026 | The Verbatim Record Embargo (Hand-writing "Not Reported" to ban court reporters). | Obstruction of Justice (*Jameson v. Desta*) | Exhibits 19, 20; **Section VIII (Master Forensic Matrix A)** |
|---|---|---|---|
| June 10 – 25, 2026 | Vexatious Litigant Weaponization (Refusal of Responsive Declarations while abuser proceeds on unserved filings). | Obstruction of Justice / Due Process Violation | Exhibits 8, 20; **Section VIII (Master Forensic Matrix A)** |
| June 15 – July 3, 2026 | State Court Administrative Blockade (Form VL-115 Gag & Rejection of Stay Notices; Notice of Harassment). | Obstruction of Justice / Fraud Upon the Court | Exhibits 8, 20 (Att. A–F); **Section VIII (Master Forensic Matrix A)** |
| June 16 – 25, 2026 | Federal RICO Retaliation & Docket Weaponization (Truitt Reply Declaration explicitly targeting federal RICO action). | Obstruction of Justice / 1st Amend. Retaliation | Exhibit 19 (Att. A–C); **Section VIII (Master Forensic Matrix A)** |
| June 18, 2026 | State-Created Danger & Judicial Embargo (Summary Denial of Child Endangerment Ex Parte via VL gag). | Obstruction of Justice (*DeShaney* Violation) | Exhibits 8, 20; **Section VIII (Master Forensic Matrix A)** |
| June 25, 2026 | The Final Fruit (Asymmetrical Preclusion Order & Evidentiary Blackout in Defiance of D086958). | Obstruction of Justice / Fraud Upon the Court | Exhibits 19, 20; **Section VIII (Master Forensic Matrix A)** |

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

| July 2, 2026 | Schulman Security Bond Weaponization (*Lancranjan v. Schulman*, Case 25CU054361C). | Abuse of Process / Obstruction of Justice | Exhibits 10, 14 (Part A); **Section VIII (Master Forensic Matrix A)** |
|---|---|---|---|
| July 6, 2026 | Schulman Malpractice Order Finding "Meritorious Dispute" (Case 25CU054361C, Exhibit 10). | Judicial Validation of Fraud / Collateral Estoppel | Exhibit 10, Exhibit 14 (Part B); **Section VIII (Master Forensic Matrix A)** |
| July 6 – 13, 2026 | Formal Notice of Related Federal Actions & Appellate Blockade (TrueFiling Rejection by Clerk L. Silva). | Obstruction of Justice / Fraud Upon the Court | Exhibits 9, 20; **Section VIII (Master Forensic Matrix A)** |
| July 15 – 16, 2026 | Bad-Faith Discovery Demands & Demurrer (Active Defiance of *Paul v. Adam* Stay in Schulman Malpractice). | Abuse of Process / Ongoing Racketeering | Exhibits 14 (Parts C, D, E); **Section VIII (Master Forensic Matrix A)** |
| Aug 14, 2026 | Scheduled Motion for Stay under *Paul v. Adam* (*Lancranjan v. Schulman*, Case 25CU054361C). | Abuse of Process | Exhibit 14; **Section VIII (Master Forensic Matrix A)** |
| Aug 19, 2026 | Federal Civil Rights TRO Hearing (Case No. 26-CV-3765-JES-DEB). | Civil Rights Violations (42 U.S.C. § 1983) | Exhibits 14 (Part G), 20; **Section VIII (Master Forensic Matrix A)** |

-245-

**First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET**

| Aug 24 – 28, 2026 | The Trial of Deprivation (August Sham Trial in Rogue Defiance of CCP § 916 Stay). | Obstruction of Justice / RICO Conspiracy | Exhibits 1, 8, 9, 20; **Section VIII (Master Forensic Matrix A)** |
|---|---|---|---|

**176. Notice of Supplemental Evidence and Ongoing Racketeering Activity:** Plaintiff expressly notifies this Court that the chronology set forth in this section is not an exhaustive list of all racketeering acts committed by the Enterprise, but a representative survey of the systematic campaign of sabotage described herein. A granular, day-by-day audit of every predicate act, including specific date-stamped wire transmissions and resulting financial injuries, is maintained in **SECTION VIII** and **Exhibit 1** and **Exhibit 2**, which are incorporated herein by reference. Given the ongoing nature of the Enterprise's racketeering activity—as evidenced by the July 6 2026 Order (Exhibit 10) and July 15, 2026, discovery abuse (Exhibit 14)—Plaintiff will continue to file supplemental evidence and declarations as additional predicate acts are discovered or occur. This Complaint shall be construed as a living record of an active criminal conspiracy that continues to evolve, and Plaintiff reserves the right to present further granular evidence of these violations as discovery and judicial review progress. For a definitive, exhaustive analysis of the Enterprise's "playbook" and the corresponding constitutional deprivations, the Court is directed to the **Master Forensic Matrix A (SECTION VIII)**, attached as a concluding supplement to this Verified Complaint.

**177. Jurisdictional Primacy and Protection of the Federal Record:** The Defendants' recent filings (the Demurrer and Motion to Strike dated July 16, 2026) are transparent, bad-faith dilatory tactics designed to stall the malpractice proceedings and circumvent this Court's July 6 Order. These actions constitute a persistent pattern of litigation harassment intended to extort Plaintiff's resources and obstruct the truth-seeking process. Crucially, the state tribunal continues to act *ultra vires*, aggressively advancing trial tracks and discovery mandates in direct, rogue defiance of the mandatory, non-discretionary automatic appellate stay perfected under CCP § 916(a). To facilitate this jurisdictional lawlessness, the Enterprise consistently files 'Notices of Ruling' or 'Notices of Lodgment' rather than obtaining properly signed, appealable judicial orders—a calculated deception designed to prevent the Plaintiff from perfecting her appellate rights, as a mere Notice is not an appealable instrument. Furthermore, the Enterprise routinely files and relies upon unserved motions to execute a 'trial by ambush,' depriving the Plaintiff of any meaningful notice or opportunity to be heard. The Court is requested to take judicial notice of these filings as ongoing predicate acts of Obstruction of Justice and Abuse of Process, furthering the conspiracy to maintain an 'administrative blackout' and conceal the truth from the Court and higher appellate authority. (Civil RICO / RICO Conspiracy / Obstruction of Justice / Fraud Upon the Court / Abuse of Process / Violation of 14th Amendment Due Process) (Exhibits 1, 6, 8, 9, 10, 14).

-247-

# IV. CAUSES OF ACTION

## COUNT I: VIOLATION OF CIVIL RICO (18 U.S.C. § 1962(c))

### (Against ALL Defendants)

**178. Re-allegation:** Plaintiff re-alleges and incorporates by reference all preceding paragraphs. As detailed comprehensively in **Exhibit 1** (which is incorporated herein as the scannable RICO ledger of predicate acts and financial damages), Defendants engaged in a continuous pattern of federal wire fraud, extortion, and obstruction of justice, proximately causing concrete economic injuries to Plaintiff's property and business interests exceeding $650,500.00, triggering mandatory statutory treble damages pursuant to 18 U.S.C. § 1964(c).

**179. The Racketeering Enterprise:** ALL Defendants formed an "Association-in-Fact" Enterprise and engaged in a continuous pattern of racketeering activity. The Defendants shared a common purpose: the systematic looting of Plaintiff's community estate, the extraction of unconscionable legal fees via "fee-churning," and the permanent neutralization of Plaintiff's ability to defend her rights. This Enterprise functioned through a continuous, coordinated pattern of predicate racketeering acts.

**179a. Distinction from § 1983 Claims:** Plaintiff expressly distinguishes this Count from her concurrently filed 42 U.S.C. § 1983 claims. While the § 1983

-248-

claims seek redress for constitutional injuries inflicted by state actors (the tribunal), this Civil RICO Count targets the private racketeering engine itself. The Enterprise utilized the state court's procedural machinery—including the "Vexatious Litigant" prior-restraint gag—as a tool to facilitate its own criminal predicate acts. This RICO Count is the "sword" designed to dismantle the private conspirators who masterminded the fraud, coerced the witnesses, and orchestrated the embezzlement, whereas the § 1983 action is the "shield" protecting Plaintiff against the judicial actors manipulated by this Enterprise.

**180. Predicate Acts of Racketeering Activity:** Pursuant to FRCP 9(b), a granular, date-specific ledger of every predicate act is incorporated herein via the Master Forensic Matrix A at the end of the Verified Complaint and Exhibits 1&2. The Enterprise effectuated this scheme through the following pattern of racketeering activity:

- **Federal Wire Fraud (18 U.S.C. § 1343):** Defendants utilized interstate wires to execute a scheme to defraud Plaintiff of her $1,000,000+ estate, including:

  - **The Ghost Motions:** Electronically filing unserved discovery motions and unserved FOAHs to bypass California Rule of Court 5.125 and procure void financial sanctions and orders (all Exhibits). Defendants utilized interstate electronic filing systems to execute

-249-

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

"Ghost Motion" campaigns—electronically filing discovery motions and FOAHs (including, but not limited to, the October 15, 2024 discovery motion and the May 27, 2026, motion) without ever serving the Plaintiff. By intentionally withholding service in violation of California Rule of Court 5.125, Defendants manufactured a false record of non-compliance. These unserved filings were then weaponized before the tribunal to procure void sanctions and current, unlawful "preclusion" orders (such as those regarding the June 25, 2026, hearing and vocational evaluations), thereby systematically denying Plaintiff the right to file defense declarations and structurally ensuring she remains defenseless during the sham trial

- **The FL-180 Perjury:** Transmitting fraudulent Bifurcation forms containing perjurious statements to conceal the marital estate (Exhibit 5).

- **The Unauthorized $150,000 Trust Siphon:** Utilizing interstate wires to execute an unauthorized $150,000 transfer from the marital estate, orchestrated by Defendant Schulman in direct violation of the existing asset freeze and executed without Plaintiff's knowledge or stipulation (Exhibits 6, 10).

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

- o **The Criminal Forgery:** Forging Plaintiff's signature onto FOAHs (specifically the July 11, 2025, and June 24, 2025, FOAHs) and submitting these via interstate wires to unlawfully extract over $115,000 from frozen trust accounts (Exhibit 6A).

- o **The Ongoing Discovery Abuse:** Defendants utilized interstate electronic filing systems and email to transmit premature, improper, and harassing discovery demands across both the underlying Family Law proceedings and the concurrent Malpractice Action. These were not legitimate litigation requests, but a calculated "fee-churning" tactic —a **scheme to defraud**—intended to force the Plaintiff to exhaust her limited liquid capital responding to frivolous filings, thereby rendering her defenseless. This pattern of abuse has evolved into a mechanism for trial sabotage: Defendants intentionally fail to serve notice for vocational evaluations and other critical proceedings, subsequently using their own lack of service to argue "preclusion" before the Court. By intentionally using the interstate wires to facilitate this depletion of assets and obstruction of the judicial process, Defendants have acted with the specific intent to defraud the Plaintiff of her property and obstruct the integrity of the ongoing appellate and trial proceedings.

- **Federal Extortion (18 U.S.C. § 1951):** Defendants executed a systematic campaign of extortion using interstate wires to transmit threats of District Attorney prosecution to force Plaintiff's abandonment of civil claims (Exhibit 3,4).

- **Obstruction of Justice (18 U.S.C. § 1503):** Defendants willfully manipulated the tribunal's calendar—specifically by canceling long-cause evidentiary hearings and forcing "sham trials"—to prevent Plaintiff from mounting a defense or exposing the Enterprise's forgeries on the record (All exhibits and 1983 Civil Case23cv3765-JES-DEB and Appeals case under D086958). **The Enterprise further utilized the unconstitutional 'Vexatious Litigant' (VL) gag order to strip Plaintiff of her 1st Amendment right to petition, ensuring the Court would never receive the evidence of the Enterprise's forgery or extortion.**

- **Honest Services Fraud (18 U.S.C. § 1346):** By secretly negotiating against the Plaintiff's interests, unilaterally canceling hearings without her knowledge, and manipulating judicial processes to facilitate 'fee-churning' rather than providing competent legal representation, the Defendants willfully deprived the Plaintiff of her intangible right to honest services. This breach of fiduciary duty was a calculated, fraudulent scheme to exploit the

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

attorney-client relationship for personal financial gain, fundamentally undermining the integrity of the judicial process (Exhibit 6).

- **Witness Tampering (18 U.S.C. § 1512):** Defendants transmitted intimidating communications and massive data dumps to suppress testimony from Plaintiff's experts and trial counsel, actively attempting to intimidate them into abandoning Plaintiff's defense (Exhibits 12, 13).

181. **Continuity and Ongoing Scheme:** The Enterprise's pattern of racketeering is not limited to isolated acts; it is a systematic, ongoing scheme. As evidenced by the July 6, 2026, ruling regarding the Schulman Malpractice Action and the Defendants' subsequent bad-faith Demurrer filed on July 16, 2026, the Enterprise continues to use procedural manipulation to exhaust Plaintiff's resources, suppress evidence of the underlying malpractice, and prevent the discovery of their prior racketeering activities.

181a. **Neutralization of Plaintiff's Defense:** The Enterprise's modus operandi included the targeted neutralization of Plaintiff's legal defense. By engaging in a pattern of extortionate intimidation, the Enterprise successfully forced the abandonment of Plaintiff's trial counsel, Ms. T. Healoha Lee, and previously subverted the fiduciary duty of Mr. Matt Blado. This campaign of witness tampering and intimidation—conducted with the tacit or active participation of the tribunal's processes—effectively rendered the Plaintiff defenseless, facilitating the

-253-

Enterprise's ability to procure void orders and loot the estate without opposition. This is a quintessential act of Obstruction of Justice and Witness Tampering under 18 U.S.C. §§ 1503 and 1512, engineered to ensure the Enterprise remained unexposed.

**181b. The Sham Trial & Violation of Appellate Divestiture:** The Enterprise has successfully hijacked the trial court's calendar to conduct a "sham trial" in active violation of the automatic stay of proceedings (Divestiture of Jurisdiction) mandated by **CCP § 916** upon the filing of Plaintiff's Notices of Appeal. Despite the fact that the entire trial court record is tainted by void orders—including the forged status-only judgments, void bifurcations, and unconstitutional pre-filing injunctions currently under appellate review—the Enterprise has pressured the trial court to ignore its jurisdictional divestiture. By inducing the court to proceed with these hearings while the underlying orders are legally "void," the Enterprise is intentionally creating a procedural trap, intending to force the finality of their theft before the appellate courts can vacate the underlying forgeries. This conduct constitutes a direct and ongoing form of **Obstruction of Justice and Abuse of Process.**

**181c. The Trial Court's Procedural Weaponization:** The Enterprise, directed by the "Shadow Architect" Saatjian, has successfully manipulated the state trial court to create an unconstitutional "black hole" of due process, transforming the

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

tribunal into a mechanism for racketeering rather than justice. This systematic corruption includes:

1. **Denial of the Record:** The specific denial of a court reporter during critical May *ex parte* proceedings, a tactic engineered to ensure the Enterprise's misconduct remained off the official record;

2. **Destruction of Parity & Access:** The systematic denial of financial parity—deliberately maintaining an unconscionable resource imbalance that forced the withdrawal of Plaintiff's counsel—while the Enterprise leveraged the looted marital estate to fund its own ongoing assault;

3. **Disregard of Appellate Divestiture:** The continuation of a "sham trial" in direct defiance of the automatic stay of proceedings (Divestiture of Jurisdiction) mandated by **CCP § 916** upon the filing of Plaintiff's Notices of Appeal; and

4. **Weaponized Gagging:** The enforcement of the unconstitutional "Vexatious Litigant" (VL) order to strip Plaintiff of her fundamental right to file defense declarations, effectively gagging her during the most critical evidentiary phase of the trial.

This RICO action and the concurrently filed 42 U.S.C. § 1983 action (Case No. 26-CV-3765-JES-DEB) constitute the sole remaining mechanisms capable of halting

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

this racketeering-driven sham trial, protecting Plaintiff's federal civil rights, and restoring the integrity of the judicial process, which has been systematically subverted to shield the Enterprise's ongoing ghostwriting and fee-extraction activities from appellate and judicial oversight.

182. **Damages:** As a direct and proximate result of the Enterprise's predicate acts, Plaintiff suffered concrete injuries to her business and property, entitling Plaintiff to Treble Damages under 18 U.S.C. § 1964(c). (Civil RICO / RICO Conspiracy / Wire Fraud / Extortion / Obstruction of Justice / Honest Services Fraud / Witness Tampering) (Exhibits 1 through 20).).

**COUNT II: RICO CONSPIRACY (18 U.S.C. § 1962(d))**

**(Against ALL Defendants)**

183. **Re-allegation:** Plaintiff re-alleges and incorporates by reference all preceding paragraphs. Plaintiff re-alleges and incorporates by reference all preceding paragraphs. As detailed comprehensively in **Exhibit 1** (which is incorporated herein as the scannable RICO ledger of predicate acts and financial damages), Defendants engaged in a continuous pattern of federal wire fraud, extortion, and obstruction of justice, proximately causing concrete economic injuries to Plaintiff's property and business interests exceeding $650,500.00, triggering mandatory statutory treble damages pursuant to 18 U.S.C. §

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

1964(c).Section 1962(d) of the RICO Act makes it unlawful for any person to conspire to violate 18 U.S.C. § 1962(c). Under *Salinas v. United States*, 522 U.S. 52 (1997), a defendant does not have to commit the substantive predicate acts themselves to be liable for RICO Conspiracy; they only need to know about the general nature of the Enterprise's scheme and agree to facilitate it. Furthermore, under the federal doctrine of Willful Blindness (Conscious Avoidance), deliberate ignorance of glaring factual red flags equates to actual knowledge and criminal intent.

**184. The Conspiracy Structure:** ALL Defendants willfully and intentionally conspired with one another, operating as an integrated Association-in-Fact Enterprise. This conspiracy was defined by a calculated, ongoing division of labor and a mutually beneficial, financially incentivized cover-up. The Defendants were not independent actors; they functioned as a synchronized unit with specific, assigned roles:

- **The Financial Conduit (Schulman):** Schulman actively facilitated the Enterprise's liquidity by unilaterally executing the unauthorized $150,000 wire transfer from the frozen trust account, acting with full knowledge that he lacked Plaintiff's executed signature (Exhibit 6B&C). This extraction was the foundation of a *quid pro quo*: in exchange for securing the $150,000,

Schulman filed an unauthorized *ex parte* dismissal on October 3, 2024, to unfreeze the estate without Plaintiff's knowledge or approval.(Exhibit 6)

- **The Architect (Saatjian):** Saatjian directed the procedural manipulation necessary to insulate the Enterprise from accountability. He orchestraud the "Ghost Motions"—filing unserved pleadings to manufacture a false record of non-compliance—specifically to protect Schulman's illicit transfer and prevent the Plaintiff from discovering the financial drain (Exhibit 6).

- **The Suppressor (Blado):** Blado served as the internal 'enforcer' of the conspiracy. Possessing actual knowledge of the unauthorized $150,000 transfer, Blado breached his fiduciary duty by suppressing this evidence, choosing to protect the Enterprise's financial gain over the Plaintiff's interests. Blado's failure to act—coupled with his continued acceptance of fees derived from the illicitly extracted funds—constituted a *quid pro quo* agreement where he provided 'Honest Services' not to the Plaintiff, but to the Enterprise, in exchange for professional loyalty and financial benefit. (Exhibit 6 C, 14, 15)

Each Defendant knew the general nature of the Enterprise's scheme to defraud the Plaintiff of her marital estate, agreed to facilitate that scheme, and performed specific, overt acts in furtherance of the conspiracy. By providing the 'Architect' (Saatjian) to draft the procedural cover, the 'Conduit' (Schulman) to

-258-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

liquidate the assets, and the 'Suppressor' (Blado) to obstruct discovery, the Defendants formed a durable agreement to loot the Plaintiff's property and silence her opposition through systemic racketeering.

**185. The Churning Pipeline:** This intentional financial paralysis allowed Defendant Saatjian to file a subsequent *ex parte* on October 24, 2024—relying entirely on the manufactured, unserved "ghost motion" from October 15—to maliciously convert a 3-hour, FCS-recommended move-away hearing into a financially ruinous, multi-day trial. This coordinated obstruction was a "churning" mechanism designed to force the Plaintiff into a state of structural defenselessness. This pipeline proximately caused direct economic loss, including over $250,000 in fees extracted by Defendant Saatjian alone. The litigation remains unfinalized, as the entire case is premised on fraud; Plaintiff has been forced to litigate across multiple courts, including appellate proceedings, to expose the Enterprise's underlying corruption. To date, Plaintiff has incurred over $25,000 in void sanctions procured via the Enterprise's fraudulent filings, with Defendants currently demanding an additional $100,000 in trial-related fees. The costs of mounting a defense against this Enterprise—including the retention of new trial counsel and forensic experts—exceed an additional $100,000, with total projected damages reaching the hundreds of thousands, if not millions, by the time the underlying fraud is fully adjudicated.

This financial sabotage has also resulted in catastrophic, non-economic consequential damages, including:

- **Career Destruction:** The forfeiture of executive career salary exceeding hundreds of thousands of dollars;

- **Forced Displacement:** Exorbitant emergency housing expenses in San Diego incurred while Plaintiff was left stranded and stripped of her marital estate;

- **Compounding Mitigation Costs:** The accumulation of excessive appellate and writ litigation fees necessitated entirely by the Enterprise's procedural traps;

- **Constitutional & Civil Rights Violations:** The unconstitutional destruction of attorney-client privilege, the systematic deprivation of time and companionship with the minor child, and the sustained infliction of profound psychological and legal abuse orchestrated to break the Plaintiff's resolve.

This mutual agreement to churn fees and destitute the Plaintiff is explicitly memorialized in an October 25, 2024, interstate email transmission from Defendant Saatjian to co-conspirator Schulman (See Exhibit 6, Attachment C).

**185b. Damages Resulting from Void Bifurcation and Systemic Asset Deprivation:** The Enterprise's conspiracy—facilitated by co-conspirators

Schulman and Blado's active failure to protect the estate and their complicity in allowing the void bifurcation to stand—directly caused the total economic evisceration of the Plaintiff. The Enterprise weaponized this void bifurcation to lock the Plaintiff out of a multi-million dollar marital estate, systematically preventing access to funds, credit, and borrowing power. This was not a passive outcome; it was a deliberate strategy of financial neutralization. This conspiracy proximately caused the following damages:

- **Total Liquidity & Retirement Depletion:** The forced exhaustion of the Plaintiff's personal savings and retirement accounts, which were used to mitigate the damages caused by the Enterprise's "starvation" tactics.

- **Credit & Financial Ruin:** The destruction of the Plaintiff's creditworthiness and the exhaustion of credit lines, which were the only remaining tools available to fund a legal defense.

- **Lost Investment & Opportunity Costs:** The permanent loss of significant investment opportunities that were precluded by the asset freeze and the fraudulent bifurcation.

- **The "Defenselessness" Trap:** But for the conspiracy—including the unauthorized $150,000 transfer and the failure of co-conspirators to challenge the void bifurcation—the Plaintiff would have maintained the

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

liquidity necessary to hire competent counsel to stop this litigation abuse in its infancy. The Enterprise successfully created a "cycle of abuse," where the initial theft of capital prevented the retention of counsel, which in turn allowed the Enterprise to commit further theft.

- **Cumulative Litigation Damages:** The accumulation of endless litigation and "void order" damage, including the $25,000 in sanctions procured via fraud, the $100,000 in current demands, and the $100,000+ required to hire trial counsel and forensic experts to combat the ongoing sham trial.

The failure of Schulman and Blado to act in accordance with their fiduciary duties—or, in the alternative, their active participation in the conspiracy—allowed the Enterprise to perpetuate these injuries, with total damages currently exceeding hundreds of thousands of dollars, and projected to reach into the millions as the Plaintiff is forced to continue litigation across appellate and trial courts to expose the Enterprise's fraudulent foundation.

186. **Suppression and Abandonment:** Co-conspirator Blado was explicitly retained to expose this transfer but instead engaged in a quid pro quo agreement to suppress Plaintiff's defense. As proven by Blado's own November 20, 2024, email (See Exhibit 6, Attachment C), Blado possessed actual knowledge that a federal crime (unauthorized wire transfer of frozen funds) had occurred. Despite this

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

actual knowledge, Blado deliberately breached his fiduciary duty to alert the tribunal. Instead, Blado agreed to stay quiet and allow Saatjian's "Ghost Motions" (orders and bifurcation judgement) to stand in exchange for $15,000 in illicit fees extracted from the frozen marital estate. Once Blado received his cut of the frozen capital, he abandoned Plaintiff on the eve of trial, completing his role in the conspiracy by leaving her structurally defenseless to Defendant Saatjian's subsequent FOAH forgery.

**187. RICO Damages:** The Enterprise's asymmetrical warfare completely destroyed Plaintiff's established professional executive career trajectory, annihilated her 700+ credit score by forcing her into massive survival debt, and successfully looted hundreds of thousands of dollars from the estate. Plaintiff is entitled to Treble Damages under 18 U.S.C. § 1964(c). (18 U.S.C. § 1962(d); 18 U.S.C. § 1964(c)).

**187a. The VL Gag as Overt Act:** The procurement and enforcement of the unconstitutional "Vexatious Litigant" (VL) gag order (Exhibit 8) was a specific overt act in furtherance of the conspiracy. By using the tribunal's process to gag the Plaintiff, the Enterprise successfully prevented her from filing the very declarations that would have exposed the forgeries (Exhibits 6A, 14). This gag order was not a defensive measure; it was an offensive weapon used by the Enterprise to ensure

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

their "Shadow Architect" (Saatjian) could continue the fraud without the Plaintiff's voice being heard by the Court.

**187b. RICO Conspiracy Liability & Treble Damages (18 U.S.C. § 1962(d)):** As a direct and proximate result of the Defendants' agreement, coordinated division of labor, and continuous overt acts in furtherance of the racketeering conspiracy—ranging from the initial asset lockouts, wire frauds, and federal embezzlements to the weaponization of Vexatious Litigant gag orders, witness tampering, trial sabotage, and appellate blockades—Plaintiff suffered direct and concrete injuries to her business and property. Under 18 U.S.C. § 1964(c), Plaintiff is entitled to joint and several liability and treble damages against all participating Defendants. (Civil RICO Conspiracy / Wire Fraud / Hobbs Act Extortion / Obstruction of Justice / Honest Services Fraud / Witness Tampering / Extrinsic Fraud) (Exhibits 1 through 20; Section VIII).

**COUNT III: VIOLATION OF STATE CIVIL RIGHTS (Bane Act, Ralph Act, and Unruh Act)**

**(Against ALL Defendants)**

**188. Re-allegation:** Plaintiff re-alleges and incorporates by reference all preceding paragraphs. Plaintiff re-alleges and incorporates by reference all preceding paragraphs. The chronological record of severe emotional distress, terror

-264-

of imminent homelessness, unconstitutional prior restraints, and procedural due process deprivations itemized in **Exhibit 2** is incorporated herein by reference as the factual and evidentiary foundation establishing the extreme and outrageous conduct, ulterior purposes, and constitutional violations underlying this Count. Defendants interfered with Plaintiff's 1st and 14th Amendment rights through threats, intimidation, and coercion in violation of the Tom Bane Civil Rights Act (Cal. Civ. Code § 52.1).

**189. Extortion and Discrimination:** As confirmed by the evaluation of legal ethics expert Edward J. McIntyre applying *Flatley v. Mauro*, Defendant Saatjian's written threats of District Attorney prosecution constitute extortion as a matter of law (Exhibit 3). This extortionate conduct was part of a broader "Attorney Extortion" campaign. Co-conspirators Schulman and Blado systematically leveraged the threat of professional abandonment to coerce the Plaintiff's compliance:

- **Schulman's Coercive Extortion:** Knowing he had already facilitated the illicit $150,000 transfer, Defendant Schulman explicitly threatened to withdraw as Plaintiff's counsel unless she signed a "stipulation" ratifying his malfeasance. He utilized the fear of abandonment—in the midst of a hostile litigation environment he helped create—to force the Plaintiff to forfeit her rights.

-265-

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

- **Blado's Witness Tampering & Extortion:** Defendant Blado utilized similar economic extortion, threatening to abandon the Plaintiff unless she "took the blame" for procedural failures manufactured by the Enterprise. When Plaintiff instead exposed the fraud to the tribunal, Blado carried out his threat and withdrew, proving the threat was never about legal strategy, but about silencing the Plaintiff.

Under the Ralph Civil Rights Act, this pattern of extortion functioned as a discriminatory threat, deployed by a business establishment to terrorize a vulnerable, self-represented female litigant based on her protected classes (sex and national origin).

**190. Coercion and Deprivation of Rights:** Under the Bane Act, the Enterprise utilized this extortionate coercion to intentionally paralyze Plaintiff, strip her of her 1st Amendment right to petition via the void "Vexatious Litigant" gag order, and violently sever her 14th Amendment rights to procedural due process by blocking her access to an evidentiary record. By forcing the Plaintiff to choose between being "abandoned" (and thus losing her case) and "signing off" on the Enterprise's fraud, the Defendants created an impossible, unconstitutional choice that systematically destroyed the Plaintiff's ability to mount a defense or secure justice (Exhibits 1, 2, 3, 14).

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

**190a. The VL Gag as Constitutional Violation:** The enforcement of the unconstitutional VL order constitutes a direct and per se violation of the Plaintiff's 1st Amendment right to petition the government for redress. By systematically blocking the Plaintiff's access to the record, the Enterprise and the manipulated tribunal created a "one-sided" proceeding. This was not a regulation of conduct; it was a targeted suppression of speech intended to facilitate the Enterprise's underlying racketeering and extortionate goals (Exhibits 1, 7,8, 13).

**190b. Damages & Civil Liability:** As a direct and proximate result of the Enterprise's unconstitutional prior restraints, targeted suppression of speech, and underlying predicate acts, Plaintiff suffered concrete and continuous injuries to her business, property, and civil rights. Plaintiff is entitled to full legal remedies, statutory damages, and relief as provided under law and equity. (First Amendment Violations / Civil Rights / RICO Predicate Acts / Extortion / Obstruction of Justice) (Exhibits 1 through 20; Section VIII).

**COUNT IV: COMMON LAW FRAUD AND DECEIT (Executed via Extrinsic Fraud)(Against ALL Defendants)**

**191. Re-allegation:** Plaintiff re-alleges and incorporates by reference all preceding paragraphs. As detailed specifically in the scannable financial and predicate ledger of **Exhibit 1** and the chronological tort ledger of **Exhibit 2**, Defendants engaged in a continuous, multi-year pattern of intentional

misrepresentations, active concealment of material facts (including the multi-million-dollar community estate and executive stock incentives), false sworn disclosures (such as the perjured FL-180 bifurcation judgments), and fraudulent court filings designed to deceive both the Plaintiff and the state tribunal (Exhibits 1, 2, et al.). Defendants committed systemic extrinsic fraud and deceit by intentionally bypassing the adversarial process to procure a series of void orders that structurally crippled the Plaintiff's ability to defend her rights.

**191a. Specific FRCP 9(b) Pleading of Affirmative Misrepresentations:** Pursuant to Federal Rule of Civil Procedure 9(b), Defendants Peter Saatjian, David Schulman, and Matt Blado affirmatively misrepresented material facts under oath with the specific intent to deceive. Specifically, on or about October 22, 2024, and November 12, 2024, Defendant Saatjian—acting in active collusion with fiduciaries Schulman and Blado—transmitted via interstate wires and filed with the San Diego Superior Court the official FL-180 Bifurcation Judgment (**Exhibit 5**). In these filings, Defendants falsely and fraudulently swore under penalty of perjury that a mutual "stipulation" existed regarding the status-only bifurcation and that mandatory updated and final financial disclosures had been fully exchanged. Defendants knew these statements were materially false when made, as no such stipulation was executed by Plaintiff, and mandatory financial disclosures were intentionally suppressed to conceal a multi-million-dollar estate.

**192. Deprivation of Process & Parity:** Defendants systematically deprived Plaintiff of her right to a fair hearing by keeping her in deliberate ignorance of court proceedings and fabricating consent. This extrinsic fraud includes the "Ghost Motions" utilized to procure

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

void sanctions, the FL-180 perjury regarding financial disclosures, and the deliberate circumvention of California Rule of Court 5.125. Further, Defendants engaged in active discovery obstruction and the systematic denial of financial parity—deliberately maintaining an unconscionable resource imbalance that forced the withdrawal of Plaintiff's counsel—while the Enterprise leveraged the looted marital estate to fund its own ongoing assault. (Exhibits 1, 2, 3, 4, 5, 11, 15).

**192. Deprivation of Process & Parity:** Defendants systematically deprived Plaintiff of her right to a fair hearing by keeping her in deliberate ignorance of court proceedings and fabricating consent. This extrinsic fraud includes the "Ghost Motions" utilized to procure void sanctions, the FL-180 perjury regarding financial disclosures, and the deliberate circumvention of California Rule of Court 5.125. Further, Defendants engaged in active discovery obstruction and the systematic denial of financial parity—deliberately maintaining an unconscionable resource imbalance that forced the withdrawal of Plaintiff's counsel—while the Enterprise leveraged the looted marital estate to fund its own ongoing assault. (Exhibits 1, 2, 3, 4, 5, 11, 15).

**192a. Specific FRCP 9(b) Pleading of Intentional Concealment (Extrinsic Fraud):** Furthermore, Defendants executed a systematic pattern of active concealment and extrinsic fraud designed to keep Plaintiff in deliberate ignorance of the proceedings. On October 15, 2024, Defendant Saatjian filed an unnoticed,

-269-

unserved "discovery declaration" (the "Ghost Motion") and intentionally failed to serve Plaintiff or her counsel in direct violation of California Rule of Court (CRC) 5.125. By intentionally hiding this filing from the docket's service record (**Exhibit 6, Attachment E**), Defendants manufactured a false record of non-compliance. Similarly, throughout 2024 and 2025, Defendants systematically withheld signed Findings and Orders After Hearing (FOAHs) from Plaintiff, preventing her from discovering, reviewing, or objecting to the fraudulent court orders being used to execute asset siphoning.

• **The "Shadow Architect" Ghostwriting Fraud:** Defendants further perpetrated this fraud by maintaining the false pretense that Petitioner Truitt was appearing *pro per* following Defendant Saatjian's tactical withdrawal in January 2026. In reality, Defendant Saatjian continued and continues to act as the "Shadow Architect," ghostwriting complex trial briefs, declarations, and exhibits while allowing Truitt to exploit the benefits of *pro per* status (evasion of Rule 11 accountability and claiming indigence to the state court). This ongoing deception constitutes a persistent fraud upon the Court, as it hides the true operational control of the Enterprise and prevents judicial oversight of the filings. (Exhibits 9, 12).

• **The Unconstitutional Privilege Stripping:** Defendants executed a multi-month scheme of extrinsic fraud to unlawfully pierce Plaintiff's attorney-client

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

privilege. Despite an explicit March 18, 2025, oral ruling preserving the privilege, Defendant submitted fabricated false FOAHs, ultimately coercing the unconstitutional disclosure of unredacted defense billing records. When Plaintiff sought a protective stay from the California Supreme Court, Defendant committed explicit Fraud Upon the Court on July 8, 2025, by actively lying to the tribunal, falsely representing that the Supreme Court had already denied Plaintiff's petition. Defendant subsequently weaponized Plaintiff's own stolen privileged communications to procure $10,000 in void sanctions. (Exhibits 1, 6, 8, 14, 16, 17).

• **The Unconstitutional Taking & Financial Lockout:** Through the procurement of void bifurcations and the unauthorized $150,000 transfer, Defendants executed an unconstitutional taking of the marital estate. Defendants systematically locked Plaintiff out of a multi-million dollar estate, preventing access to borrowing, credit, and the liquidity required to retain counsel. This was a deliberate "starvation" tactic designed to destroy the Plaintiff's credit, exhaust her retirement, and preclude her from seizing investment opportunities, all while forcing her to self-represent against a professional Enterprise. (Exhibits 5, 6, 11, 14, 15, 16, 17).

• **Appellate Obstruction & The "Vexatious Litigant" Gag:** Defendants utilized the unconstitutional "Vexatious Litigant" (VL) order as an instrument of fraud.

-271-

By misrepresenting Plaintiff's litigation history to the trial court, they procured a gag order specifically designed to strip Plaintiff of her 1st Amendment right to petition, thereby obstructing appellate relief. Defendants coupled this with explicit appellate obstruction—refusing to submit the orders necessary for the Court of Appeal to perfect Plaintiff's appeals—thereby creating a procedural trap to finalize their theft before the appellate court could intervene. (Exhibits 7, 13, 16).

• **Coercion and Attorney Capture:** Defendants utilized extreme psychological coercion and extortion as a tool of fraud. Defendants Schulman and Blado specifically threatened to abandon the Plaintiff mid-litigation unless she signed stipulations ratifying their theft or "took the blame" for the Enterprise's procedural traps. By forcing these signatures under the duress of abandonment, Defendants obtained fraudulent "consents" which they subsequently filed with the Court to mask their extrinsic fraud. (Exhibits 3, 6, 14). **Saatjian's Threats:** Defendant Saatjian explicitly threatened the Plaintiff with District Attorney prosecution, jail, and the loss of custody of her son. These threats are confirmed as extortionate per *Flatley v. Mauro* by legal ethics expert Edward J. McIntyre (Exhibit 3, 4).

193. **The "Shadow Architect" Ghostwriting Fraud:** Defendants further perpetrated this fraud by maintaining the false pretense that Petitioner Truitt was

-272-

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

appearing *in pro per* following Defendant Saatjian's tactical withdrawal in January 2026. In reality, Defendant Saatjian continued and continues to act as the "Shadow Architect," ghostwriting complex trial briefs, declarations, and exhibits while allowing Truitt to exploit the benefits of *pro per* status (evasion of Rule 11 accountability and claiming indigence to the state court). This ongoing deception constitutes a persistent fraud upon the Court, as it hides the true operational control of the Enterprise and prevents judicial oversight of the filings. (Exhibits 9, 12).

**194. The Unconstitutional Privilege Stripping:** Defendants executed a multi-month scheme of extrinsic fraud to unlawfully pierce Plaintiff's attorney-client privilege. Despite an explicit March 18, 2025, oral ruling preserving the privilege, Defendant submitted fabricated false FOAHs, ultimately coercing the unconstitutional disclosure of unredacted defense billing records. When Plaintiff sought a protective stay from the California Supreme Court, Defendant committed explicit Fraud Upon the Court on July 8, 2025, by actively lying to the tribunal, falsely representing that the Supreme Court had already denied Plaintiff's petition. Defendant subsequently weaponized Plaintiff's own stolen privileged communications to procure $10,000 in void sanctions. (Exhibits 1, 6, 8, 14, 16, 17).

**195. The Unconstitutional Taking & Financial Lockout:** Through the procurement of void bifurcations and the unauthorized $150,000 transfer,

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

Defendants executed an unconstitutional taking of the marital estate. Defendants systematically locked Plaintiff out of a multi-million dollar estate, preventing access to borrowing, credit, and the liquidity required to retain counsel. This was a deliberate "starvation" tactic designed to destroy the Plaintiff's credit, exhaust her retirement, and preclude her from seizing investment opportunities, all while forcing her to self-represent against a professional Enterprise. (Exhibits 5, 6, 11, 14, 15, 16, 17).

196. **Appellate Obstruction & The "Vexatious Litigant" Gag:** Defendants utilized the unconstitutional "Vexatious Litigant" (VL) order as an instrument of fraud. By misrepresenting Plaintiff's litigation history to the trial court, they procured a gag order specifically designed to strip Plaintiff of her 1st Amendment right to petition, thereby obstructing appellate relief. Defendants coupled this with explicit appellate obstruction—refusing to submit the orders necessary for the Court of Appeal to perfect Plaintiff's appeals—thereby creating a procedural trap to finalize their theft before the appellate court could intervene. (Exhibits 7, 13, 16).

197. **Coercion and Attorney Capture:** Defendants utilized extreme psychological coercion and extortion as a tool of fraud. Defendants Schulman and Blado specifically threatened to abandon the Plaintiff mid-litigation unless she signed stipulations ratifying their theft or "took the blame" for the Enterprise's procedural traps. By forcing these signatures under the duress of abandonment,

-274-

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

Defendants obtained fraudulent "consents" which they subsequently filed with the Court to mask their extrinsic fraud. (Exhibits 3, 6, 14). **Saatjian's Threats:** Defendant Saatjian explicitly threatened the Plaintiff with District Attorney prosecution, jail, and the loss of custody of her son. These threats are confirmed as extortionate per *Flatley v. Mauro* by legal ethics expert Edward J. McIntyre (Exhibit 3, 4).

**197a. Damages, Coercion & Civil Liability:** As a direct and proximate result of the Defendants' extreme psychological coercion, attorney capture, extortionate threats, and coordinated acts of duress, Plaintiff suffered severe and continuous injuries to her personal well-being, business, and property. Under applicable federal and state laws, Plaintiff is entitled to full legal remedies, statutory damages, treble damages where applicable, and civil liability against all participating Defendants for these coercive torts, civil rights violations, and underlying predicate acts. (Extortion / Coercion / Fiduciary Breach / Fraudulent Inducement / RICO Predicate Acts) (Exhibits 1 through 20; Section VIII).

**197b. Damages, Direct Proximate Causation, and Civil Liability:** Plaintiff reasonably relied to her detriment upon the integrity of the judicial filings, court records, and the fiduciary duties owed by her legal counsel (Schulman and Blado). Believing that legal proceedings would adhere to statutory disclosure mandates and truthful disclosures, Plaintiff was fraudulently induced into a state of structural

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

defenselessness. This direct reliance and the ensuing deceit proximately caused catastrophic concrete damages, including:

- (1) the direct loss of the **$150,000 unauthorized wire transfer** siphoned from the community estate into Schulman's trust account in October 2024;

- (2) the direct loss of **$115,000** extracted via the forged May 15 and June 24, 2025 FOAHs; and

- (3) the catastrophic forfeiture of Plaintiff's high-level executive career trajectory—specifically the **Executive Vice President (VP) position at State Street Bank** and an elite executive consulting contract with the Fellsway Group—which were forcibly destroyed when the Enterprise's fraudulent sabotage of the Boston relocation trapped Plaintiff in San Diego.

As a direct and proximate result of the Defendants' extreme psychological coercion, attorney capture, extortionate threats, fraudulent inducements, and coordinated acts of duress, Plaintiff suffered severe and continuous injuries to her personal well-being, business, and property. Under applicable federal and state laws, Plaintiff is entitled to full legal remedies, statutory damages, treble damages where applicable, and civil liability against all participating Defendants for these coercive torts, civil rights violations, and underlying predicate acts. (Extortion /

First Amended Verified Complaint (FAC) FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

Coercion / Fiduciary Breach / Fraudulent Inducement / RICO Predicate Acts)

(Exhibits 1 through 20; Section VIII).

**COUNT V: ABUSE OF PROCESS**

**(Against ALL Defendants )**

**198. Re-allegation:** Plaintiff re-alleges and incorporates by reference all preceding paragraphs. Plaintiff re-alleges and incorporates by reference all preceding paragraphs. The chronological record of severe emotional distress, terror of imminent homelessness, unconstitutional prior restraints, and procedural due process deprivations itemized in **Exhibit 2** is incorporated herein by reference as the factual and evidentiary foundation establishing the extreme and outrageous conduct, ulterior purposes, and constitutional violations underlying this Count. Defendants committed a severe abuse of process by willfully weaponizing legal procedures for improper, ulterior purposes.

**199. Weaponization of Court Procedures:** Defendants did not utilize court procedures to seek justice; they weaponized them to extort Plaintiff, lock her out of her marital estate, and churn unconscionable fees. By intentionally violating California Rule of Court 5.125 to submit unserved orders, fabricating the FL-180 bifurcation to bypass mandatory disclosures, and utilizing a retaliatory "Vexatious

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET

Litigant" motion strictly to silence Plaintiff's exposure of their forgery, Defendants fundamentally corrupted the judicial mechanism.

**200. Ghostwriting as Abuse:** The Enterprise utilized Saatjian's continued, clandestine "ghostwriting" as a core instrument of abuse. By secretly drafting filings, Defendants circumvented ethical scrutiny and avoided professional liability for the malicious, unserved motions filed in the Petitioner's name. This shadow representation allowed the Enterprise to manipulate the trial court while evading the signature accountability and ethical duties required under the **California Rules of Court.**

**201. Obstruction of Justice and Bad-Faith Delay:** The entire Enterprise—including Defendants Saatjian, Schulman, Blado, and their respective law firms—engaged in a coordinated, multi-front campaign to obstruct justice and systematically circumvent the rule of law. The acts of obstruction, perjury, and bad-faith delay detailed herein are illustrative and not exhaustive; the full scope of the Enterprise's ongoing racketeering activities and its systemic corruption of the judicial process will be fully demonstrated through discovery and presented in detail at trial. (Exhibits 1, 5, 8, 13, 14, 16, 17). This obstruction includes:

- **Perjury, Forgery, and Systematic Deception:** The Enterprise maintained its racketeering activity through a continuous stream of perjury to the tribunal. This includes: (a) Defendant Saatjian's December 2, 2025,

First Amended Verified Complaint (FAC)  FOR DAMAGES AND INJUNCTIVE RELIEF ; DEMAND FOR JURY TRIAL; Case No.: 26-cv-02817-BAS-VET