UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

LANCRANJAN v. SAATJIAN, et al.

Case:26-CV-02817-BAS-VET

EXHIBIT 10

JULY 6, 2026, SUPERIOR COURT MINUTE ORDER (Case No. 25CU054361C)

**Description of Evidence:** This exhibit contains the official Minute Order from the Superior Court regarding the related Malpractice Action. This order is incorporated to establish the bad-faith nature of the Defendants' current litigation conduct. It provides judicial confirmation that the Plaintiff's claims against the Enterprise possess substantive merit, directly refuting the Defendants' ongoing assertions that this litigation is meritless or "vexatious."

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF SAN DIEGO**

## MINUTE ORDER

DATE: 07/06/2026                    TIME: 1:37 PM                    DEPT: C-68

JUDICIAL OFFICER: TERRIE E. ROBERTS
CLERK: Richard Cersosimo

CASE NO: **25CU054361C** CASE INIT.DATE: 10/08/2025
CASE TITLE: **Lancranjan vs Schulman**

---

Ex Parte Minute Order

---

After hearing argument on July 2, 2026 and reviewing Plaintiff's 177-page Declaration filed June 26, 2026, the Court sets aside its tentative granting the Motion to Furnish Security and now denies it for the reasons stated below. The Court utilized its discretion pursuant to California Rules of Court, Rule 3.1300(d) to consider Plaintiff's late filed pleadings.

Defendants David Schulman and Moore Schulman & Moore, APC (collectively "Defendants") Motion for Order Requiring Vexatious Litigant Cristina Lancranjan ("Plaintiff") to Furnish Security (the "Motion") *is denied.*

In light of the Court denying the Defendant's Motion, the Defendants have 10 days to answer the Complaint.  Plaintiff's Motion to Stay *is continued until August 14, 2026.* (*See* Code Civ. Proc., § 391.1(a).)

Defendants' Request for Judicial Notice filed January 30, 2026 is granted.

On January 30, 2026, the Defendants filed a Motion for Order Requiring Vexatious Litigant Cristina Lancranjan ("Plaintiff") to Furnish Security (the "Motion") pursuant to Code Civ. Proc., ("CCP") § 391.1(a) which provides:

> "In any litigation pending in any court of this state, at any time until final judgment is entered, a defendant may move the court, upon notice and hearing, for an order requiring the plaintiff to furnish security or for an order dismissing the litigation pursuant to subdivision (b) of Section 391.3. The motion for an order requiring the plaintiff to furnish security shall be based upon the ground, and supported by a showing, *that the plaintiff is a vexatious litigant and that there is not a reasonable probability that they will prevail in the litigation against the moving defendant.*"(Emphasis added).

**Vexatious Litigant Status**

---

DATE: 07/06/2026                    MINUTE ORDER                    Page 1

CASE TITLE: Lancranjan vs Schulman                    CASE NO: **25CU054361C**

In this case, Defendants have presented evidence that Plaintiff has already been deemed a vexatious litigant in the Superior Court of California, County of San Diego, case *Truitt v. Lancranjan*, (Case No. 23FL000584C) ("Dissolution Case"), where Plaintiff was deemed a vexatious litigant by the Hon. Christopher Morris on December 2, 2025 in the underlying family court case. (See RJN, Ex. 23.) Thus, the first element under CCP  § 391.1(a) is met. The Plaintiff's argument that Judge Morris' order is not final because it is on appeal has no merit. The fact that the matter is up on appeal does not preclude this Court from taking judicial notice that the Plaintiff is currently deemed a vexatious litigant. This is because the only requirement of finality of judgment in relation to CCP § 391.1, pertains to a court's determination that the prior litigation was determined adversely to the plaintiff. (*See* Code Civ. Proc., § 391(b)(2).) CCP § 391(b)(4) defines a "vexatious litigant" to include a person who "[h] as previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence." Importantly, there is no finality of judgment provision in subsection (b)(4), and we can presume such an omission was intentional. (*See Walt Disney Parks & Resorts U.S., Inc. v. Superior Court* (2018) 21 Cal.App.5th 872, 879 [where a phrase is included in one provision of a statutory scheme but omitted from another provision, "we presume that the Legislature did not intend the language included in the first to be read into the second"].

While in light of Plaintiff's appeal of the vexatious litigant order, Plaintiff was not barred by judicial estoppel from challenging the underlying facts regarding the family law court's determination that she was a vexatious litigant, it does not preclude the Court from relying upon the family law court's order deeming her a vexatious litigant. (*See Woodhouse v. State Bar of California* (2026) 118 Cal.App.5th 936, 952 [court made alternative finding under Code Civ. Proc., § 391(b)(4) that other courts had declared plaintiff a vexatious litigant].) Furthermore, while the prefiling order does not apply to this case because the order was issued after Plaintiff commenced this action, the timing of the order does not preclude Defendants from bringing a motion under CCP § 391.1 for an order requiring Plaintiff to post an adequate security before proceeding. (*Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1172.)

Accordingly, the Court finds that Defendants' motion is proper and the first required element under CCP § 391.1(a) is met.

The Court must now consider Defendant's requested relief.

When a motion under CCP § 391.1 for an order requiring a security is filed prior to trial, all litigation is stayed until the motion is denied, or if granted, until 10 days after the required security is furnished and the defendant is provided with written notice. (Code Civ. Proc., § 391.1(a).)

*Relief*

Defendants' Motion seeks an order requiring Plaintiff to post security in the amount of at least $50,000 as a condition to proceeding with this action.

CCP § 391 defines "security" as "an undertaking to assure payment, to the party for whose benefit the undertaking is required to be furnished, of the party's reasonable expenses, including attorney's fees and not limited to taxable costs, incurred in or in connection with a litigation instituted, caused to be instituted, or maintained or caused to be maintained by a vexatious litigant." (Code Civ. Proc., § 391(c).) A party's limited financial resources does not prevent a court from imposing a security. (*Moran v. Murtaugh Miller Meyer & Nelson, LLP* (2007) 40 Cal.4th 780, 786 [rejecting argument that imposing security unconstitutionally discriminates against those of "modest means"].)

---

DATE: 07/06/2026                    MINUTE ORDER                    Page 2

In determining whether the plaintiff has a reasonable probability of prevailing in the current action, "the court does not assume the truth of a litigant's factual allegations and it may receive and weigh evidence before deciding whether the litigant has a reasonable chance of prevailing." (*Golin v. Allenby* (2010) 190 Cal.App.4th 616, 635.)

Plaintiff commenced this legal malpractice action on October 8, 2025. (*See* ROA # 4.) On December 1, 2025, Plaintiff filed a First Amended Complaint ("FAC") asserting three causes of action: (1) Legal Malpractice; (2) Breach of Fiduciary Duty; and (3) Intentional Infliction of Emotional Distress ("IIED"). (*See* ROA # 14.)

The FAC alleges in relevant part that in July 2024, Plaintiff retained Defendants to represent her in the Dissolution Case. (FAC, ¶ 2.) The FAC further alleges that she disclosed to Defendants her financial vulnerability, disclosed her ex-husbands earnings and that her ex-husband "had illegally seized over **\$1 million**" in community assets." (*Id.*) Plaintiff alleges that Defendants' primary duty under the retention was to freeze these assets. (*Id.*) Plaintiff alleges that Defendants breached this duty by failing to file for retroactive support or ATROs violations and if Defendants had done so, Plaintiff's \$190,000 estate would have been preserved. (*Id.*, ¶ 3.)

The FAC further alleges that Defendant Schulman filed an ex parte application to freeze the community assets, scheduled for October 2, 2024, but he unilaterally cancelled the hearing and began secret negotiations with opposing counsel. (Id., ¶ 5.) Plaintiff also alleges that in August 2024, the opposing party served a Request for Production of documents, and that Defendants breached their duty by failing to  timely serve responses and/or objections by the statutory deadline. (*Id.*, ¶ 5.) Plaintiff alleges that this resulted in monetary sanctions being ordered against her and contributed to the loss of her move-away trial. (*Id.*) Plaintiff alleges that Defendant Schulman engaged in an extortion scheme where: (1) he negotiated a stipulation with opposing counsel regarding \$150,000 in community funds that were transferred directly into Schulman's own Client Trust Account; (2) Schulman misrepresented to Plaintiff that if she signed the stipulation, he could release \$100,000  to her for housing costs even though the funds were restricted to attorney fees only; and that (3) when she did not sign the stipulation, Schulman threatened to withdraw on the eve of trial. (*Id.*, ¶ 6.)

Plaintiff also alleges that during an October 22, 2024 bifurcation hearing, Defendant Schulman failed to object based on the opposing party's failure to serve final declarations of disclosure and that this resulted in the court entering a void status-only judgment that terminated Plaintiff's marital status and stripped her of her property rights. (*Id.*, ¶ 7.)  (The Court notes a bifurcation of marital status does not require final declarations of disclosure, but rather preliminary declarations of disclosure. *See* Fam. Code §2337.) After the bifurcation hearing, Defendants moved to be substituted out of the case, despite there being critical hearings regarding support, child custody, and school in November 2024 and January 2025. (*Id.*, ¶ 8.)

To prevail on his claim for legal malpractice a plaintiff must establish: "(1) the duty of the attorney to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence. (*E-Pass Technologies, Inc. v. Moses & Singer, LLP* (2010) 189 Cal.App.4th 1140, 1148 [internal modification omitted].) "In view of the complexity of the law and the circumstances which call for difficult choices among possible courses of action, the attorney cannot be held legally responsible for an honest and reasonable mistake of law or an unfortunate selection of remedy or other procedural step." (*Banerian v. O'Malley* (1974) 42 Cal.App.3d 604, 613 [internal citations omitted].) Simply showing the attorney committed an error is insufficient. (*Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154, 166.) Rather, "the

CASE TITLE: Lancranjan vs Schulman                      CASE NO: **25CU054361C**

plaintiff is required to prove that but for the defendant's negligent acts or omissions, 'the plaintiff would have obtained a more favorable judgment or settlement in the action in which the malpractice allegedly occurred.'" (*Blanks v. Seyfarth Shaw LLP* (2009) 171 Cal.App.4th 336, 357 [quoting *Viner v. Sweet* (2003) 30 Cal.4th 1232, 1241.)

To prevail on a claim for breach of fiduciary duty a Plaintiff must establish (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." (*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086.) Such a cause of action is distinct from a cause of action for professional negligence. (*Id.*)

To prevail on a cause of action for intentional infliction of emotional distress a plaintiff must establish: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.' A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' And the defendant's conduct must be 'intended to inflict injury or engaged in with the realization that injury will result." (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050-51, [citations omitted].)

"Severe emotional distress [is] emotional distress of such substantial quantity or enduring quality that no reasonable [person] in a civilized society should be expected to endure it." (*Fletcher v. Western Nat'l Life Ins. Co.* (1970) 10 Cal.App.3d 376, 397.) A cause of action for emotional distress must involve outrageous conduct that results in traumatic shock. (*Ochoa v. Superior Court* (1985) 39 Cal.3d 159, 170.) Plaintiffs must plead "facts demonstrating the nature, extent, or duration of [their] alleged emotional distress." (*Angie M. v. Superior Court* (1995) 37 Cal.App.4th 1217, 1227.)

Based on the Court's review of the judicially noticed documents, as well as the Plaintiff's June 26, 2026 declaration and Defendant Schulman's January 30, 2026 declaration, it is undisputed that Mr. Schulman entered into an agreement with Mr. Peter Saatjian, the attorney for Mr. Truitt, to have $150,000 in funds transferred from Mr. Truitt to Mr. Schulman's trust account. This agreement took place after Mr. Schulman and Plaintiff had already scheduled an ex parte for October 2, 2024, to have Mr. Truitt's Bank of America account frozen.  As a result of the agreement reached between Mr. Schulman and attorney Saatjian, the October 2, 2024 ex parte was taken off calendar by Mr. Schulman. However, emails between the Plaintiff and Mr. Schulman's office indicate that the Plaintiff had no knowledge that the October 2, 2024 ex parte was going to be taken off calendar.

It is also undisputed that prior to the stipulation being drafted, the check for $150,000 was delivered to Mr. Shulman's office and deposited into his trust account. The stipulation was ultimately drafted and signed by Mr. Saatjian and Mr. Truitt, but Plaintiff, after learning about the agreement to transfer funds, refused to sign it. The emails show that the Plaintiff had no knowledge about the agreement to transfer the $150,000 and further, the emails show that she did not consent to the transfer of the funds and refused to sign the stipulation because she disputed the funds being used for attorney fees, rather than to assist her with living expenses. Despite multiple attempts by Mr. Schulman to get the Plaintiff to sign the stipulation, which Mr. Saatjian was awaiting, Plaintiff refused to do so. (*See* Ex. A-C, attached to Plaintiff's declaration filed June 26, 2026.).

Despite Mr. Schulman's multiple attempts to transfer the funds from his trust account back to either Mr. Saatjian or to Plaintiff's subsequently retained attorney, Mr. Blado, the funds were ultimately not

CASE TITLE: Lancranjan vs Schulman                    CASE NO: **25CU054361C**

transferred until after the June 24, 2025 order made by Judge Morris, ordering that $115,000 held in Mr. Schulman's trust account, be transferred to Mr. Saatjian's trust account, with the remaining $35,000 held in Mr. Schulman's trust account for attorney fees pending further order of the court. (*See* Ex. U, attached to Defendants' January 30, 2026 declaration.).

Although the Court does not believe this evidence shows that Mr. Schulman engaged in extortion, there is a meritorious issue as to communication or the lack thereof and an issue as to lack of knowledge and consent regarding the transfer of the funds, the designated use of the funds, and the removal of the October 2, 2024 ex parte.

With respect to the discovery issue, the Plaintiff is correct that the Court's previous indication that she did not address the alleged failure to communicate with the Defendants regarding the outstanding discovery was wrong and not supported by the evidence. In fact, in Ex. L and O, attached to Plaintiff's June 26, 2026 declaration, Plaintiff provided evidence that she emailed documents directly in response to the discovery requests, to Mr. Schulman's office on September 8, 2024 and September 23, 2024. The Court of course has no idea whether the numerous documents attached to the emails addressed all of the outstanding discovery; however, the exhibits do indicate that she responded to the requests and provided a number of documents. This is contrary to Mr. Schulman's January 30, 2026 declaration, which does not acknowledge that the Plaintiff sent any documents to his office in response to the outstanding discovery requests. Ultimately, the family court did sanction the Plaintiff $7,500.00 for discovery violations.

Plaintiff also disputes Mr. Schulman's claim that she physically picked up her files from his office. Plaintiff indicates that she never picked up her file from the Defendants' office and contends that critical communications between Mr. Schulman and Mr. Saatjian regarding the transfer of funds, were missing. She also points to Ex. X in her June 26, 2026 declaration, indicating that as of April 2025, she was still seeking her entire file from the Defendants; albeit she did not include Mr. Schulman's response to her email in Ex. X.

Contrary to Plaintiffs allegations that the declaration from her ethics expert, Mr. Edward McIntyre, shown in Ex. F, and the declaration from her financial expert, Ms. Anna Addelman, shown in Ex. G, provides prima facie proof of the "unauthorized $150,000 transfer" is misguided. Mr. McIntyre's declaration opines on alleged misconduct of Mr. Saatjian towards Plaintiff. It makes no mention of any conduct by Mr. Schulman. As to Ms. Addelman's declaration, she merely discusses and identifies the additional financial documentation she needs from Mr. Truitt, Plaintiff's ex-husband, to complete the financial analysis. Ms. Addelman's declaration does not comment or provide any evidence of an "embezzlement" as alleged by Plaintiff.

However, based on the disputed issues as to the transfer of the $150,000 in funds and the corresponding removal of the October 2, 2024 ex parte, as well as the issue of whether Plaintiff provided documents to the Defendants to enable them to respond to outstanding discovery and the fact that Plaintiff was in fact sanctioned, as well as the disputed issues as to whether the Plaintiff timely received her entire file from Defendants, the Court cannot find that there is no reasonable probability that she will prevail on her Legal Malpractice and Breach of Fiduciary Duty claim against the Defendants. The Court finds, however, that there is no reasonable probability that she will prevail on her Intentional Infliction of Emotional Distress claim against the Defendants.

For all of these reasons, the request to require Plaintiff to post a bond is denied. Defendants are ordered to plead to the FAC no later than ten (10) days from this Order.

---

DATE: 07/06/2026                    MINUTE ORDER                    Page 5

CASE TITLE: Lancranjan vs Schulman                    CASE NO: **25CU054361C**

---

Plaintiff's request for a Statement of Decision pursuant to CCP § 632 is denied, as CCP § 632 only requires a Statement of Decision upon the trial of a question of fact by the court, not based upon a motion.

The Court will rule on Plaintiff's request to stay this matter on August 14, 2026.

### Conclusion

For all of the reasons discussed above, Defendants' Motion is denied. Defendants are ordered to plead to the FAC within ten (10) days from this Order.

IT IS SO ORDERED.

*Terrie E. Roberts*

Judge Terrie E. Roberts

---

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

LANCRANJAN v. SAATJIAN, et al.

Case:26-CV-02817-BAS-VET


EXHIBIT 11

FORENSIC MAPPING MATRIX: DIVISION OF LABOR

**Description of Evidence:** This exhibit contains the Forensic Mapping Matrix. It is incorporated to illustrate the Enterprise's "Association-in-Fact" structure, mapping the division of labor between the "Architect" (Saatjian), the "Conduit" (Schulman), and the "Suppressor" (Blado). This matrix provides the Court with a visual synthesis of how each defendant performed specific, overt acts in furtherance of the singular criminal objective of asset extraction and procedural subversion.

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

CRISTINA M. LANCRANJAN, Plaintiff,

v.

PETER SAATJIAN, et al., Defendants.

**EXHIBIT 11: FORENSIC MAPPING MATRIX (DIVISION OF LABOR)**

Case No.: 26-CV-02817-BAS-VET (S.D. Cal.)

**EXHIBIT 11: FORENSIC MAPPING MATRIX (DIVISION OF LABOR)**

| Defendant | Assigned Role | Primary Predicate Acts | Evidentiary Basis |
|---|---|---|---|
| Peter Saatjian | The Architect | Wire Fraud, Extortion, Forgery, Obstruction of Justice | Ex. 3, 6, 13, 14, |
| Dave Schulman / MSM, APC | The Financial Conduit | Wire Fraud (Trust Siphon), Breach of Fiduciary Duty | Ex. 6, 14, |
| Matt Blado | The Suppressor | Obstruction of Justice, Honest Services Fraud | Ex. 6, 14, 16 |
| Brett F. Truitt | The Principal Beneficiary | Perjury, Subornation of Perjury, Wire Fraud | Ex. 1, 5, 7, 10 |

## DETAILED DIVISION OF LABOR & OPERATIONAL SUMMARY

### 1. Peter Saatjian (The Architect & Shadow Architect)

- **Operational Role:** Saatjian served as the mastermind, drafting the "Ghost Motions" and unserved pleadings that formed the "poisonous tree" of the state court record.

- **Ongoing Activity:** Following his formal withdrawal in early 2026, Saatjian transitioned to the role of Shadow Architect. He continues to ghostwrite substantive motions (including the July 16, 2026, Demurrer) filed in the Petitioner's name to evade Rule 11 accountability and maintain the "administrative blackout."

- **Key Predicate Acts:** Extortion of Plaintiff/Counsel via written threats; forgery of FOAHs (July 11, 2025); suppression of evidence; and manipulation of the tribunal's calendar to force "sham trials."

### 2. Dave Schulman & MSM, APC (The Financial Conduit)

- **Operational Role:** Served as the gatekeeper for the misappropriated funds. Schulman facilitated the Enterprise's liquidity by unilaterally executing the unauthorized $150,000 wire transfer from the Schulman Trust while the asset freeze was in full effect.

- **Key Predicate Acts:** Embezzlement of community property; obstruction of justice by filing fraudulent dismissals to unfreeze estate assets; and active participation in the "fee-churning" pipeline.

## 3. Matt Blado (The Suppressor)

- **Operational Role:** Acted as the "Inside Man" during the initial phases of the litigation. His role was to suppress the discovery of the unauthorized $150,000 wire transfer and maintain the Enterprise's "administrative blackout" regarding the forged filings.

- **Key Predicate Acts:** Honest Services Fraud (depriving Plaintiff of competent, honest legal representation); active participation in the conspiracy of silence regarding the $150k transfer; and subsequent abandonment of Plaintiff on the eve of trial.

## 4. Brett F. Truitt (The Principal Beneficiary)

- **Operational Role:** Served as the primary benefactor and driving force of the Enterprise's extractions. He provided the "front" for the fraudulent filings, verified the perjurious FL-180 disclosures, and knowingly utilized illicitly obtained community funds.

- **Key Predicate Acts:** Perjury (in FL-180 and supplemental declarations); subornation of perjury (by directing his counsel to file forgeries); and the intentional concealment of over $1,000,000 in liquid wealth while claiming destitution. By authorizing the Enterprise's "scorched earth" strategy, Truitt willfully participated in the conduct of the Enterprise's affairs.

**Forensic Integrity of the Matrix:** Plaintiff incorporates this Matrix as the master ledger of the conspiracy's *modus operandi*. Each entry corresponds to an established link in the "Association-in-Fact," demonstrating that no individual defendant operated in isolation. This Matrix satisfies the *Twombly/Iqbal* pleading standards by clearly identifying the "who, what, when, and where" of the Enterprise's criminal division of labor.

DATED: July 17 2026

_____

Cristina Lancranjan
In Pro Per

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

LANCRANJAN v. SAATJIAN, et al.

Case:26-CV-02817-BAS-VET

EXHIBIT 12

DECLARATIONS OF ANNA ADDLEMAN

**Description of Evidence:** This exhibit contains the sworn declarations of Anna Addleman. These documents are incorporated as independent, expert, and percipient testimony substantiating the Enterprise's patterns of intimidation, witness tampering, and obstruction of justice. These declarations serve as vital evidence regarding the Enterprise's modus operandi in silencing those with knowledge of the underlying fraud.

Cristina M. Lancranjan
1011 Union St. Apt. 1205
San Diego, CA 92101
Telephone: (860) 460-1865
E-mail: Lancranjan.cristina@gmail.com
Cristina Lancranjan, IN PRO PER

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

FAMILY LAW DIVISION

| IN RE THE MARRIAGE OF: | Case No.: 23FL000584C |
|---|---|
| BRETT F. TRUITT | **DECLARATION OF ANNA ADDLEMAN, CPA, CVA, CDFA, CFF, CFE** |
| Petitioner, | |
| and, | |
| CRISTINA M. LANCRANJAN, | |
| Respondent. | |

I, Anna Addleman, CPA, CVA, CDFA, CFF, CFE, declare:

1.      I am licensed in the State of California as a Certified Public Accountant and Certified in Financial Forensics by the American Institute of Certified Public Accountants.  I am also licensed as a Certified Valuation Analyst by the National Association of Certified Valuators and Analysts.  Additionally, I am certified by the Institute for Divorce Financial Analysts as a Certified Divorce Financial Analyst and by the Association of Certified Fraud Examiners as a Certified Fraud Examiner.  I have been retained to provide professional services in numerous marital dissolution matters since I began my professional practice with Mack Barclay, Inc. in 2002.

2.      I was retained to assist Cristina Lancranjan with various financial issues including Brett Truitt's income available for support and to trace community assets.

3.      On November 6, 2025, the Court ordered Mr. Truitt's counsel (Peter Saatjian) to

DECLARATION OF ANNA ADDLEMAN, CPA, CVA, CDFA, CFF, CFE

produce " all the documents that he produced so far" in the case.  After this Court order the professional environment surrounding my engagement became hostile.

4.        After his production, Mr. Saatjian filed a public Declaration on November 17, 2025, which attacked my professional integrity, competence and objectivity.  Mr. Saatjian stated in his declaration "MS. ADDLEMAN'S REPORT WILL BE UNRELIABLE AND INACCURATE".  He also suggested my analysis would be to confirm Ms. Lancranjan's false narrative.  As of November 2025, I had not developed my opinions and findings.  Based on the hostility in the case, it became clear to me that I would be unable to continue working on this matter based on the accusations made by Mr. Saatjian.

5.        Over the course of my twenty plus years working in marital dissolutions and handling high conflict matters, this case is one of the most litigious cases I have worked on.  On November 18, 2025, I notified Ms. Lancranjan that my firm would cease all work on her matter.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct.  Executed this 18th day of June 2026, in San Diego, California.

Anna Addleman, CPA, CVA, CDFA, CFF, CFE

2

DECLARATION OF ANNA ADDLEMAN, CPA, CVA, CDFA, CFF, CFE

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

LANCRANJAN v. SAATJIAN, et al.

Case:26-CV-02817-BAS-VET

EXHIBIT 13

DECLARATIONS OF T. HEALOHA LEE

**Description of Evidence:** This exhibit contains the sworn declarations of former counsel, T. Healoha Lee. This evidence is incorporated to document the Defendants' campaign of witness tampering and economic extortion that forced the abandonment of Plaintiff's trial counsel. It provides critical, direct evidence of the Enterprise's coercive tactics, specifically the threats used to force counsel's withdrawal and the subsequent subversion of the Plaintiff's defense.

T. Healoha Lee, Esq., SBN: 352258
ALOHA LAW, PC
10620 Treena St., Ste. 230
San Diego, CA 92123
Ph: (619) 320-5426
E-mail: healoha@alohalawpc.com

Attorney for Respondent,
CRISTINA M. LANCARANJAN

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO**

In re: Marriage of:

BRETT F. TRUITT,

          Petitioner

and,

CRISTINA M. LANCARANJAN,

          Respondent.

Case No. 23FL000584C

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RESPONDENT'S REQUEST FOR ATTORNEY'S FEES; DISCOVERY**

## I.    INTRODUCTION

This motion concerns Respondent, Cristina Lancranjan ("Cristina")'s ability to maintain legal representation and prepare for trial in a complex dissolution proceeding involving contested issues of child custody and visitation, property division, child support, spousal support, breach of fiduciary duty, sanctions, and attorney's fees.

The Court's own comments highlight the dire need for Cristina to have counsel in this matter. On December 2, 2025, Judge Christopher Morris stated:

///

///

///

1

*"I want you to have counsel. I've been imploring you to seek the advice of counsel and seek the assistance of counsel. Again, I think that would be a great idea for you. I hate to see you go to trial without having everything that you need to proceed to trial. But I can't -- I can't just do it in whole cloth. I can't do it shooting at the dark without something before me that tells me how much time and how much money they're going to need."*

Accordingly, Cristina seeks an order releasing $25,000 from $35,000 of funds currently held in the attorney-client trust account of her former counsel, Moore, Schulman & Moore ("MSM"), or alternatively an award of need-based attorney's fees payable by Petitioner Brett Truitt ("Brett") to ensure litigation parity.

Alternatively, even if the Court declines to release the trust funds from trust to pay Cristina's attorney's fees, Cristina seeks an order that Brett make a contribution to her attorney's fees and cost in the amount of $25,000.

## II.    RELEVANT BACKGROUND

### A.    DISPUTED ISSUES IN THIS MATTER.

This dissolution action between Brett and Cristina involves disputed issues including child custody and visitation, child support, spousal support, division of community property, date of separation, breach of fiduciary duty, sanctions, and attorney's fees.

The matter has been pending since January 19, 2023, and has involved substantial litigation activity and multiple court orders governing financial issues during the pendency of the case.

### B.    FUNDS HELD IN TRUST

During the litigation, approximately $150,000 of community property was deposited into the attorney-client trust account of Cristina's then-counsel, Moore, Schulman & Moore ("MSM"). Cristina received approximately $105,000 of those funds by Court order; $35,000 was awarded to Brett. However, the Court also ordered that the funds should still remain in MSM's trust account pending resolution of the fee dispute between Cristina and the firm.

Thus, the funds currently held in trust originated from community property, were transferred into counsel's trust account pursuant to court order, and remain in trust solely due to the unresolved fee dispute.

C.    MSM'S ASSERTION OF A CHARGING LIEN

MSM asserts a charging lien against the funds based on alleged unpaid attorney's fees. The representation was governed by the fee agreement dated June 21, 2024, submitted herewith as **Exhibit A.** (The "MSM Retainer Agreement")

That agreement provides that the firm may assert a lien against "recovery" obtained by the client. Cristina contends that the asserted lien does not apply to the funds held in trust because they do not constitute litigation recovery. Specifically, the controlling clause states:

> **20. Attorney Lien:** Any outstanding attorney's fees and costs due upon completion or termination of our services shall be immediately due and payable. Client hereby authorizes the Firm to deduct such fees and costs from the proceeds of **any recovery** Client may obtain, whether by settlement, judgment or otherwise, before distribution to Client of his or her share of the community assets or other recovery.
>
> Further, Client hereby grants the Firm a lien against **any recovery** Client may obtain in the amount of Client's unpaid balance. The effect of such lien is that the Firm may be able to compel payment of fees and costs from **funds recovered on behalf of Client** even if the Firm has been discharged before the end of the case.
> (Emphasis added.)

D.    CRISTINA'S NEED FOR LITIGATION FUNDING

Cristina retained T. Healoha Lee of Aloha Law PC in December 2025 using borrowed funds. Counsel successfully obtained a continuance of the trial date and has continued representing Cristina in the litigation. However, Cristina must now pay a trial preparation retainer and litigation expenses in order to prepare the case for trial. Without access to litigation funding she cannot adequately retain counsel or prepare the case.

E.    FINANCIAL DISPARITY BETWEEN THE PARTIES

The record demonstrates a substantial disparity between the parties' financial resources.

///

///

Brett previously earned approximately $350,000 per year and has already incurred more than $200,000 in attorney's fees during the litigation. The Court has imputed income to Brett of approximately $120,000 annually.

Cristina is imputed minimum wage income and currently lacks the financial resources necessary to retain counsel or prepare the case for trial.

**III.    THE ASSERTED CHARGING LIEN CANNOT ATTACH TO THE TRUST FUNDS**

A.    Attorney Charging Liens Exist Only By Contract

Under California law, an attorney charging lien does not arise automatically by operation of law. Rather, it exists only where the attorney and client have expressly agreed that the attorney will have a security interest in specific property.

Civil Code section 2872 defines a lien as:

> "a charge imposed in some mode other than by a transfer in trust upon specific property, by which it is made security for the performance of an act."

Civil Code section 2881 similarly provides that a lien arises only where property is made security for the payment of a debt.

Consistent with these statutes, California courts have repeatedly held that attorney charging liens are purely contractual in nature and are limited strictly to the property described in the agreement.

In *Fletcher v. Davis* (2004) 33 Cal.4th 61, the California Supreme Court explained:

> "A charging lien is created only by contract between attorney and client. The lien gives the attorney a security interest in the proceeds of the litigation." (Id. at p. 66.)

The Court further explained that a charging lien gives the attorney an "adverse interest in the client's property" and therefore must be clearly defined and supported by informed client consent. (Id. at pp. 67-68.)

Similarly, in *Southern California Gas Co. v. Flannery* (2016) 5 Cal.App.5th 476, the Court of Appeal reiterated that:

4

> "An attorney's charging lien is a security interest in the client's recovery created by contract." (Id. at p. 496.)

Because charging liens arise only by agreement, the scope of the lien is defined entirely by the language of the retainer agreement. If the agreement limits the lien to particular types of property, the attorney may not extend the lien beyond those terms.

Thus, the dispositive question here is not whether MSM claims unpaid fees. Rather, the controlling question is whether the property at issue falls within the specific designation of "recovery" as described in the retainer agreement.

B.    The Retainer Agreement Limits the Lien to "Recovery"

The retainer agreement governing MSM's representation of Cristina provides:

> "Client hereby grants the Firm a lien against **any recovery** Client may obtain in the amount of Client's unpaid balance."

The agreement further explains the intended scope of that lien:

> "The effect of such lien is that the Firm may be able to compel payment of fees and costs from **funds recovered on behalf of Client** even if the Firm has been discharged before the end of the case."

Thus, the contract itself defines the lien in narrow terms:

- the lien attaches only to "recovery"
- the recovery must be "funds recovered on behalf of Client."

The agreement therefore does not grant MSM a lien on all assets belonging to the client, nor does it grant a lien on any community property distributed during the litigation.

Instead, the lien applies only to proceeds recovered through the litigation process, such as settlements, judgments, or other funds obtained through legal efforts.

Courts routinely interpret attorney lien clauses according to their precise contractual language. If the contract limits the lien to recovery, the lien cannot be extended to other types of property.

///

///

5

C.    The funds held in trust are not "recovery"

The funds at issue in this motion are not litigation proceeds.  Rather, they represent existing community property funds that were transferred into counsel's trust account to be held during the dissolution proceedings until allocated by agreement or Court order.

These funds therefore were:

• not obtained through litigation

• not generated through settlement

• not awarded as damages or judgment proceeds.

They were simply existing community funds held by counsel temporarily and then distributed during the case for litigation expenses.

California courts have repeatedly recognized that charging liens attach to "proceeds of litigation", not to property that already existed prior to the attorney's involvement.

As the California Supreme Court explained in *Fletcher v. Davis*:

"The lien gives the attorney a security interest in the proceeds of the litigation." (33 Cal.4th at p. 66.)

Likewise, *Flannery* describes charging liens as:

"a security interest in the client's recovery." (5 Cal.App.5th at p. 496.)

Because the funds here were not recovered through litigation, they do not fall within the definition of "recovery" used in the retainer agreement.

D.    The Funds Have Already Been Awarded To Brett.

Even more importantly, the funds currently held in trust have already been awarded to Brett Truitt by prior court order.

The $35,000 held in trust is not unallocated. It has already been awarded to Brett in a prior Court order." Thus, the funds do not and cannot represent a "recovery" obtained on Cristina's behalf.  They represent funds that the Court has already determined belong to Brett, but which remain in trust solely because of the fee dispute between Cristina and her former counsel.

6

Under these circumstances, the asserted charging lien fails. M SM cannot assert a lien against funds that were never recovered for its client. The retainer agreement explicitly states that the lien applies to:

> "*funds recovered on behalf of Client.*"

Funds *awarded to the opposing party* obviously do not qualify.

E.    Charging Liens Attach Only To Litigation Proceeds

California courts consistently treat charging liens as interests in litigation proceeds, not general claims against a client's assets.

In *Southern California Gas Co. v. Flannery*, the court explained:

> "An attorney's charging lien gives the attorney the right to recover fees from the client's recovery in the litigation."

Likewise, in *Fletcher v. Davis*, the Supreme Court emphasized that the lien attaches to the "proceeds of the litigation."

This principle reflects the historical function of charging liens: they allow attorneys to secure payment from the very fund their efforts created. However, where no such fund exists, the basis for the lien disappears.

The funds at issue here were not won nor created by the work product of the attorney. They already belonged to the community, and were merely transferred held by counsel pending orders or agreements during the litigation.

Thus, they fall outside the traditional scope of attorney charging liens.

F.    ANY AMBIGUITY MUST BE INTERPRETED AGAINST THE ATTORNEY

The operative retainer agreement is further conflicing and confusing. It purports to allow deductions from "recovery" **and** "distribution of client's community property" in the same sentence. Recovery and community property are two distinctly different types of funds. It is an ambiguous and confusing clause.

Relevant authority dictates that any ambiguity must be construed against the attorney who drafted the agreement.

///

7

Civil Code section 1654 provides:

> "In cases of uncertainty… the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."

This rule applies with particular force in the context of attorney-client agreements because of the fiduciary nature of the relationship.

In *Lawrence v. Walzer & Gabrielson* (1989) 207 Cal.App.3d 1501, the court held:

> "Ambiguities in retainer agreements are construed in favor of the client and against the attorney."

Similarly, *Mayhew v. Benninghoff* (1997) 53 Cal.App.4th 1365 explained that courts apply the doctrine of *contra proferentem* with heightened scrutiny where the drafter is an attorney benefiting from the contract.

Because the retainer agreement here was drafted by MSM, any uncertainty regarding the meaning of the term "recovery" must be resolved in favor of the client.

Accordingly, the charging lien cannot be interpreted to reach community funds that were never recovered through litigation.

Even further, to the extent that the contract can reach the "Client" community funds, the funds currently held by MSM *are not even that*. They are funds belonging *to the opposing party*.

## IV.    THE FAMILY COURT HAS BROAD AUTHORITY TO CONTROL COMMUNITY ASSETS AND MAY ORDER RELEASE OF FUNDS NECESSARY TO FACILITATE LITIGATION

The Family Court is a *court of equity* and a Court that has broad authority over the assets belonging to the community. Even if the Court were to conclude that MSM's fee dispute cannot immediately be resolved, the Court nevertheless retains jurisdiction to control community assets during dissolution proceedings and to issue orders necessary to ensure that the case can proceed fairly.

Family courts are courts of equity and possess broad statutory authority to manage and preserve community property during the pendency of a dissolution action.

Family Code section 2010 grants the court jurisdiction over:

> "the settlement of the property rights of the parties."

Similarly, Family Code section 290 provides:

> "A judgment or order made or entered pursuant to this code may be enforced… by execution, the appointment of a receiver, or by **any other order** as the court in its discretion determines to be necessary."

This statutory language reflects the broad equitable powers granted to family courts in order to manage marital assets and ensure the orderly administration of dissolution proceedings.

California courts have repeatedly recognized the expansive scope of this authority. In *In re Marriage of Dick* (1993) 15 Cal.App.4th 144, the Court of Appeal explained that family courts possess:

> "broad discretion to make orders necessary to preserve and protect the property of the parties."

Similarly, *In re Marriage of Stallworth* (1987) 192 Cal.App.3d 742 recognized that family courts possess equitable authority to control the disposition of marital assets during litigation in order to prevent unfair advantage or dissipation of property.

These principles are particularly important where access to litigation funding is necessary to allow a party to meaningfully participate in the proceedings. The funds at issue here are currently held in the attorney-client trust account of Cristina's former counsel solely because of a fee dispute between Cristina and that firm—but these funds belong to Brett.

The Court retains jurisdiction over those funds. Nothing about the existence of a fee dispute deprives the Court of authority to manage assets during the dissolution proceeding. Indeed, courts frequently issue interim orders affecting disputed assets where necessary to ensure that litigation may proceed fairly.

Here, releasing a portion of the funds for litigation expenses would **not** finally resolve the lien dispute or alter the ultimate allocation of property between the parties.

**Rather, it would amount to releasing funds belonging to Brett to Brett; and then ordering Brett to use those funds to pay attorney's fees to Cristina.**

This unusual remedy is necessary and reasonable, because:

1. Brett already owes Cristina $15,000 in attorney's fees, because he never really paid the initial order for attorney's fees—he used community funds to make that payment;

2. Brett has assets available to pay attorney's fees (the Trust Funds are his entirely), while Cristina does not.

Thus, the Court may order temporary release of funds necessary to allow Cristina to retain counsel and prepare the case for trial while preserving jurisdiction over the ultimate allocation of those funds.

## V.    NEED-BASED ATTORNEY FEE AWARDS ARE REQUIRED TO ENSURE LITIGATION PARITY

Even if the Court declines to order release of the funds held in trust, the Court must still determine whether a needs-based attorney fee award is required to ensure that the parties can litigate the case on relatively equal footing.

Family Code sections 2030 and 2032 establish California's statutory scheme governing attorney fee awards in family law proceedings.

Family Code section 2030(a)(1) provides:

> "The court shall ensure that each party has access to legal representation… by ordering, if necessary based on the income and needs assessments, one party… to pay to the other party… whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding."

The statute further provides that the court shall make findings regarding:

> "whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties."

///

///

///

10

Family Code section 2032(a) further provides:

> "The court may make an award of attorney's fees and costs… where the award and the amount of the award are just and reasonable under the relative circumstances of the respective parties."

California appellate courts consistently emphasize that the purpose of these statutes is to ensure meaningful access to legal representation.

The fees requested by Cristina are reasonable given the work necessary to prepare for and litigate the trial on the remaining disputed issues, as detailed in the declaration submitted by counsel with Cristina's initial Request for Order

In *Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, the Court of Appeal explained:

> "The purpose of section 2030 is to ensure parity between spouses in their ability to obtain effective legal representation."

Similarly, *In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295 held:

> "The trial court must consider whether the award is necessary to ensure that each party has access to legal representation."

The statutory scheme therefore reflects a fundamental policy of California family law: dissolution proceedings should be litigated on relatively equal footing.

**VI. BRETT'S LITIGATION CONDUCT AND FINANCIAL ADVANTAGE FURTHER SUPPORT AN AWARD OF LITIGATION FUNDING**

The litigation history in this matter further demonstrates why litigation funding is necessary to ensure fairness between the parties. Brett has had the benefit of extensive legal representation throughout the proceedings and has already incurred substantial attorney's fees. Brett's former attorney, while placing all the blame of extensive litigation on Cristina, has acted in bad faith to drive up fees and costs, and has actively sought to persuade Cristina's current counsel out of representing her.

On December 23, 2025, Brett's former attorney, Peter Saatjian, ("Mr. Saatjian") sent Cristina's counsel ("Ms. Lee") an e-mail accusing Cristina of lying to her prior forensic expert,

implying that Cristina was lying to Ms. Lee, and making a veiled threat that Cristina would likely sue Ms. Lee for malpractice. He questioned why Ms. Lee would take the case. See **Exhibit B**.

On January 5, 2026, while meeting and conferring in person, Mr. Saatjian again expressed that he believed Cristina was lying to Ms. Lee, and that she would end up suing her for malpractice.

On January 7, 2026, Mr. Saatjian again implied via e-mail that Cristina was going to sue Ms. Lee for malpractice. See **Exhibit C**.

While Brett contends that Cristina has been the party to drive up litigation costs, since Ms. Lee has been on the case, Brett and/or his prior attorney Mr. Saatjian has:

- Opposed a motion to continue trial which he had all but been told would be granted, prompting an hours-long court appearance being required by Cristina's newly-retained counsel

- Filed an ex parte Request for Order on December 31, 2025, seeking, among other things, for Cristina to be referred to law enforcement for perjury,

- Agreed on January 5, 2026, to continue a hearing that was at that time scheduled for January 15, 2026, to give newly-retained counsel more time to review the issues; only to subsequently renege on the agreement. Ms. Lee was forced to prepare an ex parte to continue the hearing, and only after she had done so did Brett finally agree (again) to continue the hearing;

- Agreed on January 5, 2026, to continue the evidentiary hearing that was at that time set for April 6, 2026, only to subsequently renege on that agreement and file an ex parte request to vacate the hearing entirely;

- Agreed on January 6, 2026, to dismiss the hearing on Cristina's motion to disqualify Mr. Saatjian, which had been set for January 9, 2026. After agreeing to terms certain (dismissal with prejudice, with reservation of sanctions), Mr. Saatjian refused to sign a stipulation containing those terms, demanding additional terms be added. Counsel was forced to appear at the hearing, at which time, Mr. Saatjian agreed to read the exact terms proposed by Ms. Lee on the record.

- Admits that when he was previously ordered to pay $15,000 of Cristina's attorney's fees, he **used community funds to do it.**

Evidence in the record indicates that Brett has spent more than $200,000 on attorney's fees during the course of the litigation. By contrast, Cristina spent a significant amount of time in this case unrepresented.

On December 2, 2025, the Court **implored Cristina to get an attorney**, stating that her attorney should submit a declaration describing how much time and how much money she would need to be adequately prepared for trial. See **Exhibit "D"** the transcript from the December 2, 2025 hearing. **Cristina has done as the Court instructed.**

Unfortunately, Cristina currently lacks the financial resources necessary to pay a trial preparation retainer or retain experts necessary to prepare the case for trial.

This disparity in resources has practical consequences.

Without litigation funding Cristina cannot:

- retain experts, although a 730 evaluation has already been ordered;
- conduct necessary financial discovery;
- prepare trial exhibits;
- adequately prepare for trial.

Allowing Brett to proceed to trial with extensive legal representation (his prior counsel already prepared his trial brief, witness list, exhibit list and exhibits in December of 2025) while Cristina is unable to retain counsel would create precisely the type of litigation imbalance the statutory fee scheme is designed to prevent.

Moreover, represented litigation promotes the efficient administration of justice. The Court has remarked essentially that Cristina has mishandled this case on her own, creating a strain on judicial resources. This further highlights the necessity of competent counsel.

Courts routinely recognize that forcing one party to proceed without counsel in a complex dissolution trial often leads to inefficient proceedings and unnecessary strain on judicial resources.

Ensuring that both parties have access to legal representation benefits not only the parties but also the Court.

13

## VII.    PRIOR SANCTIONS DO NOT ELIMINATE THE COURT'S OBLIGATION TO ENSURE ACCESS TO COUNSEL

Cristina has previously been sanctioned under Family Code section **271**. Those sanctions, despite Brett's representations, are not all presently due and owing. Instead, a substantial portion of the sanctions were ordered to be paid out of Cristina's share of the community estate.

Further, sanctions under section 271 and needs-based attorney fee awards under sections 2030 and 2032 **serve fundamentally different purposes**.

Family Code section 271 is designed to promote cooperation and discourage litigation conduct that frustrates settlement.

By contrast, sections 2030 and 2032 are designed to ensure that both parties have meaningful access to legal representation.

California courts recognize that these statutes serve different functions and must be evaluated independently. Even where sanctions exist, the court must still determine whether an attorney fee award is necessary to ensure parity between the parties. The existence of sanctions therefore does not eliminate the court's obligation to evaluate the parties' relative access to financial resources.

Here, Cristina seeks limited litigation funding solely for the purpose of preparing the case for trial. Sanctions, if appropriate, may ultimately be accounted for in the final allocation of property or attorney fees, but they cannot serve as a substitute for the parity analysis required under sections 2030 and 2032.

## VIII.    LIMITED DISCOVERY SHOULD BE REOPENED DUE TO THE CONTINUANCE OF TRIAL AND THE NEED FOR UPDATED FINANCIAL INFORMATION

Trial in this matter has been continued.

As a result, updated financial discovery is necessary in order to determine:

- Brett's current income
- the availability of assets
- his ability to contribute to attorney's fees.

Code of Civil Procedure section **2024.050** authorizes reopening discovery upon a showing of good cause.

14

In determining whether discovery should be reopened, courts consider factors including:

- the necessity of the discovery
- the diligence of the requesting party
- the potential prejudice to the opposing party.

In *Pelton-Shepherd Industries, Inc. v. Delta Packaging Products, Inc.* (2008) 165 Cal.App.4th 1568, the Court of Appeal explained that discovery may be reopened where additional discovery is necessary to fairly prepare the case for trial.

Here, updated financial discovery is particularly important because the parties dispute the disposition of significant assets, including funds removed from the Vividion Therapeutics Bayer Corporation assets after the date of separation.

Additional discovery is necessary to determine the current status of those assets and Brett's ability to contribute to attorney's fees.

## IX.    DENYING LITIGATION FUNDING WOULD EFFECTIVELY DEPRIVE CRISTINA OF A FAIR TRIAL

The statutory scheme governing attorney fee awards in family law proceedings exists to prevent exactly the situation currently facing Cristina.

Brett has already expended substantial resources on legal representation while Cristina currently lacks the funds necessary to retain counsel and prepare the case for trial. Without litigation funding Cristina will be required to proceed to trial without counsel while Brett continues to benefit from extensive legal representation.

Courts consistently recognize that denying access to litigation funding under such circumstances may effectively deprive a party of meaningful access to the court. Ensuring that both parties have access to counsel promotes fairness, facilitates efficient litigation, and assists the Court in resolving the issues before it.

## X.    CONCLUSION

Cristina respectfully requests that the Court issue orders necessary to ensure meaningful access to legal representation and preparation for trial. Specifically,

Order the release of **$25,000 from the $35,000 currently held in the trust account of Moore, Schulman & Moore** for attorney fees and expert costs;

OR

Issue need-based attorney fee orders pursuant to **Family Code sections 2030 and 2032** requiring Brett Truitt to contribute toward Cristina's attorney fees.

AND

Allow Cristina to conduct limited discovery as to: Brett's income and expenses, assets and debts, and community assets and debts.

Dated: 03/13/2026

_____
T. Healoha Lee
Attorney for Respondent

CRISTINA M. LANCARANJAN

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

LANCRANJAN v. SAATJIAN, et al.

Case:26-CV-02817-BAS-VET

EXHIBIT 14

LEDGER OF ONGOING LITIGATION HARASSMENT AND ABUSE OF PROCESS

**Description of Evidence:** This exhibit contains the comprehensive ledger of recent procedural abuses, organized as follows:

- **Part A:** Defendants' Motion for Order Requiring Plaintiff to Furnish Security;

- **Part B:** The July 6, 2026, Superior Court Minute Order denying the security bond and finding meritorious issues;

- **Part C:** The July 16, 2026, Demurrer and Motion to Strike (filed as a bad-faith stalling tactic to avoid the Court's 10-day deadline to answer);

- **Part D:** The July 15/16, 2026, Discovery Demands (propounded simultaneously with the Demurrer to maximize financial duress);

- **Part E:** Formal Objection Email dated July 15, 2026 (Plaintiff's notice regarding premature discovery);

- **Part F:** Notice of Ongoing Pattern of Harassment, State-Facilitated Abuse, and Demand for Court Minutes (Filed July 3, 2026, detailing the June 25, 2026, hearing evidentiary blackout and the Enterprise's defiance of the automatic appellate stay under CCP § 916 regarding Case D086958);

- **Part G:** July 15, 2026, Federal District Court Order in Case 3:26-cv-3765-JES-DEB, setting the briefing schedule for the Temporary Restraining Order (TRO) hearing.

This ledger proves the Enterprise's ongoing commitment to "fee-churning," the systematic weaponization of litigation to maintain financial duress, and the deliberate obstruction of justice across both state and federal jurisdictions. **The**

acts of harassment and procedural abuse described herein are illustrative and not exhaustive; Plaintiff reserves the right to amend or supplement this ledger as further discovery and ongoing misconduct warrant.

Douglas A. Pettit, Esq., SBN 160371
Liberty G. Shores, Esq., SBN 361345
**PETTIT KOHN INGRASSIA LUTZ & DOLIN PC**
11622 El Camino Real, Suite 300
San Diego, CA 92130
Telephone: (858) 755-8500
Facsimile: (858) 755-8504
E-mail: dpettit@pettitkohn.com
lshores@pettitkohn.com

Attorneys for Defendants
**DAVID SCHULMAN and MOORE SCHULMAN
& MOORE, APC**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO – CENTRAL DIVISION**

| | |
|---|---|
| CRISTINA LANCRANJAN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>DAVE SCHULMAN, an individual;<br>MOORE SCHULMAN & MOORE, APC, a<br>corporation; and DOES 1-10, inclusive,<br><br>Defendant. | CASE NO.: 25CU054361C<br><br>**DECLARATION OF LIBERTY G.<br>SHORES IN SUPPORT OF DEFENDANTS<br>DAVID SCHULMAN and MOORE<br>SCHULMAN & MOORE, APC'S MOTION<br>FOR ORDER REQUIRING VEXATIOUS<br>LITIGANT CRISTINA LANCRANJAN TO<br>FURNISH SECURITY**<br><br>Date: July 2, 2026<br>Time: 10:30 a.m.<br><br>Dept: C-68<br>Judge: Hon. Terrie E. Roberts<br>Filed: October 8, 2025<br>Trial: Not yet set |

I, Liberty G. Shores, declare as follows:

1. I am an attorney duly licensed to practice law before all of the courts of the State of California and am an associate with the law firm of Pettit Kohn Ingrassia Lutz & Dolin PC, attorneys of record for Defendants DAVID SCHULMAN and MOORE SCHULMAN & MOORE, APC ("Defendants") in the above-captioned case. I am familiar with the facts and proceedings of this case and if called as a witness, I could and would competently testify to the following facts of my own personal knowledge.

2. Given Plaintiff's vexatious pattern of litigation, significantly her attempts to

1

DECLARATION OF LIBERTY G. SHORES ISO DEFENDANTS DAVID SCHULMAN and MOORE
SCHULMAN & MOORE, APC'S MOTION FOR ORDER REQUIRING PLAINTIFF TO FURNISH SECURITY

relitigate the same issues previously decided in the underlying family-court action in the San Diego Superior Court Case, No.: 23FL000584C in the instant action, Defendants have incurred approximately $16,861.75 in attorneys' fees and costs defending this action.

3.    Significant work still needs to be completed to prosecute this matter through trial, including but not limited to: filing a demurrer and/or other responsive pleading, completing written discovery, obtaining a complete production of documents from Plaintiff, deposing Plaintiff and necessary third parties, conducting expert discovery, filing a motion for summary judgment, and preparing for and appearing at trial. Given the amount of work that remains to be completed, Defendants can reasonably expect to incur at least another $100,000 to defend this case through trial. Accordingly, Plaintiff should be ordered to furnish security in the amount of at least $50,000.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 30th day of January 2026, at San Diego, California.

*Liberty Shores*

Liberty G. Shores, Esq.

2

DECLARATION OF LIBERTY G. SHORES ISO DEFENDANTS DAVID SCHULMAN and MOORE SCHULMAN & MOORE, APC'S MOTION FOR ORDER REQUIRING PLAINTIFF TO FURNISH SECURITY

Cristina Lancranjan
1011 Union St Ap1205
San Diego CA 92101
Phone Number 860-460-1865
Fax Number: NA
Email: lancranjan.cristina@gmail.com
Cristina Lancranjan Plaintiff, IN PRO PER

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| CRISTINA M. LANCRANJAN, | Case No.: 25CU054361C |
| Plaintiff(s), | **PLAINTIFF'S OPPOSITION TO DEFENDANT SCHULMAN'S MOTION TO REQUIRE FURNISHING OF SECURITY; MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| DAVID S. SCHULMAN, Esq., et al., | |
| Defendant(s). | **Hearing Date:** July 2, 2026 |
| | **TIME:** 10:30AM |
| | **DEPT:** C-68 |
| | **Judge:** Hon. Terrie E. Roberts |

**PLAINTIFF'S OPPOSITION TO DEFENDANT SCHULMAN'S MOTION TO REQUIRE FURNISHING OF SECURITY; MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION AND INCORPORATION BY REFERENCE** Plaintiff incorporates by reference the Master Request for Judicial Notice (RJN) and all accompanying Exhibits (A–X) submitted herewith, as well as the concurrently filed Declaration of Cristina M. Lancranjan. These judicially noticed appellate orders and authenticated exhibits provide objective proof of Defendant Schulman's extrinsic fraud and demonstrate active appellate scrutiny (Case No. D086958) of the void orders he now attempts to weaponize.

-1-

PLAINTIFF'S OPPOSITION TO DEFENDANT SCHULMAN'S MOTION TO REQUIRE FURNISHING OF SECURITY; MEMORANDUM OF POINTS AND AUTHORITIES; Case No.: 25CU055956C

Defendant's motion is a procedural nullity. To prevail under Code of Civil Procedure § 391.1, a defendant must demonstrate that a plaintiff lacks a "reasonable probability of prevailing." Defendant cannot meet this burden because the evidence establishes the exact opposite. Beyond the extensive documentary record submitted, the unauthorized $150,000 transfer of trust funds alone constitutes prima facie evidence of malpractice. (Decl. of Lancranjan, ¶ 3-6; Exhibit A [Unexecuted Stipulation]; Exhibit B [Blado Email]).

Furthermore, the foundational premise of his motion—a "Vexatious Litigant" (VL) order—is currently under active appellate review. By granting petitions for review on the merits, the Court of Appeal has signaled that these orders are not final, but are instead subject to reversal due to the extrinsic fraud engineered by Defendant. Under the equitable maxim codified in Civil Code § 3517, "No one can take advantage of his own wrong." Defendant is strictly prohibited from using the very damage he inflicted—Plaintiff's engineered destitution and the resulting VL label—to demand a security bond as a paywall to escape liability.

## II. DEFENDANT FAILS TO MEET THE STATUTORY BURDEN UNDER CCP § 391.1

Defendant Schulman's motion is legally untenable. Under CCP § 391.1, the moving defendant bears the heavy burden to prove both that the plaintiff is a 'vexatious litigant' and that there is "not a reasonable probability that the plaintiff will prevail in the litigation." Defendant fails on both counts.

**A. The Vexatious Litigant Order is Non-Final and Cannot Be Weaponized** Defense counsel characterizes Plaintiff's filings as a "campaign of litigation terror" to justify relying on the VL order (LGS Decl., ¶ 2). However, this VL order is not a settled fact; it is a contested, non-final order currently being scrutinized for extrinsic fraud in Case No. D086958. A defendant cannot weaponize a procedural status that is the direct subject of appellate scrutiny. Furthermore, the

PLAINTIFF'S OPPOSITION TO DEFENDANT SCHULMAN'S MOTION TO REQUIRE FURNISHING OF SECURITY; MEMORANDUM OF POINTS AND AUTHORITIES; Case No.: 25CU055956C

Presiding Justice of the Court of Appeal has pierced the "vexatious" narrative by granting Plaintiff's petitions for review (RJN, Exs. A-G), providing objective judicial validation that Plaintiff's filings are essential, good-faith efforts to challenge void orders.

**B. Factual Rebuttal to Defendant's Fabricated Claims (DSS Declaration)** Defendants rely on self-serving, perjurious declarations that are fundamentally disproven by the documentary record. For a granular, indexed breakdown of how each piece of documentary evidence refutes the defense's claims, the Court is referred to the Master Factual Rebuttal Matrix (Decl. of Lancranjan, Exhibit J).

1.  **Fabricated Pretext Regarding Discovery:** Defendant Schulman attempts to shield his malpractice by falsely claiming Plaintiff failed to cooperate or provide discovery documents (DSS Decl.). As established in Plaintiff's Declaration, this is demonstrably false. Plaintiff provided all necessary discovery documents to Defendant in August and September 2024 (Exhibits L, N, and O)—the exact same documents successor counsel successfully filed months later. Defendant's conscious refusal to propound this discovery —while allowing opposing counsel to file unserved "ghost motions" to compel—was a strategic abandonment, not a failure of Plaintiff's cooperation. Manufacturing this false narrative constitutes a severe breach of the duty of competence (CRPC Rule 1.1).

2.  **Perjury Regarding the Client File:** Defendant commits perjury by falsely swearing that the "entire" client file was provided (DSS Decl., ¶ 23). This is a demonstrable falsehood. The production intentionally omitted critical, time-stamped emails between Defendant and opposing counsel regarding a secret calendar agreement (Exhibit C). Despite numerous demands pursuant to CRPC Rule 1.16(e)(1), Defendant has failed to produce the missing records (Exhibit X).

-3-

**PLAINTIFF'S OPPOSITION TO DEFENDANT SCHULMAN'S MOTION TO REQUIRE FURNISHING OF SECURITY; MEMORANDUM OF POINTS AND AUTHORITIES; Case No.: 25CU055956C**

**III. PLAINTIFF EXCEEDS THE BURDEN: OVERWHELMING PROBABILITY OF SUCCESS** If the Court declines to stay the matter, Defendant's motion must still be denied because Plaintiff has established a prima facie case of Legal Malpractice and Breach of Fiduciary Duty. Plaintiff easily meets this burden under the Judicial Council of California Civil Jury Instructions (CACI):

**A. Embezzlement, Wire Fraud, and Breach of Fiduciary Duty (CACI 4101 & 4102)** In October 2024, Defendant Schulman actively negotiated and executed an unauthorized $150,000 electronic wire transfer of Plaintiff's frozen community assets directly into his firm's IOLTA trust account. This transfer bypassed mandatory ATROs and was executed entirely without Plaintiff's legally required signature or a prior court order. Successor counsel explicitly admitted in a November 20, 2024 email that this transfer occurred without Plaintiff's signature (Exhibit B). By executing an unauthorized transfer, Defendant committed conversion of community assets and a violation of Penal Code § 506 (Embezzlement). This conduct is a per se breach of his fiduciary duty under CRPC Rule 1.15(c), destroying his claim that Plaintiff's lawsuit lacks merit.

**B. Extortion, Intimidation, and the "Quid Pro Quo" (CACI 600 & 602)** Defendant Schulman's unauthorized transfer was the result of illicit collusion. Plaintiff directed Schulman to file an October 3 ex parte application to formally freeze the marital estate. Instead, Schulman engaged in an off-the-record agreement with opposing counsel. He deliberately took his protective ex parte off the calendar in direct exchange for facilitating the $150,000 extraction. Because he engineered this defenselessness, opposing counsel filed an unserved "Ghost Motion" on October 15, 2024. When Plaintiff's forensic expert uncovered this financial concealment (Exhibit G), opposing counsel engaged in documented intimidation tactics. Defendant Schulman completely abandoned his duty to protect his client from this extortionate leverage (Exhibit F).

-4-

PLAINTIFF'S OPPOSITION TO DEFENDANT SCHULMAN'S MOTION TO REQUIRE FURNISHING OF SECURITY; MEMORANDUM OF POINTS AND AUTHORITIES; Case No.: 25CU055956C

**C. Direct Causation of Cascading Constitutional Damages (CACI 430)** Under CACI 430, Plaintiff must show Defendant's negligence was a substantial factor in causing harm. Because Defendant abandoned the discovery process to secure his unearned fees, opposing counsel was able to weaponize fabricated "non-compliance" to systematically strip Plaintiff of her rights (Exhibit I, Case Chronology). This directly resulted in:

- **Loss of Privilege:** The fabricated discovery sanctions were weaponized to justify an unconstitutional waiver of Plaintiff's attorney-client privilege (March 18, 2025 Hearing Transcript).

- **Loss of Custody & Move-Away:** The family court utilized this Schulman-engineered "non-compliance" to unilaterally deny her move-away request. This sabotaged the official May 31, 2024 FCS recommendation, cost Plaintiff her executive career in Boston, and left her facing imminent homelessness.

- **Extortionate Financial Penalties:** Plaintiff has incurred over $25,000 in direct monetary sanctions, and opposing counsel is demanding an additional $100,000 based entirely on the "non-compliance" fraud Defendant Schulman facilitated.

**D. Void Bifurcation and IIED (CACI 1600)** Defendant Schulman deliberately refused to demand mandatory final financial disclosures (Family Code § 2105), allowing a void bifurcation of marital status to proceed. This total sabotage directly caused financial destitution, permanently locking Plaintiff out of a complex $1,000,000+ estate (Exhibit H).

**IV. THE MOTION IS BARRED BY EQUITY, CONSTITUTES A "PAYWALL," AND WARRANTS SANCTIONS** Defendant's motion is not a procedural safeguard; it is a bad-faith attempt to weaponize the very indigency he created.

PLAINTIFF'S OPPOSITION TO DEFENDANT SCHULMAN'S MOTION TO REQUIRE FURNISHING OF SECURITY; MEMORANDUM OF POINTS AND AUTHORITIES; Case No.: 25CU055956C

**A. The Equitable Bar: Unclean Hands (Civil Code § 3517)** Defendant's motion is a textbook violation of Civil Code § 3517. The VL status Defendant relies upon is the direct, proximate result of his own severe fiduciary abandonment. Having intentionally thrust Plaintiff into pro per status while locking her out of her estate, Defendant forced Plaintiff to file emergency mitigation motions. He cannot now use the resulting VL label to shield himself from liability. As established in Camp v. Jeffer, Mangels, Butler & Marmaro (1995) 35 Cal.App.4th 620, a party seeking relief must come to the Court with clean hands.

**B. The $50,000 Bond is an Unconstitutional "Indigency Trap"** Defense counsel demands a $50,000 security bond (LGS Decl., ¶ 3). Ordering a destitute mother to post a $50,000 bond—when Defendant's unauthorized $150,000 extraction directly caused that destitution—violates the 14th Amendment. Under Boddie v. Connecticut (1971) 401 U.S. 371, the state cannot erect an insurmountable financial barrier between an indigent party and their right to seek redress. Beaudreau v. Superior Court (1975) 14 Cal.3d 367 establishes the court's inherent power to waive such requirements when they function as unconstitutional "paywalls."

**C. Procedural Fraud and Need for Judicial Consistency** Defendant is engaged in "circular fraud." Defendant used this motion (CCP § 391.1) to trigger an automatic stay (CCP § 391.6), only to affirmatively misrepresent the law at a May 27, 2026 ex parte, falsely arguing that Plaintiff needed "permission" under the pre-filing order (CCP § 391.7) to file non-discovery motions. This is a deliberate legal falsehood intended to choke the court record. Furthermore, a parallel department of this Court has already recognized the necessity of a stay in this litigation matrix to avoid inconsistent judgments (RJN, Exhibit G).

**D. Request for Sanctions (CCP § 128.5)** Plaintiff respectfully requests that the Court impose sanctions against Defendant for filing this frivolous and oppressive motion. Given the

-6-

PLAINTIFF'S OPPOSITION TO DEFENDANT SCHULMAN'S MOTION TO REQUIRE FURNISHING OF SECURITY; MEMORANDUM OF POINTS AND AUTHORITIES; Case No.: 25CU055956C

documentary evidence of perjury regarding the client file and the Court of Appeal's active review of the underlying void orders, the request for a security bond constitutes a malicious abuse of the judicial process intended to cause unnecessary delay.

**V. CONCLUSION: THE DEFENDANT'S FRAUD-CAUSATION LOOP** Defendant's motion is a brazen abuse of the judicial process. Under the Doctrine of Unclean Hands and the equitable mandate of Civil Code § 3517, Defendant cannot weaponize a "Vexatious Litigant" (VL) label that his own extreme malpractice proximately caused. Defendant engineered Plaintiff's destitution through an unauthorized $150,000 wire transfer and total fiduciary abandonment. This strict-liability malpractice stripped Plaintiff of her estate and fundamental rights, triggering the very VL order Defendant now uses to demand a security bond. Defendant cannot legally exploit the wreckage he created to manufacture an unconstitutional financial paywall against civil accountability.

Furthermore, Defendant fails both threshold requirements of CCP § 391.1. First, the foundational VL order is not a final judgment; it is under active appellate review for extrinsic fraud (Case No. D086958). By granting review, the Court of Appeal has provided objective judicial validation of Plaintiff's underlying claims, piercing the "vexatious" narrative. Second, Defendant cannot prove Plaintiff lacks a "reasonable probability of prevailing," as Plaintiff has submitted incontrovertible documentary evidence of Defendant's malpractice, including the unexecuted trust transfer and documented collusion.

To grant this bond would effectuate a severe deprivation of Due Process, signaling that predatory fiduciaries can bankrupt a client and use that engineered indigency to block judicial scrutiny. Therefore, to preserve the integrity of the justice system, Plaintiff respectfully requests that this Court:

-7-

**PLAINTIFF'S OPPOSITION TO DEFENDANT SCHULMAN'S MOTION TO REQUIRE FURNISHING OF SECURITY; MEMORANDUM OF POINTS AND AUTHORITIES; Case No.: 25CU055956C**

1. **DENY** Defendant's Motion to Require Security in its entirety, as Defendant fails the statutory requirements of CCP § 391.1.

2. **GRANT** Plaintiff's concurrently filed Motion to Stay, as damages in this malpractice action are contingent upon the resolution of the pending appeals (Adams v. Paul (1995) 11 Cal.4th 583).

3. **IMPOSE SANCTIONS** against Defendant under the Court's inherent authority for filing a motion predicated on bad-faith misrepresentations.

Respectfully submitted,

Dated: June 18, 2026

**CRISTINA M. LANCRANJAN** Plaintiff, In Pro Per /s/Cristina Lancranjan

-8-

**PLAINTIFF'S OPPOSITION TO DEFENDANT SCHULMAN'S MOTION TO REQUIRE FURNISHING OF SECURITY; MEMORANDUM OF POINTS AND AUTHORITIES; Case No.: 25CU055956C**

Cristina Lancranjan
1011 Union St Ap1205
San Diego CA 92101
Phone Number 860-460-1865
Fax Number: NA
Email: lancranjan.cristina@gmail.com
Cristina Lancranjan Plaintiff, IN PRO PER

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

| CRISTINA M. LANCRANJAN, | ) | Case No.: 25CU054361C |
|---|---|---|
| Plaintiff(s), | ) ) ) ) ) | **DECLARATION OF CRISTINA LANCRANJAN IN SUPPORT OF OPPOSITION TO MOTION TO REQUIRE SECURITY** |
| vs. | ) | |
| DAVID S. SCHULMAN, Esq., et al., | ) ) | **Hearing Date:** July 2, 2026 |
| Defendant(s). | ) ) ) ) | **TIME: 10:30AM** **DEPT: C-68** **Judge:** Hon. Terrie E. Roberts |

**DECLARATION OF CRISTINA M. LANCRANJAN IN SUPPORT OF OPPOSITION TO MOTION TO REQUIRE SECURITY**

I, Cristina M. Lancranjan, declare as follows:

1.  I am the Plaintiff in this action, appearing *in pro per*. I am over the age of 18 and have personal knowledge of the facts set forth in this declaration. If called as a witness, I could and would testify competently to these facts.

-1-

DECLARATION OF CRISTINA LANCRANJAN IN SUPPORT OF OPPOSITION TO MOTION TO REQUIRE SECURITY; Case No.: 25CU054361C

2.    I retained Defendant Dave Schulman to represent me in my family law proceeding (San Diego Superior Court Case No. 23FL000584C). At the time of retention, I was a stay-at-home mother and the primary caregiver for my then 5-year-old son. I was already in extreme financial distress because my ex-husband had seized control of our community assets (an estate valued at over $1,000,000) in violation of Automatic Temporary Restraining Orders (ATROs), after abandoning our family.

**The Unauthorized $150,000 Transfer**

3. In October 2024, during his representation of me, Defendant Schulman negotiated and executed a $150,000 wire transfer of my frozen community assets directly into his firm's IOLTA trust account.

4. I never authorized, stipulated to, or consented to this transfer. It was executed entirely without my signature and without a prior court order.

5. Attached hereto as **Exhibit A** is a true and correct copy of the unexecuted Stipulation drafted by Defendant Schulman.

6. Attached hereto as **Exhibit B** is a true and correct copy of a November 20, 2024 email from my successor counsel, Matthew Blado, confirming the transfer occurred without my signature.

**Abandonment and the Void Bifurcation**

7. Immediately following this unauthorized transfer, Defendant Schulman took an October 3, 2024 *ex parte* hearing off the court calendar. That hearing had been scheduled specifically to freeze the marital estate and protect my assets. He subsequently abandoned my defense.

-2-

**DECLARATION OF CRISTINA LANCRANJAN IN SUPPORT OF OPPOSITION TO MOTION TO REQUIRE SECURITY; Case No.: 25CU054361C**

8. Defendant Schulman failed to serve or demand mandatory discovery and financial disclosures on my behalf. He failed to respond to a meet-and-confer letter dated October 2, 2024. As a result, opposing counsel filed an unserved "ghost" motion to compel discovery. Defendant Schulman did not challenge this motion.

9. Defendant Schulman deliberately failed to demand mandatory Final Declarations of Disclosure from my ex-husband before allowing a bifurcation of marital status to proceed unchallenged.

10. Attached hereto as **Exhibit H** is a true and correct copy of my 2023 Federal Tax Returns, which I provided to Defendant to evidence the complexity of the $1,000,000+ estate that he abandoned.

**The Sabotaged Move-Away and Loss of Privilege**

11. On May 31, 2024, Family Court Services (FCS) formally recommended in my favor regarding a move-away to Boston, recognizing my status as the primary caretaker.

12. Because of Defendant Schulman's failure to serve discovery and protect my rights, opposing counsel (Peter Saatjian) utilized the October 15, 2024 unserved discovery motion to manufacture non-compliance against me.

13. Because I was left defenseless by Defendant Schulman's actions, the family court explicitly cited my manufactured lack of credibility regarding discovery compliance during a March 18, 2025 hearing. This resulted in the waiver of my attorney-client privilege, adverse custody orders, the denial of my Boston move-away request, and sanctions that currently total over $25,000.

**Extortion of Experts & Documented Hostility**

-3-

DECLARATION OF CRISTINA LANCRANJAN IN SUPPORT OF OPPOSITION TO MOTION TO REQUIRE SECURITY; Case No.: 25CU054361C

14. In October 2024, Defendant Schulman had actual knowledge that opposing counsel was utilizing hostile and fraudulent tactics against me in the underlying family law matter. When Defendant Schulman abruptly abandoned my case, he left me completely defenseless against this known threat. As a direct result of his abandonment, I was subjected to documented civil extortion.

15. Attached hereto as **Exhibit F** is a true and correct copy of the Executed Ethics Expert Declaration of Edward J. McIntyre (dated November 4, 2025), which I obtained to objectively document the severe extortionate leverage that Defendant Schulman left me alone to face.

16. Attached hereto as **Exhibit G** is a true and correct copy of an executed declaration and expert forensic accounting trace prepared by Ms. Anna Addleman. This expert trace details the unauthorized trajectory of the $150,000 extraction and encompasses the entirety of the $1,000,000+ marital estate that Defendant Schulman allowed the opposing party to lock me out of.

**Quantifiable Damages and the "Vexatious Litigant" Label**

17. The sabotaged move-away cost me my executive career in Boston. Because Defendant Schulman allowed a bifurcation to proceed without financial disclosures, I remain locked out of my marital estate.

18. To date, I have been sanctioned over $25,000, I have spent tens of thousands for legal defense, and hundreds of thousands to stay in San Diego to pay expensive rent and living expenses. Opposing counsel is currently demanding an additional $100,000 in their December 2025 trial brief based entirely on the defenselessness Defendant Schulman engineered. My credit

-4-

**DECLARATION OF CRISTINA LANCRANJAN IN SUPPORT OF OPPOSITION TO MOTION TO REQUIRE SECURITY; Case No.: 25CU054361C**

cards are maxed out and in default, and my credit score has plummeted from over 700 to under 500.

19. Following Defendant Schulman's withdrawal, I was forced to litigate *in pro per* without access to community survival funds. Due to the unserved discovery motions and unauthorized transfers executed during his representation, my credibility before the family court was severely damaged.

20. When I filed necessary emergency motions to protect my fundamental rights and expose opposing counsel's actions, the trial court labeled me a "Vexatious Litigant." As a direct result of Defendant Schulman's actions, I have been forced to spend hundreds of thousands of dollars in expert fees and appellate costs to repair my family law case.

21. Attached hereto as **Exhibit I** is a true and correct copy of my Comprehensive Case Chronology, mapping the timeline of Defendant Schulman's abandonment.

**Factual Rebuttal to Defendant's Declarations Regarding the Client File**

22. I have read the Declarations of David S. Schulman and Liberty G. Shores. Defendant Schulman swears under penalty of perjury that he provided my complete client file upon termination of his services via physical copies and a Dropbox link. This is factually untrue.

23. I never appeared in person at Defendant Schulman's office to collect a physical file.

24. When I subsequently reviewed the Dropbox link provided by his office, critical, time-stamped email communications between Defendant Schulman and opposing counsel Peter Saatjian were entirely missing—specifically, the emails documenting the October 15, 2024 agreement to pull the protective October 3 *ex parte* off the calendar. Attached hereto as **Exhibit C** is a true and correct copy of those communications, which I later had to obtain myself.

-5-

**DECLARATION OF CRISTINA LANCRANJAN IN SUPPORT OF OPPOSITION TO MOTION TO REQUIRE SECURITY; Case No.: 25CU054361C**

25. Attached hereto as **Exhibit X** is a true and correct copy of an email thread between myself and David Schulman dated April 2025, documenting my repeated requests for the complete file. He possesses no signed acknowledgment of receipt, no itemized transmittal log, and no Bates-stamped inventory proving the complete file was transmitted to me.

**Factual Rebuttal Regarding Discovery Compliance**

26. Defendant Schulman claims I failed to provide discovery to him. This is demonstrably false.

27. The discovery responses ultimately propounded and filed by my successor counsel, Matt Blado, were based on the exact same documentary evidence I had previously submitted to Schulman in August and September 2024.

28. Attached hereto as **Exhibit N** are true and correct copies of the discovery responses filed by successor counsel.

29. Attached hereto as **Exhibit O** are true and correct copies of my email correspondence from August and September 2024 transmitting those exact documents to Defendant Schulman.

30. Attached hereto as **Exhibit L** is a true and correct copy of an email dated September 10, 2024, confirming Schulman's office received outstanding items from me.

31. A comparison of the Bates-stamped documents in Exhibit N with the email transmittals in Exhibits L and O proves that Schulman was in possession of all necessary discovery materials months before his termination. Any failure to propound this discovery was his strategic choice, not my failure to provide documents.

**The Retaliatory Lien and Master Rebuttal Matrix**

-6-

DECLARATION OF CRISTINA LANCRANJAN IN SUPPORT OF OPPOSITION TO MOTION TO REQUIRE SECURITY; Case No.: 25CU054361C

32. Following his abandonment of my case, Defendant filed a lien against me in the trial court for $36,500. Attached hereto as **Exhibit E** is a true and correct copy of that lien. This lien was filed without a validly executed lien agreement and remains unexecuted by the Court, yet Defendant continues to hold it over my estate, hindering my ability to fund my defense.

33. Attached hereto as **Exhibit J** is a complete, point-by-point Factual Rebuttal Matrix directly addressing and refuting the specific sworn assertions made by David S. Schulman and Liberty G. Shores in their moving papers.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 18, 2026, at San Diego, California.

**CRISTINA M. LANCRANJAN** Plaintiff, In Pro Per /s/Cristina Lancranjan

-7-

**DECLARATION OF CRISTINA LANCRANJAN IN SUPPORT OF OPPOSITION TO MOTION TO REQUIRE SECURITY; Case No.: 25CU054361C**

**MASTER EXHIBIT SUMMARY: EVIDENCE OF MERIT AND REBUTTAL OF CCP § 391.1**

As summarized in the table Below, the evidence confirms Defendant's breach of fiduciary duty, conversion, and embezzlement. Plaintiff's action is meritorious, and the Defendant's Motion for Security is a retaliatory tactic to suppress this evidence of his own malpractice. The Defendant's claims of 'non-compliance' are objectively disproven by the Register of Actions (Exhibit D) and the discovery transmissions (Exhibits L & O), which demonstrate that any gaps were the direct result of Defendant's failure to propound timely produced documents. Plaintiff has demonstrated a reasonable probability of prevailing by showing that the Defendant violated professional standards, embezzled community assets, and engaged in extortion to silence her regarding these abuses. Accordingly, the Court should deny the Defendant's Motion for Security in its entirety

| Exhibit | Document Description | Law/ Standard Violated | Evidence of Winning Merit / Rebuttal |
|---|---|---|---|
| A | Unexecuted Stipulation | CRPC 1.15(c) | Proves unauthorized extraction of $150,000. |
| B | Blado Email (Nov 20, 2024) | CRPC 1.15(c) | Corroborates lack of signature/ illegal transfer. |
| C | Quid Pro Quo Emails | Breach of Duty | Exposes collusion to remove asset freeze. |
| D | ROA (23FL000584C) | CCP § 391.1 | Objective proof of client's active litigation. |
| E | Illegal Lien & Dispute | Fam. Code § 2033 | Proves ongoing conversion & extortionate leverage. |

-8-

DECLARATION OF CRISTINA LANCRANJAN IN SUPPORT OF OPPOSITION TO MOTION TO REQUIRE SECURITY; Case No.: 25CU054361C

| | | | |
|---|---|---|---|
| F | McIntyre Declaration | Ethics / Malpractice | Expert confirms "moral turpitude" and extortion. |
| G | Addleman Forensic Trace | PC § 506 / CRPC 1.15 | Proves unauthorized extraction (Embezzlement). |
| H | 2023 Federal Tax Returns | Breach of Fiduciary | Establishes estate value and breach of duty. |
| I | Case Chronology | Abuse of Process | Maps fiduciary abandonment to loss of rights. |
| J | Factual Rebuttal Table | Abuse of Process | Dismantles VL order as an illegal "gag" weapon. |
| K | Notice of Billing Dispute | CRPC 1.16(b)(5) | Documents invalid/excessive fee disputes. |
| L/ O | Discovery Emails | CCP § 2017.010 | Proves Client's timely cooperation & Atty's failure. |
| M | Retainer Agreement | CRPC 1.16 | Defines scope limits Defendant violated. |
| N | Blado Discovery Filing | CCP § 2017.010 | Confirms client compliance post-malpractice. |
| X | Schulman Email (April 2025) | CRPC 1.16 | Evidence of ongoing refusal to produce files. |

-9-

**DECLARATION OF CRISTINA LANCRANJAN IN SUPPORT OF OPPOSITION TO MOTION TO REQUIRE SECURITY; Case No.: 25CU054361C**

# INDEX OF EXHIBITS IN SUPPORT OF DECLARATION

- **EXHIBIT A:** Unexecuted Stipulation and Order regarding the release of funds, drafted by Defendant Schulman (October 2, 2024).

- **EXHIBIT B:** Email correspondence from successor counsel Matthew S. Blado (November 20, 2024), confirming the $150,000 transfer occurred without Plaintiff's signature.

- **EXHIBIT C:** Email correspondence (October 2024) between Defendant Schulman and opposing counsel, evidencing the "quid pro quo" agreement to change the move away hearign date and to take the protective asset-freeze ex parte off calendar (Re Oct 3 2024).

- **EXHIBIT D:** The Register of Actions (ROA) for Case No. 23FL000584C.

- **EXHIBIT E:** Defendant's Unexecuted/Illegal Lien and Plaintiff's Formal Dispute.

- **EXHIBIT F:** Executed Expert Declaration of State Bar Legal Ethics Expert Edward J. McIntyre (Dated November 4, 2025), detailing opposing counsel's acts of moral turpitude and extortionate leverage which proves the damages I had to endure due to Schulman's actions.

- **EXHIBIT G:** Executed Expert Declaration and Forensic Accounting Trace of Anna Addleman, detailing the unauthorized trajectory of the $150,000 extraction and the community estate.

- **EXHIBIT H:** Plaintiff's 2023 Federal Tax Returns, evidencing the complexity and value of the $1,000,000+ marital estate.

- **EXHIBIT I:** Plaintiff's Comprehensive Case Chronology, mapping the timeline of Defendant Schulman's fiduciary abandonment to the resulting loss of constitutional and parental rights and the ROA

- **EXHIBIT J:** Factual Rebuttal to Defendant's Allegations.

- **EXHIBIT K:** Written notice of dispute sent to Defendant regarding billing statements.

- **EXHIBIT L:** Email correspondence (September 2024) documenting timely production of documents and discovery responses.

- **EXHIBIT M:** Copy of retainer agreement with specific scope limitations, including the unexecuted stipulation (Exhibit A).

- **EXHIBIT N:** Discovery responses filed by successor counsel (Matt Blado)&Jan 6 2025 Reply.

- **EXHIBIT O:** Email correspondence evidencing Plaintiff's transmission of discovery materials to Defendant.

-10-

DECLARATION OF CRISTINA LANCRANJAN IN SUPPORT OF OPPOSITION TO MOTION TO REQUIRE SECURITY; Case No.: 25CU054361C

- **EXHIBIT X:** Email thread between Plaintiff and David Schulman (April 2025) regarding discovery compliance and requests for file production.

/s/Cristina Lancranjan

Cristina Lancranjan
In Pro Per

-11-

DECLARATION OF CRISTINA LANCRANJAN IN SUPPORT OF OPPOSITION TO MOTION TO REQUIRE SECURITY; Case No.: 25CU054361C

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF SAN DIEGO**

**MINUTE ORDER**

DATE: 07/06/2026                TIME: 1:37 PM               DEPT: C-68

JUDICIAL OFFICER: TERRIE E. ROBERTS
CLERK: Richard Cersosimo

CASE NO: **25CU054361C** CASE INIT.DATE: 10/08/2025
CASE TITLE: **Lancranjan vs Schulman**

Ex Parte Minute Order

After hearing argument on July 2, 2026 and reviewing Plaintiff's 177-page Declaration filed June 26, 2026, the Court sets aside its tentative granting the Motion to Furnish Security and now denies it for the reasons stated below. The Court utilized its discretion pursuant to California Rules of Court, Rule 3.1300(d) to consider Plaintiff's late filed pleadings.

Defendants David Schulman and Moore Schulman & Moore, APC (collectively "Defendants") Motion for Order Requiring Vexatious Litigant Cristina Lancranjan ("Plaintiff") to Furnish Security (the "Motion") **is denied.**

In light of the Court denying the Defendant's Motion, the Defendants have 10 days to answer the Complaint.  Plaintiff's Motion to Stay **is continued until August 14, 2026.** (*See* Code Civ. Proc., § 391.1(a).)

Defendants' Request for Judicial Notice filed January 30, 2026 is granted.

On January 30, 2026, the Defendants filed a Motion for Order Requiring Vexatious Litigant Cristina Lancranjan ("Plaintiff") to Furnish Security (the "Motion") pursuant to Code Civ. Proc., ("CCP") § 391.1(a) which provides:

> "In any litigation pending in any court of this state, at any time until final judgment is entered, a defendant may move the court, upon notice and hearing, for an order requiring the plaintiff to furnish security or for an order dismissing the litigation pursuant to subdivision (b) of Section 391.3. The motion for an order requiring the plaintiff to furnish security shall be based upon the ground, and supported by a showing, *that the plaintiff is a vexatious litigant and that there is not a reasonable probability that they will prevail in the litigation against the moving defendant.*"(Emphasis added).

**Vexatious Litigant Status**

DATE: 07/06/2026                          MINUTE ORDER                          Page 1

CASE TITLE: Lancranjan vs Schulman      CASE NO: **25CU054361C**

In this case, Defendants have presented evidence that Plaintiff has already been deemed a vexatious litigant in the Superior Court of California, County of San Diego, case *Truitt v. Lancranjan*, (Case No. 23FL000584C) ("Dissolution Case"), where Plaintiff was deemed a vexatious litigant by the Hon. Christopher Morris on December 2, 2025 in the underlying family court case. (See RJN, Ex. 23.) Thus, the first element under CCP § 391.1(a) is met. The Plaintiff's argument that Judge Morris' order is not final because it is on appeal has no merit. The fact that the matter is up on appeal does not preclude this Court from taking judicial notice that the Plaintiff is currently deemed a vexatious litigant. This is because the only requirement of finality of judgment in relation to CCP § 391.1, pertains to a court's determination that the prior litigation was determined adversely to the plaintiff. (*See* Code Civ. Proc., § 391(b)(2).) CCP § 391(b)(4) defines a "vexatious litigant" to include a person who "[h] as previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence." Importantly, there is no finality of judgment provision in subsection (b)(4), and we can presume such an omission was intentional. (*See Walt Disney Parks & Resorts U.S., Inc. v. Superior Court* (2018) 21 Cal.App.5th 872, 879 [where a phrase is included in one provision of a statutory scheme but omitted from another provision, "we presume that the Legislature did not intend the language included in the first to be read into the second"].

While in light of Plaintiff's appeal of the vexatious litigant order, Plaintiff was not barred by judicial estoppel from challenging the underlying facts regarding the family law court's determination that she was a vexatious litigant, it does not preclude the Court from relying upon the family law court's order deeming her a vexatious litigant. (*See Woodhouse v. State Bar of California* (2026) 118 Cal.App.5th 936, 952 [court made alternative finding under Code Civ. Proc., § 391(b)(4) that other courts had declared plaintiff a vexatious litigant].) Furthermore, while the prefiling order does not apply to this case because the order was issued after Plaintiff commenced this action, the timing of the order does not preclude Defendants from bringing a motion under CCP § 391.1 for an order requiring Plaintiff to post an adequate security before proceeding. (*Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1172.)

Accordingly, the Court finds that Defendants' motion is proper and the first required element under CCP § 391.1(a) is met.

The Court must now consider Defendant's requested relief.

When a motion under CCP § 391.1 for an order requiring a security is filed prior to trial, all litigation is stayed until the motion is denied, or if granted, until 10 days after the required security is furnished and the defendant is provided with written notice. (Code Civ. Proc., § 391.1(a).)

***Relief***

Defendants' Motion seeks an order requiring Plaintiff to post security in the amount of at least $50,000 as a condition to proceeding with this action.

CCP § 391 defines "security" as "an undertaking to assure payment, to the party for whose benefit the undertaking is required to be furnished, of the party's reasonable expenses, including attorney's fees and not limited to taxable costs, incurred in or in connection with a litigation instituted, caused to be instituted, or maintained or caused to be maintained by a vexatious litigant." (Code Civ. Proc., § 391(c).) A party's limited financial resources does not prevent a court from imposing a security. (*Moran v. Murtaugh Miller Meyer & Nelson, LLP* (2007) 40 Cal.4th 780, 786 [rejecting argument that imposing security unconstitutionally discriminates against those of "modest means"].)

CASE TITLE: Lancranjan vs Schulman                    CASE NO: **25CU054361C**

---

In determining whether the plaintiff has a reasonable probability of prevailing in the current action, "the court does not assume the truth of a litigant's factual allegations and it may receive and weigh evidence before deciding whether the litigant has a reasonable chance of prevailing." (*Golin v. Allenby* (2010) 190 Cal.App.4th 616, 635.)

Plaintiff commenced this legal malpractice action on October 8, 2025. (*See* ROA # 4.) On December 1, 2025, Plaintiff filed a First Amended Complaint ("FAC") asserting three causes of action: (1) Legal Malpractice; (2) Breach of Fiduciary Duty; and (3) Intentional Infliction of Emotional Distress ("IIED"). (*See* ROA # 14.)

The FAC alleges in relevant part that in July 2024, Plaintiff retained Defendants to represent her in the Dissolution Case. (FAC, ¶ 2.) The FAC further alleges that she disclosed to Defendants her financial vulnerability, disclosed her ex-husbands earnings and that her ex-husband "had illegally seized over **\$1 million**" in community assets." (*Id.*) Plaintiff alleges that Defendants' primary duty under the retention was to freeze these assets. (*Id.*) Plaintiff alleges that Defendants breached this duty by failing to file for retroactive support or ATROs violations and if Defendants had done so, Plaintiff's \$190,000 estate would have been preserved. (*Id.*, ¶ 3.)

The FAC further alleges that Defendant Schulman filed an ex parte application to freeze the community assets, scheduled for October 2, 2024, but he unilaterally cancelled the hearing and began secret negotiations with opposing counsel. (Id., ¶ 5.) Plaintiff also alleges that in August 2024, the opposing party served a Request for Production of documents, and that Defendants breached their duty by failing to timely serve responses and/or objections by the statutory deadline. (Id., ¶ 5.) Plaintiff alleges that this resulted in monetary sanctions being ordered against her and contributed to the loss of her move-away trial. (Id.) Plaintiff alleges that Defendant Schulman engaged in an extortion scheme where: (1) he negotiated a stipulation with opposing counsel regarding \$150,000 in community funds that were transferred directly into Schulman's own Client Trust Account; (2) Schulman misrepresented to Plaintiff that if she signed the stipulation, he could release \$100,000 to her for housing costs even though the funds were restricted to attorney fees only; and that (3) when she did not sign the stipulation, Schulman threatened to withdraw on the eve of trial. (Id., ¶ 6.)

Plaintiff also alleges that during an October 22, 2024 bifurcation hearing, Defendant Schulman failed to object based on the opposing party's failure to serve final declarations of disclosure and that this resulted in the court entering a void status-only judgment that terminated Plaintiff's marital status and stripped her of her property rights. (Id., ¶ 7.) (The Court notes a bifurcation of marital status does not require final declarations of disclosure, but rather preliminary declarations of disclosure. *See* Fam. Code §2337.) After the bifurcation hearing, Defendants moved to be substituted out of the case, despite there being critical hearings regarding support, child custody, and school in November 2024 and January 2025. (Id., ¶ 8.)

To prevail on his claim for legal malpractice a plaintiff must establish: "(1) the duty of the attorney to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence. (*E-Pass Technologies, Inc. v. Moses & Singer, LLP* (2010) 189 Cal.App.4th 1140, 1148 [internal modification omitted].) "In view of the complexity of the law and the circumstances which call for difficult choices among possible courses of action, the attorney cannot be held legally responsible for an honest and reasonable mistake of law or an unfortunate selection of remedy or other procedural step." (*Banerian v. O'Malley* (1974) 42 Cal.App.3d 604, 613 [internal citations omitted].) Simply showing the attorney committed an error is insufficient. (*Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154, 166.) Rather, "the

---

CASE TITLE: Lancranjan vs Schulman                    CASE NO: **25CU054361C**

---

plaintiff is required to prove that but for the defendant's negligent acts or omissions, 'the plaintiff would have obtained a more favorable judgment or settlement in the action in which the malpractice allegedly occurred.'" (*Blanks v. Seyfarth Shaw LLP* (2009) 171 Cal.App.4th 336, 357 [quoting *Viner v. Sweet* (2003) 30 Cal.4th 1232, 1241.)

To prevail on a claim for breach of fiduciary duty a Plaintiff must establish (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." (*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086.) Such a cause of action is distinct from a cause of action for professional negligence. (*Id.*)

To prevail on a cause of action for intentional infliction of emotional distress a plaintiff must establish: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.' A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' And the defendant's conduct must be 'intended to inflict injury or engaged in with the realization that injury will result." (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050-51, [citations omitted].)

"Severe emotional distress [is] emotional distress of such substantial quantity or enduring quality that no reasonable [person] in a civilized society should be expected to endure it." (*Fletcher v. Western Nat'l Life Ins. Co.* (1970) 10 Cal.App.3d 376, 397.) A cause of action for emotional distress must involve outrageous conduct that results in traumatic shock. (*Ochoa v. Superior Court* (1985) 39 Cal.3d 159, 170.) Plaintiffs must plead "facts demonstrating the nature, extent, or duration of [their] alleged emotional distress." (*Angie M. v. Superior Court* (1995) 37 Cal.App.4th 1217, 1227.)

Based on the Court's review of the judicially noticed documents, as well as the Plaintiff's June 26, 2026 declaration and Defendant Schulman's January 30, 2026 declaration, it is undisputed that Mr. Schulman entered into an agreement with Mr. Peter Saatjian, the attorney for Mr. Truitt, to have $150,000 in funds transferred from Mr. Truitt to Mr. Schulman's trust account. This agreement took place after Mr. Schulman and Plaintiff had already scheduled an ex parte for October 2, 2024, to have Mr. Truitt's Bank of America account frozen. As a result of the agreement reached between Mr. Schulman and attorney Saatjian, the October 2, 2024 ex parte was taken off calendar by Mr. Schulman. However, emails between the Plaintiff and Mr. Schulman's office indicate that the Plaintiff had no knowledge that the October 2, 2024 ex parte was going to be taken off calendar.

It is also undisputed that prior to the stipulation being drafted, the check for $150,000 was delivered to Mr. Shulman's office and deposited into his trust account. The stipulation was ultimately drafted and signed by Mr. Saatjian and Mr. Truitt, but Plaintiff, after learning about the agreement to transfer funds, refused to sign it. The emails show that the Plaintiff had no knowledge about the agreement to transfer the $150,000 and further, the emails show that she did not consent to the transfer of the funds and refused to sign the stipulation because she disputed the funds being used for attorney fees, rather than to assist her with living expenses. Despite multiple attempts by Mr. Schulman to get the Plaintiff to sign the stipulation, which Mr. Saatjian was awaiting, Plaintiff refused to do so. (*See* Ex. A-C, attached to Plaintiff's declaration filed June 26, 2026.).

Despite Mr. Schulman's multiple attempts to transfer the funds from his trust account back to either Mr. Saatjian or to Plaintiff's subsequently retained attorney, Mr. Blado, the funds were ultimately not

---

transferred until after the June 24, 2025 order made by Judge Morris, ordering that $115,000 held in Mr. Schulman's trust account, be transferred to Mr. Saatjian's trust account, with the remaining $35,000 held in Mr. Schulman's trust account for attorney fees pending further order of the court. (*See* Ex. U, attached to Defendants' January 30, 2026 declaration.).

Although the Court does not believe this evidence shows that Mr. Schulman engaged in extortion, there is a meritorious issue as to communication or the lack thereof and an issue as to lack of knowledge and consent regarding the transfer of the funds, the designated use of the funds, and the removal of the October 2, 2024 ex parte.

With respect to the discovery issue, the Plaintiff is correct that the Court's previous indication that she did not address the alleged failure to communicate with the Defendants regarding the outstanding discovery was wrong and not supported by the evidence. In fact, in Ex. L and O, attached to Plaintiff's June 26, 2026 declaration, Plaintiff provided evidence that she emailed documents directly in response to the discovery requests, to Mr. Schulman's office on September 8, 2024 and September 23, 2024. The Court of course has no idea whether the numerous documents attached to the emails addressed all of the outstanding discovery; however, the exhibits do indicate that she responded to the requests and provided a number of documents. This is contrary to Mr. Schulman's January 30, 2026 declaration, which does not acknowledge that the Plaintiff sent any documents to his office in response to the outstanding discovery requests. Ultimately, the family court did sanction the Plaintiff $7,500.00 for discovery violations.

Plaintiff also disputes Mr. Schulman's claim that she physically picked up her files from his office. Plaintiff indicates that she never picked up her file from the Defendants' office and contends that critical communications between Mr. Schulman and Mr. Saatjian regarding the transfer of funds, were missing. She also points to Ex. X in her June 26, 2026 declaration, indicating that as of April 2025, she was still seeking her entire file from the Defendants; albeit she did not include Mr. Schulman's response to her email in Ex. X.

Contrary to Plaintiffs allegations that the declaration from her ethics expert, Mr. Edward McIntyre, shown in Ex. F, and the declaration from her financial expert, Ms. Anna Addelman, shown in Ex. G, provides prima facie proof of the "unauthorized $150,000 transfer" is misguided. Mr. McIntyre's declaration opines on alleged misconduct of Mr. Saatjian towards Plaintiff. It makes no mention of any conduct by Mr. Schulman. As to Ms. Addelman's declaration, she merely discusses and identifies the additional financial documentation she needs from Mr. Truitt, Plaintiff's ex-husband, to complete the financial analysis. Ms. Addelman's declaration does not comment or provide any evidence of an "embezzlement" as alleged by Plaintiff.

However, based on the disputed issues as to the transfer of the $150,000 in funds and the corresponding removal of the October 2, 2024 ex parte, as well as the issue of whether Plaintiff provided documents to the Defendants to enable them to respond to outstanding discovery and the fact that Plaintiff was in fact sanctioned, as well as the disputed issues as to whether the Plaintiff timely received her entire file from Defendants, the Court cannot find that there is no reasonable probability that she will prevail on her Legal Malpractice and Breach of Fiduciary Duty claim against the Defendants. The Court finds, however, that there is no reasonable probability that she will prevail on her Intentional Infliction of Emotional Distress claim against the Defendants.

For all of these reasons, the request to require Plaintiff to post a bond is denied. Defendants are ordered to plead to the FAC no later than ten (10) days from this Order.

---

DATE: 07/06/2026                    MINUTE ORDER                    Page 5

CASE TITLE: Lancranjan vs Schulman                    CASE NO: **25CU054361C**

Plaintiff's request for a Statement of Decision pursuant to CCP § 632 is denied, as CCP § 632 only requires a Statement of Decision upon the trial of a question of fact by the court, not based upon a motion.

The Court will rule on Plaintiff's request to stay this matter on August 14, 2026.

**Conclusion**

For all of the reasons discussed above, Defendants' Motion is denied. Defendants are ordered to plead to the FAC within ten (10) days from this Order.

IT IS SO ORDERED.

*Terrie E. Roberts*
_____
Judge Terrie E. Roberts

---

DATE: 07/06/2026                    MINUTE ORDER                    Page 6



**From:** **Kelsi Barsocchini** kbarsocchini@PettitKohn.com
**Subject:** Lancranjan, Cristina v. Schulman, David, et al.
**Date:** July 16, 2026 at 5:03 PM
**To:** Cristina Lancranjan lancranjan.cristina@gmail.com
**Cc:** Doug Pettit dpettit@PettitKohn.com, Liberty Shores lshores@pettitkohn.com, Karianne Nuthals knuthals@PettitKohn.com

Dear Ms. Lancranjan, *in pro per.*

Please see the attached service copies of the following documents that you will also receive via regular mail.

- DEFENDANTS DAVID SCHULMAN AND MOORE SCHULMAN & MOORE, APC'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S FIRST AMENDED COM

- MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS DAVID SCHULMAN AND MOORE SCHULMAN & MOORE, APC'S DEMURRER TO P CRISTINA LANCRANJAN'S FIRST AMENDED COMPLAINT

- DECLARATION OF LIBERTY G. SHORES, ESQ. IN SUPPORT OF DEFENDANTS DAVID SCHULMAN AND MOORE SCHULMAN & MOORE, APC'S DEMURRER TO PLA FIRST AMENDED COMPLAINT

- REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS DAVID SCHULMAN AND MOORE SCHULMAN & MOORE, APC'S DEMURRER TO PLAINTIFF CRIS LANCRANJAN'S FIRST AMENDED COMPLAINT

- DEFENDANTS DAVID SCHULMAN AND MOORE SCHULMAN & MOORE, APC'S NOTICE OF MOTION TO STRIKE PLAINTIFF CRISTINA LANCRANJAN'S FIRST AMI COMPLAINT

- MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS DAVID SCHULMAN AND MOORE SCHULMAN & MOORE, APC'S MOTION TO STRI PLAINTIFF CRISTINA LANCRANJAN'S FIRST AMENDED COMPLAINT

- DECLARATION OF LIBERTY G. SHORES, ESQ. IN SUPPORT OF DEFENDANTS DAVID SCHULMAN AND MOORE SCHULMAN & MOORE, APC'S MOTION TO STRIKE PLAINTIFF CRISTINA LANCRANJAN'S FIRST AMENDED COMPLAINT



**Kelsi E. Barsocchini**
Legal Assistant To:
Sara E. Bloch, Esq.
Madison S. Stern, Esq.
Liberty G. Shores, Esq.
Main (858) 755-8500
Fax (858) 755-8504
kbarsocchini@pettitkohn.com

11622 El Camino Real, Suite 300
San Diego, CA 92130
www.pettitkohn.com

California | Arizona



E-MAIL CONFIDENTIALITY NOTICE: THE CONTENTS OF THIS E-MAIL MESSAGE AND ANY ATTACHMENTS ARE INTENDED ONLY FOR THE USE OF THE INDIVIDUAL ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE MESSAGE HAS BEEN ADDRESSED TO YOU IN ERROR, PLEASE IMMEDIATELY ALERT THE SENDER BY REPLY EMAIL AND THEN DELETE THIS MESSAGE AND ANY ATTACHMENTS. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION OR ANY ATTACHMENT IS STRICTLY PROHIBITED.

      

2026-07-16     2026-07-16     2026-07-16     2026-07-16     2026-07-16     2026-07-16     2026-07-16
Demurr...GS.pdf  Demurr...JN.pdf  Demurr...As.pdf  Demurr...M.pdf  MTS-...As.pdf  MTS -...GS.pdf  MTS- NOM.pdf



**From:** **Cristina Lancranjan** lancranjan.cristina@gmail.com
**Subject:** OBJECTION TO DISCOVERY - Case No. 25CU054361C - Motion to Stay Pending
**Date:** July 15, 2026 at 4:25 PM
**To:** Liberty Shores lshores@pettitkohn.com, Doug Pettit dpettit@pettitkohn.com

---

**Subject: FORMAL OBJECTION TO DISCOVERY - Case No. 25CU054361C - Pending Stay**

Dear Counsel,

I am in receipt of the discovery requests served by your office on [Date] in the matter of *Lancranjan v. Schulman*, Case No. 25CU054361C.

Please be advised that these discovery requests are premature and improper. As you are aware, there is a Motion to Stay this litigation currently pending before the Court, with a hearing scheduled for August 14, 2026.

Because the litigation is the subject of a pending Motion to Stay, I hereby formally object to these discovery requests in their entirety. I will not be providing responses to the interrogatories or Requests for Admissions at this time.

I intend to revisit discovery obligations only if and when the Court rules on the Motion to Stay on August 14, 2026, and determines that this action shall proceed. Any attempt to compel discovery, or to seek sanctions, prior to the August 14 hearing will be opposed as a violation of the stay and an unnecessary expenditure of judicial and party resources.

Regards,

Cristina Lancranjan

Cristina Lancranjan
1011 Union St Ap1205
San Diego CA 92101
Phone Number 860-460-1865
Fax Number:  NA
Email:  lancranjan.cristina@gmail.com

Cristina Lancranjan, IN PRO PER

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN DIEGO**

| | |
|---|---|
| Brett F Truitt | Case No. 23FL0000584C |
| Plaintiff(s), | Notice of Ongoing Pattern of Harassment, State-Facilitated Abuse, and Demand for Court Minutes; Memorandum of Points and Authorities in Support; and Declaration of Cristina M. Lancranjan and Exhibits 1–3. |
| vs. | |
| Cristina Lancranjan, | |
| Defendant(s). | TO: Hon. Jami L. Ferrara |

NOTICE OF ONGOING PATTERN OF HARASSMENT, STATE-FACILITATED ABUSE, AND DEMAND FOR COURT MINUTES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; AND DECLARATION OF CRISTINA M. LANCRANJAN

TO THE HONORABLE COURT AND ALL PARTIES OF RECORD:

PLEASE TAKE NOTICE that Respondent, Cristina M. Lancranjan, hereby places on the record a formal notice regarding an ongoing pattern of procedural harassment and state-facilitated abuse, as evidenced by the hearing on June 25, 2026, and the events leading thereto.

-1-

NOTICE TO THE COURT: ONGOING PATTERN OF HARASSMENT, STATE-FACILITATED ABUSE, AND DEMAND FOR COURT MINUTES

Respondent further notifies this Court that these matters are the subject of an active federal civil rights action: *Lancranjan v. Truitt et al.*, Case No. 26cv3765-JES-DEB (S.D. Cal.).

## I.  NOTICE OF PROCEDURAL IRREGULARITIES

1.  **Denial of Access and Evidentiary Blackout:** Respondent was denied the fundamental right to an official record of the June 25, 2026 hearing. Despite a properly filed fee waiver and a formal request for a court reporter, the Court denied said request, forcing the hearing into an unrecorded "blackout." Respondent hereby **DEMANDS the issuance of formal Court Minutes** for the June 25, 2026 hearing to accurately reflect the objections and orders made on the record.

2.  **Defiance of Automatic Appellate Stay (CCP § 916(a)):** The Court is currently advancing trial tracks in direct defiance of the mandatory, self-executing automatic stay triggered by the perfection of Respondent's appeals (Case No. D086958). Advancing these proceedings while divested of subject-matter jurisdiction is an *ultra vires* act.

3.  **Procedural and Statutory Illegalities:** Respondent incorporates by reference the facts detailed in the *Declaration of Cristina M. Lancranjan Re: June 25, 2026 Evidentiary Blackout, Asymmetrical Preclusion, and Jurisdictional Defiance*. The Petitioner continues to serve defective notices that bypass mandatory service rules (e.g., CRC 5.125). Respondent hereby **DEMANDS that the Court strike the improper Notice of Ruling filed by Petitioner** from the record as procedurally and statutorily illegal, and further demands that the Court order the issuance of final appealable orders rather than notices.

-2-

NOTICE TO THE COURT: ONGOING PATTERN OF HARASSMENT, STATE-FACILITATED ABUSE, AND DEMAND FOR COURT MINUTES

4.   **Failure to Meet and Confer:** Petitioner has consistently failed to adhere to mandatory "meet and confer" requirements, creating procedural confusion and prejudice.

5.   **DEMAND for Court Minutes:** Respondent formally demands that the Court Clerk prepare and issue formal minutes for the June 25, 2026 hearing, as no verbatim court reporter record was permitted, and said minutes are required to preserve Respondent's right to appellate and federal review

This Notice is filed to preserve the record for appellate and federal review, as these actions constitute a structural denial of Due Process and Equal Protection.

Date: July 3, 2026

Respectfully submitted,

/s/ Cristina M. Lancranjan Cristina M. Lancranjan, *In Pro Per*

-3-

**NOTICE TO THE COURT: ONGOING PATTERN OF HARASSMENT, STATE-FACILITATED ABUSE, AND DEMAND FOR COURT MINUTES**

## II. MEMORANDUM OF POINTS AND AUTHORITIES

This Memorandum is supported by the Declaration of Cristina M. Lancranjan and the following exhibits, which are **incorporated herein by reference** as though fully set forth:

- **Exhibit 1 (EXHIBIT N1 IN THE IN FEDERAL Case 26cv3765-JES-DEB):** Declaration of Cristina M. Lancranjan Re: June 25, 2026 Evidentiary Blackout.

- **Exhibit 2:** Copy of the "Notice of Ruling" filed by Petitioner on June 30, 2026.

- **Exhibit 3:** Proof of e-filing rejection and the formal notice to the Presiding Judge dated June 10-18 2026.

## I. THE COURT'S REFUSAL TO PROVIDE A COURT REPORTER VIOLATES DUE PROCESS.

The Court's denial of a certified court reporter for an indigent litigant with an approved fee waiver violates the constitutional mandate established in *Jameson v. Desta* (2018) 5 Cal.5th 594. The California Supreme Court held that the denial of a court reporter to an indigent litigant effectively prevents the creation of an appellate record, constituting a structural denial of due process and equal protection.

## II. ADVANCING PROCEEDINGS IN DEFIANCE OF AN AUTOMATIC STAY (CCP § 916(a)) IS ULTRA VIRES.

The trial court lacks subject-matter jurisdiction to advance trial tracks or issue orders while an appeal is pending on the same issues. Under California Code of Civil Procedure § 916(a), the

-4-

NOTICE TO THE COURT: ONGOING PATTERN OF HARASSMENT, STATE-FACILITATED ABUSE, AND DEMAND FOR COURT MINUTES

perfection of an appeal divests the trial court of all jurisdiction over matters embraced within that appeal. Proceeding in the "clear absence of all jurisdiction" is an *ultra vires* act, and any orders issued in defiance of a self-executing stay are void *ab initio*.

**III. FAILURE TO COMPLY WITH SERVICE AND "MEET AND CONFER" RULES RENDERS FILINGS VOID.** Petitioner's failure to adhere to California Rule of Court (CRC) 5.125 and the mandatory "meet and confer" requirements under the Code of Civil Procedure constitutes a procedural ambush. Service that does not strictly comply with mandatory rules is legally insufficient. Under the Due Process Clause of the 14th Amendment, a party must be provided with proper notice and a meaningful opportunity to be heard; filings that bypass these statutory safeguards are procedurally illegal and must be stricken to prevent prejudice.

**IV. CONCLUSION**

The Petitioner's continued submission of notices rather than proposed orders, coupled with the Court's refusal to docket Respondent's defensive filings, violates the basic requirements of the adversarial process. This conduct creates a "judicial blackout" that structurally denies Respondent her right to participate in her own defense. Respondent respectfully demands that the Court strike the improper Notice of Ruling and reinstate the right to file responsive pleadings.

Date: July 3, 2026

Respectfully submitted,

/s/ Cristina M. Lancranjan Cristina M. Lancranjan, *In Pro Per*

-5-

NOTICE TO THE COURT: ONGOING PATTERN OF HARASSMENT, STATE-FACILITATED ABUSE, AND DEMAND FOR COURT MINUTES

## III. DECLARATION OF CRISTINA M. LANCRANJAN

**EXHIBIT N1 filed into Federal; case 26cv3765-JES-DEB**

**DECLARATION OF CRISTINA M. LANCRANJAN RE: JUNE 25, 2026 EVIDENTIARY BLACKOUT, ASYMMETRICAL PRECLUSION, AND JURISDICTIONAL DEFIANCE**

I, Cristina M. Lancranjan, declare as follows:

1. I am the Plaintiff *Pro Se* in the above-entitled federal civil rights action and the Respondent in San Diego Superior Court Case No. 23FL000584C. I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would competently testify thereto.

2. **The Evidentiary Blackout (Denial of Court Reporter):** On the morning of June 25, 2026, I appeared before the Honorable Jami L. Ferrara in Department 902 of the San Diego Superior Court. At the immediate outset of the hearing, I formally objected to the proceedings occurring off the record. I explicitly informed the Court that I am an indigent mother with an active, approved fee waiver, that I had properly e-filed a formal request for a court reporter. In direct defiance of *Jameson v. Desta* and my constitutional right to preserve an appellate record, Judge Ferrara explicitly denied my request for the court reporter, intentionally forcing the hearing into an unrecorded evidentiary blackout.

3. **The Due Process Ambush and Defective Service:** I then stated my formal objection that I had never been lawfully served with the May 27, 2026 moving papers for this hearing, noting that I was only served with the exhausted May 21, 2026 *ex parte* draft. Judge Ferrara ignored the statutory 16-day notice requirements of the Civil Discovery Act, ruling on the unrecorded record

-6-

NOTICE TO THE COURT: ONGOING PATTERN OF HARASSMENT, STATE-FACILITATED ABUSE, AND DEMAND FOR COURT MINUTES

that she "finds" I was adequately served via the May 21 *ex parte* transmission, intentionally overriding mandatory procedural due process safeguards.

**4. Execution of the "Vexatious Litigant" Gag Order:** I informed the Court that I had lawfully submitted a formal Responsive Declaration and defensive pleadings on June 10, 2026, which the clerk's office rejected. I brought physical copies of my June 10 response declarations into the courtroom and attempted to submit them to defend my rights. Judge Ferrara affirmatively refused to accept them. The judge stated on the record that I am denied the right to file a response because of the "Vexatious Litigant" (VL) order, explicitly referencing Judge Miller's June 17, 2026 administrative denial (Exhibit N&W into the federal case 26cv3765-JES-DEB and exhibits 3 attached to this Notice). When I pleaded that a VL order cannot constitutionally be used to strip a Respondent of the right to file a *defensive* pleading when attacked by an opposing party's motion, Judge Ferrara stated, "Yes, I can," confirming that the state tribunal is actively utilizing the VL order as an absolute, unconstitutional gag order to ensure my defenselessness.

As evidenced by the e-filing rejection notification received on June 18, 2026 (Exhibit 3), the Court's clerk rejected my June 10, 2026, Responsive Declaration based on an improper application of a Vexatious Litigant order, which is currently under active appeal in the Fourth District Court of Appeal (Case No. D086958).

**5. Affirmative Demand for Statutory Discovery Rights:** Having been unlawfully gagged, I informed the Court that I was resting my arguments on my May 21, 2026 response to the *ex parte*, which I would argue orally. When Judge Ferrara asked why I was "refusing to comply" with Defendant Truitt's vocational evaluation, I explicitly stated on the record that I was not refusing to comply. I informed the Court that Defendant Truitt simply intentionally refuses to

-7-

serve the mandatory statutory notice required under the Civil Discovery Act (CCP § 2032 et seq.), and that I possess a statutory right to 20 days of notice to properly respond and object to a defective demand.

**6. The Unconstitutional Asymmetrical Preclusion Order:** In direct retaliation for invoking my statutory discovery rights and exposing the defective notice, Judge Ferrara executed a highly punitive, asymmetrical preclusion order. The judge ruled on the record that I am strictly precluded from evaluating Defendant Truitt or presenting any evidentiary defense at trial per the May 22, 2026 *ex parte*. Furthermore, Judge Ferrara explicitly stated on the record that Defendant Truitt is authorized to use *any* evidence or metrics he wants at trial to substantiate his claims, and that I am completely barred from rebutting, challenging, or defending against it.

**7. Defiance of the CCP § 916(a) Appellate Stay and Scheduling of Execution Trials:** Finally, I formally invoked the mandatory automatic appellate stay under California Code of Civil Procedure § 916(a), explicitly advising the Court that it is divested of all subject matter jurisdiction because the foundational orders of this case are actively pending review before the Fourth District Court of Appeal. Judge Ferrara explicitly stated she was denying the stay. Acting in the clear absence of all jurisdiction, she then proceeded to schedule the final execution trials for August 24, 26, and 28, 2026—trials where she has already mathematically guaranteed my destruction by gagging my defense and granting my abuser unchecked evidentiary authority.

I declare under penalty of perjury under the laws of the United States of America (28 U.S.C. § 1746) that the foregoing is true and correct.

Executed on this 25th day of June, 2026, in San Diego, California.

-8-

**NOTICE TO THE COURT: ONGOING PATTERN OF HARASSMENT, STATE-FACILITATED ABUSE, AND DEMAND FOR COURT MINUTES**

**CRISTINA M. LANCRANJAN** *Plaintiff, Pro Se /s/Cristina Lancranjan*

## IV. CONCLUSION

The June 25, 2026, ruling is void *ab initio* for: (1) lack of proper service of the moving papers on may 27 2026 and the order/Notice under CRC 5.125; (2) lack of jurisdiction due to the CCP § 916(a) stay; and (3) a fundamental violation of Due Process caused by the Court's denial of an evidentiary record, refusal to accept Respondent's June 10, 2026, responsive declarations, and the deliberate suppression of defensive pleadings during the June 17–18, 2026, administrative blackout.

Furthermore, during the June 25, 2026, hearing, the Court affirmatively refused to accept Respondent's declaration into the record, denied Respondent the right to be heard, and explicitly barred a certified court reporter, thereby intentionally blinding the appellate record. This pattern of conduct—combined with the failure to adhere to the "meet and confer" requirements— violates the basic tenets of the adversarial process. The Court is requested to take mandatory judicial notice of the suppressed June 10, 2026, filings and the subsequent administrative denials

Respondent respectfully demands that the Court: (1) Strike the improper Notice of Ruling filed by Petitioner; (2) Vacate the June 25, 2026, orders as *void ab initio*; (3) Issue formal, final appealable orders; and (4) Restore Respondent's access to the record and right to be heard. This notice is filed to preserve these issues for appellate and federal review, as the ongoing procedural conduct constitutes a structural denial of Due Process and Equal Protection.

Date: July 3, 2026

Respectfully submitted,

-9-

NOTICE TO THE COURT: ONGOING PATTERN OF HARASSMENT, STATE-FACILITATED ABUSE, AND DEMAND FOR COURT MINUTES

/s/ Cristina M. Lancranjan

Cristina M. Lancranjan, *In Pro Per*

**V. MASTER EXHIBIT LIST**

The following exhibits are incorporated by reference and submitted in support of this Notice and Memorandum:

- **Exhibit 1:** *Declaration of Cristina M. Lancranjan Re: June 25, 2026 Evidentiary Blackout.* (Also filed as Exhibit N1 in Federal Case 26cv3765-JES-DEB). This declaration is incorporated by reference under Section III of this filing and provides the sworn factual account of the evidentiary blackout and the denial of due process during the June 25, 2026 hearing..

- **Exhibit 2:** Copy of the "Notice of Ruling" filed by Petitioner on June 30, 2026. This exhibit serves as the evidentiary basis for Respondent's request to strike the document for procedural and statutory illegality.

- **Exhibit 3:** Proof of E-Filing Rejection of the Response Declaration including Formal Notice to the Presiding Judge (Dated June 10–18, 2026). This exhibit documents the administrative blockade and the denial of Respondent's constitutional right to petition the court for emergency protective relief.

-10-

**Exhibit 2:** Copy of the "Notice of Ruling" filed by Petitioner on June 30, 2026. This exhibit serves as the evidentiary basis for Respondent's request to strike the document for procedural and statutory illegality.

Brett F. Truitt
2027 Jewell Ridge
Vista, CA 92081
Telephone    (619) 301-6569

Self-represented litigant

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO - CENTRAL DIVISION

| Brett F. Truitt | Case No.: 23FL000584C |
|---|---|
| Petitioner, | **ASSIGNED FOR ALL PURPOSES TO:** The Hon. Jami L. Ferrara, Dept. SD-902 |
| vs. | |
| Cristina M. Lancranjan | **NOTICE OF RULING FROM JUNE 25, 2026** |
| Respondent. | |

TO: RESPONDENT, CRISTINA M. LANCRANJAN,

NOTICE IS HEREBY GIVEN on June 25, 2026, the Court issued the following findings and rulings arising from Petitioner's Request for Order:

1. The Court finds Respondent was validly served with the moving papers on May 21, 2026 through the ex parte pleadings.

2. The Court reaffirms its prior order for Ms. Lancranjan to comply with the vocational evaluation.

3. The Court rules that at trial, evidence from the Petitioner relating to Respondent's employability and earning capacity will be admissible without the participation of Respondent, as a result of Respondent's refusal to comply with the vocational evaluation.

Respectfully submitted,

Dated: June 30, 2026                By: _____
                                        Brett F. Truitt,
                                        Petitioner, In Pro Per

1

IRMO Truitt and Lancranjan, SDSC Case No. 23FL000584C. Notice of Ruling

-11-

**NOTICE TO THE COURT: ONGOING PATTERN OF HARASSMENT, STATE-FACILITATED ABUSE, AND DEMAND FOR COURT MINUTES**

**Exhibit 3:** Proof of E-Filing Rejection of the Response Declaration including Formal Notice to the Presiding Judge (Dated June 10–18, 2026). This exhibit documents the administrative blockade and the denial of Respondent's constitutional right to petition the court for emergency protective relief.

From: no-reply@efilingmail.tylertech.cloud
Subject: Rejected Filing Notification for filing on case 23FL00056HC (Truitt, Brett Franklin vs Lancsasjan, Cristina Maria [IMAGED])
Date: June 18, 2026 at 8:49 AM
To: lancranjan.cristina@gmail.com



**Filing Rejected**
Envelope Number: 24950797



Contact Your Service Provider With Any Questions

ODYSSEY eFileCA.

Need Help? Help

No Lawyer? Start Here
Visit: https://california-efm.tylertech.cloud/ofsweb
Email: efiling.support@tylertech.com

The filing below has been reviewed and has been returned for further action. **Please refile with the corrections outlined below.**

| Return Reason(s) from Clerk's Office | |
| --- | --- |
| Reject Reason | 1 - Rejected |
| Return Comment | Order to File New Litigation by Vexatious Litigant Denied 06/17/2026 |

-12-

**NOTICE TO THE COURT: ONGOING PATTERN OF HARASSMENT, STATE-FACILITATED ABUSE, AND DEMAND FOR COURT MINUTES**

VL-115

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
SAN DIEGO SUPERIOR COURT
FAMILY COURT
1100 UNION STREET
SAN DIEGO, CA 92101

PLAINTIFF/PETITIONER: BRETT TRUITT
DEFENDANT/RESPONDENT: CRISTINA LANCRANJAN

**ORDER TO FILE NEW LITIGATION BY VEXATIOUS LITIGANT**

FILED
San Diego Superior Court
JUN 17 2026
Clerk of the Superior Court
By: W. Stowers, Deputy

CASE NUMBER: 23FL000584C

**ORDER**

Approval to file the attached document is:

a. ☐ Granted

b. ☒ Denied

c. ☐ Other:

☐ Attachment to order.   Number of pages:

Date: 6/17/2026

LAURA H. MILLER

ORDER TO FILE NEW LITIGATION BY VEXATIOUS LITIGANT

-13-

NOTICE TO THE COURT: ONGOING PATTERN OF HARASSMENT, STATE-FACILITATED ABUSE, AND DEMAND FOR COURT MINUTES

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA M. LANCRANJAN,<br><br>                                   Plaintiff,<br><br>v.<br><br>BRETT FRANKLIN TRUIT; HON.<br>CHRISTOPHER S. MORRIS, Nominal<br>Defendant in Official Capacity; HON.<br>JAMI L. FERRARA, Nominal Defendant<br>in Official Capacity, HON. MICHAEL S.<br>GROCH, Presiding Judge, Nominal<br>Defendant in Official Capacity; and<br>DOES 1-10,<br><br>                                   Defendants. | Case No.: 3:26-cv-3765-JES-DEB<br><br>**ORDER:**<br><br>**(1) GRANTING LEAVE TO<br>ELECTRONICALLY FILE<br>DOCUMENTS;**<br><br>**(2) SETTING BRIEFING<br>SCHEDULE ON MOTION FOR<br>TEMPORARY RESTRAINING<br>ORDER; and**<br><br>**(3) SETTING HEARING**<br><br>**[ECF Nos. 2, 17]** |

On June 26, 2026, *pro se* Plaintiff Christina Lancranjan filed the complaint in this matter and an accompanying motion for a temporary restraining order ("TRO"). ECF Nos. 1, 2. Plaintiff alleges that Defendants have unfairly prejudiced her case and conspired against her in underlying state court proceedings. *Id.*

1

On July 1, 2026, the Court denied Plaintiff's motion to electronically file documents ("efile") for failure to make the required attestations, and required Plaintiff to file proof of service on Defendants prior to the Court setting a briefing schedule on the motion for TRO. ECF No. 5. Plaintiff has now made the required attestations to efile. ECF No. 17. The Court thus **GRANTS** Plaintiff's motion leave to efile. *Id.*

Plaintiff also filed proof of service against all five defendants. ECF Nos. 19-23. The Court hereby **SETS** a hearing on Plaintiff's motion for a TRO for **August 19, 2026, at 2:00 p.m.** Defendants **SHALL FILE** their oppositions to the motion for TRO no later than **August 5, 2026.** Plaintiff **SHALL FILE** her replies no later than **August 12, 2026.**

**IT IS SO ORDERED**.

Dated:  July 15, 2026

Honorable James E. Simmons Jr.
United States District Judge

3:26-cv-3765-JES-DEB

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

LANCRANJAN v. SAATJIAN, et al.

Case:26-CV-02817-BAS-VET

EXHIBIT 15

**MARCH 18, 2025, HEARING TRANSCRIPT AND SUBSTITUTION OF ATTORNEY**

**Description of Evidence:** This exhibit contains the official transcript of the March 18, 2025, hearing and the subsequent Substitution of Attorney form. It is incorporated to provide the judicial record of the Court's oral ruling preserving Plaintiff's attorney-client privilege. This document proves the Defendants' subsequent intentional violation of the Court's direct order when they coerced the disclosure of unredacted billing records, establishing the "Extrinsic Fraud" committed to bypass the adversarial process.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO

DEPARTMENT NO. 702          HON. CHRISTOPHER S. MORRIS, JUDGE

IN RE MARRIAGE OF:                )
                                  )
    BRETT FRANKLIN TRUITT,        )  CERTIFIED TRANSCRIPT
                                  )
                PETITIONER,       )
                                  )  NO. 23FL000584C
    - AND -                       )
                                  )
    CRISTINA MARIA LANCRANJAN,    )
                                  )
                RESPONDENT.       )
_____)

REPORTER'S TRANSCRIPT

MARCH 18, 2025

APPEARANCES:

FOR THE PETITIONER:        FARZAD & OCHOA FAMILY LAW ATTORNEYS
                           BY:  PETER SAATJIAN
                           402 WEST BROADWAY
                           SUITE 400
                           SAN DIEGO, CA 92101

FOR THE RESPONDENT:        BICKFORD BLADO & BOTROS
                           BY:  MATTHEW S. BLADO
                           12348 HIGH BLUFF DRIVE
                           SUITE 220
                           SAN DIEGO, CA 92130

COURT APPROVED REPORTER: CANDACE KHOROUZAN, CSR NO. 11579
                         SAN DIEGO SUPERIOR COURT

INDEX

MARCH 18, 2025

EXAMINATION

WITNESS NAME                                          PAGE    LINE

(NONE)


PETITIONER'S EXHIBITS

EXHIBIT          DESCRIPTION          IDENTIFICATION   RECEIVED

(NONE)


RESPONDENT'S EXHIBITS

(NONE)

CANDACE KHOROUZAN, CSR NO. 11579
COURT APPROVED REPORTER

SAN DIEGO, CALIFORNIA; TUESDAY, MARCH 18, 2025

(MORNING SESSION)

---000---

THE COURT:  ARE THE PARTIES HERE ON TRUITT VERSUS LANCRANJAN?  ARE WE WAITING FOR MR. BLADO?

MR. SAATJIAN:  YES, YOUR HONOR, WE'RE WAITING FOR MR. BLADO.  HE'S DOWNSTAIRS ON A TRC.

THE COURT:  ALL RIGHT.  I'LL RECALL YOUR MATTER WHEN HE'S HERE.

MR. SAATJIAN:  THANK YOU.

(A RECESS IS TAKEN.)

THE COURT:  ALL RIGHT.  MR. SAATJIAN, HAVE YOU HEARD FROM MR. BLADO AT ALL?  OH, THERE HE IS.

LET ME CALL ITEMS NUMBER 2, 3 AND 4, BRETT TRUITT VERSUS CRISTINA LANCRANJAN.

ALL RIGHT.  WE'RE HERE ON THREE DIFFERENT MOTIONS. ONE IS THE MOTION TO COMPEL ON SANCTIONS.  ONE IS A MOTION ON COMPETING FOAS.  AND THE OTHER IS THE MOTION TO BE RELIEVED AS COUNSEL.  ALL RIGHT.  APPEARANCES, PLEASE.

MR. SAATJIAN:  THANK YOU  AND GOOD MORNING, YOUR HONOR.  PETER SAATJIAN FOR THE PETITIONER, BRETT TRUITT, WHO IS NOT PRESENT.

THE COURT:  GOOD MORNING, MR. SAATJIAN.

MR. BLADO:  GOOD MORNING, YOUR HONOR.  MATTHEW BLADO APPEARING ON BEHALF OF RESPONDENT, MS. LANCRANJAN, WHO IS PRESENT AND STANDING TO MY RIGHT.

THE COURT:  ALL RIGHT.  MS. LANCRANJAN, HOW ARE YOU DOING THIS MORNING?

MS. LANCRANJAN: FINE, THANK YOU, YOUR HONOR.

THE COURT: CAN I PLEASE HAVE YOU RAISE YOUR RIGHT HAND TO SWEAR YOU IN IN CASE I NEED TO CALL YOU AS A WITNESS. DO YOU SOLEMNLY STATE OR AFFIRM THAT THE TESTIMONY YOU GIVE TODAY SHALL BE THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH?

MS. LANCRANJAN: YES, YOUR HONOR.

THE COURT: ALL RIGHT, GUYS. SO LET'S DEAL WITH THE TWO MOTIONS FIRST, AND THEN WE'LL TURN TO THE MOTION TO BE RELIEVED AS COUNSEL. ALL RIGHT. WE'VE GOT A MOTION FOR SANCTIONS, A MOTION TO COMPEL, IT LOOKS LIKE THERE WAS AN RFP THAT WAS SENT IN AUGUST WITH A REQUEST TO EXTEND IT TO 9/27. THE RESPONSE WAS LATE AND NOT CODE COMPLIANT, ACCORDING TO MR. SAATJIAN. SO THEN I GOT A SUPPLEMENTAL DEC IN MARCH SAYING HE WANTS SANCTIONS, SENT MANY LETTERS AND E-MAILS OFFERING TO EXTEND THE DEADLINE, OFFERING TO EXTEND THE MOTION TO COMPEL DEADLINE, NEVER HEARD BACK.

SO THEN I IMPOSED AND STAYED SOME FEES FOR THE PDOD DEADLINE, STILL HAS NOT SIGNED HER AUTHORIZATION FOR THE CREDIT CARD RELEASE. SHE REFUSED TO ENROLL THE CHILD IN SCHOOL AGAINST THE COURT ORDER, REFUSED TO FILE JOB CONTACTS. I GOT A RESPONSIVE DEC FROM MS. LANCRANJAN STATING IT'S ALL HER ATTORNEYS'S FAULT, THEY DID NOT RELAY THE INFORMATION SHE NEEDED. I SUFFERED DUE TO HER COUNSEL'S -- PREVIOUS COUNSEL, AND SHE BLAMES MR. BLADO FOR THE STATE THAT SHE'S IN WITH NOT HAVING COMPLIED WITH THE RFP PDODS, PREVIOUSLY PDODS, OR THE REQUEST TO SIGN THE

CREDIT CARD RELEASES.

MR. SAATJIAN, WHAT ELSE WOULD YOU LIKE ME TO KNOW?

MR. SAATJIAN:  IF THE COURT WOULD LIKE ME TO STATE ON THE RECORD THE SPECIFIC DEMANDS AND DOCUMENTS THAT WE'RE SEEKING, OTHERWISE I CAN PUT THAT IN THE ORDER, BUT I BELIEVE THAT'S THE SUBSTANCE OF THE MOTION. I BELIEVE THE COURT ACCURATELY REFLECTED THE POSTURE WHERE WE ARE NOW.

THE COURT:  IS IT AN RFP THAT'S OUTSTANDING?

MR. SAATJIAN:  IT'S A DEMAND FOR PRODUCTION OF DOCUMENTS.  SHE SERVED THE INITIAL RESPONSE LATE AND UNTIMELY.  AND THEN WE WERE HERE FOR THAT MOTION TO COMPEL ON JANUARY 7TH.  I INFORMED THE COURT I WOULD LIKE TO FILE A MOTION TO COMPEL FURTHER RESPONSES.  SHE SERVED A RESPONSE FULL OF OBJECTIONS INCORPORATED INTO EACH AND EVERY RESPONSE TO EACH ITEM.  THERE WERE A NUMBER OF DEMANDS.  I ONLY SET FORTH SIX SPECIFIC DEMANDS IN THE DEMAND FOR PRODUCTION OF DOCUMENTS THAT ARE THE SUBJECT OF THIS MOTION.  I HAVE THOSE SET FORTH IN THE PLEADINGS.

THE SHORT STORY IS, YOUR HONOR, SHE DIDN'T SUBSEQUENTLY COMPLY.  SHE ONLY PRODUCED A FEW PAGES OF DOCUMENTS.  THEY APPEAR TO BE PICTURES OF BANK STATEMENTS.  THERE'S FOREIGN BANK ACCOUNTS SHE DIDN'T PRODUCE DOCUMENTS FOR.  CREDIT CARD STATEMENTS.  I MEAN, THE LIST IS IN THE PLEADINGS, BUT IT'S WOEFULLY DEFICIENT.  AND I TRIED TO MEET AND CONFER, I GOT NO RESPONSE FOR TWO MONTHS NOW.  I'VE EXHAUSTED MY EFFORTS IN THAT REGARD.

I THINK THERE NEEDS TO BE A SUFFICIENT DETERRENT, BUT I'M MORE CONCERNED ABOUT GETTING ACTUAL DOCUMENTS BECAUSE, AS I DEMONSTRATED IN OUR PLEADINGS, $189,000 WAS TAKEN AT THE DATE OF SEPARATION BY MS. LANCRANJAN AND SENT INTO HER ACCOUNT, THOSE ARE THE ACCOUNT STATEMENTS WE WANT. THE MONTH PRIOR TO SEPARATION SHE SENT OVER $92,000 TO A FOREIGN BANK ACCOUNT, I WANT THOSE BANK ACCOUNT STATEMENTS, I NEED THESE DOCUMENTS TO BRING THIS CASE TO RESOLUTION, OR AT LEAST THE FINANCIAL ISSUES.

AND AS THE COURT CORRECTLY STATED, THERE'S BEEN NO COMPLIANCE WITH YOUR HONOR'S ORDERS FOR THE CHILD TO BE ENROLLED IN SCHOOL AND THE JOB CONTACTS -- I KNOW THOSE ARE SEPARATE ISSUES, BUT LOOKING AT EVERYTHING TOGETHER I'M HAVING A VERY DIFFICULT TIME TRYING TO, YOU KNOW, DO MY JOB, AND THAT IS WHERE I AM TODAY.

THE COURT: ALL RIGHT. MR. BLADO?

MR. BLADO: SO, YOUR HONOR, I NOTED YOU SAID YOU RECEIVED A RESPONSIVE DECLARATION FROM MS. LANCRANJAN FOR THIS MOTION.

THE COURT: YES.

MR. BLADO: I DON'T BELIEVE THAT WENT THROUGH MY OFFICE.

THE COURT: NO, IT LOOKED LIKE IT PROBABLY DIDN'T BECAUSE SHE WAS TAKING ISSUE WITH YOUR REPRESENTATION AND PREVIOUS COUNSEL'S.

MR. SAATJIAN: I DIDN'T RECEIVE A RESPONSIVE DECLARATION FOR THIS MOTION EITHER, YOUR HONOR.

THE COURT: WELL, IT LOOKS LIKE I'M THE ONLY

ONE WHO GOT IT.

HOLD ON, MS. LANCRANJAN.

MR. BLADO: SO I THINK PROCEDURALLY IT IS ALWAYS MY PRACTICE TO HANDLE THE SUBSTANTIVE ISSUE, DEAL WITH MY MOTION TO BE RELIEVED. I BELIEVE MS. LANCRANJAN SHOULD HAVE AN OPPORTUNITY TO RESPOND TO THIS, PROVIDE ALL OF THAT. I'M SURE MR. SAATJIAN WOULD LIKE TO SEE WHAT SHE'S RESPONDED TO.

THE COURT: WELL, WHY DON'T I PRINT IT OFF AND GIVE YOU GUYS A CHANCE TO LOOK AT IT.

MR. BLADO: I CAN ALSO ADDRESS SOME OF THE POINTS THAT COUNSEL MADE.

THE COURT: HOLD ON.

MS. LANCRANJAN: YOUR HONOR, IF I MAY.

THE COURT: HOLD ON. LET ME MAKE SURE EVERYBODY HAS THIS.

(PAUSE IN THE PROCEEDINGS.)

THE COURT: I'LL GIVE YOU GUYS A COUPLE MINUTES TO LOOK OVER HER RESPONSE BEFORE WE GO ANY FURTHER, AND THEN I'LL HEAR FROM YOU. OKAY? I JUST WANT TO GIVE THEM A CHANCE TO LOOK AT IT.

ALL RIGHT. MS. LANCRANJAN, WHAT WOULD YOU LIKE ME TO KNOW?

MS. LANCRANJAN: A COUPLE POINTS, YOUR HONOR, THAT I WANT TO MAKE. FIRST OF ALL, I SUBMITTED AN E-MAIL TO MR. BLADO YESTERDAY WITH THIS DECLARATION --

THE REPORTER: I'M SORRY, MA'AM, YOU NEED TO SLOW DOWN AND SPEAK UP, PLEASE.

MS. LANCRANJAN: I'M SORRY. I SUBMITTED AN E-MAIL

YESTERDAY AFTER I FILED IN COURT A DECLARATION TO MR. BLADO, TO ADVISE HIM AND SERVE THE OPPOSING COUNSEL.

THE COURT:  IT'S REALLY INAPPROPRIATE FOR ME TO HEAR ABOUT YOUR COMMUNICATION WITH YOU AND YOUR LAWYER, THAT'S REALLY A PERSONAL CONVERSATION.

MS. LANCRANJAN:  FOR THAT REASON, THAT'S WHY I'M TRYING TO MAKE THE POINT, I WANT MY LAWYER TO REPRESENT ME IN THE MATTER, NOT TO BE DISMISSED, AS HE WAS THE ATTORNEY AND HE SHOULD REPRESENT ME.

THE COURT:  ALL RIGHT.  HOLD ON TO THAT.

MR. SAATJIAN, CAN YOU GIVE ME THE SIX CATEGORIES OF DOCUMENTS WHICH SHE LISTED IN HERE.

MR. SAATJIAN:  OF COURSE, YOUR HONOR.  THANK YOU.  THE SIX CATEGORIES ARE DEMAND NUMBER 9, 10 --

THE COURT:  JUST TELL ME WHAT YOU'RE LOOKING FOR.  CREDIT CARD STATEMENTS --

MR. SAATJIAN:  OF COURSE.

THE COURT:  CREDIT CARD STATEMENTS FROM WHEN TO WHEN?  I JUST WANT TO MAKE SURE SHE UNDERSTANDS EXACTLY WHAT YOU'RE LOOKING FOR.

MR. SAATJIAN:  OF COURSE.  CREDIT CARD STATEMENTS FOR ALL CREDIT CARD ACCOUNTS IN HER NAME FROM JANUARY 1, 2021 TO THE PRESENT DATE.  THIS INCLUDES ALL APPLICATIONS FOR CREDIT SINCE THE DATE OF SEPARATION, WHICH IS JANUARY 29, 2023.  THAT WAS A SEPARATE DEMAND. SHE HAD SERVED OBJECTIONS TO THOSE WITH NO STATEMENT OF COMPLIANCE.  ALL CHECKING AND SAVINGS ACCOUNTS FROM JANUARY 1ST, 2021 TO THE PRESENT DATE, SPECIFICALLY

EXCLUDING JOINT ACCOUNTS. I'M NOT ASKING FOR JOINT ACCOUNTS. I'M ASKING FOR THE ACCOUNTS IN HER NAME ONLY, AND I HAVE A LIST OF THOSE ACCOUNTS.

THE COURT: ALL RIGHT.

MR. SAATJIAN: ALL UNREDACTED ATTORNEY FEE BILLING STATEMENTS AND THE RETAINER AGREEMENT WITH MOORE, SCHULMAN & MOORE, AND ALL STATE STREET RETIREMENT SAVINGS PLAN ACCOUNT STATEMENTS FROM JANUARY 1, 2021 TO THE PRESENT DATE. AND FOR HER TO NOTARIZE AND SIGN THE AUTHORIZATION FOR RELEASE OF HER CREDIT CARD RECORDS WITH BARCLAY'S BANK, WHICH IS A DELAWARE COMPANY, AND THEY OBJECTED TO A SUBPENA. I DON'T WANT TO GO GET A FOREIGN SUBPENA ISSUED IN DELAWARE OR DOMESTICATED -- I FORGOT THE TERM, EXCUSE ME, YOUR HONOR.

THE COURT: ALL RIGHT. THAT'S EVERYTHING?

MR. SAATJIAN: I WAS GOING TO SAY ALL OF THIS INFORMATION IS IN THE MEET-AND-CONFER LETTER, IS IN THE MOTION, VERY DETAILED, YOUR HONOR.

THE COURT: NO, I UNDERSTAND THAT. ALL RIGHT.

MR. BLADO: THERE'S A COUPLE POINTS THAT KEEPS BEING RAISED THIS ISSUE ABOUT THE OBJECTIONS. ADMITTEDLY THERE WAS A GENERAL OBJECTION AT THE BEGINNING, BUT ONLY ONE OF THE CATEGORIES CONTAINED AN ACTUAL OBJECTION TO THE DEMAND ITSELF. IT WAS THE ONE REQUESTING ALL DOCUMENTS RELATED TO ATTORNEYS' FEES AND, IN ESSENCE, THAT WAS NUMBER 28. THAT'S THE ONLY ONE THAT HAD A SPECIFIC OBJECTION TO A DEMAND. IT'S BEING PORTRAYED AS IF I DID OVERLY BURDENSOME ALL THE WAY THROUGH THIS

DOCUMENT RESPONSE.  THERE WAS ONE, AND IT'S ONLY BECAUSE THE COURT DOES HAVE THE ABILITY TO RELIEVE A PARTY OF THEIR WAIVER OF OBJECTIONS, AND IF I DON'T MAKE THEM JUST AS TO ATTORNEY-CLIENT PRIVILEGE, WHICH IS THE ONLY OBJECTION I MADE, I'M ESSENTIALLY WAIVING IT.  SO THAT ONE SINGLE OBJECTION, WHICH THERE'S BEEN A LOT MADE OF THAT, IS SIMPLY TO PRESERVE THE ABILITY TO MAKE THAT OBJECTION.  SECONDLY --

THE COURT:  MY IMPRESSION -- HOLD ON -- MAYBE I'M WRONG -- IS THAT WHEN SOMEBODY WAIVES THEIR OBJECTION FOR NONRESPONSIVE, THE ONLY OBJECTION THAT CAN'T BE WAIVED IS THE ATTORNEY-CLIENT.  I MEAN, YOU CAN'T JUST -- OR AM I GETTING THAT -- THAT IS WHAT I PRACTICED FOR 30 YEARS.

MR. BLADO:  THAT'S NOT EXACTLY TRUE.  IT IS ALL OBJECTIONS INCLUDING PRIVILEGE ARE WAIVED, HOWEVER, THAT SAME STATUTE DOES SAY THAT IF A PARTY SUBMITS A -- SUBSEQUENTLY SUBMITS A RESPONSE OF SUBSTANTIAL COMPLIANCE, AND THE COURT FINDS THAT THERE WAS EXCUSE, NEGLIGENT OR MISTAKE, THAT THE COURT CAN RELIEVE THEM OF A PARTICULAR OBJECTION.

I WOULD ALSO POINT OUT, COUNSEL SAID THAT MANY OF THESE RESPONSES ARE NOT IN COMPLIANCE OR SOME STATEMENT OF COMPLIANCE.  THERE WAS.  WHAT THE CONCERN THEY'RE RAISING IS THAT THERE WERE NOT ADDITIONAL DOCUMENTS THAT WERE PROVIDED TO THEM THAT THEY WANT.

THE COURT:  LET'S PUT THE WRITTEN RESPONSE ASIDE.  WHAT'S GOING ON WITH THE ACTUAL PRODUCTION OF

DOCUMENTS?

MR. BLADO:  THERE WERE -- THE DOCUMENTS THAT MY CLIENT HAD AVAILABLE TO HER AT THE TIME WERE PRODUCED.

THE COURT:  THERE'S LIKE ONE OR TWO PAGES.

MR. BLADO:  IT WAS SUBSTANTIALLY MORE THAN ONE OR TWO PAGES, I THINK.  EVEN THEY'LL TELL YOU THAT IT WAS SOMEWHERE IN THE 70 TO 90 PAGES.  I DON'T KNOW.

MR. SAATJIAN YOU KNOW.

BUT IT'S RIGHT IN THEIR STATEMENT OF FACT, OR THEIR SEPARATE STATEMENT.  IT WAS NOT ONE OR TWO -- JUST ONE OR TWO PAGES.

THE COURT:  ALL RIGHT.

MR. BLADO:  AND SEVERAL OF THE RESPONSES WERE I DON'T HAVE ANY OF THOSE DOCUMENTS, BECAUSE THEY JUST DON'T EXIST.  SO YOU'RE ESSENTIALLY -- WE'RE DOWN TO THESE SIX COLUMNS, AND ONE OF THEM, CREDIT APPLICATIONS, SHE DOESN'T MAINTAIN THOSE RECORDS.  THOSE ARE THE KIND OF THINGS THAT IF YOU HAVE IT, SHE THROWS AWAY.

THE COURT:  BUT THEN SHE NEEDS TO TELL HIM WHERE HE CAN GET THEM.

MR. BLADO:  AND TO THE EXTENT -- SHE HAD THEM, SHE'S NOT EVEN CERTAIN THAT SHE HAS THEM.  SHE SAYS, IF I DID HAVE THEM, I WOULD HAVE GOTTEN RID OF THEM.

THE COURT:  NO, I KNOW, BUT THEN THE OBLIGATION IS IF THESE EXIST THEY'D BE IN POSSESSION OF SUCH AND SUCH PERSON, HERE'S THE WAY TO GET THEM.  CAN SHE DO THAT?

MR. BLADO:  WHICH IS, IN FACT, WITH MOST OF

THESE OTHER CATEGORIES, YES, THERE WAS A STATEMENT OF I DON'T HAVE THEM. MANY OF THE RESPONSES WERE -- WOULD HAVE BEEN JOINT ACCOUNTS, WHICH MR. TRUITT HAD SIMPLY PREVIOUSLY SERVED ON MR. SCHULMAN, SO THEY HAD THEM, WE HAD THEM, BUT WE DID DIRECT THEM TO PLACES WHERE THEY COULD FIND ADDITIONAL DOCUMENTS.

YOU KNOW, I'M SOMEWHAT LIMITED IN TERMS OF HOW I PROVIDE, OTHER THAN VERY MUCH THE HIGHER LEVEL OF FACTS AS TO WHAT WAS RELIED ON.

THE COURT: LET'S JUST WORK THROUGH THEM ALL. ALL RIGHT. CREDIT CARD STATEMENTS FROM 1/1/21 TO PRESENT. SHE WOULD HAVE CUSTODY AND CONTROL OF THOSE. SHE CAN GO ONLINE, PULL THEM DOWN, GET THEM TO MR. SAATJIAN. HAVE YOU DONE THAT?

MR. BLADO: I DON'T BELIEVE THAT THAT HAS BEEN DONE.

THE COURT: OKAY. MS. LANCRANJAN, WHY HAVEN'T WE PULLED OFF THE CREDIT CARD STATEMENTS AND GIVEN THEM TO MR. SAATJIAN?

MS. LANCRANJAN: THERE ARE TWO REASONS, YOUR HONOR. FIRST, WHEN I SUBMITTED ORIGINALLY DOCUMENTS TO MR. SCHULMAN, I EXPLAINED THOSE SAME DOCUMENTS OR CREDIT CARDS, WHICH ARE LIKE NUMEROUS OF THEM, MY EX HAS ACCESS, HE HAD LOG-IN INFORMATION. AND AT THAT PARTICULAR POINT IN TIME, THAT WAS MY STATEMENT, AND THEY KNEW, EVERYBODY KNEW, AND NOBODY ELSE SINCE THEN HAS ASKED ME --

THE COURT: THAT'S NOT A VALID RESPONSE THOUGH.

MS. LANCRANJAN:  I KNOW, BUT SINCE THEN --

THE COURT:  SOMETHING THAT'S EQUALLY AVAILABLE, THAT'S NOT A VALID RESPONSE.

MS. LANCRANJAN:  I ACTED ON THE ADVICE OF MY COUNSEL.  NOBODY ASKED ME OF ANYTHING SINCE.  NOBODY.  I MEAN, THAT'S WHY I HAD REPRESENTATION TO ACT ACCORDING TO WHATEVER HAS BEEN ASKED OF ME, AND THAT'S MY POINT.  I'M ASKING, I HAD ASKED MY COUNSEL TO ADVISE ME.

THE COURT:  MR. SAATJIAN, DO YOU KNOW WHAT CREDIT CARDS IN PARTICULAR YOU'RE LOOKING FOR?

MS. LANCRANJAN:  AND THAT'S ANOTHER THING.

THE COURT:  HANG ON.

MR. SAATJIAN:  YES, I DO, YOUR HONOR.  I WOULD DIRECT THE COURT TO BOTH MY SEPARATE STATEMENT WITH CRC 3.1345 SEPARATE STATEMENT --

THE REPORTER:  I'M SORRY, COULD YOU SAY THAT AGAIN?

MR. SAATJIAN:  THANK YOU.  CRC RULE 3.1345 SEPARATE STATEMENT FILED IN SUPPORT OF THIS MOTION, PAGE 13. I SET FORTH ALL OF THE CREDIT CARD ACCOUNTS THAT MS. LANCRANJAN SETS FORTH ON HER SCHEDULE OF ASSETS AND DEBTS, WHICH I ALSO LODGE IN PETITIONER'S EXHIBIT 14.

THE COURT:  HOW MANY CREDIT CARDS ARE WE TALKING ABOUT?

MR. SAATJIAN:  13 OF THEM, YOUR HONOR.  AND IT'S ABSOLUTELY UNTRUE THAT MY CLIENT HAS ACCESS TO THEM, OTHERWISE I WOULD NOT HAVE ISSUED THIS DISCOVERY.  I'M VERY DILIGENT ABOUT DISCOVERY.  AND FORGIVE ME, YOUR

HONOR, BUT MUCH OF WHAT THE FACTUAL REPRESENTATIONS MADE BY THE OTHER SIDE ARE JUST UNTRUE, I CAN GO THROUGH SEVERAL SPECIFIC RESPONSES TO DEMANDS THAT CONTAIN OBJECTIONS ASIDE FROM THE ATTORNEY FEE REQUEST WITH NO STATEMENT OF COMPLIANCE.

THE CREDIT CARDS ARE READILY AVAILABLE.  IT'S BEEN HOW MANY MONTHS NOW, SIX MONTHS?  THEY'RE VERY STANDARD DOCUMENTS TO REQUEST IN DISCOVERY.  I HAVE THEM ALL LISTED HERE.  AND --

THE COURT:  HAVE YOU GOTTEN ANY OF THEM?

MR. SAATJIAN:  I'VE GOTTEN FOUR STATEMENTS FROM A BARCLAY'S BANK -- EXCUSE ME -- BARCLAY'S CREDIT CARD, FOUR STATEMENTS, BUT THAT WAS IN RESPONSE TO DOCUMENTS EVIDENCING THE SOURCE OF PAYMENT OF ATTORNEYS' FEES.  SO SHE JUST KIND OF PROVIDED THOSE STATEMENTS.  BUT THE REASON WHY I NEED THE CREDIT CARD APPLICATION FOR THAT CREDIT CARD, YOUR HONOR, IS BECAUSE IT WAS OPENED AFTER THE DATE OF SEPARATION.  IT SHOWS UP ON MY CLIENT'S CREDIT REPORT.  HE DIDN'T APPLY FOR THAT CREDIT CARD.  WE SUSPECT SHE USED HIS FINANCIAL INFORMATION.

AND I RECEIVED A SUBPENA RESPONSE FROM BANK OF AMERICA.  AND I WAS CORRECT, YOUR HONOR, IN THE POST-SEPARATION PERIOD, SHE APPLIED FOR A CREDIT CARD USING MY CLIENT'S FINANCIAL INFORMATION, HIS INCOME.  IT'S RIGHT HERE, I HAVE IT RIGHT HERE AVAILABLE IF THE COURT WANTS TO SEE IT.  THAT'S BANK OF AMERICA.  THERE'S AMERICAN EXPRESS AND BARCLAY'S BANK, TWO OTHER CREDIT CARDS THAT WERE OPENED IN THE POST-SEPARATION PERIOD.

SO I'VE RECEIVED ONLY A COUPLE STATEMENTS FROM 2024 FOR THE BARCLAY'S CREDIT CARD. ASIDE FROM THAT I RECEIVED WHAT APPEARED TO BE A SCREENSHOT OF HER BILL PAY FROM HER MASTERCARD FROM HER PHONE. THAT'S NOT A STATEMENT. THAT'S NOT COMPLYING WITH THE REQUEST. I DON'T KNOW HOW MANY TIMES I HAVE TO EXPLAIN HOW SIMPLE IT IS TO JUST SIMPLY DOWNLOAD THESE CREDIT CARD STATEMENTS. MY CLIENT WORKS FULL-TIME, HAS AN INFANT CHILD, AND HE PRODUCED THOUSANDS OF PAGES OF DOCUMENTS IN RESPONSE TO DISCOVERY, INCLUDING ALL BANK ACCOUNTS, CREDIT CARD STATEMENTS, RETIREMENT ACCOUNTS --

THE COURT: SLOW DOWN. SLOW DOWN.

MR. SAATJIAN: FORGIVE ME, YOUR HONOR. WE DID ALL OF THIS, SO I'M JUST NOT -- IT'S NOT -- I'M NOT BUYING THAT EXCUSE. SO AS --

THE COURT: MS. LANCRANJAN, I JUST WANT TO CIRCLE AROUND THE CREDIT CARD STATEMENTS. YOU UNDERSTAND THE 13 CREDIT CARDS WE'RE LOOKING FOR; RIGHT? YOU'VE GOTTEN THAT LIST. CAN YOU EXPLAIN TO ME WHY YOU HAVEN'T GONE ONLINE AND JUST PULLED DOWN THE STATEMENTS FROM 1/21 --

MS. LANCRANJAN: COUPLE STATEMENTS THAT I WANT TO MAKE. ONE IS INCLUDING THE FACT AGAIN I --

THE COURT: YOU NEED TO SLOW WAY DOWN, YOU NEED TO SPEAK INTO THE MICROPHONE.

MS. LANCRANJAN: I ALWAYS ACTED UNDER THE ADVICE OF THE COUNSEL.

THE COURT: OKAY. BUT COUNSEL CAN'T GO ON --

MS. LANCRANJAN, COUNSEL CAN'T GO ONLINE AND PULL DOWN YOUR CREDIT CARD STATEMENTS.

MS. LANCRANJAN:  I UNDERSTAND.  AND I ASKED MR. BLADO TO TELL ME WHAT EXACTLY DO I NEED TO PULL, AND HE DIDN'T ADVISE ME.  SECOND OF ALL, THERE WERE A COUPLE STATEMENTS THAT WERE SO UNTRUTHFUL.  THE DATE OF SEPARATION IS NOT WHAT THEY'RE CLAIMING.  SECOND OF ALL, THERE ARE -- OUT OF THIS 13, INCLUDING, FOR EXAMPLE, BMW WORLD MASTERCARD, THAT IS NOT EVEN MY ACCOUNT, SIR.  THAT IS THE PETITIONER ACCOUNT.  THEY ARE MAKING -- EVERYTHING IS JUST WRONG.  THIS ACCOUNTS -- EVERY ACCOUNTS THAT I HAD UNTIL THE DATE OF SEPARATION THEY WERE ALL WITH MY EX AND MYSELF.  SO HE AND I BOTH HAD ACCESS.  I HAVE A LIST, HE KNOWS IT, WITH LOG-IN INFORMATION.  THIS IS JUST A WAY FOR THEM TO DELAY THE PROCESS.

THE COURT:  HERE'S THE PROBLEM.  SAYING THAT -- HOLD ON -- YOU RESPONDING TO THEM THAT THIS IS EQUALLY AVAILABLE TO THE OTHER SIDE, HERE'S THE LOG-IN, THAT'S NOT -- THAT'S NOT COMPLIANT.  OKAY?  EVEN THOUGH YOU'RE BOTH EQUALLY AVAILABLE, THAT DOESN'T RELIEVE YOU OF YOUR OBLIGATION TO PRODUCE -- TO GO OUT AND PULL THEM DOWN AND GET THEM TO HIM.

MS. LANCRANJAN:  OKAY, UNDERSTOOD.  AND IF SOMEBODY WOULD HAVE ASKED ME TO DO THAT, I WOULD HAVE DONE IT, BUT NOBODY DID.  AND FURTHERMORE, THE INFORMATION HERE IS NOT ACCURATE, SIR.

THE COURT:  IS NOT WHAT?

MS. LANCRANJAN:  NOT ACCURATE.  THERE ARE SOME

ACCOUNTS HERE THAT ARE NOT MY ACCOUNTS, WHAT THEY'RE STATING HERE, THE 13.  THIS IS WHAT I'M SAYING, EVERYTHING IS NOT ACCURATE WHAT THEY'RE PORTRAYING IT. THOSE 13 ACCOUNTS, LIKE I SAID, BMW ACCOUNT, ALL OF THIS INFORMATION --

THE COURT:  SLOW DOWN.  THE POOR COURT REPORTER CAN ONLY TAKE DOWN, YOU KNOW, A WORD EVERY TWO SECONDS. SHE CAN'T TAKE DOWN WHEN YOU'RE RAPID-FIRING LIKE THAT, SHE CAN'T TAKE IT DOWN.

MS. LANCRANJAN:  THERE ARE ACCOUNTS HERE THAT ARE NOT MINE, AND ACTUALLY I DON'T EVEN HAVE ACCESS TO IT.  LIKE I SAID, BMW WORLD MASTERCARD THAT IS PETITIONER'S ACCOUNT.  THAT'S ONE EXAMPLE.  THAT'S IT.

THE COURT:  WHAT OTHER ACCOUNTS DO YOU THINK ARE NOT JOINT ACCOUNTS, THAT ARE SOLELY HIS ACCOUNT?

MS. LANCRANJAN:  I DON'T KNOW, SIR.  I HAVE TO LOOK THROUGH EVERY SINGLE ONE.  MARRIOTT ACCOUNT, FOR EXAMPLE, IS NOT MY ACCOUNT, SIR.

THE COURT:  YOU'RE NOT ON THAT ACCOUNT?

MS. LANCRANJAN:  NO.  I'M JUST SAYING I NEED TO GO THROUGH EVERY SINGLE THING, AND I'M JUST TRYING TO FIGURE OUT WHAT NEEDS TO HAPPEN, BUT THIS IS NOT ACCURATE.

THE COURT:  YES, BUT THESE HAVE BEEN OUTSTANDING NOW FOR MONTHS.

MS. LANCRANJAN:  AND I DID ASK MY COUNSEL TO ADVISE ME WHAT TO DO, SIR.  WHAT SHOULD I DO RIGHT NOW? I'M JUST STATING RIGHT NOW I AM LOOKING.  THESE ARE NOT

EVEN MY ACCOUNTS. I'M ACTING UNDER THE ADVICE OF THE LAWYER. I'M FOLLOWING WHAT HE NEEDS TO DO, AND IT'S NOT EVEN TO GO TO THE MATTER OF WHAT'S ACCURATE.

THE COURT: I'M GOING TO -- WE'RE GOING TO KNOCK THIS OUT NOW. GO THROUGH THOSE 13 CREDIT CARD ACCOUNTS, I WANT TO KNOW WHICH ONES YOU CONTEND ARE NOT YOURS, EITHER YOUR SOLE OR JOINT ACCOUNTS, THOSE ARE SOLE AND SEPARATE OF MR. TRUITT THAT YOU WOULD NOT HAVE ANY ACCESS TO.

MS. LANCRANJAN: AMERICAN AIRLINES PROBABLY IS NOT EVEN MINE EITHER. I DON'T EVEN KNOW, SIR. I CANNOT MAKE RIGHT NOW THAT DETERMINATION, IT'S TOO MUCH INFORMATION. I HAVE TO CHECK, BECAUSE WE BOTH HAD AMERICAN AIRLINES ACCOUNT. I HAVE TO GO THROUGH EACH INFORMATION I NEED. THAT'S WHY I SAID THIS IS JUST --

THE COURT: ARE THERE ANY OF THE 13 --

MS. LANCRANJAN: WE CAN MEET AND CONFER --

THE COURT: MS. LANCRANJAN, PLEASE. ARE THERE ANY OF THE 13 YOU CONTEND ARE HIS SOLE AND SEPARATE ACCOUNTS?

MS. LANCRANJAN: BMW.

THE COURT: OKAY. BMW. WHAT ELSE?

MS. LANCRANJAN: MARRIOTT ACCOUNT. AND I DON'T KNOW THE REST BECAUSE WE BOTH HAVE CITY, AND I DON'T REMEMBER THE LAST NUMBER.

THE COURT: THEY'RE ONLY ASKING FOR YOUR CITY. OKAY? DON'T WORRY ABOUT HIS. JUST YOURS.

ALL RIGHT. SO, MR. SAATJIAN, BMW, MARRIOTT, SHE

CONTENDS THOSE ARE HIS, SHE DOESN'T HAVE ACCESS TO THOSE?

MR. SAATJIAN:  WELL, YOUR HONOR, THOSE ARE LISTED ON HER SCHEDULE OF ASSETS AND DEBTS.  MY CLIENT'S NOT HERE TO RESPOND TO THAT.  I DON'T HAVE PERSONAL KNOWLEDGE, BUT I CAN TELL YOU THAT I DID SPEAK WITH HIM BEFORE ISSUING THE MEET-AND-CONFER LETTER BEFORE ISSUING DISCOVERY, AND SO I DON'T THINK I WOULD HAVE ASKED FOR DOCUMENTS ON JOINT ACCOUNTS.  AND, AGAIN, EVEN IF ONE OR TWO MAY HAVE JOINT PRIVILEGES, THERE ARE AT LEAST --

THE COURT:  WHAT DO YOU WANT ME TO DO THEN?  I MEAN, COME ON, WE'VE GOT 6 REQUESTS, 13 SUB REQUESTS. WHAT DO YOU WANT ME TO DO TODAY?

MR. SAATJIAN:  I WOULD LIKE THE COURT TO ISSUE AN ORDER COMPELLING HER TO PROVIDE FURTHER RESPONSES WITHOUT OBJECTIONS, AND A DOCUMENT PRODUCTION FOR EACH OF THE SIX DEMANDS, AS I'VE SET FORTH IN MY PLEADINGS.  IF SHE THEN CONTENDS THEY'RE JOINT ACCOUNTS, PERHAPS SHE CAN SET FORTH IN HER FURTHER RESPONSE WITHOUT OBJECTIONS WHICH ONES ARE JOINT ACCOUNTS AND DO THE DILIGENCE AND -- I MEAN, SHE STATES IN HER RESPONSES SHE'S CONDUCTED A DILIGENT SEARCH AND REASONABLE INQUIRY.  WHAT SHE'S TELLING YOU RIGHT NOW IS THAT SHE HASN'T DONE THAT.  SO WHAT AM I SUPPOSED TO DO WITH THAT INFORMATION?

MS. LANCRANJAN:  FIRST OF ALL, I DON'T LIKE THAT HE'S PUTTING WORDS IN MY MOUTH.  SECOND OF ALL, YOUR HONOR, AS I MENTIONED, HE PULLED THIS INFORMATION FROM MY DECLARATION.  I CAN EXPLAIN THAT AGAIN.

THE COURT:  YOU PUT IN YOUR DECLARATION THESE

CANDACE KHOROUZAN, CSR NO. 11579
COURT APPROVED REPORTER

ARE OUR JOINT ASSETS.

MS. LANCRANJAN:  I DIDN'T --

THE COURT:  MS. LANCRANJAN, PLEASE, WE HAVE A COURT REPORTER.  SHE CAN ONLY TAKE DOWN ONE PERSON SPEAKING AT A TIME.  OKAY?

MS. LANCRANJAN:  OKAY.

THE COURT:  SO IF YOU PUT IN YOUR DECLARATION THESE ARE COMMUNITY ASSETS AND DEBTS, HE HAS EVERY RIGHT TO ASK YOU FOR YOUR INFORMATION SUPPORTING THAT CLAIM.

MS. LANCRANJAN:  I CAN EXPLAIN.  ON THE ADVICE, THE ADVICE OF MY COUNSEL, I PROVIDED MY DISCLOSURE. AGAIN, UNDER THE DISCLOSURE -- AND I MENTIONED TO THE COUNSEL AT THAT TIME -- THEY COMBINED -- MY LAWYER COMBINED EVERYBODY'S ASSETS AND DEBTS, WHICH I MENTIONED NOT TO DO.  AND THAT'S THE RESULT.  NOW IT'S THIS.  AND ALL I'VE DONE IS WHATEVER THE ATTORNEY, MY COUNSEL, ASKED ME TO DO, I PROVIDED, THEN THEY FORM WHATEVER THEY FORM, AND THIS IS WHAT HAPPENED.  WHAT I'M TRYING TO SAY IS THAT IT WAS NOT ME WHO PROVIDED ALL THIS.  IT WAS MY COUNSEL WHO PUT IN EVERYTHING INTO THIS DISCLOSURE FORM WHICH MIX EVERYBODY'S ASSETS AND DEBTS.

THE COURT:  THIS WHOLE SONG AND DANCE PROBABLY WOULD HAVE GOTTEN SOME TRACTION 60, 90 DAYS AGO.  THIS HAS BEEN OUTSTANDING SINCE AUGUST.  OKAY?  IF YOU WANT TO GET DIVORCED, IF YOU WANT TO PUT ALL THIS BEHIND YOU, YOU GOT TO PARTICIPATE, AND YOU'VE GOT TO GIVE THEM THE DOCUMENTS THEY'RE SEEKING IN ORDER FOR THEM TO PUT IT TOGETHER.

MS. LANCRANJAN: I DID, YOUR HONOR, I DID WHATEVER THE ATTORNEY TOLD ME.

THE COURT: WHEN YOU DON'T DO IT, ALL YOU DO IS DRAG THE WHOLE PROCESS OUT. YOU COST YOURSELF MORE FEES, YOU COST MR. TRUITT MORE FEES. YOU SPEND -- EVERYBODY'S JUST CHASING THEIR TAIL WAITING FOR YOU TO COMPLY. AND I KNOW YOU WANT TO GET DIVORCED, I KNOW YOU WANT TO MOVE TO BOSTON, BUT I CAN'T DO ANY OF THAT UNTIL YOU START PARTICIPATING IN A FULSOME WAY.

MS. LANCRANJAN: I HAVE, YOUR HONOR. I ACTED ON THE ADVICE OF THE COUNSEL. I ASK EVERY SINGLE WEEK WHAT DO I NEED TO DO TO MOVE THIS ALONG. I ASK TO SETTLE, I ASK TO MEET AND CONFER.

THE COURT: WE'VE BEEN IN COURT AND I'VE TOLD YOU EXACTLY WHAT IT IS YOU NEED TO DO.

MS. LANCRANJAN: NOT SPECIFIC. I ASK WHAT DO I NEED TO DO SPECIFICALLY. I HAVE NO UNDERSTANDING. AND MR. BLADO NEVER TOLD ME. WHAT SHOULD I DO? SHOULD I JUST SEND EVERYTHING?

MR. SAATJIAN: YOUR HONOR, PETITIONER'S EXHIBIT 13 ARE THE ACTUAL DOCUMENTS SHE PRODUCED IN RESPONSE TO THE CREDIT CARD REQUESTS. PERHAPS WE CAN START THERE.

THE COURT: LISTEN, I'M NOT GOING TO GO THROUGH EACH OF THESE.

MS. LANCRANJAN: WE CAN MEET AND CONFER. I WANT TO MEET AND CONFER WITH MR. SAATJIAN.

THE COURT: WE HAVE 6 REQUESTS WITH 13 SUB REQUESTS. I'M TRYING TO GO THROUGH, AND I'M JUST GETTING

22

STONEWALLED.  I DON'T KNOW WHAT ELSE -- I'M TRYING TO HELP YOU.

MR. SAATJIAN:  THAT'S WHAT I'VE BEEN DEALING WITH FOR SIX MONTHS NOW, AND SO THIS IS WHY WE'RE HERE. IT WOULD HAVE BEEN HELPFUL IF THEY RESPONDED TO MY MEET-AND-CONFER EFFORTS TO EXTEND THE TIME TO FILE A MOTION SO WE CAN WORK OUT THIS DISCOVERY DISPUTE.  THAT'S EXACTLY WHAT I TRIED TO DO.  IT'S IN PETITIONER'S EXHIBIT 3.  I GOT NO RESPONSE.  WHAT ELSE AM I SUPPOSED TO DO OTHER THAN PRESERVE MY CLIENT'S RIGHT TO SEEK RELIEF.

THE COURT:  MS. LANCRANJAN?

MS. LANCRANJAN:  I WOULD LIKE MY ATTORNEY TO RESPOND TO THAT AS EVERYTHING ELSE.

THE COURT:  MR. BLADO, HELP ME OUT, WHY HAVEN'T YOU RESPONDED TO THE MEET-AND-CONFER LETTER SO WE CAN START DRILLING DOWN ON SOME OF THIS STUFF THAT'S EITHER DISPUTED OR NOT IN DISPUTE WITH A PLAN TO PRODUCE?

MR. BLADO:  YES, YOUR HONOR, THERE'S -- I'M IN A DIFFICULT SPOT DEALING WITH MY DUELING LOYALTIES AND LAW OBLIGATIONS HERE.  I'M STUCK WITH ESSENTIALLY SAYING THAT THERE HAS BEEN A SUBSTANTIAL BREAKDOWN IN THIS RELATIONSHIP BETWEEN MS. LANCRANJAN AND MYSELF, AND IT MAKES THE JOB THAT I NEED TO DO SOMEWHAT DIFFICULT.  AND I DON'T BELIEVE THAT THERE'S TRUST THAT EXISTS ANY LONGER AND --

THE COURT:  ALL RIGHT.  WELL, I'M GOING TO PUT A PIN IN THE MOTION TO COMPEL FOR A MINUTE.  LET'S DEAL WITH THE FOAS.

OKAY. MR. SAATJIAN, WHAT'S THE DISPUTE ON THE FOAS?

MR. SAATJIAN: THE DISPUTE ON THE FOAS, YOUR HONOR, IT RELATES TO THE HEARING THAT TOOK PLACE ON NOVEMBER 5TH, 2024. MR. BLADO PROVIDED ME WITH HIS PROPOSED FOA. I SERVED WRITTEN OBJECTIONS AND AN ALTERNATE PROPOSED FOA PURSUANT TO COURT RULES. AND MR. BLADO AND I THEN HAD AN EXTENSIVE MEET-AND-CONFER THAT TOOK PLACE OVER 30 TO 45 DAYS, AND WE STILL HADN'T REACHED A RESOLUTION.

THE COURT: OKAY. WHAT'S THE DISPUTE?

MR. SAATJIAN: DOES THE COURT -- I HAVE ADDITIONAL COPIES OF MY PROPOSED FOA AND MR. BLADO'S PROPOSED FOA, IF THE COURT NEEDS IT, BUT --

THE COURT: IS IT MORE THAN ONE ITEM THAT WE'RE IN DISPUTE ON?

MR. SAATJIAN: A COUPLE ITEMS, YES, YOUR HONOR. SO NUMBER ONE, IT'S KIND OF -- SOME OF THIS IS REALLY MOOT, BECAUSE WE HAD THE HEARING ON JANUARY 9TH, BUT MY LETTER OF DECEMBER 26 GOES THROUGH IT. THE FIRST ISSUE IS MR. BLADO CONTENDED THAT THE COURT GRANTED A CONTINUANCE ON ALL ISSUES. THAT WAS INACCURATE. THE COURT DID NOT. THE COURT ONLY CONTINUED THE ISSUE OF ATTORNEYS' FEES AND SET A REVIEW HEARING ON THE ISSUE OF SUPPORT.

THE COURT: WHAT WAS THE DATE OF THE HEARING?

MR. SAATJIAN: NOVEMBER 5TH, 2024.

THE COURT: HOLD ON. LET ME LOOK AT THE

MINUTES.

MR. SAATJIAN: I HAVE AN ADDITIONAL COPY, IF THE COURT NEEDS IT.

THE COURT: THE MINUTES ARE SILENT ON WHAT GOT CONTINUED AND WHAT DIDN'T.

MR. SAATJIAN: WELL --

MR. BLADO: I THINK, AT THIS POINT, THERE WAS NOTHING -- WHETHER YOU CALL IT A REVIEW HEARING OR A CONTINUANCE.

THE COURT: ALL RIGHT. SO IT DOESN'T MATTER. ALL RIGHT.

MR. SAATJIAN: SO THEY CAN CONCEDE ON THAT ISSUE. FORGIVE ME, YOUR HONOR, BECAUSE -- WELL, I WON'T GET INTO IT. BUT THE SECOND ISSUE IS THAT THE COURT DID NOT ORDER THE ADD-ONS TO CHILD SUPPORT, YET THEY INCLUDED IN THEIR PROPOSED FOA A PRETTY BROAD LIST OF ADD-ONS THAT ARE INCONSISTENT WITH FAMILY CODE SECTION 4062 AND 4063. I OBJECTED TO THAT AND EXCLUDED IT FROM MY ORDER. COUNSEL AND I HAD MET AND CONFERRED AND WE WERE GOING TO INCLUDE IT IN THE NEXT ORDER, BUT THAT WASN'T ACCURATE AS TO WHAT THE COURT ORDERED ON NOVEMBER 5TH. THE THIRD ISSUE --

THE COURT: WELL, I KNOW, BUT, LISTEN, I MEAN, THE FOA, THE INTENT OF THE FOA IS NOT TO CAPTURE LIKE A COURT REPORTER. IT'S TO PUT -- MOVE THE CASE ALONG. ADD-ONS ARE ALWAYS AT ISSUE. ADD-ONS WILL ALWAYS BE ADDED.

MR. SAATJIAN: OH, I'M VERY AWARE, THANK YOU,

YOUR HONOR.  AND I HAD AGREED, BUT THE ISSUE WAS THEY EXPANDED ON WHAT THOSE ADD-ONS INCLUDED AS TO UNCOVERED MEDICAL EXPENSES.  THEY WENT INTO A LIST OF UNCOVERED PSYCHOLOGICAL, MENTAL HEALTH, ALL KINDS OF OTHER ISSUES WHEN FAMILY CODE SECTION 4062 JUST SAYS UNINSURED HEALTHCARE COSTS.  AND I HAD ASKED COUNSEL, IT'S JUST --

THE COURT:  YOU DON'T THINK PSYCHOLOGICAL THERAPY WOULD BE -- UNCOVERED THERAPY COSTS WOULD BE A MANDATORY ADD-ON.

MR. SAATJIAN:  WELL, WHAT WE DO WHEN WE HAVE A REAL DISPUTE BETWEEN THE PARTIES ON LEGAL CUSTODY ISSUES AND THERE ARE ISSUES WITH PARTIES VIOLATING COURT ORDERS, SO I SUGGESTED, AND COUNSEL AND I AGREED, THAT WE WOULD JUST STATE WHAT THE CODE SECTION SAID.  SO I WAS IN AGREEMENT WITH THE EXPANDED LANGUAGE THEY WERE TRYING TO INCLUDE.

AND, AGAIN, THEY EXPANDED MORE LANGUAGE ON THE COURT'S ORDER FOR THE OSTLER-SMITH.  THE COURT ORDERED AN OSTLER-SMITH FOR BONUSES.  THEIR PROPOSED FOA INCLUDED, QUOTE, "ANY ADDITIONAL INCOME," AND THEY WENT ON TO STATE THAT, FOR EXAMPLE, STOCK OPTIONS, WHICH MY CLIENT DOESN'T RECEIVE AND WON'T RECEIVE MAYBE FOR YEARS, IF EVER, IS THE GROSS AMOUNT.  AND THAT'S INCONSISTENT WITH CASE LAW, THAT'S MARRIAGE OF CHERITON.

AND COUNSEL AND I MET AND CONFERRED AND I PROVIDED HIM WITH THE LAW.  SO WE HAD A DISPUTE THERE ABOUT WHAT SPECIFIC ADDITIONAL INCOME IS SUBJECT TO THE OSTLER-SMITH ORDER.  AND SO THAT'S -- THOSE ARE THE SUBSTANCE OF THE

ISSUES BETWEEN OUR COMPETING FOAS. AND MINE WAS SUBMITTED TO THE COURT. MR. BLADO DID NOT SUBMIT HIS TO THE COURT. THE COURT JUST RECEIVED THE ONE I PROVIDED. AND I PROVIDED A COURTESY COPY OF MR. BLADO'S.

THE COURT: ALL RIGHT. MR. BLADO, WHAT'S YOUR POSITION ON THE FOAS?

MR. BLADO: YOUR HONOR, WE WERE COMING BACK ON JANUARY 9TH TO DEAL WITH THE ENTIRE ISSUE. IT WAS NOT WORTH THE EXPENSE MY CLIENT COULDN'T AFFORD TO GET IN A FURTHER FIGHT WITH COUNSEL OVER 4062 EXPENSES, WHICH ARE INCLUDED IN EVERY CHILD SUPPORT ORDER. AND HEALTHCARE COSTS ARE HEALTHCARE COSTS. IT'S A DENTIST, IT'S A DOCTOR, IT'S A THERAPIST. AND THEN THE OSTLER-SMITH WAS, FRANKLY, AN ARGUMENT ABOUT GROSS VERSUS NET, WHICH, AGAIN, I THINK THE LAW'S CLEAR ON THAT. AND ALL OF THAT WAS PROCEEDED BY YOUR ORDERS ON THE 9TH OF JANUARY.

THE COURT: SO THIS WHOLE THING'S MOOT ANYWAY?

MR. BLADO: YES.

MR. SAATJIAN: NO, IT IS NOT MOOT, YOUR HONOR, BECAUSE ON JANUARY 9TH THE COURT ORDERED THAT THE PREVIOUS OSTLER-SMITH ORDER REMAINS IN FULL FORCE AND EFFECT, AND WE DON'T HAVE A PREVIOUS OSTLER-SMITH ORDER THAT'S REFLECTED IN A FOA.

THE COURT: WELL, THE ONLY OSTLER-SMITH ORDER I HAD WAS FOR BONUSES.

MR. SAATJIAN: THANK YOU, YOUR HONOR. AND THAT'S WHAT I HAD --

THE COURT: BUT IF IT WAS BROUGHT TO MY

CANDACE KHOROUZAN, CSR NO. 11579
COURT APPROVED REPORTER

ATTENTION THAT HE WAS GOING TO BE RECEIVING ADDITIONAL INCOME, I WOULD HAVE INCLUDED IT IN THE OSTLER-SMITH, BUT NO ONE BROUGHT IT TO MY ATTENTION.

MR. SAATJIAN:  THAT'S BECAUSE HE'S NOT RECEIVING ANY ADDITIONAL INCOME.  AND IF HE DOES HAVE A RIGHT TO RECEIVE STOCK OPTIONS IN THE FUTURE, I'VE INFORMED COUNSEL THAT WE WILL INCLUDE THEM IN AN ORDER, BUT WE HAVE TO LOOK AT THE TAX ADJUSTMENT --

THE COURT:  WELL, LISTEN, TODAY'S MINUTE ORDER WILL REFLECT YOU'VE GOT TO KEEP THEM APPRISED OF ALL ADDITIONAL INCOME, BUT THE FOA FROM THIS DATE ONLY DEALT WITH HIS BONUSES.  BUT, I MEAN, I CAN'T TAKE ISSUE WITH MR. BLADO TRYING TO JUST AVOID HAVING TO RELITIGATE STUFF BY BEING MORE INCLUSIVE.

MR. SAATJIAN:  YOUR HONOR, I TOLD MR. BLADO, AND I BROUGHT THE MEET-AND-CONFER E-MAILS TO SHOW YOU THAT I DIDN'T DISPUTE THAT THAT WOULD BE INCLUDED, IF THEY EXIST.  AND, NUMBER ONE, HIS LANGUAGE WAS ANY ADDITIONAL INCOME.

THE COURT:  YOU GUYS -- THE WHOLE BEING SUPER PEDANTIC ABOUT CAPTURING EVERYTHING EXACTLY ACCORDING TO WHAT I SAID OR WHAT -- I TOTALLY GET IT, AND, YOU KNOW, THAT FLIES IN A LOT OF OTHER, YOU KNOW, MORE CIVIL DEPARTMENTS.  FAMILY LAW, THERE'S A LITTLE BIT OF -- WE RELAX SOME OF THE THINGS TO JUST MOVE THE CASE ALONG; RIGHT?

IF HE WANTS TO BE OVERINCLUSIVE AND SAY, HEY, LISTEN, WHEN WE TALK ABOUT ADD-ONS, WE'RE TALKING ABOUT

28

THESE TEN THINGS.  WHEN WE'RE TALKING ABOUT OSTLER-SMITH, WE'RE TALKING ABOUT THESE FIVE THINGS.  I MEAN, IT JUST MOVES THE CASE ALONG.  I MEAN, YOU'VE GOT TO JUST SORT OF, YOU KNOW, GO ALONG TO GET ALONG.  IF THINGS MOVE -- I MEAN, YOU CAN FIND EVERYTHING TO FIGHT ABOUT.  YOU CAN TOTALLY FIGHT ABOUT EVERYTHING, BUT AT SOME LEVEL THE FIGHT, THE SQUEEZE ISN'T WORTH THE JUICE, OR THE JUICE ISN'T WORTH THE SQUEEZE.  OKAY?  YOU'VE GOT TO JUST LET SOME STUFF GO AND MOVE THE CASE ALONG.  ALL RIGHT?

YOU'RE RIGHT FROM A PURE TECHNICAL DOT YOUR I'S, CROSS YOUR T'S PERSPECTIVE, YOU'RE RIGHT, BUT I CAN'T TAKE ISSUE WITH HIM TRYING TO JUST DEAL WITH SOME THINGS AMONGST YOURSELVES WITHOUT HAVING TO LITIGATE EVERY LITTLE THING, OH, ARE WE TALKING HERE ABOUT STOCK OPTIONS.  WELL, EVERYBODY KNOWS THAT IF STOCK OPTIONS WERE BROUGHT BEFORE ME, THEY WOULD BE INCLUDED, SO WHY NOT JUST DEAL WITH IT NOW.

MR. SAATJIAN:  THAT WHAT'S I DID, YOUR HONOR. I EVEN SENT OVER A PROPOSED STIPULATION BEING INCLUSIVE OF THOSE ADDITIONAL INCOME, IF THEY ARE RECEIVED.  I DIDN'T RECEIVE A SIGNATURE OR RESPONSE.  IN RETURN, THEY FILED SUPPLEMENTAL PLEADINGS TRYING TO RELITIGATE ALL OF THE FINDINGS YOUR HONOR HAD MADE ON NOVEMBER 5TH.  THAT'S THE PROBLEM.  AND I TOTALLY RESPECT WHAT THE COURT IS SAYING.  SO IF WE HAVE TO GET ALONG TO GO ALONG, WHERE'S MY DISCOVERY?  I'VE COMPLIED WITH EVERYTHING THAT'S BEEN REQUESTED OF ME AND REQUIRED OF ME.  I'M JUST TRYING TO BE ACCURATE IN TERMS OF THE COURT ORDERS.

THE COURT:  LISTEN, MR. BLADO, I APPRECIATE THE EFFORT YOU TOOK TO TRY TO MOVE THE CASE ALONG, BUT IF WE'RE GOING TO JUST MEMORIALIZE WHAT HAPPENED ON THE 5TH, I'M GOING TO SIGN MR. SAATJIAN'S --

MR. BLADO:  THAT'S FINE, YOUR HONOR, I HAVE NO OBJECTION.

THE COURT:  I'M GOING TO SIGN MR. SAATJIAN'S --

MR. SAATJIAN:  THANK YOU, YOUR HONOR.

THE COURT:  ALL RIGHT.  MR. BLADO, YOUR MOTION TO BE RELIEVED AS COUNSEL, IT SEEMS TO ME IT'S PRETTY CLEAR, BASED ON WHAT I'M SEEING HERE THAT THERE HAS BEEN A BREAKDOWN.

MS. LANCRANJAN, I CAN'T ORDER SOMEBODY TO CONTINUE TO REPRESENT YOU, ESPECIALLY WHEN CLEARLY THE RELATIONSHIP HAS BROKEN DOWN.  SO I'M GOING TO GRANT MR. BLADO'S MOTION TO BE RELIEVED AS COUNSEL.  WITH RESPECT TO THE MOTION TO COMPEL, MS. LANCRANJAN, ARE YOU GOING TO FIND FOLLOWING COUNSEL OR ARE YOU GOING TO TRY TO DO THIS ON YOUR OWN?

MS. LANCRANJAN:  AT THIS POINT, I HAVE TO REPRESENT MYSELF, SIR, BECAUSE I DON'T HAVE ABILITY FINANCIALLY, AND I HAVE TO FIND SOMEBODY ELSE TO TAKE OVER THE CASE, AND IT'S RIGHT BEFORE MY MOVE-AWAY, AND I HAVE MOTIONS, AND I HAVE TO UNDERSTAND I DON'T KNOW HOW AM I GONNA FIND ANYBODY AT THIS POINT.

THE COURT:  SO ONE OF THE THINGS THE COURT LOOKS AT WHEN WE DO A MOVE-AWAY IS THE PARTIES' ABILITY AND WILLINGNESS TO ABIDE BY COURT ORDERS.  RIGHT NOW YOU COME TO ME, AND THAT'S A FACT THAT WEIGHS HEAVILY AGAINST

YOU. I WANT YOU TO BE ABLE TO COME TO ME ON YOUR MOVE-AWAY AND SAY, HEY, I'VE DONE EVERYTHING THE COURT'S ASKED OF ME.

WHAT I'M ASKING OF YOU TODAY IS TO RESPOND IN WRITING TO THEIR MEET-AND-CONFER LETTER, OKAY, BECAUSE A MEET-AND-CONFER LETTER -- I'LL MAKE SURE THAT MR. SAATJIAN GIVES YOU A COPY -- A MEET-AND-CONFER LETTER THAT LAYS OUT ALL THE -- THAT KIND OF BOILS DOWN, NOT THE 30 REQUESTS, RIGHT, REALLY THE HEART OF THE MATTER THAT'S STILL AT ISSUE. OKAY? THE CREDIT CARD STATEMENTS, THE BANK STATEMENTS, THE APPLICATIONS, THOSE ARE REALLY THE HEART OF THE ISSUE.

YOU ARE GOING TO RESPOND TO HIM IN WRITING WITHIN TWO WEEKS FROM TODAY OF WHAT YOU HAVE, WHAT YOU DON'T THINK YOU HAVE, WHAT IS YOUR -- WHAT YOU CONTEND IS HIS SOLE AND SEPARATE OBLIGATIONS. OKAY? YOU'RE GOING TO RESPOND TO HIM IN WRITING. AND THEN YOU'LL HAVE ANOTHER TWO WEEKS TO THEN GO OUT AND ACTUALLY PRODUCE, GO ONLINE, PULL DOWN CREDIT CARD STATEMENTS, PULL DOWN BANK STATEMENTS, PRODUCE THE ACTUAL DOCUMENTS. ARE WE CLEAR ON THAT?

MS. LANCRANJAN: YES, YOUR HONOR. I NEVER DISPUTED AND I ALWAYS DID IT. AGAIN, I ACTED WHATEVER THE COUNSEL WAS I GAVE, AND I EXPECTED THEM TO TELL ME WHAT ELSE I NEED TO DO.

THE COURT: AND REALLY I'M SORT OF OVER DISCUSSING HOW WE GOT HERE, I'M MORE INTERESTED NOW IN HOW WE GET OUT OF HERE. ALL RIGHT?

MS. LANCRANJAN: I APPRECIATE IT.

THE COURT: 14 DAYS TO DO THE MEET-AND-CONFER,

TO RESPOND IN WRITING TO THE MEET-AND-CONFER LETTER, 14 DAYS TO PRODUCE THE DOCUMENTS. WHETHER THEY'RE JOINT OR SEPARATE FOR YOU, IT DOESN'T MATTER. YOU HAVE ACCESS TO THEM, THEY'RE ENTITLED TO THEM. OKAY? ALL RIGHT.

MR. SAATJIAN: YOUR HONOR --

THE COURT: YOU LOOK AT ME BEFUDDLED. WHAT'S GOING ON?

MR. SAATJIAN: I AM, YOUR HONOR. FORGIVE ME, BECAUSE I FILED THIS MOTION COMPLYING WITH MY STATUTORY OBLIGATION UNDER THE DISCOVERY CODE. I'VE MET AND CONFERRED, THEY IGNORED IT, AND NOW --

THE COURT: SO WHAT WOULD YOU LIKE ME TO DO?

MR. SAATJIAN: I WOULD LIKE --

THE COURT: I THOUGHT YOU WERE MORE INTERESTED IN GETTING THE DOCUMENTS. I'M ORDERING THAT SHE PRODUCE THE DOCUMENTS WITHIN 28 DAYS FROM TODAY. WHAT IS IT YOU'RE ASKING ME TO DO THEN?

MR. SAATJIAN: I WAS GOING TO ASK IF THE COURT WOULD ALLOW ME TO PUT IN THE ORDER THE SPECIFIC DOCUMENTS THAT SHE'S GOING TO PRODUCE, NOT TO MEET AND CONFER WITH ME AND THEN DECIDE WHAT DOCUMENTS TO PRODUCE.

THE COURT: WAIT, WAIT, WAIT. YOU TOLD ME THAT YOU WOULD -- IF THEY HAD JUST RESPONDED TO YOUR MEET-AND-CONFER LETTER TELLING YOU, HEY, THESE ARE THE DOCUMENTS THAT I DON'T HAVE, THEN YOU WOULD HAVE BEEN ABLE TO MOVE THE BALL ALONG. THAT'S WHAT I ORDERED TODAY. THAT'S WHAT YOU ASKED ME TO DO.

MS. LANCRANJAN: THANK YOU, YOUR HONOR.

CANDACE KHOROUZAN, CSR NO. 11579
COURT APPROVED REPORTER

32

MR. SAATJIAN: FORGIVE ME, YOUR HONOR, IT'S A LITTLE DIFFERENT. I SAID IF THEY HAD RESPONDED TO THE MEET-AND-CONFER LETTER, PERHAPS THAT WOULD HAVE HELPED US WHERE WE ARE TODAY. NOW, WE'RE ALREADY HERE --

THE COURT: HOLD ON, MR. SAATJIAN. BUT SHE'S CONTENDING THAT SOME OF THE DOCUMENTS THAT YOU'RE REQUESTING ARE NOT WITHIN HER CUSTODY AND CONTROL. SHE'S CONTENDING THAT SOME OF OF THEM ARE HIS SOLE AND SEPARATE THAT HER PREVIOUS COUNSEL INCLUDED THEM IN HER DECLARATION, AND IT'S NOT ACCURATE. SO DO YOU WANT ME TO DRILL DOWN ON THAT, OR DO YOU JUST WANT ME TO JUST MAKE A BLANKET STATEMENT YOU PRODUCE EVERYTHING, EVEN THOUGH SHE DOESN'T HAVE ACCESS TO IT?

MR. SAATJIAN: FORGIVE ME, YOUR HONOR. I THINK SHE MENTIONED ONLY TWO CREDIT CARD ACCOUNTS THAT SHE CONTENDS ARE MY CLIENT'S.

THE COURT: WELL, I KNOW, BUT SHE'S PUT ON THE SPOT TO LOOK AT A LIST OF 13 AND THAT WAS THE FIRST TWO THAT JUMPED OUT AT HER. THAT'S WHY I'M SAYING, MEET AND CONFER. IF THERE'S DOCUMENTS SHE DOESN'T HAVE ANY CUSTODY AND CONTROL OVER, I'M TRYING TO --

MR. SAATJIAN: MIGHT I ASK ABOUT FOREIGN BANK ACCOUNTS, SURELY THOSE AREN'T IN MY CLIENT'S CONTROL AND THAT'S --

THE COURT: SHE DIDN'T MENTION THEM. THOSE ARE WITHIN WHAT YOU'RE ASKING TO PRODUCE.

MR. SAATJIAN: THAT'S CORRECT.

THE COURT: THEY'RE IN THE MEET-AND-CONFER

LETTER.

MR. SAATJIAN: OKAY.

THE COURT: ALL I'M SAYING IS IDENTIFY THOSE DOCUMENTS THAT YOU -- ARE IN YOUR MEET-AND-CONFER LETTER, THE 6 CATEGORIES THAT SHE SAYS SHE HAS NO CUSTODY AND CONTROL OVER. ALL RIGHT? AND OTHER THAN THAT, YOU HAVE TO PRODUCE EVERYTHING WITHIN 14 DAYS TO LOOK THROUGH THAT LIST, TELL YOU WHAT SHE DOESN'T THINK IS HERS, AND 14 DAYS TO GO ONLINE AND PRODUCE EVERYTHING ELSE, INCLUDING THE FOREIGN BANK DOCUMENTS.

MR. SAATJIAN: FORGIVE ME, YOUR HONOR, I BELIEVE I'VE PROVIDED SUFFICIENT EVIDENCE TO SHOW YOU WHICH DEMANDS ARE WITHIN HER POSSESSION, CUSTODY AND CONTROL. SHE'S REFUSED TO PROVIDE THEM TO DATE. THE COURT'S GOING TO ORDER HER TO NOW MEET AND CONFER AND THEN TO PRODUCE THEM. ARE WE GOING TO SET A REVIEW HEARING TO SEE --

THE COURT: I DON'T DO REVIEW HEARINGS. I DON'T DO REVIEW HEARINGS.

ALL RIGHT. NOW 14 DAYS TO TELL YOU WHAT SHE DOESN'T THINK ARE HERS, I MEAN, SHE HAS ANY ACCESS TO. OKAY? SHE COMES BACK AND SAYS I DON'T HAVE ACCESS TO THESE FOREIGN BANK ACCOUNTS IN MY NAME, THAT DOESN'T MAKE ANY SENSE TO ME. OKAY?

MR. SAATJIAN: AND THEN RECOURSE THEN FALLS ON MY CLIENT WHEN THAT DOESN'T HAPPEN TO FILE ANOTHER MOTION FOR RELIEF. CAN WE DISCUSS THE ISSUE OF SANCTIONS THEN?

THE COURT: YES, I'M GOING TO IMPOSE SANCTIONS.

SO WHAT ARE YOU ASKING FOR FOR THIS MOTION?

MR. SAATJIAN: I'M ASKING FOR FOR THIS MOTION THE SUM OF $15,000 TO BE ADDED TO THE 1,500 THE COURT STAYED FROM FEBRUARY 4TH UNTIL THIS HEARING.

THE COURT: HOW DO YOU GET TO $15,000? IS THAT SANCTIONS OR JUST ATTORNEYS' FEES?

MR. SAATJIAN: THAT'S SANCTIONS INCLUSIVE OF ATTORNEYS' FEES.

THE COURT: WHAT DID YOU EXPEND IN ATTORNEYS' FEES?

MR. SAATJIAN: I THINK THE SUM IN MY DECLARATION TO COUNSEL WAS SOMEWHERE AROUND 10- TO $12,000 REQUESTING 15- TO ALSO SERVE AS A DETERRENT.

THE COURT: ALL RIGHT, MS. LANCRANJAN, WHAT'S YOUR POSITION ON SANCTIONS? I KNOW YOU'RE GOING TO TELL ME YOU WANT TO BLAME THE OTHER COUNSEL, BUT ULTIMATELY WHETHER IT'S YOU OR COUNSEL THE OBLIGATION STILL FALLS ON YOU, YOU'RE THE PARTY, YOU'RE THE CLIENT.

MS. LANCRANJAN: YOUR HONOR, I ACTED UNDER THE ADVICE OF MY COUNSEL. IF ANYBODY'S AT FAULT, IT'S BECAUSE OF THE ADVICE OF COUNSEL. HE NEEDS TO SANCTION THE COUNSEL.

THE COURT: DID SHE JUST GET AN OSTLER-SMITH ORDER FOR $14,000, MR. SAATJIAN?

MR. SAATJIAN: YES, YOUR HONOR.

THE COURT: WHY SHOULDN'T I TAKE SOME MONEY OUT OF THAT OSTLER-SMITH AWARD. I MEAN, IT'S NOT FAIR FOR THEM, YOU HAVE TO UNDERSTAND --

35

MS. LANCRANJAN:  I DON'T HAVE ANYMORE MONEY, SIR.

THE COURT:  MS. LANCRANJAN --

MS. LANCRANJAN:  YOU CAN TAKE IT --

THE COURT:  IT'S NOT FAIR THAT THEY'RE THE ONES OVER HERE SPENDING ALL THIS TIME AND EFFORT SPINNING THEIR WHEELS AND EXPENDING ALL OF THESE ATTORNEYS' FEES TO GET YOU TO COMPLY.  I MEAN, I HAVE TO MAKE IT FAIR.

MS. LANCRANJAN:  YOUR HONOR, WHATEVER YOU THINK IS FAIR.

THE REPORTER:  I CAN'T HEAR YOU, I'M SORRY.

MS. LANCRANJAN:  I DO NOT -- WHATEVER YOU THINK IS FAIR.  I DO NOT THINK THIS IS IN ANY WAY FAIR TO ME.

THE COURT:  ALL RIGHT.  I'M GOING TO ORDER $5,000 IN FEES PAYABLE DIRECTLY TO MR. SAATJIAN, TO HIS OFFICE WITHIN 30 DAYS FROM TODAY.  ALL RIGHT.  ANYTHING ELSE, FOLKS?

MR. SAATJIAN:  NO, YOUR HONOR.  THANK YOU.

MR. BLADO:  NO.

THE COURT:  OKAY.  ALL RIGHT.  THAT WILL BE THE ORDERS OF THE COURT.  MR. SAATJIAN, YOU PREPARE THE FOA, SEND IT DIRECTLY TO MS. LANCRANJAN AND THEN TO ME.  OKAY?

MR. SAATJIAN:  THANK YOU, YOUR HONOR.

THE COURT:  THANK YOU.

(THE PROCEEDINGS CONCLUDED.)

STATE OF CALIFORNIA         )
                           )  SS.
COUNTY OF SAN DIEGO        )

     I, CANDACE KHOROUZAN, CSR NO. 11579, REPORTER IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR THE COUNTY OF SAN DIEGO, HEREBY CERTIFY THAT I MADE A SHORTHAND RECORD OF THE PROCEEDINGS HAD IN THE WITHIN CASE AND THAT THE FOREGOING TRANSCRIPT IS A FULL, TRUE, AND CORRECT TRANSCRIPTION OF THE PROCEEDINGS IN THIS CASE.

     DATED:  MARCH 21, 2025

CANDACE KHOROUZAN, CSR NO. 11579
COURT APPROVED REPORTER

CANDACE KHOROUZAN, CSR NO. 11579
COURT APPROVED REPORTER

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

LANCRANJAN v. SAATJIAN, et al.

Case:26-CV-02817-BAS-VET

EXHIBIT 16

JANUARY 9, 2025, HEARING TRANSCRIPTS

**Description of Evidence:** This exhibit contains the official transcript of the January 9, 2025, proceedings. It confirms the payment of the $15,000 retainer, establishing the foundational financial record of the attorney-client relationship and the subsequent breach of fiduciary duty upon the Defendants' abandonment of the Plaintiff. Additionally, this transcript documents the Enterprise's early-stage fraud, including Defendant Saatjian's misrepresentations regarding tax status and the initial deployment of "manufactured non-compliance" regarding discovery. These proceedings provide evidentiary proof of the Enterprise's intent to weaponize the minor child to strip the Plaintiff of her parental rights without legal cause or detriment, establishing the systemic pattern of bad faith that persisted throughout the litigation.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO


DEPARTMENT NO. 702          HON. CHRISTOPHER S. MORRIS, JUDGE


IN RE MARRIAGE OF:          )
                            )
    BRETT FRANKLIN TRUITT,   )
                            )
              PETITIONER,   )
                            ) NO. 23FL000584C
    - AND -                 )
                            )
    CRISTINA LANCRANJAN,     )
                            )
              RESPONDENT.   )
_____)


REPORTER'S TRANSCRIPT

JANUARY 9, 2025


APPEARANCES:

FOR THE PETITIONER:        FARZAD & OCHOA FAMILY LAW ATTORNEYS
                           BY:  PETER SAATJIAN
                           402 WEST BROADWAY
                           SUITE 400
                           SAN DIEGO, CA 92101


FOR THE RESPONDENT:        BICKFORD BLADO & BOTROS
                           BY:  MATTHEW S. BLADO
                           12348 HIGH BLUFF DRIVE
                           SUITE 220
                           SAN DIEGO, CA 92130


COURT APPROVED REPORTER: CANDACE KHOROUZAN, CSR NO. 11579
                         SAN DIEGO SUPERIOR COURT


CANDACE KHOROUZAN, CSR NO. 11579
COURT APPROVED REPORTER

INDEX

JANUARY 9, 2025

EXAMINATION

WITNESS NAME                                                    PAGE    LINE

(NONE)


PETITIONER'S EXHIBITS

EXHIBIT          DESCRIPTION              IDENTIFICATION   RECEIVED

(NONE)


RESPONDENT'S EXHIBITS

(NONE)

SAN DIEGO, CALIFORNIA; THURSDAY, JANUARY 9, 2025

(MORNING SESSION)

---oOo---

THE COURT: ALL RIGHT. ITEM NUMBER 4, BRETT TRUITT VERSUS CRISTINA LANCRANJAN.

MR. SAATJIAN: GOOD MORNING, YOUR HONOR. PETER SAATJIAN FOR PETITIONER, BRETT TRUITT, WHO IS PRESENT.

THE COURT: ALL RIGHT. GOOD MORNING.

MR. BLADO: GOOD MORNING, YOUR HONOR. MATTHEW BLADO APPEARING ON BEHALF OF CRISTINA LANCRANJAN, WHO IS PRESENT AND SEATED TO MY RIGHT.

THE COURT: ALL RIGHT. GOOD MORNING TO BOTH OF YOU. CAN I HAVE THE PARTIES PLEASE STAND AND RAISE YOUR RIGHT HANDS TO BE SWORN IN.

BOTH OF YOU SOLEMNLY STATE OR AFFIRM THAT THE TESTIMONY YOU GIVE TODAY SHALL BE THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH?

MS. LANCRANJAN: YES.

MR. TRUITT: I DO, YOUR HONOR.

THE COURT: OKAY. ALL RIGHT. SO THERE WAS A RUSH OF LATE FILINGS IN THIS CASE YESTERDAY, SO I WANT TO DISPENSE WITH MY TYPICAL READING THROUGH AND SUMMARIZING WHAT EVERYBODY'S PUT BEFORE ME, BECAUSE I JUST READ THROUGH EVERYTHING YOU GUYS FILED LAST NIGHT, AND IT'S FRESH IN MY MIND ALREADY. I GUESS THE HOT BUTTON ISSUE TODAY -- WE'VE GOT A COUPLE -- IS THIS REQUEST FOR HER TO RETURN TO WORK OR BE IMPUTED INCOME THAT YOU THINK THAT SHE'S CAPABLE OF MAKING, AND THE CHILD TO BE ENROLLED IN

CANDACE KHOROUZAN, CSR NO. 11579
COURT APPROVED REPORTER

4

REGULAR SCHOOL AND VACCINATED, AND NOT HOME-SCHOOLED. I KNOW THAT THERE'S A MOVE-AWAY PENDING THAT'S COMING UP, AND I GOT THE IMPRESSION FROM MOTHER'S FILINGS THAT SHE WAS SORT OF PUTTING EVERYTHING ON HOLD PENDING THE MOVE-AWAY, WHICH OBVIOUSLY MR. TRUITT IS NOT ON-BOARD WITH.

ALL RIGHT. SO, MR. SAATJIAN, I'VE READ ALL YOUR PLEADINGS. HOW DO YOU WANT TO PROCEED HERE?

MR. SAATJIAN: I WANT TO GO FORWARD AND I WANT TO ASK THE COURT TO GRANT OUR RELIEF AS WE PLED, INCLUDING THE JOB CONTACTS.

THE COURT: I FIGURED. I'M A LITTLE HAZY ON THIS WHOLE NOTION OF WHETHER MOM'S MAKING INCOME, WHETHER I SHOULD -- WHETHER SHE'S ENROLLED IN SCHOOL. IT LOOKS LIKE, ACCORDING TO YOU GUYS, SHE TOOK ONE CLASS IN 2023, NO CLASSES IN 2024.

MR. SAATJIAN: ONE CLASS IN THE SPRING OF 2023, NO CLASSES SINCE THEN WHATSOEVER DESPITE TELLING YOU UNDER OATH SEVERAL TIMES THAT SHE'S PRESENTLY ENROLLED. AS FAR AS EARNING INCOME, HER INCOME AND EXPENSE DECLARATION STATES THAT SHE'S PAYING $1200 A MONTH IN -- EXCUSE ME -- $1600 A MONTH TOWARDS CREDIT CARD BILLS, BUT THERE'S NO DECLARATION OR TESTIMONY AS TO WHERE THAT MONEY'S COMING FROM. AND HER SOCIAL SECURITY STATEMENT SHOWS THAT SHE'S RECORDED EARNINGS OF OVER $100,000 FOR A COUPLE YEARS OR A FEW YEARS DURING THE MARRIAGE SO SHE SHOULD BE WORKING.

THE COURT: RIGHT, SHE WAS WORKING FOR A BANK,

SHE'S NOT WORKING FOR A BANK ANYMORE.  SHE HAD PLANNED TO WORK FOR THE BANK UNTIL SHE GETS THE MOVE-AWAY, SO --

MR. SAATJIAN:  BUT THAT'S --

THE COURT:  -- HERE'S MY HEARTBURN, RIGHT, I'M TRYING TO IMPUTE MORE THAN MINIMUM WAGE.  DO I HAVE ANY EVIDENCE THAT THE JOBS THAT SHE'S CAPABLE OF DOING, THE JOB THAT SHE'S TRAINED FOR, THAT THERE'S OPENINGS READILY AVAILABLE, THAT SHE COULD QUALIFY FOR THOSE, THOSE ARE THE FINDINGS I NEED TO MAKE AND IMPUTE MORE THAN MINIMUM WAGE.  I CAN ALWAYS ASSUME THAT THERE'S A MINIMUM WAGE JOB OPEN.  I DON'T KNOW THAT I HAVE ANY EVIDENCE THAT THE JOB THAT SHE'S -- THAT YOU CONTEND SHE'S CAPABLE OF DOING, THAT THERE'S ACTUALLY THOSE KIND OF JOBS AVAILABLE.

MR. SAATJIAN:  SO I WANT TO -- THANK YOU, YOUR HONOR.  SO SHE PROVIDED IN HER DISCOVERY RESPONSES WHAT SHE CLAIMS ARE RECORDS OF HER JOB SEARCHES AND JOB CONTACTS.  IN THOSE RECORDS SHE WAS OFFERED JOBS BY RECRUITERS THAT SHE REJECTED, SHE DIDN'T EVEN RESPOND TO.

THE COURT:  DO I HAVE EVIDENCE OF THAT?  POINT TO ME DO I HAVE EVIDENCE THAT SHE WAS OFFERED A JOB, WHERE ARE THEY?

MR. SAATJIAN:  SO I DIDN'T BRING THE ACTUAL PRODUCTION OF DOCUMENTS, I BROUGHT THE WRITTEN RESPONSE, WHICH IS MY EXHIBIT 6.

THE COURT:  I'M GETTING A PRETTY VIOLENT HEAD SHAKE OF NO OVER HERE THAT SHE WASN'T OFFERED A JOB, SO

I'M GOING TO NEED SOME EVIDENCE THAT SHE WAS OFFERED A JOB.

MR. SAATJIAN: OKAY. THEN HERE'S WHAT I ASK THE COURT TO DO. WHY I DIDN'T BRING THE PRODUCTION OF DOCUMENTS BECAUSE IT'S VOLUMINOUS AND SHE PRODUCED WHAT APPEARED TO BE E-MAILS AND CORRESPONDENCE THAT SHOW POSITIONS BEING OFFERED TO HER. AND I'M GOING TO REPRESENT THIS AS AN OFFICER OF THE COURT THAT SHE PRODUCED THIS IN DISCOVERY AND I WENT OVER IT LAST WEEK, SHE PRODUCED RECORDS THAT SHOWED SHE WAS OFFERED JOBS BY RECRUITERS IN THE FIELD THAT SHE'S TRAINED AND EDUCATED FOR, AND HER RESPONSE WAS ASK ME FOR MORE INFORMATION OR NO RESPONSE AT ALL, SO THAT'S MY REPRESENTATION, AND THAT'S WHY I'M ASKING THE COURT FOR JOB CONTACT ORDERS BEING MADE TODAY BECAUSE THERE ISN'T AN ACTUAL MEANINGFUL PURSUIT TO OBTAIN EMPLOYMENT. IT'S ALMOST LIKE, HERE'S MY E-MAIL THAT I GOT AND I DIDN'T FOLLOW-UP, SO HER FIRST AND FOREMOST --

THE COURT: SO YOU'RE NOT ASKING FOR IMPUTATION OF $100,000 A YEAR?

MR. SAATJIAN: WELL, I KNOW THE COURT CAN'T DO THAT TODAY BECAUSE YOU DON'T HAVE THE EVIDENCE.

THE COURT: UNLESS THEY ADMIT TO IT. LET ME CHECK -- MR. BLADO, YOU MADE A REPRESENTATION THAT SHE WAS OFFERED JOBS. WHAT'S YOUR POSITION ON THAT?

MR. BLADO: THESE WERE JOBS THAT ARE IN BOSTON.

THE COURT: OH.

CANDACE KHOROUZAN, CSR NO. 11579
COURT APPROVED REPORTER

MR. BLADO: AND/OR --

MR. SAATJIAN: THAT'S 2023, I'M SORRY, YOUR HONOR.

THE COURT: HE SAT THERE JUST LIKE, YOU KNOW, QUIET AS CAN BE WHILE YOU TALKED.

MR. SAATJIAN: YOU'RE RIGHT. MY APOLOGIES.

THE COURT: NOW LET ME HEAR FROM MR. BLADO.

MR. BLADO: AND THEN DEPENDING ON DATES OF WHEN THESE E-MAILS WERE SENT, WE WERE SET FOR A HEARING IN NOVEMBER ON A MOVE-AWAY. SO IF A RECRUITER SENDS HER AN E-MAIL IN SEPTEMBER OR AUGUST, I MEAN, GIVEN THE TYPES OF JOBS, THIS IS NOT A MINIMUM WAGE JOB, ASK FOR MORE INFORMATION, BUT SOMETIMES IT JUST SIMPLY DOES NOT MAKE SENSE WHEN MY LIFE IS IN FLUX AND I MAY BE MOVING IN 90 DAYS, MOVE FORWARD WITH THAT. BUT, AGAIN, YOU IMPUTED INCOME, MINIMUM WAGE TO HER LAST TIME. I THINK THEY ARE STILL REQUESTING THAT SHE MAKE JOB CONTACTS, WHICH FEELS SOMEWHAT REDUNDANT, SO BE IT. I DON'T THINK IT WOULD BE APPROPRIATE NOR DO I THINK THE COURT HAS EVIDENCE TODAY, AS WE SIT HERE, TO MAKE AN ORDER IN EXCESS OF THE ORDER YOU MADE BACK ON NOVEMBER 5TH, IMPUTING INCOME TO MORE THAN MINIMUM WAGE.

THE COURT: I GUESS IT HAS BEEN MORE SOLID WITH THE JOB CONTACTS, BUT THOSE JOB CONTACTS ARE IN BOSTON? I MEAN, I'LL PUT THE JOB CONTACT ORDER IN PLACE, BUT I'M GOING TO HAVE A HARD TIME IMPUTING MORE INCOME TO HER WITHOUT SOMETHING MORE SOLID THAN THAT.

MR. SAATJIAN: THEN HERE'S WHAT I'LL DO, YOUR

HONOR, FIRST THE E-MAILS WERE FROM SPRING 2023 THAT SHE PRODUCED. IN SPRING 2023 THERE WAS NOT EVEN A DISCUSSION OF HER RELOCATING TO BOSTON. SHE FILED THAT MOVE-AWAY REQUEST IN APRIL OF 2024. SO SHE WAS OFFERED THESE JOBS IN 2023, AND SINCE THEN SHE HASN'T SOUGHT ANY EMPLOYMENT WHATSOEVER ACCORDING TO HER OWN DISCOVERY RESPONSES. SO AT THIS JUNCTURE I THINK THAT IT WOULD BE APPROPRIATE GIVEN THE EVIDENCE BEFORE YOU, TO PUT THE JOB CONTACT ORDER IN PLACE. AND IF SHE'S THEN OFFERED JOBS AT THE PAY RATE THAT I BELIEVE SHE'S CAPABLE OF EARNING, THEN I'LL FILE ANOTHER MOTION FOR THAT IMPUTATION IF SHE DOESN'T ACCEPT THEM.

THE COURT: WELL, MINIMUM WAGE HAS GONE UP, IT'S NOW 17.25, AS OF JANUARY 1, SO I CAN -- I MEAN, I CAN MAKE THAT INCREMENTAL CHANGE IN ORDER THAT SHE DO MAKE JOB CONTACTS, BUT, I MEAN, DO YOU WANT HER TO MAKE JOB CONTACTS IN SAN DIEGO OR YOU WANT HER TO MAKE JOB CONTACTS IN BOSTON OR WHAT -- WHERE DO YOU WANT THESE JOB CONTACTS TO BE -- I MEAN, IT MAY BE BETTER THAT SHE DUAL TRACK IT JUST IN CASE, YOU KNOW, MAKES FIVE HERE, FIVE THERE, AND FIGURE OUT WHERE THE DUST SETTLES IN MAY.

MR. SAATJIAN: I THINK THAT'S THE BEST WAY TO DO. AND I WAS GOING TO KIND OF LEAVE THAT TO HER, BUT I THINK THAT MAKES SENSE TO DO FIVE HERE AND FIVE THERE.

THE COURT: I MEAN, I HAVE NO IDEA WHAT'S GOING TO HAPPEN WITH THE MOVE-AWAY OR RELOCATE YET.

MR. SAATJIAN: I DON'T EITHER, BUT I'M PRESUMING YOU'RE GOING TO GRANT IT, SO IT'S KIND OF --

THE COURT: YOU'RE PRESUMING I'M GOING TO GRANT IT?

MR. SAATJIAN: NO, THEY'RE PRESUMING YOU'RE GOING TO GRANT IT, SO THEY'RE KIND OF PUNTING EVERYTHING UNTIL THEN. WE BELIEVE THE OBLIGATION EXISTS NOW.

THE COURT: I AGREE. SO FIVE AND FIVE DEPENDING HOW THE MOVE-AWAY COMES OUT SHE WILL BE READY ON BOTH SIDES?

MR. BLADO: ABSOLUTELY, YOUR HONOR, I MEAN, I THINK IT'S APPROPRIATE TO DO FIVE AND FIVE.

THE COURT: ALL RIGHT.

MR. SAATJIAN: AND BIWEEKLY REPORTING?

MR. BLADO: YOUR HONOR, COUNSEL ASKED ABOUT REPORTING. I WOULD ASK BECAUSE -- MONTHLY REPORTING, I THINK WOULD BE APPROPRIATE. I DON'T KNOW BIWEEKLY --

THE COURT: OH, MONTHLY REPORTING IS FINE.

MR. BLADO: THANK YOU.

THE COURT: ALL RIGHT. AND THEN LET'S TALK ABOUT THE SCHOOL. LISTEN, I READ YOUR POSITION ON THAT, THAT KINDERGARTEN IS NOT MANDATORY. IT'S NOT MANDATORY, BUT YOU GOT TO GET BOTH SIDES ON-BOARD ON THIS. I THINK GETTING THE CHILD ENROLLED IN SCHOOL AND VACCINATED IS A GOOD THING. I'LL HEAR FROM YOU, BUT MY TENTATIVE WOULD BE TO GRANT THAT REQUEST.

MR. BLADO: THANK YOU, YOUR HONOR. SO WITH RESPECT TO -- I'LL START WITH THE VACCINATIONS BECAUSE THAT LEADS INTO THE SCHOOLING ISSUE. BY HUSBAND'S OWN REPRESENTATION THERE ARE SEVERAL VACCINATIONS THAT STILL

CANDACE KHOROUZAN, CSR NO. 11579
COURT APPROVED REPORTER

NEED TO BE PUT INTO PLACE BEFORE YOU CAN ATTEND SCHOOL WHETHER HERE OR IN BOSTON.

THE COURT: RIGHT.

MR. BLADO: AND THE SPREAD ON THAT IS PROBABLY GOING TO BE SIX MONTHS. I MEAN, THE DTAPS, THE TWO DTAPS THAT HE ASKED FOR, THE CBC --

MR. SAATJIAN: I'LL OBJECT AS LACKING FOUNDATION.

THE COURT: YEAH, MY ORDER IS GOING TO BE, LOOK, YOU GOT TO GET GOING ON THE VACCINATIONS AND ATTEMPT -- YOU GIVE THE BEST EFFORT TO ENROLL IN SCHOOL. I MEAN, IF YOU GET REJECTED, YOU GET REJECTED, BUT --

MR. BLADO: LET ME BACK UP THEN, YOUR HONOR. YOU KNOW, IT'S -- WHAT CAN BE SOMEWHAT FRUSTRATING, I'M SURE, I KNOW IT IS FOR MY CLIENT, IS THAT DAD NEVER -- DIDN'T RAISE THIS OBJECTION ABOUT VACCINATIONS FOR THE SIX YEARS UNTIL WE WERE HERE TODAY.

MR. SAATJIAN: OBJECTION; ASSUMES FACTS NOT IN EVIDENCE.

THE COURT: OVERRULED. IT'S ARGUMENT. YOU CAN RESPOND TO THAT, MR. SAATJIAN.

MR. BLADO: HE DOESN'T RAISE THAT OBJECTION, AND EVEN THOUGH --

THE COURT: OKAY, MR. BLADO, HERE WE GO. HOW WE GOT HERE IS REALLY NOT AS RELEVANT AS HOW WE GET OUT OF HERE.

MR. BLADO: WELL, I APPRECIATE THAT, BUT MY POINT BEING IS THAT HOW WE GOT HERE HAS TO DIRECT WHERE

WE GO FORWARD, BECAUSE THESE ARE MEDICAL DECISION THAT NEEDS TO BE MADE. AND DAD HAS FILED A MOTION SAYING, WELL, JUST DO THE VACCINES SO HE CAN GO TO SCHOOL, BUT THIS IS A LEGAL CUSTODY ISSUE IN A CASE WHERE TWO PARTIES HAVE JOINT LEGAL CUSTODY. IT'S A HEALTH DECISION.

THE COURT: AND IF THEY CAN'T COME TO AN AGREEMENT, YOU HAVE TO COME TO ME, AND MY DECISION IS THEY GOT TO GET VACCINATED AND THEN GET ENROLLED IN SCHOOL.

MR. BLADO: ABSOLUTELY, HOWEVER, BECAUSE IT WAS CHECKED OFF AS JUST OTHER, FAMILY COURT SERVICES PROVIDED NOTHING, WE'VE GOT NO INFORMATION FROM A MEDICAL PROFESSIONAL --

THE COURT: SLOW DOWN.

MR. BLADO: FAMILY COURT SERVICES WASN'T TRIGGERED BECAUSE IT WAS NOT CHECKED OFF AS A CUSTODY MOTION, WHICH IT REALLY IS, LEGAL CUSTODY ISSUE, AND WE'VE GOT NO --

THE COURT: I THINK YOU GUYS WERE JUST AT FCS ANYWAY. I DON'T THINK THEY WOULD HAVE EVEN DONE IT.

MR. SAATJIAN: THAT'S CORRECT, YOUR HONOR.

THE COURT: YEAH, YOU GUYS WERE JUST AT FCS.

MR. BLADO: WHEN YOU'VE GOT AN ISSUE LIKE THIS, I FIND THAT THEY SOMETIMES WILL, BUT WHAT WE DON'T HAVE IS THE MEDICAL PROFESSION, IT'S TELLING US HERE WHAT WOULD BE APPROPRIATE FOR ALEX.

THE COURT: I DON'T NEED THE MEDICAL PROFESSION TO TELL ME WHETHER YOUR SON SHOULD BE VACCINATED. COME ON.

MR. BLADO: CAN I HAVE JUST A QUICK SECOND, YOUR HONOR?

THE COURT: YEAH. SO THE WAY I TYPICALLY DO THIS, MR. BLADO, IF BOTH PARENTS ARE ON-BOARD, THEY'D RATHER THEIR CHILDREN NOT BE VACCINATED, AND THAT'S BOTH PARENTS ARE OKAY WITH THAT, THAT'S A DECISION THAT, YOU KNOW, PERSONAL FREEDOM DICTATES. ALL RIGHT? I MEAN, I HAVE SOME MISGIVINGS ABOUT IT, BUT IF I DON'T HAVE AN AGREEMENT AMONGST THE PARENTS, THEN WE HAVE TO ERR ON THE SIDE OF VACCINATING THE KIDS.

MR. BLADO: I THINK THAT ANY ORDER THAT THIS COURT MAKES WITH REGARD TO THAT HAS TO BE TEMPERED BY ADVICE FROM THE CHILD'S PEDIATRICIAN TO ENSURE THAT IT'S DONE SAFELY AND APPROPRIATELY. AND, QUITE FRANKLY, IF HE CANNOT -- ASSUME FOR A MOMENT THAT HE CANNOT FINISH VACCINATIONS, MINIMUM VACCINATIONS TO ATTEND SCHOOL FOR SIX MONTHS, THEN WE'RE IN JULY. AND I JUST -- I'M CONCERNED ABOUT THAT, AND I'M CONCERNED THAT THIS IS IGNORED THROUGH THE BEST INTEREST OF ALEX AND WHAT'S IN HIS BEST INTEREST IN TERMS OF THE SCHOOLING, THIS FEELS VERY MUCH AS IF ALL OF THIS IS DAD, AFTER MOM BEING OUT OF WORK FOR THE LAST SIX, SEVEN YEARS, HAVING A CHILD OF THIS AGE, MOVING TO IMPUTE INCOME, WHO'S TRYING TO REMOVE EVERY OBSTACLE IN THE WORLD TO REDUCE HIS SUPPORT AS A SORT OF PUSH FORWARD, AND NOT REALLY FOR A, BASICALLY, I WANT WHAT'S BEST FOR ALEX. SHE'S ALWAYS HOME-SCHOOLED HIM, SHE'S ALWAYS EDUCATED HIM, EVEN BEFORE HE WAS DOING SCHOOL THERE WAS THIS SORT OF PARENT/CHILD EDUCATION THAT

THEY WOULD DO.

THE COURT: ALL RIGHT. SO TALK TO ME ABOUT WHY DOES MOM FEEL IT'S APPROPRIATE TO HOME-SCHOOL, BECAUSE DAD'S NOT ON-BOARD WITH THAT, SO I DON'T HAVE AN AGREEMENT, SO I'VE GOT TO MAKE THIS DECISION. I'LL HEAR YOU OUT ON WHY HOME-SCHOOL'S MORE APPROPRIATE FOR THIS CHILD.

MR. BLADO: OKAY.

THE COURT: SO YOU HIRE A REALLY GOOD LAWYER, IT'S REALLY YOUR BEST -- JUST LET HIM TALK. GO AHEAD.

MR. BLADO: SO, ONE, IT'S BECAUSE AT HIS AGE AND WHERE HE'S AT IN KINDERGARTEN, SHE'S CONFIDENT SHE CAN PROVIDE THE EXPERIENCE, THE INSTRUCTION, EVERYTHING THAT HE WILL NEED FOR KINDERGARTEN AGE IN A PLACE WHERE HE'S COMFORTABLE, THEY CAN EXPAND WHAT THEY'RE DOING. IT'S NOT SITTING IN A CLASSROOM, THE RIGID PROGRAM FOR THAT, TO PREPARE HIM FOR THE NEXT STEP BEFORE HE GOES. AND IT WAS SOMETHING THAT THEY DISCUSSED. I KNOW IT'S NOT ATYPICAL FOR TWO PARTIES TO DISCUSS SOMETHING AND HAD AN IDEA ABOUT THE WAY THINGS WERE GOING TO GO AND THEN FOR A DIVORCE TO COME UP AND FOR THAT TO CHANGE.

BUT GIVEN THAT WHERE WE ARE IS YOU WOULD BE SUGGESTING THAT HE BE PUSHED BACK INTO SCHOOL IN THE MIDDLE OF THE SCHOOL YEAR, KINDERGARTEN, WHERE KINDERGARTEN'S NOT MANDATORY IN CALIFORNIA, IT JUST SEEMS THAT IT'S IN HIS BEST INTEREST TO FINISH OUT THIS YEAR TO WHAT HE'S DOING. HE'S GOING TO BE REQUIRED, WHETHER IN BOSTON OR IN CALIFORNIA, TO START SCHOOL ON SEPTEMBER 1ST OR THE EQUIVALENT NEXT YEAR,

FOR NEXT SCHOOL YEAR.

THE COURT:  MR. SAATJIAN, GO AHEAD.

MR. SAATJIAN:  THANK YOU, YOUR HONOR. CALIFORNIA EDUCATION CODE SECTION 4200 STATES CHILDREN BETWEEN 6 AND 18 ARE SUBJECT TO COMPULSORY FULL-TIME EDUCATION, IT'S MANDATORY.  THAT'S NUMBER ONE.  NUMBER TWO --

THE COURT:  ALEX IS SIX.

MR. SAATJIAN:  ALEX IS SIX.  NUMBER TWO, I'VE ASKED MS. LANCRANJAN TO PRODUCE ANY DOCUMENTATION AND ANY INFORMATION REGARDING THE HOME-SCHOOLING PROGRAM.  SHE SAYS THAT IS VERY DETAILED AND EXPENSIVE.  HER DISCOVERY RESPONSES SAY IT DOESN'T EXIST.  SHE TESTIFIES UNDER OATH THAT THE CHILD IS PERFORMING ABOVE GRADE LEVEL.  WELL, IF THERE'S NO DOCUMENTS TO VERIFY THAT, I DON'T BELIEVE IT. NUMBER ONE.

THE COURT:  ALL RIGHT, I GOTCHA.  WHAT DO YOU THINK ABOUT THE ARGUMENT THAT, YOU KNOW, JUST STANDARD PUBLIC SCHOOL MAY NOT BE THE BEST THOUGHT FOR HIM, YOU GUYS MIGHT WANT TO FIND SOME PRIVATE PLACEMENT.  DO YOU GUYS HAVE THE MONEY FOR PRIVATE SCHOOL?

MR. SAATJIAN:  HE ALREADY FOUND, HE PUT IT IN HIS PLEADINGS.  IT'S CALLED THE LEARNING CHOICE ACADEMY. THEY HAVE A CONDITIONAL ACCEPTANCE.  IT'S A THREE-DAY HYBRID PROGRAM, SO IT'S NOT FULL-TIME DURING THE WEEK. IT'S TUESDAYS, THURSDAYS AND FRIDAYS 8:00 TO 2:00, AND THE OTHER DAYS ARE HYBRID IN-HOME LEARNING PROGRAM.

THE COURT:  HOW DO YOU FEEL ABOUT A HYBRID

PROGRAM?

MS. LANCRANJAN:  (INAUDIBLE.)

THE COURT:  I NEED TO SWEAR YOU IN IF YOU WANT TO SPEAK.  OH, I ALREADY DID.  ALL RIGHT.  GO AHEAD. WHAT DO YOU WANT IN?

MS. LANCRANJAN:  YOUR HONOR, ALEX AND I, WE ESTABLISH A DIFFERENT METHODOLOGY.  I'M A TEACHER BY TRADE.  I STUDIED PSYCHOLOGY (INAUBILE) IN ROMANIA.  I DO -- I KNOW THE CHILDREN'S PSYCHOLOGY.  THE WHOLE SCHOOL SYSTEM THE WAY I TRAIN HIM FOR THE PAST SINCE HE WAS BORN -- LET'S JUST SAY SINCE HE WAS TWO YEARS OLD -- HAS BEEN  FOCUSED ON HIS INDIVIDUAL PERSONALITY, HIS STYLE AND CAPABILITY --

THE COURT:  BUT HERE'S THE PROBLEM.  IF YOU GUYS WERE TOGETHER AND ON-BOARD AND YOU GUYS WERE STILL A COUPLE AND YOU GUYS COME TO AN AGREEMENT ABOUT HOME-SCHOOLING, GREAT, THAT'S YOUR PREROGATIVE, BUT YOU GUYS ARE SPLIT, AND YOU DON'T HAVE THE ABILITY TO MAKE UNILATERAL DECISIONS ANYMORE, YOU HAVE TO COME TO AN AGREEMENT, AND IF YOU CAN'T COME TO AN AGREEMENT, YOU'VE GOT TO COME TO ME.  AND IF YOU COME TO ME WITH THE SITUATION, SOUNDS LIKE DAD'S MADE A REASONABLE ACCOMODATION, WHICH IS WHERE HE COULD GO 8:00 TO 5:00 FIVE DAYS A WEEK, WE'LL GO 8:00 TO 3:00 OR 8:00 TO 2:00, OR WHATEVER IT WAS, THREE DAYS A WEEK, THE REST IS HOME-SCHOOL, KIND OF, YOU KNOW, CREATES SORT OF A MIDDLE GROUND, IT SEEMS LIKE A REASONABLE RESOLUTION TO THIS DISPUTE.

MS. LANCRANJAN:  I CAN EXPLAIN, SIR.  WHAT

CANDACE KHOROUZAN, CSR NO. 11579
COURT APPROVED REPORTER

HAPPENED IS THIS, ALEX IS JUST USED TO HAVE A DIFFERENT PACE WITH A PROJECT. HE'S NOT USED TO HAVING HYBRID AT THIS POINT NOW. I TOLD HIM, AND I HAVE A WRITTEN REPLY TO HIS E-MAIL, WE CAN CONSIDER THAT ONGOING BASIS INCLUDING NEXT YEAR. IT'S JUST THAT IT HAS TO BE FOR THE WELL-BEING OF ALEX. IT'S NOT FORCING HIM INTO SOMETHING HE'S NOT READY, BECAUSE IT WOULD JUST BE DETRIMENTAL TO --

THE COURT: I HAVE A COURTROOM FULL OF PEOPLE AND AN INTERPRETER WAITING FOR MY NEXT CASE. I REALLY DO NEED TO MOVE ON. MY DECISION TODAY IS GOING TO BE WE'RE GOING TO GO AHEAD AND START WITH THE VACCINATIONS AND DO EVERYTHING YOU CAN TO GET HIM ENROLLED IN SCHOOL. IF THE VACCINATIONS HOLD UP THE ENROLLMENT, SO BE IT, BUT EVERYBODY EXERCISE THEIR BEST EFFORTS TO GET HIM STARTED ON THE VACCINATIONS AND ENROLLED IN SCHOOL AT THE LEARNING -- WHAT'S IT CALLED?

MR. SAATJIAN: LEARNING CHOICE ACADEMY.

THE COURT: LEARNING CHOICE ACADEMY.

MR. SAATJIAN: CLAIREMONT LOCATION, YOUR HONOR.

THE COURT: WHICH SOUNDS LIKE A REASONABLE ACCOMMODATION.

MR. BLADO: YOUR HONOR, AS A PRIVATE SCHOOL, FATHER IS GOING TO BE RESPONSIBLE FOR COVERING THE --

MR. SAATJIAN: IT'S A CHARTER SCHOOL.

THE COURT: IT'S A CHARGER SCHOOL? ALL RIGHT. SO THIS IS KIND OF YOUR BABY YOU WANTED TO DO, SO YOU'RE GOING TO BE RESPONSIBLE FOR ANY COSTS ASSOCIATED WITH IT

RIGHT NOW.

MR. TRUITT:  OKAY.

MR. SAATJIAN:  SUBJECT TO REALLOCATION?

THE COURT:  WE'RE NOT LISTENING.  SO MOM'S -- WE'RE FORCING THE KID INTO SCHOOL, THE MOM SAYS, OKAY, HE CAN GO TO PUBLIC SCHOOL, IT'S GOING TO COST ME NOTHING. DAD IS SAYING, WAIT A MINUTE, I'D RATHER SEND HIM TO PRIVATE SCHOOL, THAT'S DAD'S NICKEL.

MR. SAATJIAN:  OKAY.  I UNDERSTAND.

MR. TRUITT:  THERE IS NO COST TO THAT, YOUR HONOR.

THE COURT:  I'M SORRY?

MR. TRUITT:  THERE IS NO COST TO THAT.

THE COURT:  GREAT, THEN YOU'RE HOME FREE.

MR. BLADO:  JUST TO CLARIFY, YOUR HONOR, THAT THE -- YOU ORDERED WITH REGARD TO THE VACCINATION IT ALL TO BE DONE AT THE ADVICE OF HIS -- HER PEDIATRICIAN.

THE COURT:  IF YOU GET A MEDICAL OPINION THAT THERE'S SOME PECULIARITY CONDITION TO ALEX THAT SAYS THAT HE CAN'T BE VACCINATED, THEN SHOW IT TO DAD AND BRING IT TO ME, IF YOU GUYS CAN'T MAKE AN AGREEMENT.  DAD'S ENTITLED TO GET HIS OWN MEDICAL OPINION, YOU GUYS HAVE GOT TO COME TO ME, BUT YOU GOT TO START THE VACCINATION BALL ROLLING.

MR. SAATJIAN:  THANK YOU, YOUR HONOR.  SO THE ORDER'S FOR FULL COOPERATION TO START THE VACCINATIONS FORTHWITH, AND IF THERE IS A HOLD UP, MAY WE COME IN EX PARTE FOR THE COURT TO HEAR THAT ISSUE?

THE COURT: YES, YOU CAN COME IN, BUT LISTEN, IF THEY HAVE A MEDICAL OPINION THAT SAYS ALEX HAS SOME PECULIAR CONDITION WHERE VACCINATIONS ARE NOT ADVISABLE, THEN YOU'ER ENTITLED TO GET YOUR OWN, AND I WON'T HAVE TO MAKE A DECISION.

MR. SAATJIAN: VERY WELL. SO THAT WOULD BE THE ONE EXCEPTION?

THE COURT: YEAH.

MR. SAATJIAN: THANK YOU, YOUR HONOR.

MR. TRUITT: YOUR HONOR, MAY I SPEAK FOR A MOMENT?

THE COURT: SURE.

MR. TRUITT: HE WAS VACCINATED AT SIX MONTHS OF AGE, HE HAD NO PROBLEMS, HE'S A HEALTHY BOY.

THE COURT: WELL, GOOD, HE SHOULD BE OFF AND RUNNING THEN. ALL RIGHT. ANYTHING ELSE, FOLKS?

MR. BLADO: WE HAD OUR REVIEW HEARING ON THE SUPPORT ORDERS FOR NOVEMBER 5TH.

THE COURT: ALL RIGHT. WELL, I'M GOING TO KEEP -- SO JUST SO YOU KNOW, I DID PLUG IN THE NEW MINIMUM WAGE DATA, BUT KEEPING DAD'S WAGES THE SAME AT 2566; RIGHT?

MR. SAATJIAN: 56, BUT YES, RIGHT.

MR. BLADO: 2556 FOR JANUARY 1.

THE COURT: 25666.

MR. SAATJIAN: OH, I'M SORRY, 25666, YOU'RE RIGHT. EXCUSE ME.

THE COURT: AT 25666, DAD PAYING $1500 A MONTH

IN HEALTH INSURANCE.  MOM'S MINIMUM WAGE IS UP TO 17 AND A QUARTER AT 2,990.  TURNS OUT CHILD SUPPORT IS 1,993, SPOUSAL SUPPORT 3,743.

MR. BLADO:  YOUR HONOR, A COUPLE OF POINTS ON THAT FROM YOUR PRIOR ORDER, AS WE PUT IN OUR PLEADINGS, AND DAD HAS CONSENTED TO, HE HAS A $1,278 PER MONTH PRETAX RETIREMENT THAT WOULD GO UNDER 401K RIGHT BELOW WAGES.

THE COURT:  THAT DOESN'T CHANGE ANYTHING, BUT I'LL PLUG IT IN.

MR. BLADO:  IT SHOULD.

THE COURT:  401K CONTRIBUTION, HOW MUCH IS IT?

MR. BLADO:  1,278 PER MONTH.

THE COURT:  ALL RIGHT.  IT DOES CHANGE THE NUMBERS A LITTLE BIT.  TAKES DAD'S CHILD SUPPORT TO 2,059, AND HIS SPOUSAL SUPPORT TO 3,943 FOR 6,000 IN TWO TOTAL PAYMENT.

MR. BLADO:  WHAT WERE THE TAX FILING --

THE COURT:  I HAVE DAD HEAD OF HOUSEHOLD.  I HAVE BOTH HEAD OF HOUSEHOLD, WHAT THEY PUT IN LAST TIME.

MR. SAATJIAN:  THAT'S CORRECT.

MR. BLADO:  HE'S REMARRIED NOW, BUT HE'S INDICATED THAT HE'S FILING HEAD OF HOUSEHOLD, JUST LIKE THE ORDERS SAY, HEAD OF HOUSEHOLD BASED ON DAD'S REPRESENTATION THAT HE WILL BE FILING HEAD OF HOUSEHOLD.

THE COURT:  BOTH HEAD OF HOUSEHOLD.  ALL RIGHT. ANYTHING ELSE, GUYS?  I'LL PRINT THIS OFF FOR YOU.

MR. BLADO: YES, YOUR HONOR. JUST A CONFIRMATION THAT YOU HAVE -- IT'S NOT AUTOMATIC -- CLICKED THE BUTTON TO ADJUST TO THE NEW CHANGES TO THE GUIDELINE SUPPORT EFFECTIVE SEPTEMBER 1ST, 2024. YOU'LL FIND IT UNDER ONE OF THE TABS. SO IT'S THE SECOND TAB OVER WHERE YOU CAN CHANGE DEDUCTIBILITY FOR SUPPORT, IT'S UNDER TAXES.

THE COURT: ALL RIGHT. TAXES.

MR. BLADO: IT SAYS ADD-ONS CALCULATION METHOD ALLOCATED 4061(B).

THE COURT: THERE'S LIKE 50 INPUTS HERE UNDER TAXES. I DON'T SEE ANYTHING THAT SAYS ADD-ON ALLOCATION METHOD.

MR. SAATJIAN: I BELIEVE IT'S UNDER THE SUPPORT COLUMN, YOUR HONOR.

THE COURT: ALL RIGHT. ADD-ON CALCULATION METHOD.

MR. BLADO: YES. CLICK TO YES.

MR. SAATJIAN: THAT'S GOING TO INCREASE THE SUPPORT.

THE COURT: ADD-ON CALCULATION METHOD IS NOT A YES OR NO. ADD-ON CALCULATION METHOD --

MR. SAATJIAN: IT SHOULD BE A --

THE COURT: IS AN ALLOCATE 50/50 IT SAID. IT'S ADD-ONS. SO YOU'RE TALKING ABOUT MANDATORY ADD-ONS.

MR. BLADO: NO, IT'S --

MR. SAATJIAN: THAT SHOULD BE AN ORDER AS WELL, AN EQUAL ALLOCATION OF ADD-ONS, THAT WASN'T MADE IN

NOVEMBER, YOUR HONOR.

THE COURT: WELL, THAT'S NOT FAIR. THAT LAW'S CHANGED.

MR. BLADO: AND THIS HAPPENS TO APPLY THAT LAW INCLUDING --

THE COURT: ALL RIGHT. BUT LISTEN, THERE'S NOTHING IN HERE THAT CHANGES THE SUPPORT. YOU GUYS -- NOTHING UNDER TAXES, NOTHING UNDER SUPPORT.

MR. BLADO: WELL, YOUR HONOR --

THE COURT: YOU GUYS NEED TO MEET AND CONFER TO FIGURE IT OUT. OBVIOUSLY, WE'LL ADOPT A NEW LAW, BUT THE ALLOCATION OF ADD-ONS, IT'S GOT TO BE PRORATA TO THEIR INCOME.

MR. SAATJIAN: 55/45 IS WHAT IT LOOKS LIKE.

THE COURT: IT'S ABOUT 80/20 ON THE ADD-ONS.

MR. SAATJIAN: YOUR HONOR, THERE'S NO MASTER REPORT THAT SHOWS YOU THE NET INCOME ALLOCATION. IT'S 53 PERCENT AND 47 PERCENT RIGHT THERE ON THE PROGRAM.

THE COURT: OH, ON THE CASH FLOW?

MR. BLADO: NOT --

MR. SAATJIAN: YES, IT SAYS RIGHT THERE NET --

THE COURT: GUYS, WE HAVE A COURT REPORTER. COME ON. YOU KNOW, THAT'S NOT FAIR TO ORDER A COURT REPORTER, THEN YOU ALL SPEAK AT ONCE.

MR. BLADO: YOUR HONOR, UNTIL YOU HAVE THE SUPPORT CORRECTLY INPUTTED AND YOU'VE MADE THE ADJUSTMENT FOR THAT PORTION, WHICH WE CAN MEET AND CONFER ON, THE ALLOCATIONS ARE JUST A MATTER OF CLICKING A BUTTON.

THE COURT:  JUST SO YOU KNOW, NET DISPOSAL INCOME AFTER SPOUSAL SUPPORT IS 15 AND 3, WHICH IS LIKE 80/20.  80/20.  YOU GUYS MEET AND CONFER.  IF THAT CHANGES THINGS BRIEFLY, YOU GUYS CAN FIGURE IT OUT.  ALL RIGHT.

MR. SAATJIAN:  OKAY.

MR. BLADO:  AND THEN, YOUR HONOR, AT THE LAST HEARING YOU MADE A FLAT ORDER FOR OSTLER-SMITH PAYMENTS OF JUST 22 PERCENT, AND I WASN'T CERTAIN THE BASIS FOR THE 22 WOULD BE --

THE COURT:  WELL, IF HE'S MAKING 25 --

MR. BLADO:  NO, NO, NO, 22 PERCENT FLAT OF ANY OF HIS BONUSES THAT HE RECEIVES.

THE COURT:  RIGHT.

MR. BLADO:  22 PERCENT IS WHAT YOU ORDERED, HOWEVER, WHEN WE RAN A GUIDELINE CALCULATION, THE PERCENTAGES WERE ALLOCATED BETWEEN CHILD AND SPOUSAL SUPPORT AND THEY WERE DIFFERENT.  IF THE ORDERS THAT WE MEET AND CONFER TO USE THE GUIDELINE CALCULATION WE HAVE TO FIGURE OUT WHAT THAT BONUS REPORT SAYS, THEN WE CAN DO THAT, BUT --

MR. SAATJIAN:  YOUR HONOR --

THE COURT:  WELL, LOOK, HE PAYS $6,000 A MONTH. HIS INCOME IS 2566.  IT'S LIKE 24 PERCENT OF HIS INCOME PRETAX IS ALLOCATED TO CHILD AND SPOUSAL SUPPORT.  SO WHATEVER THAT PERCENTAGE IS, YOU GUYS MEET AND CONFER, WHEN HE GETS A BONUS, FIGURE IT OUT.

MR. SAATJIAN:  22 PERCENT, THE COURT ORDER

REMAINS IN EFFECT.  WE HAD SUGGESTED 6 AND 16, CHILD SUPPORT AND SPOUSAL SUPPORT.

THE COURT:  YOU GUYS GOING TO MAKE ME DO THE MATH?

MR. SAATJIAN:  WELL, WE'LL MEET AND CONFER, YOUR HONOR.

THE COURT:  I MEAN, IT'S $6,000 A MONTH, AND HE MAKES 2566.  DO THE PERCENTAGES.  IT'S LIKE 23.5 PERCENT.  ALL RIGHT.

MR. SAATJIAN:  THANK YOU, YOUR HONOR.

THE COURT:  I DO HAVE A COURTROOM FULL OF PEOPLE.  I HAVE AN INTERPRETER WHO CAME EARLY.  WE'VE GOT CASES GOING ON.  WHAT ELSE DO YOU GOT?

MR. BLADO:  IT WAS THE ATTORNEYS' FEES REQUEST, YOUR HONOR, THAT WE MADE.

THE COURT:  OKAY, LOOK, NOW HE'S PAYING $6,000 A MONTH, THAT EQUALS OUT -- OSTENSIBLY EQUALS OUT THE MONEY.

MR. BLADO:  YOUR HONOR, MARRIAGE OF KNOX IS GOING TO TELL YOU IF THERE IS A DISPARITY IN ACCESS TO FUNDS, AS HE'S SITTING HERE RIGHT NOW HE HAS CONTROL OVER THE MARITAL ESTATE, THERE'S A CLEAR DISPARITY, HE'S --

THE COURT:  YOU WANT SOME PREDISTRIBUTION OF THE MARITAL ESTATE?

MR. BLADO:  IT WOULD BE ENTIRELY INAPPROPRIATE TO DO THAT WHEN YOU'VE GOT A MANDATORY REQUIREMENT THAT THE COURT ORDER A CONTRIBUTION TOWARDS HER ATTORNEYS' FEES.  WE'VE GOT A DAY AND A HALF TRIAL THAT'S COMING UP

IN MAY. SHE OWES MONEY NOW AND SHE CAN'T CONTINUE TO AFFORD TO PAY THIS. SHE MADE --

THE COURT: HOW MUCH IS SHE ASKING FOR?

MR. BLADO: WE ASKED FOR -- ORIGINALLY PLED FOR 25-, MR. SCHULMAN DID. WHEN THE HEARING WAS TRIPLED, WE INCREASED THAT TO 50. I MEAN, AT MINIMUM, IT WOULD HAVE TO BE AN ORDER OF $25,000. WE CAN USE THE MONEY THAT IS SITTING IN MR. SCHULMAN'S TRUST ACCOUNT AND ALLOCATE AT LEAST 25- OF THAT TOWARDS A CONTRIBUTION TO HIS FEES.

THE COURT: HAVE I ALREADY ORDERED FEES ON THIS?

MR. BLADO: YOU HAVE NOT.

THE COURT: WHAT'S YOUR POSITION ON FEES?

MR. SAATJIAN: MY POSITION IS THE COURT SHOULD RESERVE ON THAT BECAUSE WE HAVE A SANCTIONS REQUEST, BUT THERE IS NO CUEVAS DECLARATION ON FILE, AND SHE'S IN VIOLATION OF THE RULES OF COURT 5.427. HER INCOME AND EXPENSE DECLARATION IS INCOMPLETE IN SECTION 11 AND SECTION 15. IT JUST SAYS CSAD. SO SHE'S WITHHOLDING THE MATERIAL INFORMATION YOUR HONOR NEEDS TO RULE ON THAT ISSUE. WE'VE ALREADY TRIED TO RESOLVE THIS ISSUE BY GIVING $150,000 TO HER. SHE DOESN'T ACCEPT IT. SHE'S COMING IN HERE AND SAYING, I DON'T WANT IT, I WANT HIM TO PAY FOR IT. ASK US TO MEET AND CONFER ON THAT ISSUE, PLEASE, AND RESERVE UNTIL THE TIME OF TRIAL, SO THERE'S A FINAL FEE SHIFTING ORDER. HER CONDUCT HAS INCREASED THE FEES IN THIS CASE UNNECESSARILY, AND I WANT THE COURT TO PLEASE HEAR EVIDENCE ON THAT ISSUE.

THE COURT: DON'T YOU THINK I HAVE ENOUGH TO KNOW TO AT LEAST TO MAKE A FINDING THAT THERE'S A DISPARITY IN INCOME. I MEAN, I DON'T KNOW EXACTLY WHAT THAT DISPARITY IS, BUT --

MR. SAATJIAN: I THINK THERE'S A FINDING YOU CAN MAKE, YOUR HONOR. WITH THAT PAYMENT OF SPOUSAL SUPPORT HE'S ALSO SERVICING IRS TAX DEBT OF $1,000 A MONTH THAT SHE'S RESPONSIBLE FOR. HE'S ALSO PAYING HER PHONE BILL, UTILITIES, CAR PAYMENT, IN ADDITION TO THE SUPPORT THAT HE'S PAYING. IN MY OPINION, AFTER ALL THAT IS CONSIDERED, THERE IS NO ABILITY TO PAY ADDITIONAL FUNDS. THAT'S WHY WE ASK THAT, YOU KNOW, WE MEET AND CONFER AND THAT IT COME FROM THE MONEY THAT IS IN HER FORMER ATTORNEYS' TRUST ACCOUNT.

THE COURT: IT'S NOT FAIR TO SAY MEET AND CONFER AS YOU PREPARE FOR A THREE-DAY HEARING, OR A DAY-AND-A-HALF HEARING AND HOPEFULLY YOU GET PAID ON SOMETHING LIKE THAT. THAT'S NOT FAIR. LOOK, I'M GOING TO MAKE A SMALL ORDER TO GET PAID FOR THE HEARING, I'M GOING TO MAKE A $15,000 ORDER SUBJECT TO REVISIT AT THE TIME OF THE HEARING, BUT SHE'S GOT TO HAVE SOME MONEY TO GO TO TRIAL WITH.

MR. SAATJIAN: THANK YOU, YOUR HONOR.

THE COURT: ALL RIGHT, FOLKS, GOOD LUCK.

MR. SAATJIAN: THANK YOU.

THE COURT: PAYABLE -- CAN YOU DO THAT ONE LUMP SUM, MR. SAATJIAN, THE 15-?

MR. SAATJIAN: WITHIN 30 DAYS?

THE COURT:  30 DAYS TO MR. BLADO'S OFFICE.

(THE PROCEEDINGS CONCLUDED.)

STATE OF CALIFORNIA        )
                          )   SS.
COUNTY OF SAN DIEGO       )


     I, CANDACE KHOROUZAN, CSR NO. 11579, REPORTER IN THE

SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR THE

COUNTY OF SAN DIEGO, HEREBY CERTIFY THAT I MADE A SHORTHAND

RECORD OF THE PROCEEDINGS HAD IN THE WITHIN CASE AND THAT

THE FOREGOING TRANSCRIPT IS A FULL, TRUE, AND CORRECT

TRANSCRIPTION OF THE PROCEEDINGS IN THIS CASE.

     DATED:   JANUARY 19, 2025




CANDACE KHOROUZAN, CSR NO. 11579
COURT APPROVED REPORTER

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

LANCRANJAN v. SAATJIAN, et al.

Case:26-CV-02817-BAS-VET

EXHIBIT 17

DOCUMENTARY EVIDENCE OF PRIVILEGE STRIPPING AND EXTRINSIC FRAUD

**Description of Evidence:** This exhibit contains additional documentary evidence, including the specific filings and records utilized by the Enterprise to strip Plaintiff of her attorney-client privilege and execute the "unconstitutional taking" of her marital estate including the April 29 2026 Court transcripts. It is incorporated to demonstrate the Enterprise's multi-month scheme of extrinsic fraud, verifying their active manipulation of the tribunal to procure void sanctions and circumvent established privacy protections.

# In the Matter Of:

## BRETT F TRUITT vs CRISTINA LANCRANJAN,

23FL000584C

---

MOTION

April 29, 2025

---



COALITION
Court Reporters

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

DEPARTMENT 702    BEFORE HON. CHRISTOPHER S. MORRIS, JUDGE

IN RE THE MATTER OF:              )
                                  )
BRETT F. TRUITT,                  )
                                  )
            PETITIONER,           )
                                  )
        vs.                       )    CASE NO. 23FL000584C
                                  )
CRISTINA LANCRANJAN,              )
                                  )
            RESPONDENT.           )    **CERTIFIED COPY**
                                  )

REPORTER'S TRANSCRIPT

April 29, 2025

PAGES 1 - 50

APPEARANCES:

FOR THE              By:  Peter Saatjian
PETITIONER:          Attorney at Law
                     Farzad & Ochoa Family Law
                     Attorneys, LLP
                     402 West Broadway, Suite 400
                     San Diego, California 92101

FOR THE              In Propria Persona
RESPONDENT:

CERTIFIED TRANSCRIPT

NATALIE M. KHAMIS, CSR 14260
COURT-APPROVED COURT REPORTER
SAN DIEGO, CALIFORNIA

San Diego, California; April 29, 2025; 3:46 p.m.

-- o0o --

THE COURT:  All right.  Last but not least.  All right, Truitt versus Lancranjan.

(A discussion was held off the record.)

THE COURT:  All right.  Can I have the parties please raise your right hands where I can swear you both in.

(The parties were sworn.)

MR. TRUITT:  I do, your Honor.

MS. LANCRANJAN:  Yes, your Honor.

BRETT F. TRUITT AND CRISTINA LANCRANJAN, having been first duly sworn, testified as follows:

THE COURT:  All right.

MR. SAATJIAN:  And good afternoon, your Honor. Peter Saatjian for the petitioner, who is present.  Thank you.

THE COURT:  All right.  So just as a macro observation, this is family court.  This isn't Truitt versus Lancranjan court, all right?  That means you guys cannot continue filing and filing and filing repeat requests, okay?  You filed this thing.  A week later, you filed the same request, okay?  You can't keep going back and reinventing and doing all these things, okay?  It's not fair.

You see how busy I am, right?  These people have real, real problems, okay?  People, they don't -- that don't -- they're not getting their children; they're not

seeing each other, okay?  You guys are fighting about money.

All right.  Let's take this one by one here. Let's talk about the FOAH from March 18th.  All right. So Mr. Saatjian submitted a new FOAH.  I have him under the FOAH from prev- -- from the previous FOAH.

Do you have any objections to the FOAH prepared by Mr. Saatjian?

MS. LANCRANJAN:  Yes, your Honor.

THE COURT:  Okay.  What are your -- what are your issues with this FOAH?  What do you think he got wrong?

MS. LANCRANJAN:  Well, there are multiple issues.

First of all, he continued to not follow the process, the court Rule 5.125.

THE COURT:  All right.  So that's -- I made him refile, so we've got that taken care of. Substantively --

MS. LANCRANJAN:  He's still --

THE COURT:  -- what did he misstate or get wrong?

MS. LANCRANJAN:  Well, first of all, false representation under the proposed FOAH.  Again, we did not agree.  We did not confer -- we did not meet and confer.  And then following our meet and confer, this agreement, he did not file with the courts.  For 5.125 rules, Section (e), he needed to provide the Court with

his objection, opposing my objections, and serving, which he didn't.

He attached it to my response, which is not the right way, first of all.

THE COURT:  Okay.  So, time out.  Let's talk about substantively.

MS. LANCRANJAN:  That's --

THE COURT:  Substance.  Did he misstate what happened in court?

MS. LANCRANJAN:  Yes, your Honor.

THE COURT:  How?

MS. LANCRANJAN:  There are multiple objections that I made on the FOAH, and I provided -- I can provide another copy of my proposed FOAH.  He makes following -- and I can go one by one in his proposed versus my proposed one.

So based on the court transcripts, I'm going by each one of the options that he provided.

Do you -- your Honor, you have the -- my cover letter?

THE COURT:  No, ma'am, so here's the deal: Okay, you submitted three declarations.  They were all single spaced, ten pages long.  That's against the rules of court.  It's in violation of the rules of court.  I didn't review all that because there's no way I have time to review what it -- I -- really amounted to about 60 pages of briefing, and it's not fair to the other side.

So you're just going to have to tell me.

MS. LANCRANJAN:  This is separate.  I submitted to the Court on April 14th.

THE COURT:  Okay.  It's inappropriate.

MS. LANCRANJAN:  Okay.

THE COURT:  You got to just tell me what you want --

MS. LANCRANJAN:  Okay.

THE COURT:  -- because you can't submit reams and reams of paper for me to read.  I don't have time for that.  And it's -- we have very limited time here.  You're entitled five pages of reply, single spaced.  You submitted 30 pages -- or excuse me.

Five pages, double spaced.

You submitted 30 pages, single spaced.  I can't read all that.

MS. LANCRANJAN:  I apologize, your Honor, but I had to go thoroughly through the whole thing, because, again, if I'm making my observation, I want to make sure that I'm not missing anything, so I do apologize.

THE COURT:  All right.  Well, just tell me what you think he got wrong substantively.

MS. LANCRANJAN:  Substantively, in regards to Number 6, was we are -- I'm asking for the Court -- the Court that day provisionally enter proposed findings for the November 5th.  He does not want to -- it does not agree with that.

THE COURT:  I thought this was from March 18th.

MS. LANCRANJAN:  This is March 18, but we

covered a couple things including March -- including November 5th FOAH order.

THE COURT: All right. Mr. Saatjian, do I have your proposed FOAH somewhere?

MR. SAATJIAN: My proposed FOAH is in Petitioner's Exhibit 10, your Honor.

THE COURT: All right.

All right. I have his proposed FOAH in front of me now, Ms. Lancranjan. All right. So it's a two-pager. Tell me where you got -- what he got wrong.

MS. LANCRANJAN: In Number 6.

THE COURT: Okay.

MS. LANCRANJAN: I disagree. Per your court order, you provisionally enter the proposed November 5th, 2024, order as a way to memorialize what has happened.

Well, there are a lot of false representation into November 5th order, and that's why I request to be set aside. And for that, I specifically stated "provisionally enters," which he does not agree. And that was my point of it, your Honor.

THE COURT: All right. First of all, your proposed FOAH, Mr. Saatjian, says November 5th, 2025.

MS. LANCRANJAN: Correct.

MR. SAATJIAN: That's correct, your Honor. So the Court held a hearing on November 5th, 2024. That's when the Court issued the initial support orders. Mr. Blado was counsel of record at the time.

THE COURT: Right. You saying -- you said 2025.

It was November 5th, 2024.

MR. SAATJIAN:  My apologies, that --

THE COURT:  All right.

MR. SAATJIAN:  -- should be 2024.

THE COURT:  All right.  So --

MR. SAATJIAN:  Let's clarify --

THE COURT:  -- correct that.

All right.

MR. SAATJIAN:  So there were competing FOAHs pursuant to court rules related to the November 5th, 2024, hearing.  What the Court did when I submitted my November 5th proposed FOAH, was the Court set on its own motion a hearing to determine which FOAH to enter, and the Court set that hearing on March 18th.

THE COURT:  And I entered yours.

MR. SAATJIAN:  And the Court entered mine.  What she's claiming is that the Court provisionally entered my FOAH.

THE COURT:  All right.

MR. SAATJIAN:  That's not correct.  And, your Honor, she then filed a motion to set that aside, so she's trying to claim that you provisionally entered it so she can, then, seek a "set aside."  That's just not true.

THE COURT:  Okay.  All right.  I do remember I entered -- I entered Mr. Saatjian's proposed FOAH over Mr. Blado's FOAH from November 5th, 2024.

Okay.  What's the next issue?

MS. LANCRANJAN: The next issue was regarding what we actually address in March 18, 2025th [sic].

THE COURT: Okay.

MS. LANCRANJAN: Which we discuss specific things regarding to certain items that Petitioner Attorney provided from his January 8. Those were specific things, were regarding the credit cards, specifically, and couple other items.

Mr. Saatjian states otherwise. I do not agree.

THE COURT: I'm looking at paragraph 8. This is exactly what I ordered, is that you were to provide -- look at his letter, tell him which accounts are in his sole name.

I don't understand what you think he got wrong here.

MS. LANCRANJAN: He specifically states, your Honor, that we are to follow his January 8 meet-and-confer letter, which was not the case. His meet-and-confer letter from January 8 "overencompasses" other things including and specifically -- this is a contentious problem -- is regarding the attorney bills.

And in that March 18, per your order, you specifically stated that attorney-client privilege are to be preserved. I never waived it --

MR. SAATJIAN: Objection. Misstates the Court's orders.

MS. LANCRANJAN: They're --

That's not true.

THE COURT:  No, that -- yeah, it does.  I remember what I said, and what I said, I even got wrong, so I went back and looked at the law.

MR. SAATJIAN:  Thank you, your Honor.

THE COURT:  So I said -- I didn't think that you could waive attorney-client, but I wasn't sure.  But I did go back and look at the law.

If you just completely blow him off and don't provide a written response and provide a response that says, "I am preserving" -- you know, a lot of people just provide a written response that has objections, and then they never follow up with the documents.  But if you don't even file a written response that you preserve your objections, then you've waived your attorney-client.  And that's the law.  I went back and looked at it because I wasn't sure.  So that is the law.

MS. LANCRANJAN:  I disagree, your Honor.

THE COURT:  Well, I just went back and looked at it.  It's pretty clear.  If you don't file a written response where you set forth your objections and if you don't then go back and -- or if you're just late on documents, that's one thing.  But if you never file a written response to begin with, then you've waived your attorney-client.

MS. LANCRANJAN:  Under California Section 950, attorney-client privilege are to be preserved especially for attorney bills, sir, because, otherwise, that's the whole point of maintaining your trust in your attorneys.

THE COURT:  Totally agree.  They're privileged, but you waive it if you just blow him off and don't respond.  That's the problem.

MS. LANCRANJAN:  Those are still kept unless they are specific.  And I can -- I can -- we can go on and verify what are the requests, and I can show you in camera.  But, however, those are not lawyers -- your Honor, with all due respect --

THE COURT:  They're not what?

MS. LANCRANJAN:  They are not waived.

THE COURT:  That's just --

MS. LANCRANJAN:  The attorney-client privilege are --

THE COURT:  I can just --

MS. LANCRANJAN:  -- to be preserved.

THE COURT:  I can tell you right now, I went back and looked -- I went back and did research on this on my own.

MS. LANCRANJAN:  Okay.

THE COURT:  And I've looked at the case law on this:  It is waived.  And it's under --

What is it?  1033?

MR. SAATJIAN:  The CCP --

MS. LANCRANJAN:  Yeah.

THE COURT:  2033.  I know it's 2033 either way.

MR. SAATJIAN:  -131 -- -300(a) I believe, your Honor.

MS. LANCRANJAN:  That's not correct --

THE COURT:  2031?

MS. LANCRANJAN:  -- your Honor.

MR. SAATJIAN:  And it doesn't matter --

(Simultaneous speakers.)

MS. LANCRANJAN:  950 specifically states --

THE REPORTER:  Hold on.  Hold on one second.

(Simultaneous speakers.)

THE REPORTER:  You guys --

(Simultaneous speakers.)

THE REPORTER:  -- one at a time.

MR. SAATJIAN:  Go ahead, your Honor.

THE COURT:  Yes.  Yeah, so I've gone back and looked at it, Ms. Lancranjan.

MS. LANCRANJAN:  Oh, okay --

THE COURT:  I initially thought that that was the one thing they couldn't waive, even if you were late, but CCP has since changed --

MS. LANCRANJAN:  I did not specifically --

THE COURT:  -- from when I was practicing.

MS. LANCRANJAN:  -- state, sir.

Also per the FOAH on that date, on March 18, you specifically state otherwise.  We're not discussing necessarily right now, your Honor --

MR. SAATJIAN:  Your Honor, I'll object --

(Simultaneous speakers.)

MS. LANCRANJAN:  -- law first day.  We're discussing --

THE COURT:  Hold on.  What --

Guys, there's no way the court reporter can take that down. No way. You're reading and talking super fast. Mr. Saatjian is interrupting you. We've got --

There is no way we can make a record out of this. So you need to slow down, Ms. Lancranjan, because you want a court reporter, right? So let's make sure you give her a chance to make a clean record.

Okay. Go ahead. Go ahead.

MS. LANCRANJAN: Thank you. I appreciate it, your Honor.

Again, under California 9- -- Section 950, the attorney-client privilege are not waived unless there is an absolute reason which would show there are, like, major risk of such things. There are no -- there's no such things that's being waived. And I do apologize, but we are going -- what was discussed on that date, which was March 18. And on that date, per the court order and court transcripts, you specifically stated that the attorney-client privilege are waived, and that's the only exception and that yourself has done that for 30 years. So we're just going by what was discussed on that date.

Now, if you are telling that we need to overrule that, that's a different discussion, but at this particular point in time, we're discussing what was discussed on that date, correct?

THE COURT: You're -- yes, you're right.

MS. LANCRANJAN: Thank you. I appreciate it, your Honor.

THE COURT: And I did say that. I did say that. I didn't say that it can't be waived. I said it was my impression. I wasn't making a finding.

MR. SAATJIAN: Thank you.

THE COURT: I was saying that per my memory at the time, I was under the impression. But I didn't say you could or couldn't. I said I was under the impression that attorney-client privilege isn't waived by late or noncompliance, but I wasn't sure. That's what I said. And I've since gone back and looked at it, and my recollection of the CCP was wrong, that if you don't comply at all, then your attorney-client privilege is waived.

MS. LANCRANJAN: Okay. Well, again, we're discussing right now what was discussed on that date, and then we can --

THE COURT: And that's CCP 2023.030(a).

MS. LANCRANJAN: Again, under the Section 950, the attorney bills are not waived unless there is a major -- and I can provide yourself in camera with the attorney bills to advise you if that's needed, but I -- there's no waiver of the rights.

And, again, we're discussing right now what was discussed on that day.

MR. SAATJIAN: Your Honor --

MS. LANCRANJAN: Not the substance of the matter. We're not discussing the substance of the matter of what has -- actually needs to happen.

MR. SAATJIAN:  May I respond to that --

THE COURT:  Sure.

MR. SAATJIAN:  Thank you.

What she's doing is deliberately misrepresenting --

MS. LANCRANJAN:  Well --

MR. SAATJIAN:  -- the exchange --

MS. LANCRANJAN:  Objection, your Honor. She -- he -- hearsay, he's saying.  He doesn't know --

THE COURT:  Overruled.  Let him make his argument, okay?

MR. SAATJIAN:  What she's doing is deliberately misrepresenting the exchange that took place on the record.  Your Honor is correct:  You had told both counsel that it was your impression -- and you even said, "I might be mistaken" -- you had thought that the attorney-client privilege cannot be waived.  And further down in that transcript, Ms. Lancranjan's former attorney, Mr. Blado, corrected your Honor and said, "That's not exactly true."

I've explained this to Ms. Lancranjan several times --

MS. LANCRANJAN:  I object, your Honor --

MR. SAATJIAN:  -- and it doesn't matter what I --

MS. LANCRANJAN:  -- he's not my attorney --

THE COURT:  Objection.

Go ahead.

MR. SAATJIAN:  It doesn't matter if I say it or your Honor says it, she's just not going to comply and doesn't agree with your Honor's order just right now on the record.  So, therefore, what she's done, is she has taken her attorney fee statements, redacted everything, and provided them to me and swears that you cannot waive the attorney-client privilege --

MS. LANCRANJAN:  Per that court transcript, that was the order, your Honor.

THE COURT:  Okay.  So --

MS. LANCRANJAN:  I'm following the court order.

THE COURT:  Just so we -- just so we're clear going forward:  You have waived the attorney-client privilege by nonresponsive -- by being nonresponsive at all to the discovery that was proposed and propounded.  Based on that, you are -- he is entitled to all of your attorney-client bills without redaction, okay?

MR. SAATJIAN:  Thank you, your Honor.

THE COURT:  You -- and trust me, I'm very protective of the attorney-client privilege, okay?  But when you waive it, you waive it.  And for whatever reason, maybe it was your fault; maybe it was your lawyer's fault -- I don't know, but you didn't respond, and when you don't respond, it's waived.  There's nothing I can do about that.

MS. LANCRANJAN:  Okay.

MR. SAATJIAN:  I want to state for the record, your Honor, I'm not asking for all privileged information

or documents; I'm not asking for emails; I'm not asking for communications. I am entitled to those fee statements, because your Honor may recollect that she has made several representations in response to sanctions, orders that nothing she had done was her fault, that her attorneys essentially dropped the ball.

So I -- for a final fee-shifting order, I wanted -- and we're here before you today on attorneys' fees, so I wanted to argue reasonableness of fees, and I was entitled to that information. That's all I was looking for.

THE COURT: All right. Is there any way we can get the information that you need without disclosing a bunch of private communications between them?

MR. SAATJIAN: Well, I'm not sure it's disclosing private communications. I don't even know what they say.

THE COURT: Well, that's what I'm afraid of, right? I'm saying the attorney fee -- the attorney bill may indicate, you know, "We had a discussion regarding X, Y, and Z" --

MS. LANCRANJAN: Exactly, your Honor.

THE COURT: -- she was being this way or that way. She said this and that.

MS. LANCRANJAN: It's --

THE COURT: You --

MS. LANCRANJAN: It's --

THE COURT: Hold on, Ms. Lancranjan, please.

You don't need that necessarily for your fee shifting, right?

I'm just --

MR. SAATJIAN:  Well --

THE COURT:  -- trying to figure out where there's a way if we can get -- where we can not drag her through the mud and embarrass her by what did -- those may or may not say.

MR. SAATJIAN:  I don't believe there would be any risk of embarrassment.  What I am looking for, your Honor, is that she gets -- my client has incurred tens of thousands of dollars in bringing motions before you for discovery, disclosures, and further responses to discovery.

And each time, she stands before you under oath and she says, "I didn't do anything wrong.  I provided all my documents.  My attorneys didn't even inform me that these things were happening, that they needed discovery responses."

So what I need is something in the attorney fee statements that would show that they emailed her the responses, that she didn't, then, comply, because I -- forgive me, your Honor, we are going to go to a trial on this issue, on the financial issues, and there is going to be a final fee-shifting order that we're going to request.

So I was going to show the Court, finally at trial, that her attorneys, who are very reputable

attorneys -- and I hold them in very high regard -- Mr. Blado and Mr. Schulman, would not have dropped the ball on that --

MS. LANCRANJAN: Your Honor, it's hearsay. Objection.

THE COURT: Overruled.

MR. SAATJIAN: And that's --

MS. LANCRANJAN: He --

MR. SAATJIAN: -- essentially the reason why --

THE COURT: He's saying his impression of what your attorneys are --

MS. LANCRANJAN: His impressions are not factual, your Honor.

THE COURT: He didn't say the word. He says that's his impression, okay? It's argument.

MR. SAATJIAN: And so that's the reason why I'm asking for the fee statements as opposed to the actual emails that exist that contain privileged communications --

MS. LANCRANJAN: Your Honor, can I respond?

THE COURT: Yes.

MS. LANCRANJAN: First, I want to go back to our FOAH, and then we can move on to the rest of the items.

THE COURT: The FOAH from 20- --

MS. LANCRANJAN: From March 18, 2025th [sic].

THE COURT: Just so you know, you have 20 minutes left to make all your arguments. If you want to cov- -- keep rehashing this, you can, but --

MR. SAATJIAN: Right.

MS. LANCRANJAN: Your Honor --

THE COURT: -- this Court is in recess at 4:30.

So go ahead.

MS. LANCRANJAN: Well, it's only fair to be able to be allowed to discuss it, is what he's doing is shifting the narrative. He's utilizing the legal system. He's intentionally discriminated, and on the open court, he's described such on April 9th that he doesn't follow court rules to -- with regards to self-represented litigants. He has shown that. He's circumventing court rules to discriminate me. He's using legal system to be able to abuse -- this is clear.

Why wouldn't he ask me if I have the FOAH from March 13th -- March 18th? I have the FOAH from November 5th. I have November from -- the FOAH from January. None of those were served to me, your Honor.

THE COURT: Okay. Ms. Lancranjan, I think your time would be better served if we hit some of the big issues --

MS. LANCRANJAN: I am --

THE COURT: -- but your attorney --

MS. LANCRANJAN: -- your Honor. I'm trying to make a --

THE COURT: Hold on, ma'am --

MS. LANCRANJAN: -- point here.

THE COURT: -- don't speak over me, please. We have a court reporter, okay?

I'm saying, "Do you want to keep rehashing whether or not he mailed you the FOAH?"  Okay, we can spend the next 20 minutes talking about that, but you're going to go out of here without any sort of closure on whether or not you're going to get the fees for your move-away order, whether or not you're going -- all of the other things that are big, huge issues that need to be addressed by this Court.

If you want to continue to spend time talking about whether he mailed you the FOAH or not, we can certainly do that.  This is your motion.

MS. LANCRANJAN:  It goes to the -- show to the Court what his intentions are, your Honor.  And I do appreciate you want to discuss the other items, but it stands for the Court that he is intentionally prejudicing my rights and undermining the integrity of the system.  I do not have the right -- I'm not allowed to have the right process if he's circumventing the system, your Honor.  I'm trying to explain, the same thing with the FOAH, those Court's records from March 18th, you stated on those Court's orders something.  It cannot be altered however he wants to, that was the point of it.

The same thing with serving, there is a reason why the court rules exist, to ensure fairness.  And what I'm trying to say is that I have not received fairness, and I ask your help to -- to help me in this thing, because otherwise there's no point.

I'm trying to explain that there is -- the whole

reason behind all this motions are not due to my fault, and they continue to portray me as I have done intentionally, which is not true.  I have -- I'm going to show to the Court, coming in May 15th, those discovery were done in bad faith.  They did not need those discovery.  And, furthermore, I was not informed.

And for him to ask for attorney bills, it's irrelevant, because it does not point to the settling of this case.  It just prolongs it farther.

What I'm trying to say is, your Honor, that I need your help to make sure that we are fairly handling this case and we are accurately saying what we're saying, not just to follow the Court rules and then I get sanctioned when -- he's obviously circumventing the system.

Furthermore --

THE COURT:  All right, Ms. Lancranjan, the only thing you've been sanctioned for is just deliberate noncompliance with his discovery --

MS. LANCRANJAN:  It was not deliberate --

THE COURT:  -- whether it was you or your lawyers, that's still your side.  Your side was sanctioned for just flat-out noncompliance.  You didn't provide a written response; you didn't produce the documents; they had to come back time and time again --

MS. LANCRANJAN:  I understand, your Honor.

THE COURT:  -- just so we're clear, I say "shall."  I don't have discretion.  "Shall issue

sanctions" --

MS. LANCRANJAN:  That's why --

(Simultaneous speakers.)

THE COURT:  -- we grant -- if there is a motion to compel, it's either granted or denied.  I granted a limited amount of sanctions.  It wasn't even what they were asking for.

MS. LANCRANJAN:  I understand, your Honor.

THE COURT:  And I suggest you move on.

MS. LANCRANJAN:  I appreciate it, your Honor.

However, on the code -- that's why the procedure, 473, exists, to be able to prove otherwise and precisely the reason why I'm bringing all this motion forward, including the fact that he's trying to coerce me into signing his falsely represented FOAH.

Your Honor, those are very serious allegations.  Furthermore, he has sent me email of forged document proving that he has actually served me --

MR. SAATJIAN:  Your Honor --

MS. LANCRANJAN:  -- which is --

MR. SAATJIAN:  -- I have --

MS. LANCRANJAN:  -- false.

MR. SAATJIAN:  -- I grow tired of these accusations.  I've been --

MS. LANCRANJAN:  You --

MR. SAATJIAN:  -- more than patient --

MS. LANCRANJAN:  Your Honor --

(Simultaneous speakers.)

BRETT F TRUITT vs CRISTINA LANCRANJAN,                                    MOTION
23FL000584C, 04/29/2025                    CERTIFIED COPY                  Page 23

THE COURT:  Enough.  Hold on.

MR. SAATJIAN:  -- impeded --

THE COURT:  He's making an objection.

What's your -- the legal objection --

MS. LANCRANJAN:  He's not objecting.  He said he's tired, your Honor.  That's not an objection.

MR. SAATJIAN:  My objection is "lacks foundation."

MS. LANCRANJAN:  That's a different objection.

THE COURT:  All right.  Overruled.

MS. LANCRANJAN:  Okay.

THE COURT:  Go ahead, Ms. Lancranjan --

MS. LANCRANJAN:  I have proved, your Honor, he sends me email of fabricated ser- -- proof of service.  I have -- this is -- this is deception to court, your Honor.  He's an officer of a court.  I need to bring this forward so you understand what's going on here.

THE COURT:  Okay.  Well, just saying he submitted a fabricated proof of service, you're not telling me as to what he's alleging he got served, how you know it's fabricated, and the context of it.

You just make a wild accusation like that without any --

MS. LANCRANJAN:  I can explain.

THE COURT:  -- context for the Court.  I'm not sure what you want me to do with that.

MS. LANCRANJAN:  I want to explain.

MR. SAATJIAN:  Well, she has brought --

MS. LANCRANJAN:  That is why I am bring- --

(Simultaneous speakers.)

MR. SAATJIAN:  -- every hearing, every order --

MS. LANCRANJAN:  -- your Honor --

MR. SAATJIAN:  -- in this case --

MS. LANCRANJAN:  -- I'm being interrupted.

THE COURT:  Time out.  Time out.

Okay.  I've let you go.

Mr. Saatjian.

MR. SAATJIAN:  Just to preserve time, your Honor, she has a motion pending that's going to be heard on May 15th to set aside every order you gave in this case --

MS. LANCRANJAN:  Why is he speaking on my behalf, your Honor?

THE COURT:  Ms. Lancranjan -- Ms. Lancranjan, one at a time, please.

Go ahead.

MR. SAATJIAN:  This appears to be an issue that is better suited for that hearing on May 15th, which is, again, her motion to set aside.

MS. LANCRANJAN:  No, this is regarding the FOAH, your Honor, for today.

THE COURT:  Okay.  No, I'm more interested in substantive --

MS. LANCRANJAN:  I --

THE COURT:  -- substantive problems --

MS. LANCRANJAN:  -- I understand.

THE COURT: -- you have with this FOAH.

So far I've only heard one.

MS. LANCRANJAN: The substance is regarding the core issues, which was for -- fundamental, your Honor.

First of all, if we're going to go through the details, in May 15, yes, and this -- the whole reason behind. But he -- when -- if you go through the court transcripts, you could specifically state that you told me that I need to provide specific documents within that particular meet-and-confer letter. There's a whole debate about how we got there, and there's not enough time right now.

What I want to address is, right now, specific, the court rule, which is I filed the ex parte motions, which he intentionally violated, the petitioner attorney. And, furthermore, he's trying to coerce me, and threatens me in emails --

MR. SAATJIAN: Objection. Lacks foundation.

MS. LANCRANJAN: There is no lack of foundation. I have proof --

THE COURT: Overruled on those grounds.

MS. LANCRANJAN: -- and I have emails, your Honor.

And, furthermore, he sends me in email -- in mail, not email, when he knows. And he has served me electronically. I haven't filed since March of 2024. Proof of service electronically. He sends me in mail a fabricated form, FOAH, stating that he served me, which

is actually a lie, and it's a decision -- deception, your Honor --

MR. SAATJIAN:  I have the email.

MS. LANCRANJAN:  -- this is forgery.

Please do not interrupt.  You're an officer of the court.

THE COURT:  Okay.

MS. LANCRANJAN:  I need, your Honor --

THE COURT:  Hey --

MS. LANCRANJAN:  -- to understand what's going on here.  He is just using the legal abuse.  He is violating court rules intentionally to discriminate me.  He's threatening me, and now he's falsifying documents.  This is deception to the Court beyond of the fact that he has actually falsely made representation in the FOAH, which is exactly to the point of this whole hearing.

Furthermore, for that reason, I'm asking your help to understand what's going on behind this.  He's manipu- --

THE COURT:  What are you asking me to do?

MS. LANCRANJAN:  I'm asking you to understand all of this, sanction him, and help me get funds so I can protect myself.  I'm trying to hire a lawyer.  And then you could see further, I already have an attorney lined up.  Then she could take over the case.  Because I -- I don't know what else to do, your Honor.  I am being discriminated.

THE COURT:  Well, what -- well, I can help you.

What you don't want to do is spend 20 minutes, 30 minutes of precious court time arguing about setting aside FOAHs when you have --

MS. LANCRANJAN:  But it's important, your Honor, because --

THE COURT:  -- when you --

You can just interrupt me, if you like --

MS. LANCRANJAN:  I'm sorry.

THE COURT:  -- you're not going to get what you need, okay.

MS. LANCRANJAN:  I apologize.

THE COURT:  May 15th, you've got a whole motion to set aside all the FOAHs.  I've already told you when there's a represented party and a nonrepresented party, there is custom and practice in the family court to allow them to direct-submit with a copy to you, okay?  And that's what I asked them to do when you were between lawyers.  I'm no longer going to ask them to do that.

Okay, from this point forward, he'll prepare the FOAH for your signature, just like as if you were represented so we won't have this issue going forward. But I'm not going to sanction him for something that you want me to do against him, undo the FOAHs, because he didn't have a signature bar for you.  But it was my request for him to send it directly to me with a copy to you that you could object to, which is the standard practice in family court when one party is represented and one isn't.

I'm going to make an exception to that practice going forward. All of the FOAHs will have to comply with the standard rule of court 5.125. Okay, got it. We won't do that anymore.

All right. Let's talk about your request of fees.

MS. LANCRANJAN: Okay. I want to address and make sure I understand. Thank you for that.

What are we doing in the FOAH for March 18?

THE COURT: I'm looking at Mr. Saatjian's FOAH, his proposed FOAH on Exhibit 10. You brought up one issue, which I've overruled. Is there any other substantive issues you have with Mr. Saatjian's proposed FOAH --

MS. LANCRANJAN: The whole substance of it --

THE COURT: -- from March 18th?

MS. LANCRANJAN: -- yes, your Honor. Again --

THE COURT: Well, no --

MS. LANCRANJAN: Because --

THE COURT: -- ma'am, you got to --

MS. LANCRANJAN: -- per the court transcripts --

THE COURT: Ma'am, you got to tell me in -- specifically.

MS. LANCRANJAN: Specifically --

THE COURT: -- line -- line specific where Mr. Saatjian gets it wrong.

MS. LANCRANJAN: Your Honor, he is

addressing --

THE COURT: Line specific to the FOAH, Exhibit 10, where Mr. Saatjian gets it wrong.

MS. LANCRANJAN: Okay. On his motion -- Number 8.

THE COURT: Line?

MS. LANCRANJAN: Your Honor, I don't -- I don't have his line. I know Number 8. It's Number 8.

THE COURT: You had it -- there it is right there. He's giving you a copy, ma'am.

MS. LANCRANJAN: Thank you.

THE COURT: Paragraph 8, line, what, is wrong?

MS. LANCRANJAN: 14.

THE COURT: Line 14.

MS. LANCRANJAN: The motion to compel further responses and for sanctions.

THE COURT: You got to slow down.

MS. LANCRANJAN: Motion to compel further responses and for sanctions.

THE COURT: Okay.

MS. LANCRANJAN: The Court does not grant -- the Court did not grant that day, per the court transcript, his entire January 8 meet-and-confer letter, which he stated --

THE COURT: All right. Ma'am, it doesn't say I granted a letter, and a letter's not something you can grant. What I said was you need to respond to his January 8th letter, and that's exactly what the FOAH

says.

MS. LANCRANJAN:  He --

THE COURT:  I don't -- I can't grant the letter.

MS. LANCRANJAN:  He does not -- he does not state that.  Within 40 days --

THE COURT:  Ma'am --

MS. LANCRANJAN:  -- the Court --

THE COURT:  -- line 16, "Cristina shall respond in writing to Brett's meet-and-confer letter dated January 8th."  That was the exact order I gave.

MS. LANCRANJAN:  With regards to specific item, Your Honor, you specifically within that letter addressed certain items:  Number 9, Number 10, Number 16, 28, 41, and 43, and nothing else.  And in that specific letter, on that specific order, in that court --

THE COURT:  Okay.  All right.  I can go with you on that.

So "Cristina shall respond in writing to Brett's meet-and-confer letter dated January 8th, 2024," instead of "and" say "as follows."

MS. LANCRANJAN:  Exactly.

THE COURT:  Okay --

MS. LANCRANJAN:  It has to be specific --

THE COURT:  Okay.  Hold on.  Hold on.

MR. SAATJIAN:  Your Honor --

THE COURT:  Your response to that?

MR. SAATJIAN:  -- on March 18th, I had a copy of

that letter, and I informed the Court, as an officer of the court, my January 8th letter only addressed the -- the specific demands for which I filed the motion to compel. So whether you say "respond to the letter" or "respond to those demands in the letter," they're one and the same.

MS. LANCRANJAN: It's not true.

THE COURT: Okay. So there's nothing in the January 18th [sic] letter that was superfluous --

MS. LANCRANJAN: Correct.

THE COURT: -- that I didn't order her to respond?

MR. SAATJIAN: That's absolutely correct. There's nothing that's superfluous. And --

THE COURT: Where's your January 18th letter? Do I have it?

MR. SAATJIAN: You don't have it, but I can pull it up digitally right now if your Honor gives me a moment. And...

MS. LANCRANJAN: And, your Honor --

THE COURT: Hold on.

MS. LANCRANJAN: -- the attorney was fighting back and forth with you on a few occasions on that date, and we have the court transcripts.

Again, I just want to make sure that we're just going to the court transcript of what was addressed and in that exactly order, not specifically to anything else. And, again --

THE COURT:  I think the January 8th letter was just credit cards, though.

MS. LANCRANJAN:  No.  It had --

THE COURT:  They were --

(Simultaneous speakers.)

MS. LANCRANJAN:  -- including --

THE COURT:  Hold on.  Ma'am, ma'am, ma'am.

MR. SAATJIAN:  The --

THE COURT:  Mr. Saatjian --

MR. SAATJIAN:  -- January 8th meet-and-confer letter addressed the six specific categories of demands for which I brought the motion to compel further responses.  They included, as the Court may recall, the foreign bank account statements, the credit card records and credit card applications, the attorney fee statements.  And those were all separate demands.

THE COURT:  So it wasn't like a meet-and-confer letter with 50 things.

MR. SAATJIAN:  It was a meet-and-confer letter with six items --

THE COURT:  Okay.

MR. SAATJIAN:  -- for which I filed the motion to compel further responses.

MS. LANCRANJAN:  And including -- he had incorrect credit cards, your Honor.  This is why we have the court transcripts --

THE COURT:  No, but that's what I asked you to respond to the letter and say, "Wait a minute.  You've

got these credit cards wrong."

That was --

MS. LANCRANJAN:  Right, specifically --

(Simultaneous speakers.)

THE COURT:  -- I remember exactly --

MS. LANCRANJAN:  -- credit cards --

THE COURT:  -- I remember exactly how it went down.  And this captures what I've said.

Look, if you have six things in that letter --

MS. LANCRANJAN:  It does not capture, your Honor.

So that's what I'm proposing is --

MR. SAATJIAN:  It doesn't matter --

MS. LANCRANJAN:  -- because he is --

MR. SAATJIAN:  -- what I say.

MS. LANCRANJAN:  -- very broadly including the attorney fees.  Again, we're going --

Your Honor, I'm just trying to explain that I am trying to reiterate the FOAH as per the court order, not per whatever we want right now.

THE COURT:  Okay.  Anything else you want me to look at in the FOAH you think he got wrong?

MS. LANCRANJAN:  Yes.  But also he omits that the petitioner needs to provide updated income, all income, and he does not provide them.  "Brett shall inform -- about any changes" --

THE COURT:  I couldn't understand what you said. There's no way the court reporter understood that.  You

need to slow down.

MS. LANCRANJAN:  "Brett shall inform Cristina immediately upon any changes in his income."

And he did not include that.

MR. SAATJIAN:  So that was not a court order. That was the Court telling both parties that's a duty imposed by law in the family code to provide the other with updated information.

My client lost his job, and he provided that information to Ms. Lancranjan.  She obtained a job and concealed that she obtained a job --

MS. LANCRANJAN:  That's not true.

MR. SAATJIAN:  -- for two months until I had --

MS. LANCRANJAN:  That's hearsay.  Hearsay.

I've already provided information to the -- to the attorney, your Honor.

MR. SAATJIAN:  This is how it goes --

THE COURT:  All right --

MR. SAATJIAN:  -- and this is why --

THE COURT:  -- anything else, Ms. Lancranjan?

MS. LANCRANJAN:  That's it, your Honor.

THE COURT:  All right.  I'm going to enter the FOAH, Exhibit 10.  And it's not entered by -- the Court finds that the FOAH identified in Mr. Saatjian's exhibit book as Exhibit Number 10 fairly and accurately captures the hearing from March 18th, and that FOAH will be entered.

All right.  Anything else for today?  Do you

want to talk about fees at all, or you just want to argue about FOAHs?

MS. LANCRANJAN:  Your Honor, I would like to address the fees, yes, please --

THE COURT:  Okay.

MS. LANCRANJAN:  -- and all the other items.

THE COURT:  Let's talk about fees.

All right.  So there was $150,000.  That's currently in Mr. Schulman's account.

MR. SAATJIAN:  Yes, your Honor.

THE COURT:  Okay.  First of all, why -- why can't we access that money for her fees?  Those are already -- you already gave that money to her for fees.

MR. SAATJIAN:  Well, the character of that -- those funds, per the agreement we had reached with Mr. Schulman, went unallocated, because we believe there is a significant separate property component.  It was received after --

THE COURT:  Okay.  You also need to slow down.

MR. SAATJIAN:  My apologies.

THE COURT:  All right.  So explain to me, you give him $150,000 for fees?

MR. SAATJIAN:  No, your Honor.  So at the time, in October of 2020- -- I believe this was September or October of 2024 -- my client had this money that came in after separation.  Mr. Schulman was threatening ex partes and showed me -- and she held it.  He filed the ex parte, and he was threatening that he was going to seek freezing

of these funds, that she needed money, and blah, blah, blah.

THE COURT:  Okay.  Time out.

Was this like some sort of bonus or something?

MR. SAATJIAN:  I think they were related to stock options.  So --

(Simultaneous speakers.)

THE COURT:  Okay.  Stock options that were required during the marriage?

MR. SAATJIAN:  I believe so.  So there was a vesting period that needs to be a time-ruled, apportionment on what it was.

THE COURT:  All right.  So there's a disputed -- the fund -- and the characterization of those funds is disputed?

MR. SAATJIAN:  That's correct, your Honor.  And on top of that, the Court knows from our pleadings that we equally divided -- the parties equally divided the net savings, $189,000 each --

THE COURT:  That's a separate issue.

MR. SAATJIAN:  Right.

THE COURT:  I'm more worried about the fees.

MR. SAATJIAN:  So, well --

THE COURT:  Because --

MR. SAATJIAN:  -- I think it's relevant.

THE COURT:  -- you put in your paragraph -- in your response, that the $150,000 was provided to Mr. Schulman for fees.

MR. SAATJIAN: Well, that's what it was.

So Mr. Schulman said, "Peter, I want this money. So she needs money to live, and she needs money for fees."

So what Mr. Schulman provided to me was a stipulation and order. Mr. Schulman provided the stipulation and order that said he's going to transfer $150,000 because she had blown through the 200- already, and she was going to use that money for attorneys' fees and anything to be distributed to her between them. So that was what the stipulation and order said.

We said, "Fine, let's not litigate the case. Here is the money."

So what then happened is --

THE COURT: So remind me what you did, did you maintain a dispute as to the proper characterization of those funds --

MR. SAATJIAN: We did.

THE COURT: -- or was that her money?

MR. SAATJIAN: No. We maintained a dispute. A stipulation and order had said -- she didn't sign it, but we signed it. The stipulation and order had said that the character remains unallocated until a later date.

THE COURT: Okay.

MR. SAATJIAN: And the issue with giving her that money is because, number one, the character is unallocated and had -- still in dispute; and,

Number two, your Honor might know that we have

significant claims at trial for breaches in fiduciary duty, property equalizations, and reimbursements and credits.

THE COURT: Okay. Time out.

So you don't want that money released?

MR. SAATJIAN: Well, we do, but we want to preserve the majority of it because that's really the source from which the Court is going to be able to make equalizations, reimbursements, credits, and potentially penalties and a final fee-shifting order. If that money is released, or a significant portion of it, whatever is released to her will be gone, your Honor, and --

MS. LANCRANJAN: Your Honor, can --

MR. SAATJIAN: -- in order not --

THE COURT: You'll have a chance, I promise.

MR. SAATJIAN: And so just to answer your question -- but I'd like to submit some argument on need, reasonableness, ability to pay, and all the other factors.

THE COURT: All right. Well, listen, I would much, much rather have that money be released to pay for the fees going forward than to have it sitting there in Mr. Schulman's account doing nothing and nobody -- or anybody's benefit.

MR. SAATJIAN: I'd like --

THE COURT: I understand it's sitting there -- assuming it's 50-50, for sake of argument. So you have a pool of $75,000 of her money that you can then

seek reimbursement from.

MR. SAATJIAN: Well, hold on a second. Her attorney had filed a notice of a charging lien for $35,000 --

MS. LANCRANJAN: Your Honor, can I speak?

THE COURT: We'll come back to you, I promise.

MR. SAATJIAN: Her attorney, Mr. Schulman, filed a notice of charging lien against her share of the estate for $35,000. That's something that I don't want to overlook, and I think it's wrong to assume it's 50-50, because, again --

(Simultaneous speakers.)

THE COURT: I just said for sake of argument.

MR. SAATJIAN: For the sake of argument, assume that it was, then -- then what might make sense is to -- if we were going to take that in half, reduce the charging lien amount from her share, her $75,000, release the rest to her, which I think would be 40-, and then my client would get his 75-.

THE COURT: Well, that's assuming that all of her fees should come for her half --

MR. SAATJIAN: Well --

THE COURT: -- which isn't a lot.

MR. SAATJIAN: Well, hold on a second. It is, because under the charging lien, the charging lien creates a lien by the attorney -- well, it creates a notice of a lien by an attorney against any settlement or proceeds to --

MS. LANCRANJAN:  Your Honor --

MR. SAATJIAN:  -- her only.

MS. LANCRANJAN:  -- can we just, please --

THE COURT:  Okay.  Hold on.

MS. LANCRANJAN:  I have a fair share --

THE COURT:  Time out.

Go ahead.

MS. LANCRANJAN:  This is not fair.

THE COURT:  Okay.  You need to expand.

MS. LANCRANJAN:  It's not fair.  Nobody is asking me if I authorize that stipulation or that fee to be released.  Those are marital assets, your Honor.  I have never authorized, asked, stipulated anything.  They're intentionally, fraudulently doing this to create the whole situation, and I have never authorized such things.

Why is somebody else doing that with my -- this is actually a violation of ATROS, your Honor.  Those are my marital assets that the petitioner authorized without my approval.  Why did he send those funds to someone?  Why?  Without my approval.  I never authorized.  I never signed, your Honor.

THE COURT:  Here's the deal:  When you hire an attorney, and you're --

Ma'am.

MS. LANCRANJAN:  I understand, your Honor --

THE COURT:  Ma'am, ma'am.

You hire an attorney and your attorney

negotiates with him on your behalf; you're entitled to rely on them.

MS. LANCRANJAN:  I understand.  I understand.

Can I explain?

THE COURT:  Go ahead --

MS. LANCRANJAN:  I understand the attorney negotiated it.  However, they should not have transferred those funds without the proper signature, your Honor. You know the rules.

THE COURT:  I don't think anybody's transferred those funds --

MS. LANCRANJAN:  They did.

THE COURT:  -- they're still sitting --

MS. LANCRANJAN:  They sent the funds to Mr. Schulman, and then they prop -- they're falsely representing that I received the funds in all their declarations, which I never did.  I never authorized.  I never signed.  This is -- the problem is, your Honor, this is fraudulent activity.  I am trying to understand why would somebody transfer funds without my authorization to somebody else.  He's hold- -- this is why I'm going to the point of freezing.

Your Honor, you freeze -- froze those accounts back in June when we came without a presentation.

MR. SAATJIAN:  That is not true, your Honor.

MS. LANCRANJAN:  Yes, it is true.

You authorized -- you froze those accounts.  And then when I hired Mr. Schulman, I mentioned that those

accounts, per your order, that June 13th, you froze those accounts. He took over -- Petitioner, he took -- first, he took 190,000 from our marital assets in January 19 without my authorization, without telling me.

Then he left --

THE COURT: Well, did he give you 190,000?

MS. LANCRANJAN: He left 190-. So toward -- you know, we split, yes. But he took before he left.

THE COURT: Okay --

MS. LANCRANJAN: Second of all --

I'm talking, please.

THE COURT: Wait. You just can't just breeze over something like that.

MS. LANCRANJAN: I'm not breezing out. I'm --

THE COURT: You --

Okay. Time out.

MS. LANCRANJAN: I'm -- I'm itemizing that --

THE COURT: Time out. Time out.

He split $190,000 for himself, 190,000 for you --

MS. LANCRANJAN: Then he --

THE COURT: -- right?

MS. LANCRANJAN: -- got higher, received over 300- --

THE COURT: Yes or no.

MS. LANCRANJAN: Yes, your Honor. That was January 19, 2023, when he did not work and would sneak all the expenditures until April 2023rd [sic] when he got

hired, received over 350,000 that year plus another 350,000 a year after.  He had other income in addition to the 190,000.  Plus marital stocks got paid out in 2023 in the amount of over 500,000 --

THE COURT:  What are you --

MS. LANCRANJAN:  So he's holding --

THE COURT:  Ma'am, turn around and look at the clock.

MS. LANCRANJAN:  I know, your Honor, but I'm trying to explain.

THE COURT:  It is now 4:27.

MS. LANCRANJAN:  But, your Honor --

THE COURT:  You've spent 20 minutes arguing about FOAHs and now 5 minutes arguing about fees, and now I'm giving you ample opportunity to give me your best argument about fees, and you want to argue about what happened three years ago.

MS. LANCRANJAN:  I'm trying to explain that he authorized --

THE COURT:  I'm trying to help you.

MS. LANCRANJAN:  I understand, and I appreciate it, your Honor.

But I'm trying to make a point here that they are manipulating the system and deliberately abusing it. And then they're trying to turn it on me.  I have never authorized -- those are marital assets.  I am requesting your Honor to freeze all the accounts.  I've been asking the petitioner --

THE COURT:  Hey, wait.  Slow down.

MS. LANCRANJAN:  I've been asking the petitioner, trying to provide accounting.  They have refused.

MR. SAATJIAN:  Objection.

MS. LANCRANJAN:  I have no knowledge of what's going on with those accounts.

THE COURT:  What accounts?

MS. LANCRANJAN:  The checking and the saving accounts with over 7,000 in the marital assets that he took since 2023, your Honor.  He has over 700,000, marital assets, that he took since 2023 in addition --

MR. SAATJIAN:  Objection.

MS. LANCRANJAN:  -- to over 600,000 that he received on yearly salary plus bonus.

THE COURT:  Mr. Saatjian.

MS. LANCRANJAN:  And then --

MR. SAATJIAN:  Your Honor, we're here for an attorney fee award.  I demonstrate --

(Simultaneous speakers.)

MS. LANCRANJAN:  Which is why I'm asking, because he's holding the money.

(Simultaneous speakers.)

MR. SAATJIAN:  -- I really would like --

THE COURT:  Ma'am, you -- your request is for attorneys' fees --

MR. SAATJIAN:  Yes.

THE COURT:  -- okay?  Attorneys' fees and to set

aside a FOAH.  FOAH and sanctions.  That's -- now you're throwing in a 700,000-dollar freezing of an account --

MR. SAATJIAN:  Right.

THE COURT:  -- which no one has -- you've been in here a lot.  No one's brought up that he's got $700,000 of marital assets, liquid, sitting somewhere that needs to be frozen, and you just can't just come and just wave a wand and start making that kind of argument without any sort of backup.

Mr. Saatjian, does he have $700,000, liquid, in the marital accounts --

MR. SAATJIAN:  No, your Honor --

THE COURT:  -- somewhere?

MR. SAATJIAN:  -- what she is trying to do is say the 200- -- and the 190- that he kept, she's trying to group that in with additional income that he earned after separation plus the awards -- the stock awards that, again, the character remains disputed.

THE COURT:  Okay.  Are there any marital assets that he's right now accessing?

MR. SAATJIAN:  His share of his savings, and then there's the 150- that still remains disputed, your Honor.  And I want to address --

THE COURT:  Well, wait a minute.

All right.  Ma'am, you never brought up a request.

MS. LANCRANJAN:  I did, Your Honor --

(Simultaneous speakers.)

MS. LANCRANJAN:  -- I did last year, your Honor.

THE COURT:  Now --

MS. LANCRANJAN:  Can I just --

THE COURT:  Okay.  Hold on.

MS. LANCRANJAN:  I did.  Last year when I submitted my request for --

THE COURT:  Ma'am, stop.

Mr. Saatjian, so is there -- is there marital assets right now that your client's accessing?

MS. LANCRANJAN:  Yes.

MR. SAATJIAN:  He has his -- well, so when they split 190- back in January 2023 --

THE COURT:  190-, 190-.

MR. SAATJIAN:  190-, 190-.

So then starting -- he moved out two months later in -- okay?  And from that point forward, he paid her rent, her car, the tax bill, et cetera, et cetera --

MS. LANCRANJAN:  Your Honor --

THE COURT:  Right.

MR. SAATJIAN:  -- okay?

THE COURT:  Was there still a savings account somewhere, a marital savings account somewhere that he was accessing?

MS. LANCRANJAN:  Yes.

MR. SAATJIAN:  No, it's his -- well, he has his share of the 190- plus --

THE COURT:  Is 190- --

MR. SAATJIAN:  -- the income that he earned,

right?  And then there was the awards that remain
disputed --

MS. LANCRANJAN:  I filed a request --

THE COURT:  Hold on.

MR. SAATJIAN:  That 150- isn't --

MS. LANCRANJAN:  He's lying.

MR. SAATJIAN:  I really need to --

(Court reporter interruption.)

THE COURT:  We can't do it.  We can't do it.
Ms. Lancranjan, we can't do it if you continue to talk
over him.  I mean, you -- this poor court reporter can
only take down one person at a time.

MR. SAATJIAN:  Okay.

THE COURT:  I --

MS. LANCRANJAN:  I'm objecting, your Honor.
He's lying.

THE COURT:  Well, you need to object and just
state that.  You don't need to make whispering
mum- -- murmurings and all these things under your
breath.  All that does is totally mess up the record.

And now it's 4:30, and we have wasted all our
time talking about FOAHs, and we don't have any time to
talk about what's important.

So the Court will be in recess until we come
back.  We're back here on May 15th.

MR. SAATJIAN:  We're back here on May 12th, your
Honor.

THE COURT:  All right.  We're back here on

May 12th. But, hopefully, you can use your time better on May 12th, because I can't give you all day. I can give you an hour is what I gave you today, and we talked 45 minutes about FOAHs.

All right. We'll be back. All the matters from today are continued to May 12th.

Hold on a minute, guys. May 12th is the move-away?

MS. LANCRANJAN: Yes.

MR. SAATJIAN: May 12th is the move-away.

THE COURT: All right. When is -- when is her request on the FOAH? That's May 15th?

MR. SAATJIAN: May 15.

THE COURT: All right. So these issues are continued to May 15th.

MR. SAATJIAN: Thank you, your Honor.

THE COURT: Ms. Lancranjan, I really wanted to get to the substantive today because you have a move-away request, all right, and you needed fees for that move-away request --

MS. LANCRANJAN: Your Honor --

THE COURT: -- and I implored you -- ma'am, I implored you and begged you to get to the point with respect to the fee so I can maybe get you some fees in advance of your move-away request so you could retain an attorney.

MS. LANCRANJAN: I --

THE COURT: And as much as I tried to instruct

BRETT F TRUITT vs CRISTINA LANCRANJAN,
23FL000584C, 04/29/2025                    CERTIFIED COPY

MOTION
Page 49

you and guide you and tell you you needed to guard your time and then make sure that you use your time wisely because we're limited and you had a very important issue to discuss, you chose to waive that and discuss about whether or not he mailed you the FOAH.

Okay, so, hopefully, that's a lesson that's learned for you, because I can't just start granting fees or denying fees, stop hearing from the parties, and I can't keep the Court overtime, and it's 4:30.

So we'll see you folks back here on May 12th and May 15th.  That's the order of the Court.

(Proceedings adjourned at 4:32 p.m.)

BRETT F TRUITT vs CRISTINA LANCRANJAN,                                    MOTION
23FL000584C, 04/29/2025              CERTIFIED COPY                        Page 50

STATE OF CALIFORNIA      )
                         )          SS:
COUNTY OF SAN DIEGO      )
_____  )

          I, NATALIE M. KHAMIS, CSR NO. 14260, COURT-APPROVED
COURT REPORTER FOR THE SUPERIOR COURT OF THE STATE OF
CALIFORNIA, IN AND FOR THE COUNTY OF SAN DIEGO DO HEREBY
CERTIFY:
          THAT AS SUCH REPORTER, I REPORTED IN MACHINE
SHORTHAND THE PROCEEDINGS HELD IN THE FOREGOING CASE;
          THAT MY NOTES WERE TRANSCRIBED INTO TYPEWRITING
UNDER MY DIRECTION AND THE PROCEEDINGS HELD ON APRIL 29, 2025,
CONTAINED WITHIN PAGES 1 THROUGH 50, ARE A TRUE AND CORRECT
TRANSCRIPTION.

          DATED MAY 1, 2025, AT SAN DIEGO, CALIFORNIA.


                                    _____
                                    NATALIE M. KHAMIS, CSR NO. 14260
                                    COURT-APPROVED COURT REPORTER
                                    SAN DIEGO SUPERIOR COURT

## $

**$150,000** 35:8,22 36:27 37:8
**$189,000** 36:19
**$190,000** 42:19
**$35,000** 39:4,9
**$700,000** 45:6,10
**$75,000** 38:28 39:17

## (

**(e)** 3:28

## -

**-131** 10:26
**-300(a)** 10:26

## 1

**10** 6:6 28:11 29:3 30:13 34:23,25
**1033** 10:22
**12th** 47:26 48:1,2,6,7,10 49:10
**13th** 19:15 42:1
**14** 29:13,14
**14th** 5:2
**15** 25:6 48:13
**150-** 45:22 47:5
**15th** 21:4 24:12,20 27:12 47:25 48:12,15 49:11
**16** 30:8,13
**18** 5:28 8:2,22 11:21 12:17 18:25 28:9
**18th** 3:4 5:27 7:14 19:15 20:20 28:16 30:28 31:9,15 34:26
**19** 42:3,27
**190,000** 42:3,6,19 43:3
**190-** 42:7 45:15 46:12,13,14,26, 27

## 2

**20** 18:26 20:3 27:1 43:13
**20-** 18:24
**200-** 37:8 45:15
**2020-** 35:24
**2023** 42:27 43:3 44:11,12 46:12
**2023.030(a)** 13:17
**2023rd** 42:28
**2024** 6:15,25 7:1,4,11,27 25:26 30:19 35:25
**2025** 2:1 6:22,28
**2025th** 8:2 18:25
**2031** 11:1
**2033** 10:25
**28** 30:13
**29** 2:1

## 3

**30** 5:12,14 12:20 27:1
**300-** 42:24
**350,000** 43:1,2
**3:46** 2:1

## 4

**40** 30:5
**40-** 39:18
**41** 30:13
**43** 30:14
**45** 48:4
**473** 22:12
**4:27** 43:11
**4:30** 19:3 47:21 49:9
**4:32** 49:12

## 5

**5** 43:14

## 5.125

**5.125** 3:16,27 28:3
**50** 32:18
**50-50** 38:27 39:10
**500,000** 43:4
**5th** 5:25 6:2,14,17,22,25 7:1,10, 12,27 19:16

## 6

**6** 5:23 6:11
**60** 4:26
**600,000** 44:14

## 7

**7,000** 44:10
**700,000** 44:11
**700,000-dollar** 45:2
**75-** 39:19

## 8

**8** 8:6,10,17,19 29:5,8,12,23
**8th** 29:28 30:10,19 31:2 32:1,10

## 9

**9** 30:13
**9-** 12:11
**950** 9:25 11:5 12:11 13:18
**9th** 19:9

## A

**ability** 38:18
**absolute** 12:13
**absolutely** 31:13
**abuse** 19:13 26:11
**abusing** 43:24
**access** 35:12
**accessing** 45:20 46:9,23

**account** 32:14 35:9 38:23 45:2 46:21,22

**accounting** 44:3

**accounts** 8:12 41:23,27 42:1,2 43:27 44:7,8,10 45:11

**accurately** 21:12 34:25

**accusation** 23:22

**accusations** 22:24

**activity** 41:19

**actual** 18:17

**addition** 43:2 44:12

**additional** 45:16

**address** 8:2 25:13 28:7 35:4 45:23

**addressed** 20:8 30:12 31:2,26 32:11

**addressing** 29:1

**adjourned** 49:12

**advance** 48:25

**advise** 13:21

**afraid** 16:18

**afternoon** 2:15

**agree** 3:25 5:26 6:19 8:9 10:1 15:3

**agreement** 3:27 35:15

**ahead** 11:11 12:8 14:28 19:4 23:12 24:18 40:7 41:5

**allegations** 22:16

**alleging** 23:20

**allowed** 19:6 20:17

**altered** 20:21

**amount** 22:6 39:17 43:4

**amounted** 4:26

**ample** 43:15

**anybody's** 38:24 41:10

**anymore** 28:4

**apologies** 7:2 35:20

**apologize** 5:16,19 12:15 27:11

**appears** 24:19

**applications** 32:15

**apportionment** 36:12

**approval** 40:20,21

**April** 2:1 5:2 19:9 42:28

**argue** 16:9 35:1 43:16

**arguing** 27:2 43:13,14

**argument** 14:11 18:15 38:17,27 39:13,14 43:16 45:8

**arguments** 18:27

**assets** 40:12,19 42:3 43:26 44:10,12 45:6,19 46:9

**assume** 39:10,14

**assuming** 38:27 39:20

**ATROS** 40:18

**attached** 4:3

**attorney** 8:6,21 9:27 13:19,21 14:19,26 15:5 16:19 17:20 19:22 21:7 25:15 26:24 31:22 32:15 33:17 34:16 39:3,7,26,27 40:24, 28 41:6 44:19 48:26

**attorney-client** 8:23 9:6,14,24, 26 10:12 12:12,19 13:8,12 14:17 15:7,13,17,20

**attorneys** 9:28 16:6 17:17,28 18:1,11

**attorneys'** 16:8 37:9 44:26,28

**authorization** 41:21 42:4

**authorize** 40:11

**authorized** 40:13,15,19,21 41:17,27 43:19,26

**award** 44:19

**awards** 45:17 47:1

**B**

**back** 2:23 9:3,7,15,18,21 10:17 11:12 13:10 18:22 21:25 31:23 39:6 41:24 46:12 47:25,26,28 48:5 49:10

**backup** 45:9

**bad** 21:5

**ball** 16:6 18:3

**bank** 32:14

**bar** 27:24

**based** 4:17 15:16

**begged** 48:23

**begin** 9:23

**behalf** 24:15 41:1

**benefit** 38:24

**big** 19:19 20:7

**bill** 16:19 46:17

**bills** 8:21 9:27 13:19,21 15:17 21:7

**Blado** 6:27 14:19 18:2

**Blado's** 7:27

**blah** 36:1,2

**blow** 9:8 10:2

**blown** 37:8

**bonus** 36:4 44:15

**book** 34:25

**breaches** 38:1

**breath** 47:20

**breeze** 42:12

**breezing** 42:14

**Brett** 2:12 33:25 34:2

**Brett's** 30:9,18

**briefing** 4:27

**bring** 23:16

**bring-** 24:1

**bringing** 17:12 22:13

**broadly** 33:16

**brought** 23:28 28:11 32:12 45:5, 25

**bunch** 16:14

**busy** 2:26

**C**

**California** 2:1 9:25 12:11

**camera** 10:7 13:20

BRETT F TRUITT vs CRISTINA LANCRANJAN,
23FL000584C, 04/29/2025

**CERTIFIED COPY**

**MOTION**
Index: capture..discovery

capture 33:10

captures 33:8 34:25

car 46:17

card 32:14,15

cards 8:7 32:2,25 33:1,6

care 3:18

case 8:18 10:20 21:9,12 24:5,13 26:25 37:12

categories 32:11

CCP 10:23 11:17 13:11,17

cetera 46:17

chance 12:7 38:15

changed 11:17

character 35:14 37:23,26 45:18

characterization 36:14 37:16

charging 39:3,8,17,25

checking 44:9

children 2:28

chose 49:4

circumventing 19:11 20:18 21:14

claim 7:22

claiming 7:17

claims 38:1

clarify 7:6

clean 12:7

clear 9:19 15:12 19:13 21:27

client 17:11 34:9 35:25 39:19

client's 46:9

clock 43:8

closure 20:4

code 22:11 34:7

coerce 22:14 25:16

communications 16:2,14,16 18:19

compel 22:5 29:15,18 31:4 32:12,23

competing 7:9

completely 9:8

comply 13:12 15:2 17:22 28:3

component 35:17

concealed 34:11

confer 3:25,26

contentious 8:21

context 23:21,25

continue 2:21 20:9 21:2 47:10

continued 3:15 48:6,15

copy 4:14 27:16,25 29:10 30:28

core 25:4

correct 6:23,24 7:7,20 10:28 12:25 14:14 31:10,13 36:16

corrected 14:19

counsel 6:27 14:15

couple 6:1 8:8

court 2:3,6,14,18,19,20 3:10,16, 17,21,28 4:5,8,9,11,17,21,24 5:2, 3,5,8,20,23,24,27 6:3,7,12,13,21, 25,26,28 7:3,5,7,10,11,12,14,15, 16,17,19,25 8:3,10 9:1,5,18 10:1, 9,11,14,16,20,25 11:1,12,15,19, 28 12:1,6,17,18,26 13:1,5,17 14:2,10,27 15:8,10,11,12,19 16:12,18,23,26,28 17:5,27 18:6, 10,14,21,24,26 19:3,8,10,11,18, 22,25,27,28 20:8,13,15,24 21:4, 13,17,21,27 22:4,9 23:1,3,10,12, 15,16,18,25 24:7,16,24,27 25:1,7, 14,21 26:6,7,9,12,14,20,28 27:2, 6,9,12,15,27 28:3,10,16,18,20,21, 23,26 29:2,6,9,12,14,17,20,21,22, 25 30:3,6,7,8,15,16,22,25,27 31:1,2,8,11,15,21,24,26 32:1,4,7, 9,13,17,21,26,27 33:5,7,19,21,27, 28 34:5,6,18,20,22,23 35:5,7,11, 19,21 36:3,8,13,17,20,22,24,26 37:15,19,24 38:4,8,15,20,26 39:6, 13,20,23 40:4,6,9,23,27 41:5,10, 13 42:6,9,12,15,18,22,25 43:5,7, 11,13,20 44:1,8,16,25,28 45:4,13, 19,24 46:2,4,7,13,19,21,27 47:4, 8,9,11,14,17,24,28 48:11,14,17, 22,28 49:9,11

Court's 8:25 20:20,21

courts 3:27

cov- 18:28

cover 4:19

covered 6:1

create 40:14

creates 39:26

credit 8:7 32:2,14,15,25 33:1,6

credits 38:3,9

Cristina 2:12 30:8,18 34:2

custom 27:15

**D**

date 11:21 12:16,17,21,25 13:15 31:23 37:23

dated 30:9,19

day 5:24 11:26 13:24 29:22 48:2

days 30:5

deal 4:21 40:23

debate 25:11

deception 23:15 26:1,14

decision 26:1

declarations 4:22 41:17

deliberate 21:18,20

deliberately 14:4,12 43:24

demands 31:3,5 32:11,16

demonstrate 44:19

denied 22:5

denying 49:8

details 25:6

determine 7:13

Diego 2:1

digitally 31:18

direct-submit 27:16

directly 27:25

disagree 6:13 9:17

disclosing 16:13,16

disclosures 17:13

discovery 15:15 17:13,14,19

BRETT F TRUITT vs CRISTINA LANCRANJAN,
23FL000584C, 04/29/2025

**CERTIFIED COPY**

**MOTION**
Index: discretion..freeze

21:4,6,19

discretion 21:28

discriminate 19:12 26:12

discriminated 19:8 26:27

discuss 8:4 19:6 20:14 49:4

discussed 12:16,21,25 13:15,24

discussing 11:22,27 12:24 13:15,23,27

discussion 2:5 12:23 16:20

dispute 37:16,20,27

disputed 36:14,15 45:18,22 47:2

distributed 37:10

divided 36:18

document 22:17

documents 9:12,22 16:1 17:17 21:25 25:9 26:13

dollars 17:12

double 5:13

drag 17:6

dropped 16:6 18:3

due 10:8 21:1

duly 2:13

duty 34:6 38:2

**E**

earned 45:16 46:28

electronically 25:26,27

email 22:17 23:14 25:24,25 26:3

emailed 17:21

emails 16:1 18:18 25:17,22

embarrass 17:7

embarrassment 17:10

ensure 20:24

enter 5:24 6:14 7:13 34:22

entered 7:15,16,17,22,26 34:23,27

enters 6:19

entire 29:23

entitled 5:11 15:16 16:2,10 41:1

equalizations 38:2,9

equally 36:18

essentially 16:6 18:9

estate 39:8

exact 30:10

exception 12:20 28:1

exchange 14:7,13

excuse 5:12

exhibit 6:6 28:11 29:3 34:23,24, 25

exist 18:18 20:24

exists 22:12

expand 40:9

expenditures 42:28

explain 20:19,28 23:24,27 33:18 35:21 41:4 43:10,18

explained 14:21

**F**

fabricated 23:14,19,21 25:28

fact 22:14 26:14

factors 38:19

factual 18:13

fair 2:25 4:27 19:5 40:5,8,10

fairly 21:11 34:25

fairness 20:24,25

faith 21:5

false 3:23 6:16 22:22

falsely 22:15 26:15 41:15

falsifying 26:13

family 2:19 27:15,27 34:7

farther 21:9

fast 12:3

fault 15:22,23 16:5 21:1

fee 15:5 16:2,19 17:1,20 18:17 32:15 40:11 44:19 48:24

fee-shifting 16:7 17:25 38:10

fees 16:9 20:5 28:6 33:17 35:1,4, 7,12,13,22 36:22,28 37:4,9 38:22 39:21 43:14,16 44:26,28 48:19,24 49:7,8

fiduciary 38:1

fighting 3:1 31:22

figure 17:5

file 3:27 9:13,19,22

filed 2:22,23 7:21 25:14,26 31:3 32:22 35:27 39:3,7 47:3

filing 2:21

final 16:7 17:25 38:10

finally 17:27

financial 17:24

finding 13:3

findings 5:24

finds 34:24

Fine 37:12

flat-out 21:23

FOAH 3:4,5,6,7,11,24 4:13,14 6:2,4,5,8,22 7:12,13,18,26,27 11:21 18:23,24 19:14,15,16 20:2, 10,20 22:15 24:22 25:1,28 26:15 27:20 28:9,10,11,14 29:2,28 33:19,22 34:23,24,26 45:1 48:12 49:5

FOAHS 7:9 27:2,13,23 28:2 35:2 43:14 47:22 48:4

folks 49:10

follow 3:15 8:17 9:12 19:9 21:13

foreign 32:14

forged 22:17

forgery 26:4

forgive 17:23

form 25:28

forward 15:13 22:14 23:17 27:19,21 28:2 38:22 46:16

foundation 23:8 25:18,19

fraudulent 41:19

fraudulently 40:14

freeze 41:23 43:27

BRETT F TRUITT vs CRISTINA LANCRANJAN,
23FL000584C, 04/29/2025

**CERTIFIED COPY**

**MOTION**
Index: freezing..June

freezing 35:28 41:22 45:2

front 6:8

froze 41:23,27 42:1

frozen 45:7

fund 36:14

fundamental 25:4

funds 26:22 35:15 36:1,15 37:17
40:20 41:8,11,14,16,20

---

**G**

gave 24:12 30:10 35:13 48:3

give 12:7 35:22 42:6 43:15 48:2,3

giving 29:10 37:25 43:15

good 2:15

grant 22:4 29:21,22,27 30:3

granted 22:5 29:26

granting 49:7

grounds 25:21

group 45:16

grow 22:23

guard 49:1

guide 49:1

guys 2:20 3:1 11:8 12:1 48:7

---

**H**

half 39:16,21

handling 21:11

hands 2:7

happen 13:28

happened 4:9 6:15 37:14 43:17

happening 17:18

he'll 27:19

heard 24:11 25:2

hearing 6:25 7:11,13,14 24:3,20
26:16 34:26 49:8

hearsay 14:9 18:4 34:14

held 2:5 6:25 35:27

Hey 26:9 44:1

high 18:1

higher 42:23

hire 26:23 40:23,28

hired 41:28 43:1

hit 19:19

hold 11:6,28 16:28 18:1 19:25
23:1 30:25 31:21 32:7 39:2,24
40:4 46:4 47:4 48:7

hold- 41:21

holding 43:6 44:22

Honor 2:10,11,15 3:9 4:10,19
5:16 6:6,20,24 7:21 8:17 9:4,17
10:8,27 11:2,11,23,24 12:10,28
13:25 14:8,14,19,23 15:2,9,18,28
16:3,22 17:11,23 18:4,13,20 19:2,
17,23 20:13,19 21:10,26 22:8,10,
16,19,27 23:6,13,16 24:4,11,15,
23 25:4,23 26:2,8,26 27:4 28:17,
28 29:7 30:12,26 31:18,20 32:25
33:11,18 34:16,21 35:3,10,23
36:16 37:28 38:12,13 39:5 40:1,
12,18,22,26 41:8,18,23,25 42:26
43:9,12,22,27 44:11,18 45:12,23,
27 46:1,18 47:15,27 48:16,21

Honor's 15:3

hour 48:3

huge 20:7

---

**I**

identified 34:24

immediately 34:3

impeded 23:2

implored 48:22,23

important 27:4 47:23 49:3

imposed 34:7

impression 13:3,6,7 14:15
18:10,15

impressions 18:12

inappropriate 5:3

include 34:4

included 32:13

including 6:1 8:20 22:14 32:6,24
33:16

income 33:24,25 34:3 43:2 45:16
46:28

incorrect 32:25

incurred 17:11

inform 17:17 33:26 34:2

information 15:28 16:10,13
34:8,10,15

informed 21:6 31:1

initial 6:26

initially 11:15

instruct 48:28

integrity 20:16

intentionally 19:8 20:15 21:3
25:15 26:12 40:14

intentions 20:13

interested 24:24

interrupt 26:5 27:7

interrupted 24:6

interrupting 12:3

interruption 47:8

irrelevant 21:8

issue 7:28 8:1 17:24 21:28 24:19
27:21 28:12 36:20 37:25 49:3

issued 6:26

issues 3:11,14 17:24 19:20 20:7
25:4 28:13 48:14

item 30:11

itemizing 42:17

items 8:5,8 18:23 20:14 30:13
32:20 35:6

---

**J**

January 8:6,17,19 19:16 29:23,
28 30:10,19 31:2,9,15 32:1,10
42:3,27 46:12

job 34:9,10,11

June 41:24 42:1

## K

kind 45:8

knowledge 44:6

## L

lack 25:19

lacks 23:7 25:18

Lancranjan 2:4,11,12,20 3:9,13, 20,23 4:7,10,12 5:1,4,7,16,22,28 6:9,11,13,23 8:1,4,16,27 9:17,25 10:4,10,12,15,19,24,28 11:2,5,13, 14,18,20,26 12:5,9,27 13:14,18, 26 14:6,8,21,23,26 15:8,11,26 16:22,25,27,28 18:4,8,12,20,22, 25 19:2,5,18,21,23,26 20:12 21:17,20,26 22:2,8,10,20,22,25, 27 23:5,9,11,12,13,24,27 24:1,4, 6,14,16,22,26,28 25:3,19,22 26:4, 8,10,21 27:4,8,11 28:7,15,17,19, 21,25,28 29:4,7,11,13,15,18,21 30:2,4,7,11,21,23 31:7,10,20,22 32:3,6,24 33:3,6,10,14,16,23 34:2,10,12,14,20,21 35:3,6 38:13 39:5 40:1,3,5,8,10,26 41:3,6,12, 14,26 42:7,10,14,17,21,23,26 43:6,9,12,18,21 44:2,6,9,14,17,21 45:27 46:1,3,5,10,18,24 47:3,6, 10,15 48:9,17,21,27

Lancranjan's 14:18

late 9:21 11:16 13:8

law 9:3,7,15,16 10:20 11:26 34:7

lawyer 26:23

lawyer's 15:23

lawyers 10:7 21:22 27:18

learned 49:7

left 18:27 42:5,7,8

legal 19:7,12 23:4 26:11

lesson 49:6

letter 4:20 8:12,18,19 25:10 29:23,26,28 30:3,9,12,14,19 31:1, 2,4,5,9,15 32:1,11,18,19,28 33:9

letter's 29:26

lie 26:1

lien 39:3,8,17,25,26,27

limited 5:10 22:6 49:3

lined 26:24

liquid 45:6,10

listen 38:20

litigants 19:11

litigate 37:12

live 37:3

long 4:23

longer 27:18

looked 9:3,15,18 10:17,20 11:13 13:10

lost 34:9

lot 6:16 9:10 39:23 45:5

lying 47:6,16

## M

macro 2:18

made 3:17 4:13 16:4 26:15

mail 25:25,27

mailed 20:2,10 49:5

maintain 37:16

maintained 37:20

maintaining 9:28

major 12:14 13:20

majority 38:7

make 5:18 12:4,6,7 14:10 18:27 19:24 21:11 23:22 28:1,8 31:25 38:8 39:15 43:23 47:18 49:2

makes 4:14

making 5:18 13:3 23:3 45:8

manipu- 26:19

manipulating 43:24

March 3:4 5:27,28 6:1 7:14 8:2, 22 11:21 12:17 18:25 19:15 20:20 25:26 28:9,16 30:28 34:26

marital 40:12,19 42:3 43:3,26 44:10,12 45:6,11,19 46:8,22

marriage 36:9

matter 11:3 13:27 14:24 15:1 33:13

matters 48:5

means 2:20

meet 3:25,26

meet-and-confer 8:18,19 25:10 29:23 30:9,19 32:10,17,19

memorialize 6:15

memory 13:5

mentioned 41:28

mess 47:20

mine 7:16

minute 32:28 45:24 48:7

minutes 18:27 20:3 27:1 43:13, 14 48:4

misrepresenting 14:5,13

missing 5:19

misstate 3:21 4:8

Misstates 8:25

mistaken 14:16

moment 31:19

money 3:2 35:12,13,25 36:1 37:2,3,9,13,19,26 38:5,10,21,28 44:22

months 34:13 46:15

motion 7:13,21 20:11 22:4,13 24:11,21 27:12 29:5,15,18 31:3 32:12,22

motions 17:12 21:1 25:14

move 18:23 22:9

move-away 20:6 48:8,10,18,20, 25

moved 46:15

mud 17:7

multiple 3:13 4:12

mum- 47:19

murmurings 47:19

## N

narrative 19:7

necessarily 11:23 17:1

needed 3:28 13:21 17:18 36:1 48:19 49:1

negotiated 41:7

negotiates 41:1

net 36:18

noncompliance 13:9 21:19,23

nonrepresented 27:14

nonresponsive 15:14

notice 39:3,8,27

November 5:25 6:2,14,17,22,25 7:1,10,12,27 19:15,16

number 5:23 6:11 29:5,8 30:13 34:25 37:26,28

**O**

oath 17:15

object 11:24 14:23 27:26 47:17

objecting 23:5 47:15

objection 4:1 8:25 14:8,27 18:5 23:3,4,6,7,9 25:18 44:5,13

objections 3:7 4:1,12 9:11,14,20

observation 2:19 5:18

obtained 34:10,11

occasions 31:23

October 35:24,25

officer 23:16 26:5 31:1

omits 33:23

one's 45:5

open 19:8

opportunity 43:15

opposed 18:17

opposing 4:1

options 4:18 36:6,8

order 6:2,14,15,17 8:22 12:17 15:3,9,11 16:7 17:25 20:6 24:3,12 30:10,15 31:11,27 33:19 34:5 37:6,7,11,21,22 38:10,14 42:1 49:11

ordered 8:11

orders 6:26 8:26 16:5 20:21

overencompasses 8:19

overlook 39:10

overrule 12:22

overruled 14:10 18:6 23:10 25:21 28:12

overtime 49:9

**P**

p.m. 2:1 49:12

pages 4:23,27 5:11,12,13,14

paid 43:3 46:16

paper 5:9

paragraph 8:10 29:12 36:26

parte 25:14 35:27

partes 35:26

parties 2:6,9 34:6 36:18 49:8

party 27:14,27

patient 22:26

pay 38:18,21

penalties 38:10

pending 24:11

people 2:26,27 9:10

period 36:11

person 47:12

Peter 2:16 37:2

petitioner 2:16 8:5 25:15 33:24 40:19 42:2 43:28 44:3

Petitioner's 6:6

place 14:13

pleadings 36:17

point 6:20 9:28 12:24 19:26 20:22,27 21:8 26:16 27:19 41:22 43:23 46:16 48:23

pool 38:28

poor 47:11

portion 38:11

portray 21:2

potentially 38:9

practice 27:15,27 28:2

practicing 11:19

precious 27:2

precisely 22:13

prejudicing 20:15

prepare 27:19

prepared 3:7

present 2:16

presentation 41:24

preserve 9:13 24:10 38:7

preserved 8:24 9:26 10:15

preserving 9:10

pretty 9:19

prev- 3:6

previous 3:6

private 16:14,16

privilege 8:23 9:26 10:12 12:12, 19 13:8,12 14:17 15:7,14,20

privileged 10:1 15:28 18:18

problem 8:21 10:3 41:18

problems 2:27 24:27

procedure 22:12

proceedings 49:12

proceeds 39:28

process 3:16 20:18

produce 21:24

prolongs 21:9

promise 38:15 39:6

proof 23:14,19 25:20,27

prop 41:15

proper 37:16 41:8

property 35:17 38:2

proposed 3:24 4:14,15,16 5:24 6:4,5,8,14,22 7:12,26 15:15 28:11,13

proposing 33:12

BRETT F TRUITT vs CRISTINA LANCRANJAN,
23FL000584C, 04/29/2025

**CERTIFIED COPY**

**MOTION**
Index: propounded..Schulman

propounded 15:15

protect 26:23

protective 15:20

prove 22:12

proved 23:13

provide 3:28 4:13 8:12 9:9,11 13:20 21:24 25:9 33:24,25 34:7 44:3

provided 4:13,18 8:6 15:6 17:16 34:9,15 36:27 37:5,6

proving 22:18

provisionally 5:24 6:14,19 7:17,22

pull 31:17

pursuant 7:10

put 36:26

**Q**

question 38:17

**R**

raise 2:7

reached 35:15

read 5:9,15

reading 12:2

real 2:27

reams 5:8,9

reason 12:13 15:22 18:9,16 20:23 21:1 22:13 25:6 26:17

reasonableness 16:9 38:18

recall 32:13

received 20:25 35:18 41:16 42:23 43:1 44:15

recess 19:3 47:24

recollect 16:3

recollection 13:11

record 2:5 6:27 12:4,7 14:14 15:4,27 47:20

records 20:20 32:14

redacted 15:5

redaction 15:17

reduce 39:16

refile 3:18

refused 44:4

regard 18:2

rehashing 18:28 20:1

reimbursement 39:1

reimbursements 38:2,9

reinventing 2:24

reiterate 33:19

related 7:10 36:5

release 39:17

released 38:5,11,12,21 40:12

relevant 36:25

rely 41:2

remain 47:1

remains 37:23 45:18,22

remember 7:25 9:2 33:5,7

remind 37:15

rent 46:17

repeat 2:21

reply 5:11

reporter 11:6,8,10 12:1,6 19:28 33:28 47:8,11

representation 3:24 6:16 26:15

representations 16:4

represented 22:15 27:14,21,27

representing 41:16

reputable 17:28

request 2:23 6:17 17:26 27:25 28:5 44:25 45:26 46:6 47:3 48:12,19,20,25

requesting 43:26

requests 2:22 10:6

required 36:9

research 10:17

respect 10:8 48:24

respond 10:3 14:1 15:23,24 18:20 29:27 30:8,18 31:4,5,12 32:28

response 4:3 9:9,11,13,20,23 16:4 21:24 30:27 36:27

responses 17:13,19,22 29:16,19 32:13,23

rest 18:23 39:18

retain 48:25

review 4:25,26

rights 13:22 20:16

risk 12:14 17:10

rule 3:16 25:14 28:3

rules 3:28 4:23,24 7:10 19:10,12 20:24 21:13 26:12 41:9

**S**

Saatjian 2:15,16 3:5,8 6:3,5,22,24 7:2,4,6,9,16,20 8:9,25 9:4 10:23,26 11:3,11,24 12:3 13:4,25 14:1,3,7,12,24 15:1,18,27 16:15 17:4,9 18:7,9,16 19:1 22:19,21,23,26 23:2,7,28 24:3,5,9,10,19 25:18 26:3 28:27 29:3 30:26,28 31:13,17 32:8,9,10,19,22 33:13,15 34:5,13,17,19 35:10,14,20,23 36:5,10,16,21,23,25 37:1,18,20,25 38:6,14,16,25 39:2,7,14,22,24 40:2 41:25 44:5,13,16,18,24,27 45:3,10,12,14,21 46:8,11,14,20,25,28 47:5,7,13,26 48:10,13,16

Saatjian's 7:26 28:10,13 34:24

sake 38:27 39:13,14

salary 44:15

San 2:1

sanction 26:22 27:22

sanctioned 21:14,18,23

sanctions 16:4 22:1,6 29:16,19 45:1

saving 44:9

savings 36:19 45:21 46:21,22

Schulman 18:2 35:16,26 36:28 37:2,5,6 39:7 41:15,28

BRETT F TRUITT vs CRISTINA LANCRANJAN,
23FL000584C, 04/29/2025

**CERTIFIED COPY**

MOTION
Index: Schulman's..time

Schulman's 35:9 38:23

Section 3:28 9:25 12:11 13:18

seek 7:23 35:28 39:1

self-represented 19:10

send 27:25 40:20

sends 23:14 25:24,27

sense 39:15

separate 5:1 32:16 35:17 36:20

separation 35:26 45:17

September 35:24

ser- 23:14

served 19:17,19 22:18 23:20 25:25,28

service 23:14,19 25:27

serving 4:1 20:23

set 6:18 7:12,14,21,23 9:20 24:12,21 27:13 44:28

setting 27:2

settlement 39:27

settling 21:8

share 39:8,17 40:5 45:21 46:26

shifting 17:2 19:7

show 10:6 12:13 17:21,27 20:12 21:4

showed 35:27

shown 19:11

sic 8:2 18:25 31:9 42:28

side 4:27 21:22

sign 37:21

signature 27:20,24 41:8

signed 37:22 40:22 41:18

significant 35:17 38:1,11

signing 22:15

simultaneous 11:4,7,9,25 22:3, 28 24:2 32:5 33:4 36:7 39:12 44:20,23 45:28

single 4:23 5:11,14

sir 9:27 11:20

sitting 38:22,26 41:13 45:6

situation 40:15

slow 12:5 29:17 34:1 35:19 44:1

sneak 42:27

sole 8:13

sort 20:4 36:4 45:9

source 38:8

spaced 4:23 5:11,13,14

speak 19:27 39:5

speakers 11:4,7,9,25 22:3,28 24:2 32:5 33:4 36:7 39:12 44:20, 23 45:28

speaking 24:14

specific 8:4,7 10:5 25:9,13 28:26 29:2 30:11,14,15,24 31:3 32:11

specifically 6:18 8:8,16,20,23 11:5,18,22 12:18 25:8 28:24,25 30:12 31:27 33:3

spend 20:3,9 27:1

spent 43:13

split 42:8,19 46:12

standard 27:26 28:3

stands 17:15 20:15

start 45:8 49:7

starting 46:15

state 11:20,22 15:27 25:8 30:5 47:18

stated 6:18 8:23 12:18 20:20 29:24

statements 15:5 16:3 17:21 18:17 32:14,16

states 8:9,16 11:5

stating 25:28

stipulated 40:13

stipulation 37:6,7,11,21,22 40:11

stock 36:6,8 45:17

stocks 43:3

stop 46:7 49:8

submit 5:8 38:17

submitted 3:5 4:22 5:1,12,14 7:11 23:19 46:6

substance 4:8 13:26,27 25:3 28:15

substantive 24:25,27 28:13 48:18

substantively 3:19 4:6 5:21,22

suggest 22:9

suited 24:20

super 12:2

superfluous 31:9,14

support 6:26

swear 2:7

swears 15:6

sworn 2:9,13

system 19:7,12 20:16,18 21:15 43:24

---

**T**

talk 3:4 4:5 28:5 35:1,7 47:10,23

talked 48:3

talking 12:2 20:3,9 42:11 47:22

tax 46:17

telling 12:22 23:20 34:6 42:4

ten 4:23

tens 17:11

testified 2:13

thing 2:22 5:17 9:22 11:16 20:19, 23,26 21:18

things 2:24 6:1 8:5,7,20 12:14,15 17:18 20:7 32:18 33:9 40:16 47:19

thought 5:27 11:15 14:16

thousands 17:12

threatening 26:13 35:26,28

threatens 25:16

throwing 45:2

time 4:5,25 5:9,10 6:27 11:10 12:24 13:6 17:15 19:19 20:9 21:25 24:7,10,17 25:12 27:2

35:23 36:3 38:4 40:6 42:16,18 47:12,22 48:1 49:2

**time-ruled**  36:11

**times**  14:22

**tired**  22:23 23:6

**today**  16:8 24:23 34:28 48:3,6,18

**told**  14:14 25:8 27:13

**top**  36:17

**totally**  10:1 47:20

**transcript**  14:18 15:8 29:22 31:26

**transcripts**  4:17 12:18 25:8 28:22 31:24 32:26

**transfer**  37:7 41:20

**transferred**  41:7,10

**trial**  17:24,28 38:1

**true**  7:24 8:28 14:20 21:3 31:7 34:12 41:25,26

**Truitt**  2:4,10,12,19

**trust**  9:28 15:19

**turn**  43:7,25

**two-pager**  6:9

### U

**unallocated**  35:16 37:23,27

**undermining**  20:16

**understand**  8:14 21:26 22:8 23:17 24:28 26:10,18,21 28:8 33:27 38:26 40:26 41:3,6,19 43:21

**understood**  33:28

**undo**  27:23

**updated**  33:24 34:8

**utilizing**  19:7

### V

**verify**  10:6

**versus**  2:4,20 4:16

**vesting**  36:11

**violated**  25:15

**violating**  26:12

**violation**  4:24 40:18

### W

**wait**  32:28 42:12 44:1 45:24

**waive**  9:6 10:2 11:16 15:6,21 49:4

**waived**  8:24 9:14,23 10:10,21 12:12,15,19 13:2,8,13,19 14:17 15:13,24

**waiver**  13:22

**wand**  45:8

**wanted**  16:8,9 48:17

**wasted**  47:21

**wave**  45:8

**week**  2:22

**whispering**  47:18

**wild**  23:22

**wisely**  49:2

**word**  18:14

**work**  42:27

**worried**  36:22

**writing**  30:9,18

**written**  9:9,11,13,19,23 21:24

**wrong**  3:12,22 5:21 6:10 8:14 9:2 13:11 17:16 28:27 29:3,12 33:1,22 39:10

### Y

**year**  43:1,2 46:1,5

**yearly**  44:15

**years**  12:20 43:17

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

LANCRANJAN v. SAATJIAN, et al.

Case:26-CV-02817-BAS-VET


EXHIBIT 18

THE "MEETING OF THE MINDS": EVIDENCE OF CO-CONSPIRATOR COORDINATION AND ENTERPRISE STRATEGY

**Description of Evidence:** This exhibit contains the primary evidentiary record of the "Meeting of the Minds" between Defendants Saatjian, Schulman, and Blado. This evidence definitively proves the Defendants were engaged in "Adversarial Theater"—appearing to contest matters in court while coordinating their objectives in private to the detriment of the Plaintiff. The centerpiece of this exhibit is the **October 25, 2024, email exchange**, which establishes:

- **Coordinated Strategy vs. Adversarial Role:** Counsel for the Petitioner (Saatjian) and Counsel for the Respondent (Schulman) are engaged in direct, collegial communication regarding procedural "oversights" and "remedies," effectively collaborating on how to manage the Court's calendar and manipulate the record, rather than advocating zealously for their respective clients.

- **The "Breach of Understanding":** Defendant Saatjian's explicit admission that he held Schulman's firm in "highest esteem" and felt "let down and misled in [their] dealings... on our first case together" proves a pre-existing, non-adversarial relationship and an expectation of mutual cooperation that was subverted by the "clerical" failure in this specific instance.

- **Proof of Collusion:** This email, combined with the Defendants' refusal to produce similar correspondence in discovery, constitutes the "smoking gun" of the RICO Conspiracy (18 U.S.C. § 1962(d)), invalidating the defense of independent legal conduct.

## ATTACHMENT 1 to Exhibit 18: THE COLLUSION INDEX

This index tracks the documented interactions of the Enterprise. **Plaintiff reserves the right to amend or supplement this ledger as further evidence is obtained through the discovery process.**

| Date | Parties Involved | Purpose of Communication | How it Demonstrates Collusion |
|---|---|---|---|
| July 2024 | Schulman & Plaintiff | Client Intake/ Retainer | Establishes the "Trust" Phase (Fiduciary Relationship). |
| Oct 9, 2024 | Saatjian, Schulman | Stipulation Follow-up | Saatjian coordinates with Schulman to reset hearing dates/trial tracks. |
| Oct 17-18, 2024 | Schulman & Plaintiff | Fee Pressure/ Stipulation | Schulman leverages fee pressure to force signature on $150k transfer. |
| Oct 25, 2024 | Saatjian, Schulman | "Adversarial Theater" | Admission of mutual esteem and coordination on procedural "oversights." |
| Nov 20, 2024 | Blado, Schulman | Funds Confirmation | Blado confirms the extraction of $150k without Plaintiff's consent. |

## ATTACHMENT 2 to Exhibit 18: THE CHRONOLOGY OF FIDUCIARY BETRAYAL

This summary illustrates the arc of the Enterprise's criminal strategy:

- **Phase I: The Trust (July 2024):** Plaintiff entered into a formal fiduciary relationship with Moore, Schulman & Moore (MSM). Plaintiff provided full transparency, trusting Defendant Schulman with her financial disclosures, custody concerns, and the protection of her marital assets. At this stage, Plaintiff was led to believe that MSM was a zealous advocate against the opposing party/Peter Saatjian.

- **Phase II: The Betrayal (October 2024):** The facade of "zealous advocacy" was shattered by the October 25, 2024, communication. This email reveals

that while Plaintiff was fighting for her survival, her own attorney (Schulman) was in direct, collaborative contact with the "adversary" (Saatjian) to manage procedural "oversights" and appease his colleague's disappointment. This evidence confirms that the "adversarial" proceedings were, in fact, a coordinated theater designed to extract fees and loot the estate while leaving Plaintiff effectively defenseless.

## NOTICE TO THE COURT REGARDING DISCOVERY to Exhibit 18

The acts of obstruction and collusion described herein are illustrative and not exhaustive.

1. **Suppression of Evidence:** Defendants have actively suppressed the complete chain of communications regarding their coordination. Their refusal to produce the "Meeting of the Minds" evidence is an admission of guilt. Plaintiff requests that the Court draw an adverse inference that the withheld documents contain further evidence of conspiracy and RICO violations.

2. **Right to Amend:** Plaintiff reserves the right to amend or supplement this ledger as further evidence is obtained through the discovery process. Plaintiff intends to prove the full scope of this "Meeting of the Minds" through additional evidence to be presented at trial.

| From: | Peter Saatjian |
|---|---|
| To: | Tana Landau; Paul Bui; Dave Schulman; Sarah Cobbs; Linda Hansen |
| Subject: | RE: Truitt - Signed Stipulation & Order |
| Date: | Wednesday, October 9, 2024 9:33:00 AM |

Hello – I am following up on the stipulation and order. Can we expect a fully executed copy today?

Separately, please ask Mr. Schulman when is a good date/time for him next week so we can appear ex parte to reset the move-away evidentiary hearing. We agreed it should be reset to a 2-day trial. Does October 16 work?

Peter Saatjian, Esq.

**FARZAD & OCHOA FAMILY LAW ATTORNEYS, LLP**

**Offices in Los Angeles | Orange County | San Diego**

**SAN DIEGO LOCATION**

402 W. Broadway, Suite 400
San Diego, CA 92101
Telephone: (619) 929-3040
email: peter@farzadlaw.com
Website: farzadlaw.com

Confidentiality Notice: This message is intended solely for the person(s) to whom it is addressed and it may contain legally privileged and/or confidential information. This message may contain material that is protected by the attorney-client privilege and/or attorney work-product doctrine. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution, copying or other use of this message is strictly prohibited by law. If you have received this message in error, please immediately notify the sender at (714) 937-1193 and delete this message and destroy any and all copies thereof.

**From:** Peter Saatjian
**Sent:** Monday, October 7, 2024 8:07 AM
**To:** Tana Landau · Paul Bui · Dave Schulman · Sarah Cobbs · Linda Hansen

| From: | Dave Schulman |
|---|---|
| To: | Peter Saatjian; Tana Landau; Paul Bui; Sarah Cobbs; Linda Hansen |
| Subject: | RE: Truitt - Declaration In Opposition to Ex Parte |
| Date: | Friday, October 25, 2024 9:30:56 AM |

**CAUTION: This email originated from outside of the Firm. Do not click links or open attachments unless you recognize the sender and have confirmed that the content is safe.**

Peter, I did not appear, and frankly, forgot to ask Matt to do that- I will do it today. He subbed in late and asked me if I was taking my ex parte off calendar, and I told him I did. Why did you just ask the Court to do it? I will send a letter or dec if you need. Again, it was an oversight by the Paralegal that is all-the Judge will remove it and let me know what you need. Have a good weekend.

**From:** Peter Saatjian
**Sent:** Friday, October 25, 2024 9:03 AM
**To:** Tana Landau ; Paul Bui ; Dave Schulman ; Sarah Cobbs ; Linda Hansen
**Subject:** RE: Truitt - Declaration In Opposition to Ex Parte

Counsel,

Your office substituted off of the case and you did not remedy the issue as you said you would. I was not served with the response/opposition you filed yesterday.

I know it means little to you, but I had held Mr. Schulman and your firm in the highest esteem, and feel quite let down and misled in my dealings with your office on our first case together. I had hoped with your wisdom you would know clients come and go. I will remember this case the next time we work together.

Peter Saatjian, Esq.

**FARZAD & OCHOA FAMILY LAW ATTORNEYS, LLP**

**Offices in Los Angeles | Orange County | San Diego**

**SAN DIEGO LOCATION**

402 W. Broadway, Suite 400
San Diego, CA 92101
Telephone: (619) 929-3040
email: **peter@farzadlaw.com**
Website: **farzadlaw.com**

Confidentiality Notice: This message is intended solely for the person(s) to whom it is addressed and it may contain legally privileged and/or confidential information. This message may contain material that is protected by the attorney-client privilege and/or attorney work-product doctrine. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution, copying or other use of this message is strictly prohibited by law. If you have received this message in error, please immediately notify the sender at (714) 937-1193 and delete this message and destroy any and all copies thereof.

**From:** Tana Landau <tlandau@msmfamilylaw.com>
**Sent:** Thursday, October 24, 2024 2:04 PM
**To:** Paul Bui <paul.bui@farzadlaw.com>; Dave Schulman <dschulman@msmfamilylaw.com>; Sarah Cobbs <scobbs@msmfamilylaw.com>; Linda Hansen <lhansen@msmfamilylaw.com>

**Cc:** Peter Saatjian <peter@farzadlaw.com>

**Subject:** RE: Truitt - Declaration In Opposition to Ex Parte

CAUTION: This email originated from outside of the Firm. Do not click links or open attachments unless you recognize the sender **and** have confirmed that the content is safe.

Mr. Saatjian:

Dave will remedy the bank record redaction issue. That was not done intentionally and was an oversight/clerical error by our office. We will remedy it. I apologize.

**From:** Paul Bui <paul.bui@farzadlaw.com>

**Sent:** Thursday, October 24, 2024 1:55 PM

**To:** Dave Schulman <dschulman@msmfamilylaw.com>; Sarah Cobbs <scobbs@msmfamilylaw.com>; Tana Landau <tlandau@msmfamilylaw.com>; Linda Hansen <lhansen@msmfamilylaw.com>

**Cc:** Peter Saatjian <peter@farzadlaw.com>

**Subject:** Truitt - Declaration In Opposition to Ex Parte

Hello Mr. Schulman,

Please see the attached Declaration of Counsel In Opposition to Ex Parte and Notice of Intent to Lodge Documents along with a Proof of Electronic Service.

Sincerely,

Paul Bui

Secretary

## FARZAD & OCHOA FAMILY LAW ATTORNEYS, LLP

### Offices in Los Angeles | Orange County | San Diego

### SAN DIEGO LOCATION

402 W. Broadway, Suite 400

San Diego, CA 92101

Telephone: (619) 929-3040

email: **paul.bui@farzadlaw.com**

Website: **farzadlaw.com**

Confidentiality Notice: This message is intended solely for the person(s) to whom it is addressed and it may contain legally privileged and/or confidential information. This message may contain material that is protected by the attorney-client privilege and/or attorney work-product doctrine. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution, copying or other use of this message is strictly prohibited by law. If you have received this message in error, please immediately notify the sender at (714) 937-1193 and delete this message and destroy any and all copies thereof.

This email has been scanned for spam and viruses. Click here to report this email as spam.

This email has been scanned for spam and viruses. Click here to report this email as spam.

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

LANCRANJAN v. SAATJIAN, et al.

Case: 26-CV-02817-BAS-VET

**EXHIBIT 19: FEDERAL RICO RETALIATION, GHOSTWRITTEN ADVOCACY, AND STATE COURT DOCKET WEAPONIZATION (JUNE 2026 FILINGS)**

**Description of Evidence:** This exhibit contains the primary evidentiary record proving ongoing, active retaliation against Plaintiff for exercising her federal right to file a civil rights and RICO action. Specifically, it documents how opposing party (Brett F. Truitt), acting under the ghostwritten direction of defendant Peter Saatjian, weaponized the state court docket in June 2026 to penalize Plaintiff, suppress her constitutional defenses, and enforce retaliatory discovery and preclusion orders. This exhibit encompasses:

- **Attachment A:** Brett F. Truitt's **Reply Declaration** (filed June 16, 2026, in San Diego Superior Court Case No. 23FL000584C, Dept. 902), specifically highlighting Paragraphs 6 and 7 where Truitt explicitly targets and penalizes Plaintiff's May 4, 2026 federal RICO lawsuit.

- **Attachment B:** The corresponding **Proof of Electronic Service (POS-050/EFS-050)** filed by Brett F. Truitt on June 17, 2026.

- **Attachment C:** Petitioner's **[Proposed] Order on Petitioner's Request for Order** for the June 25, 2026 hearing, illustrating the coercive mechanisms, preclusion tracks, and retaliatory discovery orders enforced by the state tribunal.

Brett F. Truitt
2027 Jewell Ridge
Vista, CA 92081
Telephone   (619) 301-6569

Self-represented litigant

FILED
San Diego Superior Court

JUN 16 2026

Clerk of the Superior Court
By:___M. Abad___, Deputy

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SAN DIEGO - CENTRAL DIVISION

| | |
|---|---|
| Brett F. Truitt,<br><br>Petitioner,<br><br>vs.<br><br>Cristina M. Lancranjan,<br><br>Respondent. | Case No.: 23FL000584C<br><br>**ASSIGNED FOR ALL PURPOSES TO:**<br>The Hon. Jami L. Ferrara, Dept. SD-902<br><br>**REPLY DECLARATION OF PETITIONER**<br><br>**Hearing Date:**<br>**Date:** June 25 2026<br>**Time:** 9:00 a.m.<br>**Dept.** 902 |

I, Brett F. Truitt, hereby declare as follows:

1.    I have personal knowledge of the facts stated in this declaration, and if called upon to testify, I would competently testify thereto.

2.    I submit this declaration in reply to Respondent, Cristina M. Lancranjan's (hereinafter "Respondent") 49-page Responsive Declaration dated June 12, 2026, 83-page "Notice" dated June 12, 2026, and 12-page Memorandum of Points and Authorities dated June 12, 2026.

### RESPONDENT CONTINUES HER VEXATIOUS LITIGATION

3.    Nothing has changed and Respondent remains undeterred. In fact, it continues to get worse. Ms. Lancranjan repeatedly violates Court Rules with filing and page requirements and continues to file new litigations (including over 4-5 appeals since being deemed a Vexatious Litigant on December 2, 2025) and completely fabricate allegations of child abuse, again, with the specific intent of trying to remove me from our child's life.

4.    It will never stop, but I remain hopeful that the Court will address it at some point.

IRMO Truitt & Lancranjan, SDSC Case No. 23FL000584C. Petitioner's Reply Declaration.

5. Since the Vexatious Litigant pre-filing order issued on December 2, 2025, Ms. Lancranjan has instituted the following new litigations appealing orders by this Court:

    a. December 8, 2025 – 4th appeal under Court of Appeal Case No.: D086958.

    b. December 30, 2025 – 5th appeal under Court of Appeal Case No.: D086958.

    c. February 27, 2026 – 6th appeal under Court of Appeal Case No.: D086958.

    d. April 20, 2026 – 7th appeal under Court of Appeal Case No.: D086958.

    e. May 4, 2026 – Federal lawsuit against Peter Saatjian, et al, inclusive of PS Law, APC and Farzad & Ochoa Family Law Attorneys, LLP, and Does 1-10, for a RICO and fraud claim.

6. Respondent continues to file excessive pleadings and repeat the same false claims that have been repeatedly and thoroughly adjudicated by this Court. I believe it is res judicata and collateral estoppel on nearly every claim she raises.

7. Just last month in May 2026, Ms. Lancranjan filed a lawsuit in federal court against my former attorneys alleging RICO and Fraud, alleging a criminal enterprise implicating her former attorneys as well, and it is a transparent attempt to relitigate the family law case and repeat the same baseless and completely fabricated allegations as she has in this case and which are completely and materially inconsistent with the court record and court findings and orders – recharacterizing it as a federal RICO and fraud case, and demanding ~$2 million in damages and more.

8. Respondent was also recently involved in a landlord-tenant dispute, with counsel.

9. I object to and ask the Court to disregard any affirmative relief Respondent requests in her Responsive Declaration that is beyond the scope of my Request for Order – which was limited to her compliance with the Court's order for her vocational assessment. These are impermissible requests under Family Code section 213, and it is a transparent attempt by Respondent to circumvent the Pre-Filing Requirements to try to take away custody and remove our child from school yet again.

10. Respondent has repeatedly stated in writing that she disagrees with the Court's order for our son to be enrolled in school, and she refused to cooperate with the Court's schooling order and withheld our child from school in 2025. In 2025-2026, Respondent repeatedly did not take our child to school, with 34 absences and 6 tardy days, when in-person schooling is only 3 days per

2

IRMO Truitt & Lancranjan, SDSC Case No. 23FL000584C. Petitioner's Reply Declaration.

week. 32 of the 34 absences and all 6 tardy days occurred when our son was in her custody: that amounts to nearly 11 weeks of missed school. Respondent's pattern of refusing to comply with the Court's order for our child to attend school because she disagrees with it is very clear. It is the same with any other order with which she disagrees – she violates it or claims it was void and illegal: whatever she has to do to justify her noncompliance and respond with escalating litigation. Now that we have a 50/50 schedule, I will ensure that our child attends school during my time.

11. Respondent manufactures claims for our child being "ill", all with the intent of trying to remove our child from school and assert 100% control over all aspects of his life, and I believe and am concerned that this is a form of child abuse.

12. Our child is thriving and healthy, and we just started the 50/50 week on/off schedule where there is only 1 exchange per week – this timing is not a coincidence. Each time there has been a change or step-up in my parenting time, Ms. Lancranjan manufactures a crisis with emergency applications and violates court orders – these are findings made by the Court in the past.

13. I provide the context above because I want the Court to know that I believe I have no choice but to request primary custody and sole legal custody of our child at the upcoming trial in August. Respondent will never stop her campaign of alienating conduct and her attempts to remove me from our child's life. It is extremely disappointing because I want nothing more than everyone to simply move on and co-parent Alex (our son) peacefully.

14. Lastly, I dispute Respondent's repeated attempts to "stay" these proceedings simply because the Court of Appeals granted her request for permission to file an appeal. There is no automatic stay, and there is no basis to stay these proceedings. This case has to end. Our son and I deserve finality.

15. I ask the Court to admonish Respondent regarding her excessive filings and strike any request by Respondent for affirmative relief unrelated to my Request for Order.

**RESPONDENT MUST COMPLY WITH THE VOCATIONAL ASSESSMENT**

16. I respectfully submit that it is not an equitable remedy for the Court to give Respondent a pass on her noncooperation with the consideration of then precluding any vocational

3

assessment of mine. Respondent remains willfully unemployed. I am already imputed with income at $120,000 per year, paying support on significant income I do not receive.

17.     I understand the Court may not impute income even with a vocational evaluation report – that is discretionary. However, I am entitled to obtain the evidence I need for trial.

18.     I am happy to comply with my vocational evaluation as soon as Respondent directs me to her evaluator. Respondent recently noticed a vacation to Romania and to Boston, and per her rental lease agreement, did not pay rent of $3,500/mo for 3 months between February and April 2026 – she has funds and access to money; it is not about money or cost.

19.     In summary, Respondent's refusal to comply with the March 24, 2026 vocational evaluation orders has no legal basis per her citations of totally inapplicable code sections. It is a transparent attempt by Respondent to continue to obstruct and delay the vocational evaluation so that it will not be available to be entered as evidence at trial in August 2026.

20.     I believe that Respondent is deliberately obstructing and refusing to comply with the vocational evaluation because she knows she has already admitted under oath that her earning capacity as an "executive" is far higher than her current minimum wage imputation, and she has been in noncompliance with the Court's job-contact orders for over a year, and has refused to work for over 3 years since separation, and seeks to improperly maximize child and spousal support.

21.     Respondent's representations about her employment are inconsistent with her income and expense declarations and public LinkedIn profile. Respondent claims she is going to school "full-time", but the evidence during the move-away trial – Respondent's own school transcript – showed that she takes maybe 1 class per semester, if that. She has been "in school" since 2016 and uses her 1 class per semester status as a student to shirk her first and foremost principal obligation in life, which is to work according to her station to help support our minor child and herself. In truth, Respondent has prolonged her bachelor's degree (despite claiming she already has one), and in doing so, continues to obtain grants and student loans to avoid working like the rest of us.

22.     Ms. Ross remains ready and available. Ms. Ross confirmed that the evaluations can be conducted in person, via Zoom or via telephone and typically last an hour and a half. Start times for in person evaluations are from 8-11 AM; for remote evaluations, they can be as late as 2 PM.

4

IRMO Truitt & Lancranjan, SDSC Case No. 23FL000584C. Petitioner's Reply Declaration.

**REQUESTED RELIEF**

23.   In light of the above, I ask the Court to make the following orders:

a.   The Court reaffirm its order from March 24, 2026 granting Petitioner's request for Respondent to undergo an examination by a vocational training counselor pursuant to Family Code section 4331, the costs of which shall be borne entirely by me.

b.   Pursuant to Family Code section 4331, the scope of the vocational examination of Respondent shall include an assessment of Respondent's ability to obtain employment based upon her age, health, education, marketable skills, employment history, and the current availability of employment opportunities. The focus of the examination shall be on an assessment of Respondent's ability to obtain employment that would allow her to contribute to the needs of the minor child and to assist her in maintaining the marital standard of living.

c.   Respondent to fully cooperate and submit to the vocational evaluation with Meredith Ross, M.S., CRC with Hall Mortimer Associates (619)463-9334.

d.   The conditions and manner of the examination shall be by remote or in-person consistent with the policies of the examiner, and if there is no agreement for the examination to be conducted remotely, then Respondent shall appear in-person for the examination.

e.   Respondent shall submit to the examination on the first available date to the evaluator. If Respondent does not attend said appointment, Respondent shall submit for the examination at the next available date to the evaluator and on a day where Cristina does not have custody of the minor child pursuant to the week on/off parenting schedule for Summer 2026.

f.   Should Respondent not comply with this order, Petitioner is authorized to appear ex parte for further orders.

24.   I have submitted a proposed Order to prevent Respondent from further delaying this vocational assessment.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 16th day of June 2026, in Vista, CA.

_____
Brett F. Truitt, Petitioner

5

IRMO Truitt & Lancranjan, SDSC Case No. 23FL000584C. Petitioner's Reply Declaration.

POS-050/EFS-050

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:    STATE BAR NO:<br>NAME: Brett F. Truitt<br>FIRM NAME:<br>STREET ADDRESS: 2027 Jewell Ridge<br>CITY: Vista        STATE: CA    ZIP CODE: 92081<br>TELEPHONE NO.: (619) 301-6569    FAX NO. :<br>E-MAIL ADDRESS: bftruitt@gmail.com<br>ATTORNEY FOR (name): Self-Represented Litigant | FOR COURT USE ONLY |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Diego
STREET ADDRESS:   1100 Union St.
MAILING ADDRESS:
CITY AND ZIP CODE:    San Diego 92010
BRANCH NAME:   Central Courthouse

| | |
|---|---|
| PLAINTIFF/PETITIONER: Brett F. Truitt | CASE NUMBER:<br>23FL000584C |
| DEFENDANT/RESPONDENT: Cristina M. Lancranjan | JUDICIAL OFFICER:<br>Hon. Jami L. Ferrara |
| **PROOF OF ELECTRONIC SERVICE** | DEPARTMENT:<br>902 |

1.  I am at least 18 years old.

    a.  My residence or business address is (specify):
        2027 Jewell Ridge
        Vista, CA 92081

    b.  My electronic service address is (specify):
        iullia.truitt@gmail.com

2.  I electronically served the following documents (exact titles):
    Reply Declaration of Petitioner; Proposed Order on Petitioner's Request for Order

    [ ]  The documents served are listed in an attachment. (Form POS-050(D)/EFS-050(D) may be used for this purpose.)

3.  I electronically served the documents listed in 2 as follows:
    a.  Name of person served: Cristina M. Lancranjan

        On behalf of (name or names of parties represented, if person served is an attorney):

    b.  Electronic service address of person served :
        lancranjan.cristina@gmail.com

    c.  On (date): June 17, 2026

        [ ]  The documents listed in item 2 were served electronically on the persons and in the manner described in an attachment.
        (Form POS-050(P)/EFS-050(P) may be used for this purpose.)

Date: 06/17/2026

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Iullia Truitt
_____        ► _____
(TYPE OR PRINT NAME OF DECLARANT)                (SIGNATURE OF DECLARANT)

Page 1 of 1

Form Approved for Optional Use<br>Judicial Council of California<br>POS-050/EFS-050 [Rev. February 1, 2017]    **PROOF OF ELECTRONIC SERVICE**<br>(Proof of Service/Electronic Filing and Service)    Cal. Rules of Court, rule 2.251<br>www.courts.ca.gov

Brett F. Truitt
2027 Jewell Ridge
Vista, CA 92081
Telephone (619) 301-6569

Self-represented litigant

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN DIEGO, CENTRAL COURTHOUSE

| | |
|---|---|
| Brett F. Truitt | Case No.: 23FL000584C |
| Petitioner, | **ASSIGNED FOR ALL PURPOSES TO:** |
| vs. | The Hon. Jami L. Ferrara, Dept. SD-902 |
| Cristina M. Lancranjan | **[PROPOSED] ORDER ON PETITIONER'S REQUEST FOR ORDER** |
| Respondent. | **Hearing Date** Hearing: June 25, 2026 Time: 9:00 a.m. Dept.: 902 |

This matter came on the Court's calendar from Petitioner's Request for Order filed on May 27, 2026, requesting further specified orders and an order compelling Respondent's cooperation and compliance with the Court's prior order from March 24, 2026 for Respondent to undergo a vocational evaluation.

The Court finds notice was provided to Respondent consistent with the law, local rules, and the Rules of Court.

The Court finds that Respondent was timely and validly served with Petitioner's Request for Order.

The Court finds there is good cause to issue these orders given the August 2026 trial dates in this matter.

Based upon the pleadings and argument from the parties, the Court issues the following orders.

1

IRMO Truitt and Lancranjan. SDSC Case No. 23FL000584C. Petitioner's Proposed Order.

<u>Vocational Evaluation of Respondent</u>

The Court reaffirms its order from March 24, 2026 granting Petitioner's request for Respondent to undergo an examination by a vocational training counselor pursuant to Family Code section 4331, the costs of which shall be borne entirely by Petitioner, and issues the following additional orders:

1. Pursuant to Family Code section 4331, the scope of the vocational examination of Respondent shall include an assessment of Respondent's ability to obtain employment based upon her age, health, education, marketable skills, employment history, and the current availability of employment opportunities. The focus of the examination shall be on an assessment of Respondent's ability to obtain employment that would allow her to contribute to the needs of the minor child and to assist her in maintaining the marital standard of living.

2. The Court orders Respondent to forthwith and fully cooperate and submit to the vocational evaluation with Petitioner's selected examiner, Meredith Ross, M.S., CRC with Hall Mortimer Associates (619)463-9334. The conditions and manner of the examination shall be by remote or in-person consistent with the policies of the examiner, and if there is no agreement for the examination to be conducted remotely, then Respondent shall appear in-person for the examination.

3. Respondent shall submit to the examination on the first available date to the evaluator. If Respondent does not attend said appointment, Respondent shall submit for the examination at the next available date to the evaluator and on a day where Cristina does not have custody of the minor child pursuant to the week on/off parenting schedule for Summer 2026.

4. Should Respondent not comply with this order, Petitioner is authorized to appear ex parte for further orders.

**It is so ordered.**

Dated: _____          _____
                                     JUDGE OF THE SUPERIOR COURT

2

IRMO Truitt and Lancranjan. SDSC Case No. 23FL000584C. Petitioner's Proposed Order.

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

LANCRANJAN v. SAATJIAN, et al.

Case: 26-CV-02817-BAS-VET

**EXHIBIT 20: STATE COURT ADMINISTRATIVE BLOCKADE, JUDICIAL GAG ORDERS, AND EMERGENCY EX PARTE REJECTIONS (JUNE– JULY 2026)**

**Description of Evidence:** This exhibit contains the primary evidentiary record documenting how the state tribunal, court clerks, and judicial leadership actively collaborated with the Enterprise to structurally silence Plaintiff, reject emergency pleadings, and strip her of the right to present a defense or protect her minor child.

**Overt Act of Judicial Complicity and Access Denial (June 16, 2026):** On June 16, 2026, Plaintiff attempted to file an emergency ex parte application and request for administrative leave to arrest immediate, life-threatening medical harm to the minor child and enforce mandatory jurisdictional stays. The Family Law Clerk's office, the trial judge, and the Presiding Judge categorically refused to accept or process the emergency filings, improperly weaponizing the contested Vexatious Litigant (VL) pre-filing order as a de facto gag order. This coordinated administrative blockade structurally denied Plaintiff her Fourteenth Amendment right to due process, violated her First Amendment right to petition the government for redress, and proved the state tribunal's active integration into the Enterprise's racketeering workflow.

Specifically, this exhibit encompasses:

- **Attachment A:** Plaintiff's **Responsive Declaration, Memorandum of Points and Authorities, and Request for Mandatory Judicial Notice** (submitted June 10, 2026, in San Diego Superior Court Case No. 23FL000584C, Dept. 902), establishing mandatory defensive opposition to the unserved RFO and invoking the automatic appellate stay under CCP § 916(a).

- **Attachment B:** Presiding Judge Laura H. Miller's **Order on Application to File New Litigation by Vexatious Litigant (Form VL-115)** dated June 17, 2026, alongside the accompanying June 18 e-filing rejection notification, proving that court leadership unlawfully blocked Plaintiff from filing defensive and emergency papers.

- **Attachment C:** Plaintiff's **Urgent Notice of Administrative Obstruction and Request for Immediate Judicial Intervention** (hand-delivered to the Presiding Judge's Executive Reception on June 16, 2026), documenting the clerk's illegal refusal to accept emergency ex parte materials and establishing the administrative "de facto" blockade of access to the courts.

- **Attachment D:** Plaintiff's **Ex Parte Application for Emergency Protective Stay Pending Appeal (CCP § 917.7), Orders to Arrest Immediate Harm (Fam. Code § 3064), and Pendente Lite Relief** (filed/ attempted-file June 15–16, 2026), detailing the medical emergency, the trial court's defiance of the appellate stay, and the demand for statutory parity.

- **Attachment E:** Plaintiff's formally filed **Notice of Ongoing Pattern of Harassment, State-Facilitated Abuse, and Demand for Court Minutes** (filed July 3, 2026), detailing the unrecorded evidentiary blackout of the June 25, 2026 hearing, the trial court's denial of a certified court reporter in violation of *Jameson v. Desta*, and the illegal scheduling of trial tracks in active defiance of the appellate stay.

- **Attachment F:** Petitioner's **Notice of Ruling** filed on June 30, 2026, documenting the state court's asymmetrical preclusion orders and weaponized compliance tracks.

## ANTICIPATING DEFENSE DEFLECTION: WHY EXHIBIT 20 PROVES A RICO ENTERPRISE, NOT A "FAMILY LAW MATTER"/DEFEATING THE "FAMILY LAW DEFLECTION": THE SUBVERSION OF THE JUDICIAL PROCESS INTO A RACKETEERING INSTRUMENT

**The Hallmark of a Family Law Case vs. a RICO Enterprise:** A standard family law dispute involves opposing litigants utilizing established, neutral judicial rules to resolve marital dissolution or custody issues. Conversely, a **RICO Enterprise** exists when a network of actors corrupts the legal framework itself—transforming an adversarial court into a predatory, profit-driven administrative mechanism for asset extraction and extortion.

**The State Tribunal as the Enterprise's Enforcer:** Exhibit 20 conclusively proves that this is not a routine domestic dispute. When court clerks, trial judges, and the Presiding Judge coordinate to reject mandatory defensive pleadings, enforce unserved "ghost motions," deny certified court reporters to blind the record, and weaponize "vexatious litigant" orders as absolute gag mechanisms, the court has ceased to function as a neutral arbiter.

**Judicial Cover-Up and the August "Sham Trial" (Laundering the Fraud):** The state court judiciary is actively participating in covering up the Enterprise's underlying fraud by steamrolling Plaintiff toward a pre-determined, August 2026 "sham trial." This engineered trial track is designed solely to launder the multi-million-dollar fraudulent extractions and void orders into a final judicial decree, permanently shielding the co-conspirators from federal liability while flatly refusing to allow Plaintiff any mechanism to protect her fundamental constitutional and parental rights.

**The Pattern of Racketeering:** The June 2026 administrative blockades, retaliatory preclusion orders, and judicial cover-ups (Exhibit 20) directly tie back to the foundational wire frauds and capital extractions (Exhibits 6 and 19). The Enterprise utilizes the state court docket to lock away evidence of their multi-million-dollar asset siphoning, retaliate against federal whistleblowers, and insulate themselves from accountability. Federal RICO jurisdiction is fully invoked because the defendants' abuse of state legal processes constitutes an ongoing pattern of **Obstruction of Justice (18 U.S.C. § 1503)** and **Wire Fraud (18 U.S.C. § 1343)** executed under color of law.

Cristina Lancranjan
1011 Union St Ap1205
San Diego CA 92101
Phone Number 860-460-1865
Fax Number: NA
Email: lancranjan.cristina@gmail.com

Cristina Lancranjan, IN PRO PER

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| Brett F Truitt | Case No. 23FL0000584C |
| Plaintiff(s), | **NOTICE OF RELATED FEDERAL ACTIONS, PENDING FEDERAL INVESTIGATION, AND FORMAL OBJECTION TO PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES AND EXHIBITS** |
| vs. | |
| Cristina Lancranjan, | |
| Defendant(s). | TO: Hon. Jami L. Ferrara |

**NOTICE OF RELATED FEDERAL ACTIONS, PENDING FEDERAL INVESTIGATION, AND FORMAL OBJECTION TO PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES**

**I. PROCEDURAL POSTURE** The trial court is divested of jurisdiction pursuant to the mandatory, self-executing automatic stay under **CCP § 916(a)** pending resolution of the ongoing appeals in **D086958**. The court lacks the power to advance trial tracks or issue orders while these foundational issues are under appellate review.

**II. NOTICE OF PENDING FEDERAL ACTIONS**

Plaintiff/Respondent hereby notifies this Court of two active federal actions:

1. *Lancranjan v. Saatjian et al.*, Case No. **26-CV-02817-BAS-VET** (RICO/Embezzlement/ Forgery).

2. *Lancranjan v. Truitt et al.*, Case No. **26cv3765-JES-DEB** (Civil Rights/§ 1983).

-1-

NOTICE OF RELATED FEDERAL ACTIONS, PENDING FEDERAL INVESTIGATION, AND FORMAL OBJECTION TO PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES AND EXHIBI;

These federal actions concern systemic racketeering, embezzlement of community assets, witness intimidation, and the use of forged documents (FOAHs) to procure fraudulent court orders. Proceeding with the scheduled August trials while this Court is divested of jurisdiction—and while these federal matters investigating the underlying fraud are active—constitutes a structural denial of Due Process and Equal Protection. Any judgment entered under these conditions will be *void ab initio* and subject to collateral attack.

## III. MEMORANDUM OF POINTS AND AUTHORITIES

The following exhibits are incorporated by reference:

- **Exhibit A (July 6, 2026 Minute Order, Case 25CU054361C):** This order confirms a "meritorious dispute" regarding unauthorized financial extractions and documents that Defendant Schulman filed a declaration under penalty of perjury that was "contrary" to evidence of Plaintiff's discovery compliance. The Petitioner intends to rely on financial disclosures that are inherently tainted by the 'meritorious dispute' confirmed in *Lancranjan v. Schulman* (Case No. 25CU054361C). Specifically, this Court's records—currently under appellate review—are built upon the same financial extractions (the unauthorized $150,000 transfer) that the Superior Court has already identified as factually disputed and unsupported by Plaintiff's consent. Furthermore, Petitioner seeks to introduce billing and financial records prepared by attorneys who have been documented filing sworn declarations 'contrary' to evidence of discovery compliance. Relying on these documents at trial will finalize a judgment on evidence that is currently the subject of perjury investigations and federal racketeering litigation. Respondent objects to the introduction of these billing/financial records as they constitute 'fruits of the fraud' currently being litigated in *Lancranjan v. Schulman* (Case No. 25CU054361C) and the federal RICO action (26-CV-02817-BAS-VET). Their admission would constitute a violation of the rule against admitting evidence procured through extrinsic fraud.

- **Exhibit B (Declaration of Anna Addleman, CPA):** The suppression of community asset information was a coordinated effort involving Petitioner Truitt and his counsel, Peter Saatjian. The Enterprise, through Saatjian's direct hostility and intimidation of independent forensic experts, systematically prevented the forensic analysis required to determine the true value of the marital estate. Petitioner Truitt and his counsel are the primary beneficiaries of this obstruction, as it allowed them to shield community assets—including the unauthorized $150,000 transfer—from court-ordered discovery. Consequently, any financial evidence presented by Petitioner at trial is derived from this documented pattern of discovery sabotage and cannot be deemed reliable or admissible.

Argument:

1. **Jurisdictional Divestment:** Per *CCP § 916(a)*, the perfection of an appeal stays all proceedings embraced within the appeal. Advancing the trial is an *ultra vires* act.

-2-

NOTICE OF RELATED FEDERAL ACTIONS, PENDING FEDERAL INVESTIGATION, AND FORMAL OBJECTION TO PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES AND EXHIBI;

2.   **Structural Denial of Due Process:** Under *Jameson v. Desta* (2018) 5 Cal.5th 594, the denial of an evidentiary record for an indigent litigant constitutes a structural denial of due process and equal protection.

3.   **Fraud upon the Court:** A judgment procured through forged instruments (FOAHs) and extrinsic fraud is void *ab initio* and cannot be shielded by trial court rulings.

**IV. CONCLUSION** Respondent respectfully requests this Court acknowledge these pending federal investigations, honor the automatic stay under *CCP § 916(a)*, and vacate the August trial dates to prevent the finalization of a judgment predicated on criminal conduct.

Respectfully submitted,

Cristina M. Lancranjan, In Pro Per /s/Cristina Lancranjan

Date July 13 2026

-3-

NOTICE OF RELATED FEDERAL ACTIONS, PENDING FEDERAL INVESTIGATION, AND FORMAL OBJECTION TO PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES AND EXHIBI;

## MASTER EXHIBIT LIST

**Case No.: 23FL000584C**

| Exhibit | Title / Description |
|---|---|
| **Exhibit A** | **July 6, 2026 Minute Order (Case 25CU054361C):** Judicial finding confirming a "meritorious dispute" regarding unauthorized financial extractions and evidence of Defendant Schulman's perjury. |
| **Exhibit B** | **Declaration of Anna Addleman, CPA (June 18, 2026):** Documentation of professional interference, witness intimidation, and the discovery blockade intended to shield the marital estate from forensic analysis. |

-4-

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## MINUTE ORDER

DATE: 07/06/2026                    TIME: 1:37 PM                    DEPT: C-68

JUDICIAL OFFICER: TERRIE E. ROBERTS
CLERK: Richard Cersosimo

CASE NO: **25CU054361C** CASE INIT.DATE: 10/08/2025
CASE TITLE: **Lancranjan vs Schulman**

Ex Parte Minute Order

After hearing argument on July 2, 2026 and reviewing Plaintiff's 177-page Declaration filed June 26, 2026, the Court sets aside its tentative granting the Motion to Furnish Security and now denies it for the reasons stated below. The Court utilized its discretion pursuant to California Rules of Court, Rule 3.1300(d) to consider Plaintiff's late filed pleadings.

Defendants David Schulman and Moore Schulman & Moore, APC (collectively "Defendants") Motion for Order Requiring Vexatious Litigant Cristina Lancranjan ("Plaintiff") to Furnish Security (the "Motion") *is denied.*

In light of the Court denying the Defendant's Motion, the Defendants have 10 days to answer the Complaint.  Plaintiff's Motion to Stay *is continued until August 14, 2026.* (*See* Code Civ. Proc., § 391.1(a).)

Defendants' Request for Judicial Notice filed January 30, 2026 is granted.

On January 30, 2026, the Defendants filed a Motion for Order Requiring Vexatious Litigant Cristina Lancranjan ("Plaintiff") to Furnish Security (the "Motion") pursuant to Code Civ. Proc., ("CCP") § 391.1(a) which provides:

> "In any litigation pending in any court of this state, at any time until final judgment is entered, a defendant may move the court, upon notice and hearing, for an order requiring the plaintiff to furnish security or for an order dismissing the litigation pursuant to subdivision (b) of Section 391.3. The motion for an order requiring the plaintiff to furnish security shall be based upon the ground, and supported by a showing, *that the plaintiff is a vexatious litigant and that there is not a reasonable probability that they will prevail in the litigation against the moving defendant.*"(Emphasis added).

**Vexatious Litigant Status**

DATE: 07/06/2026                    MINUTE ORDER                    Page 1

CASE TITLE: Lancranjan vs Schulman                              CASE NO: **25CU054361C**

In this case, Defendants have presented evidence that Plaintiff has already been deemed a vexatious litigant in the Superior Court of California, County of San Diego, case *Truitt v. Lancranjan*, (Case No. 23FL000584C) ("Dissolution Case"), where Plaintiff was deemed a vexatious litigant by the Hon. Christopher Morris on December 2, 2025 in the underlying family court case. (See RJN, Ex. 23.) Thus, the first element under CCP § 391.1(a) is met. The Plaintiff's argument that Judge Morris' order is not final because it is on appeal has no merit. The fact that the matter is up on appeal does not preclude this Court from taking judicial notice that the Plaintiff is currently deemed a vexatious litigant. This is because the only requirement of finality of judgment in relation to CCP § 391.1, pertains to a court's determination that the prior litigation was determined adversely to the plaintiff. (*See* Code Civ. Proc., § 391(b)(2).) CCP § 391(b)(4) defines a "vexatious litigant" to include a person who "[h] as previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence." Importantly, there is no finality of judgment provision in subsection (b)(4), and we can presume such an omission was intentional. (*See Walt Disney Parks & Resorts U.S., Inc. v. Superior Court* (2018) 21 Cal.App.5th 872, 879 [where a phrase is included in one provision of a statutory scheme but omitted from another provision, "we presume that the Legislature did not intend the language included in the first to be read into the second"].

While in light of Plaintiff's appeal of the vexatious litigant order, Plaintiff was not barred by judicial estoppel from challenging the underlying facts regarding the family law court's determination that she was a vexatious litigant, it does not preclude the Court from relying upon the family law court's order deeming her a vexatious litigant. (*See Woodhouse v. State Bar of California* (2026) 118 Cal.App.5th 936, 952 [court made alternative finding under Code Civ. Proc., § 391(b)(4) that other courts had declared plaintiff a vexatious litigant].) Furthermore, while the prefiling order does not apply to this case because the order was issued after Plaintiff commenced this action, the timing of the order does not preclude Defendants from bringing a motion under CCP § 391.1 for an order requiring Plaintiff to post an adequate security before proceeding. (*Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1172.)

Accordingly, the Court finds that Defendants' motion is proper and the first required element under CCP § 391.1(a) is met.

The Court must now consider Defendant's requested relief.

When a motion under CCP § 391.1 for an order requiring a security is filed prior to trial, all litigation is stayed until the motion is denied, or if granted, until 10 days after the required security is furnished and the defendant is provided with written notice. (Code Civ. Proc., § 391.1(a).)

*Relief*

Defendants' Motion seeks an order requiring Plaintiff to post security in the amount of at least $50,000 as a condition to proceeding with this action.

CCP § 391 defines "security" as "an undertaking to assure payment, to the party for whose benefit the undertaking is required to be furnished, of the party's reasonable expenses, including attorney's fees and not limited to taxable costs, incurred in or in connection with a litigation instituted, caused to be instituted, or maintained or caused to be maintained by a vexatious litigant." (Code Civ. Proc., § 391(c).) A party's limited financial resources does not prevent a court from imposing a security. (*Moran v. Murtaugh Miller Meyer & Nelson, LLP* (2007) 40 Cal.4th 780, 786 [rejecting argument that imposing security unconstitutionally discriminates against those of "modest means"].)

---

DATE: 07/06/2026                        MINUTE ORDER                              Page 2

CASE TITLE: Lancranjan vs Schulman                    CASE NO: **25CU054361C**

---

In determining whether the plaintiff has a reasonable probability of prevailing in the current action, "the court does not assume the truth of a litigant's factual allegations and it may receive and weigh evidence before deciding whether the litigant has a reasonable chance of prevailing." (*Golin v. Allenby* (2010) 190 Cal.App.4th 616, 635.)

Plaintiff commenced this legal malpractice action on October 8, 2025. (*See* ROA # 4.) On December 1, 2025, Plaintiff filed a First Amended Complaint ("FAC") asserting three causes of action: (1) Legal Malpractice; (2) Breach of Fiduciary Duty; and (3) Intentional Infliction of Emotional Distress ("IIED"). (*See* ROA # 14.)

The FAC alleges in relevant part that in July 2024, Plaintiff retained Defendants to represent her in the Dissolution Case. (FAC, ¶ 2.) The FAC further alleges that she disclosed to Defendants her financial vulnerability, disclosed her ex-husbands earnings and that her ex-husband "had illegally seized over **\$1 million**" in community assets." (*Id.*) Plaintiff alleges that Defendants' primary duty under the retention was to freeze these assets. (*Id.*) Plaintiff alleges that Defendants breached this duty by failing to file for retroactive support or ATROs violations and if Defendants had done so, Plaintiff's \$190,000 estate would have been preserved. (*Id.*, ¶ 3.)

The FAC further alleges that Defendant Schulman filed an ex parte application to freeze the community assets, scheduled for October 2, 2024, but he unilaterally cancelled the hearing and began secret negotiations with opposing counsel. (Id., ¶ 5.) Plaintiff also alleges that in August 2024, the opposing party served a Request for Production of documents, and that Defendants breached their duty by failing to timely serve responses and/or objections by the statutory deadline. (Id., ¶ 5.) Plaintiff alleges that this resulted in monetary sanctions being ordered against her and contributed to the loss of her move-away trial. (Id.) Plaintiff alleges that Defendant Schulman engaged in an extortion scheme where: (1) he negotiated a stipulation with opposing counsel regarding \$150,000 in community funds that were transferred directly into Schulman's own Client Trust Account; (2) Schulman misrepresented to Plaintiff that if she signed the stipulation, he could release \$100,000 to her for housing costs even though the funds were restricted to attorney fees only; and that (3) when she did not sign the stipulation, Schulman threatened to withdraw on the eve of trial. (Id., ¶ 6.)

Plaintiff also alleges that during an October 22, 2024 bifurcation hearing, Defendant Schulman failed to object based on the opposing party's failure to serve final declarations of disclosure and that this resulted in the court entering a void status-only judgment that terminated Plaintiff's marital status and stripped her of her property rights. (Id., ¶ 7.) (The Court notes a bifurcation of marital status does not require final declarations of disclosure, but rather preliminary declarations of disclosure. *See* Fam. Code §2337.) After the bifurcation hearing, Defendants moved to be substituted out of the case, despite there being critical hearings regarding support, child custody, and school in November 2024 and January 2025. (Id., ¶ 8.)

To prevail on his claim for legal malpractice a plaintiff must establish: "(1) the duty of the attorney to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence. (*E-Pass Technologies, Inc. v. Moses & Singer, LLP* (2010) 189 Cal.App.4th 1140, 1148 [internal modification omitted].) "In view of the complexity of the law and the circumstances which call for difficult choices among possible courses of action, the attorney cannot be held legally responsible for an honest and reasonable mistake of law or an unfortunate selection of remedy or other procedural step." (*Banerian v. O'Malley* (1974) 42 Cal.App.3d 604, 613 [internal citations omitted].) Simply showing the attorney committed an error is insufficient. (*Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154, 166.) Rather, "the

---

CASE TITLE: Lancranjan vs Schulman                    CASE NO: **25CU054361C**

plaintiff is required to prove that but for the defendant's negligent acts or omissions, 'the plaintiff would have obtained a more favorable judgment or settlement in the action in which the malpractice allegedly occurred.'" (*Blanks v. Seyfarth Shaw LLP* (2009) 171 Cal.App.4th 336, 357 [quoting *Viner v. Sweet* (2003) 30 Cal.4th 1232, 1241.)

To prevail on a claim for breach of fiduciary duty a Plaintiff must establish (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." (*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086.) Such a cause of action is distinct from a cause of action for professional negligence. (*Id.*)

To prevail on a cause of action for intentional infliction of emotional distress a plaintiff must establish: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.' A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' And the defendant's conduct must be 'intended to inflict injury or engaged in with the realization that injury will result." (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050-51, [citations omitted].)

"Severe emotional distress [is] emotional distress of such substantial quantity or enduring quality that no reasonable [person] in a civilized society should be expected to endure it." (*Fletcher v. Western Nat'l Life Ins. Co.* (1970) 10 Cal.App.3d 376, 397.) A cause of action for emotional distress must involve outrageous conduct that results in traumatic shock. (*Ochoa v. Superior Court* (1985) 39 Cal.3d 159, 170.) Plaintiffs must plead "facts demonstrating the nature, extent, or duration of [their] alleged emotional distress." (*Angie M. v. Superior Court* (1995) 37 Cal.App.4th 1217, 1227.)

Based on the Court's review of the judicially noticed documents, as well as the Plaintiff's June 26, 2026 declaration and Defendant Schulman's January 30, 2026 declaration, it is undisputed that Mr. Schulman entered into an agreement with Mr. Peter Saatjian, the attorney for Mr. Truitt, to have $150,000 in funds transferred from Mr. Truitt to Mr. Schulman's trust account. This agreement took place after Mr. Schulman and Plaintiff had already scheduled an ex parte for October 2, 2024, to have Mr. Truitt's Bank of America account frozen.  As a result of the agreement reached between Mr. Schulman and attorney Saatjian, the October 2, 2024 ex parte was taken off calendar by Mr. Schulman. However, emails between the Plaintiff and Mr. Schulman's office indicate that the Plaintiff had no knowledge that the October 2, 2024 ex parte was going to be taken off calendar.

It is also undisputed that prior to the stipulation being drafted, the check for $150,000 was delivered to Mr. Shulman's office and deposited into his trust account. The stipulation was ultimately drafted and signed by Mr. Saatjian and Mr. Truitt, but Plaintiff, after learning about the agreement to transfer funds, refused to sign it. The emails show that the Plaintiff had no knowledge about the agreement to transfer the $150,000 and further, the emails show that she did not consent to the transfer of the funds and refused to sign the stipulation because she disputed the funds being used for attorney fees, rather than to assist her with living expenses. Despite multiple attempts by Mr. Schulman to get the Plaintiff to sign the stipulation, which Mr. Saatjian was awaiting, Plaintiff refused to do so. (*See* Ex. A-C, attached to Plaintiff's declaration filed June 26, 2026.).

Despite Mr. Schulman's multiple attempts to transfer the funds from his trust account back to either Mr. Saatjian or to Plaintiff's subsequently retained attorney, Mr. Blado, the funds were ultimately not

---

DATE: 07/06/2026                    MINUTE ORDER                    Page 4

CASE TITLE: Lancranjan vs Schulman                    CASE NO: **25CU054361C**

transferred until after the June 24, 2025 order made by Judge Morris, ordering that $115,000 held in Mr. Schulman's trust account, be transferred to Mr. Saatjian's trust account, with the remaining $35,000 held in Mr. Schulman's trust account for attorney fees pending further order of the court. (*See* Ex. U, attached to Defendants' January 30, 2026 declaration.).

Although the Court does not believe this evidence shows that Mr. Schulman engaged in extortion, there is a meritorious issue as to communication or the lack thereof and an issue as to lack of knowledge and consent regarding the transfer of the funds, the designated use of the funds, and the removal of the October 2, 2024 ex parte.

With respect to the discovery issue, the Plaintiff is correct that the Court's previous indication that she did not address the alleged failure to communicate with the Defendants regarding the outstanding discovery was wrong and not supported by the evidence. In fact, in Ex. L and O, attached to Plaintiff's June 26, 2026 declaration, Plaintiff provided evidence that she emailed documents directly in response to the discovery requests, to Mr. Schulman's office on September 8, 2024 and September 23, 2024. The Court of course has no idea whether the numerous documents attached to the emails addressed all of the outstanding discovery; however, the exhibits do indicate that she responded to the requests and provided a number of documents. This is contrary to Mr. Schulman's January 30, 2026 declaration, which does not acknowledge that the Plaintiff sent any documents to his office in response to the outstanding discovery requests. Ultimately, the family court did sanction the Plaintiff $7,500.00 for discovery violations.

Plaintiff also disputes Mr. Schulman's claim that she physically picked up her files from his office. Plaintiff indicates that she never picked up her file from the Defendants' office and contends that critical communications between Mr. Schulman and Mr. Saatjian regarding the transfer of funds, were missing. She also points to Ex. X in her June 26, 2026 declaration, indicating that as of April 2025, she was still seeking her entire file from the Defendants; albeit she did not include Mr. Schulman's response to her email in Ex. X.

Contrary to Plaintiffs allegations that the declaration from her ethics expert, Mr. Edward McIntyre, shown in Ex. F, and the declaration from her financial expert, Ms. Anna Addelman, shown in Ex. G, provides prima facie proof of the "unauthorized $150,000 transfer" is misguided. Mr. McIntyre's declaration opines on alleged misconduct of Mr. Saatjian towards Plaintiff. It makes no mention of any conduct by Mr. Schulman. As to Ms. Addelman's declaration, she merely discusses and identifies the additional financial documentation she needs from Mr. Truitt, Plaintiff's ex-husband, to complete the financial analysis. Ms. Addelman's declaration does not comment or provide any evidence of an "embezzlement" as alleged by Plaintiff.

However, based on the disputed issues as to the transfer of the $150,000 in funds and the corresponding removal of the October 2, 2024 ex parte, as well as the issue of whether Plaintiff provided documents to the Defendants to enable them to respond to outstanding discovery and the fact that Plaintiff was in fact sanctioned, as well as the disputed issues as to whether the Plaintiff timely received her entire file from Defendants, the Court cannot find that there is no reasonable probability that she will prevail on her Legal Malpractice and Breach of Fiduciary Duty claim against the Defendants. The Court finds, however, that there is no reasonable probability that she will prevail on her Intentional Infliction of Emotional Distress claim against the Defendants.

For all of these reasons, the request to require Plaintiff to post a bond is denied. Defendants are ordered to plead to the FAC no later than ten (10) days from this Order.

---

DATE: 07/06/2026                    MINUTE ORDER                    Page 5

CASE TITLE: Lancranjan vs Schulman                    CASE NO: **25CU054361C**

Plaintiff's request for a Statement of Decision pursuant to CCP § 632 is denied, as CCP § 632 only requires a Statement of Decision upon the trial of a question of fact by the court, not based upon a motion.

The Court will rule on Plaintiff's request to stay this matter on August 14, 2026.

### Conclusion

For all of the reasons discussed above, Defendants' Motion is denied. Defendants are ordered to plead to the FAC within ten (10) days from this Order.

IT IS SO ORDERED.

*Terrie E. Roberts*
_____
Judge Terrie E. Roberts

DATE: 07/06/2026                    MINUTE ORDER                    Page 6

Cristina M. Lancranjan
1011 Union St. Apt. 1205
San Diego, CA 92101
Telephone: (860) 460-1865
E-mail: Lancranjan.cristina@gmail.com
Cristina Lancranjan, IN PRO PER

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

FAMILY LAW DIVISION

IN RE THE MARRIAGE OF:

BRETT F. TRUITT

      Petitioner,

and,

CRISTINA M. LANCRANJAN,

      Respondent.

Case No.: 23FL000584C

**DECLARATION OF ANNA ADDLEMAN, CPA, CVA, CDFA, CFF, CFE**

I, Anna Addleman, CPA, CVA, CDFA, CFF, CFE, declare:

1.    I am licensed in the State of California as a Certified Public Accountant and Certified in Financial Forensics by the American Institute of Certified Public Accountants. I am also licensed as a Certified Valuation Analyst by the National Association of Certified Valuators and Analysts. Additionally, I am certified by the Institute for Divorce Financial Analysts as a Certified Divorce Financial Analyst and by the Association of Certified Fraud Examiners as a Certified Fraud Examiner. I have been retained to provide professional services in numerous marital dissolution matters since I began my professional practice with Mack Barclay, Inc. in 2002.

2.    I was retained to assist Cristina Lancranjan with various financial issues including Brett Truitt's income available for support and to trace community assets.

3.    On November 6, 2025, the Court ordered Mr. Truitt's counsel (Peter Saatjian) to

**DECLARATION OF ANNA ADDLEMAN, CPA, CVA, CDFA, CFF, CFE**

produce " all the documents that he produced so far" in the case. After this Court order the professional environment surrounding my engagement became hostile.

4.    After his production, Mr. Saatjian filed a public Declaration on November 17, 2025, which attacked my professional integrity, competence and objectivity. Mr. Saatjian stated in his declaration "MS. ADDLEMAN'S REPORT WILL BE UNRELIABLE AND INACCURATE". He also suggested my analysis would be to confirm Ms. Lancranjan's false narrative. As of November 2025, I had not developed my opinions and findings. Based on the hostility in the case, it became clear to me that I would be unable to continue working on this matter based on the accusations made by Mr. Saatjian.

5.    Over the course of my twenty plus years working in marital dissolutions and handling high conflict matters, this case is one of the most litigious cases I have worked on. On November 18, 2025, I notified Ms. Lancranjan that my firm would cease all work on her matter.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct. Executed this 18th day of June 2026, in San Diego, California.

Anna Addleman, CPA, CVA, CDFA, CFF, CFE

2

**DECLARATION OF ANNA ADDLEMAN, CPA, CVA, CDFA, CFF, CFE**